# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

JANE DOE,                                    Case No. 4:21-cv-3049

      Plaintiff,                          Hon. John M. Gerrard

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA; and
individuals TAMIKO STRICKMAN and
JOHN ROE, individually and in their official
capacities; and OTHER UNIDENTIFIED
DEFENDANTS;

      Defendants.

---

| | |
|---|---|
| Karen Truszkowski | Elizabeth K. Abdnour |
| TEMPERANCE LEGAL GROUP, PLLC | ELIZABETH ABDNOUR LAW, PLLC |
| Attorney for Plaintiff | Attorney for Plaintiff |
| 503 Mall Court #131 | 1100 W. Saginaw St., Ste. 4A-2 |
| Lansing, MI 48912 | Lansing, MI 48915 |
| (844) 534-2560 phone | (517) 292-0067 phone |
| (800) 531-6527 fax | (517) 709-7700 fax |
| karen@temperancelegalgroup.com | elizabeth@abdnour.com |

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff JANE DOE, by and through her attorneys, ELIZABETH ABDNOUR and

KAREN TRUSZKOWSKI, hereby file the following complaint against Defendants as captioned

above.

## INTRODUCTION

1. Plaintiff Jane Doe ("Plaintiff") is a former student of the University of Nebraska-Lincoln

   ("UNL") who attended the school from approximately 2014-2017.

2. While Plaintiff was a student at UNL, she was repeatedly sexually harassed by her

1

professor, John Roe ("Roe").

3. Title IX of the Education Amendments of 1972 ("Title IX") is a federal law requiring that any educational institutions receiving federal funds must be free of sex discrimination. Title IX is implemented through the Code of Federal Regulations.

4. Pursuant to federal guidance issued by the U.S. Department of Education, all educational institutions that receive federal funding are required to designate a Title IX Coordinator, whose responsibilities include overseeing and coordinating efforts to ensure compliance with Title IX on campus.

5. UNL's Office of Institutional Equity and Compliance ("IEC"), led by UNL's Title IX Coordinator, is responsible for preventing, responding to, and investigating alleged violations of Title IX on campus.

6. UNL's response to Plaintiff's complaint of continued sexual harassment and retaliation was insufficient and did not comply with basic due process requirements; accepted Title IX response requirements as outlined in guidance from the U.S. Department of Education, Office for Civil Rights.

7. UNL's response to Plaintiff constituted sex discrimination in a variety of ways as outlined later in this complaint.

8. UNL repeatedly denied due process to Plaintiff in the investigation process in a variety of ways as outlined later in this complaint.

9. UNL routinely failed to follow its own policies in responding to and investigating Plaintiff's claim of continued sexual harassment.

10. UNL's failure to appropriately respond to Plaintiff's claim of continued harassment, as well as the sex discrimination and other harms perpetrated by UNL against the Plaintiff,

caused severe harms to the Plaintiff, denied her due process, and denied her the ability to participate fully in their education as UNL students.

## JURISDICTION AND VENUE

11. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, et seq.

12. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the First and Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

13. This is also an action to redress the deprivation of Plaintiff's state constitutional rights under the Constitution of Nebraska, prohibiting discrimination based on sex in public education.[1]

14. Subject matter jurisdiction is based on 28 U.S.C. § 1331, which grants district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.  This Court has subject matter over state law claims pursuant to 28 U.S.C. § 1367.

---

[1] NEB. CONST. art. I, § 30, https://nebraskalegislature.gov/FloorDocs/Current/PDF/Constitution/constitution.pdf.

15. This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

16. Plaintiff's claims are cognizable under the United States Constitution, 42 U.S.C. §§ 1681 *et seq.*, and under Title IX.

17. The events giving rise to this lawsuit occurred in the city of Lincoln, Nebraska, County of Lancaster, which sits in the federal District of Nebraska.

18. Venue is proper in the United States District Court for the District of Nebraska, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claims occurred.

## APPLICABLE LAW AND POLICY

19. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681(a) *et seq.*, states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…

20. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106, 34 C.F.R. Part 100, and 28 C.F.R. § 42.104.

21. Regarding Title IX, 34 C.F.R. § 106.8(b) provides:

> …A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

22. In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

4

23. In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

24. *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

> a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and

> b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

> *Davis*, 526 U.S. at 1669-76.

25. In *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), the United States Supreme Court held that retaliation against a person who complains about sex discrimination is itself a form of discrimination "on the basis of sex" forbidden by Title IX.

26. The First Amendment to the United States Constitution provides that Congress shall make no law "abridging the freedom of speech." U.S. Const. amend. I.

27. In *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), the U.S. Supreme Court held that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."

28. In *Healy v. James*, 408 U.S. 169 (1972), the U.S. Supreme Court held that the First Amendment applies with the same force at public universities as at other educational institutions.

29. The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV, § 1.

## **PARTIES**

30. Plaintiff Jane Doe ("Plaintiff") is an adult and a former student at UNL, and at all times pertinent to this suit resided either on campus at UNL, located in the city of Lincoln, Nebraska, or in private housing in the city of Lincoln, Nebraska. Plaintiff is now enrolled in a Ph.D. program at another institution.

31. Defendant Board of Regents of the University of Nebraska ("Board of Regents") is the governing body of the University of Nebraska system, which includes UNL, a public, state university located in Lincoln, Nebraska, County of Lancaster, with its principal place of business at 1400 R St., Lincoln, Nebraska, 68588.

32. At all material times, Defendant Tamiko Strickman ("Strickman"), in her official capacity, was an agent and/or employee of UNL, acting or failing to act within the scope, course, and authority of her employment and her employer.

33. At all material times prior to an unknown date in 2016, Strickman was an Investigator and Deputy Title IX Coordinator at UNL. Upon information and belief, Strickman resigned from that position for a brief period in 2016. After former IEC Director Susan Foster's departure on August 22, 2016, Strickman was rehired and named Interim Director of the Office of Institutional Equity and Compliance for UNL. In 2016 until around November 2019, Strickman was Associate to the Chancellor, Title IX Coordinator, and Director of the Office of Institutional Equity and Compliance for UNL. Upon information and belief, Strickman was terminated from her position at UNL in December 2019.

34. At all material times, Defendant John Roe[2] ("Roe"), in his official capacity, was an agent

---

[2] John Roe is a pseudonym to protect the identity of this party.

and/or employee of UNL, acting or failing to act within the scope, course, and authority of his employment and his employer.

35. At all material times, Roe was a professor in UNL's engineering department.

36. Other Unidentified Defendants may be identified in the course of this litigation and Plaintiff reserves the right to amend this Complaint to add them as defendants as they become known.

## **FACTUAL ALLEGATIONS**

37. In May 2014, Plaintiff began her academic career with UNL.

38. Plaintiff immigrated to the U.S. with her husband so they could both pursue their respective Ph.Ds.

39. Plaintiff was interested in both the chemical and materials engineering Ph.D. programs at UNL.

40. To help decide which program she should enroll in, Plaintiff met with professors from both departments to request funding through either a Teaching Assistant ("TA") position, where the department would fund her, or a Research Assistant ("RA") position, where the faculty would fund her.

41. In the spring of 2014, Defendant Roe, a professor in the Department of Mechanical and Materials Engineering, offered to be Plaintiff's advisor and fund her research.

42. Plaintiff accepted his offer and was admitted to UNL's Mechanical and Materials Engineering ("MME") degree program.

43. Less than seven months into her Ph.D. program, Roe began to sexually harass Plaintiff.

44. At the time, Roe was about sixty years old, and Plaintiff was twenty-six years old and married.

45. On or about December 13, 2014, Roe kissed Plaintiff on the lips while they were in his office.

46. Plaintiff attempted to maintain a professional relationship with Roe for the sake of her degree, but she found it increasingly difficult to dodge his advances.

47. Roe began a retaliation campaign against Plaintiff that severely adversely affected her academic career, including demoting her from first author on a paper and preventing her from applying for or accepting internship opportunities.

48. Roe's sexual harassment escalated over the course of Plaintiff's studies.

49. Throughout the summer of 2015, Roe tried to hug Plaintiff, told her he loved her, and kicked her legs between twenty and thirty times.

50. Even when Plaintiff was not physically near Roe, he would harass her through unsolicited texts and emails of a sexual nature.

51. On or about June 21, 2016, Plaintiff met with UNL's Office of Institutional Equity and Compliance ("IEC") for the first time to report Roe's ongoing sexual harassment and retaliation.

52. On August 12, 2016, IEC sent Plaintiff a letter signed by Strickman which made a finding that Roe had violated the University of Nebraska Board of Regents Policy on Sexual Harassment, RP-2.1.8 ("Sexual Harassment Policy").[3]

53. Based on its findings, IEC determined that UNL should cover the tuition and fees for the remaining six credits Plaintiff needed in order to obtain a master's degree.[4]

54. Plaintiff already had a master's degree, so this degree had no value to her.

---

[3] *See* Exhibit 11.
[4] *Id.*

55. Contrary to its promise to her in the IEC findings letter, UNL waived Plaintiff's tuition only and not her fees.

56. From November 2016 until March 2017, Plaintiff continued to be forced to see Roe, even though he was no longer her advisor, because her office was still located within the mechanical engineering department.

57. Roe would say hello to Plaintiff and stare, smile, and sneer at Plaintiff when he saw her, even though he knew his communications were unwelcome to her and IEC had told Plaintiff that Roe was not supposed to have any contact with her.

58. It was impossible for Plaintiff to avoid Roe since she had to work in the small engineering building for her labs, and she felt scared and humiliated.

59. On March 7, 2017, Plaintiff filed another report against Roe with IEC due to his continued harassment of her.[5]

60. Strickman emailed Plaintiff back the same day to ask if she wanted to go over safety planning with Fischer, which confirmed that Strickman received Plaintiff's email.[6]

61. Strickman's email copied Fischer, indicating that UNLPD was notified of the ongoing stalking.[7]

62. Strickman also told Plaintiff that she would talk to Roe.

63. Neither IEC nor UNLPD ever followed up with Plaintiff after she made her complaint and never confirmed that they spoke with Roe.

---

[5] *See* Exhibit 19.
[6] *See* Exhibit 20.
[7] *Id.*

64. Upon information and belief, no Title IX or police investigation was initiated based on Plaintiff's March 7, 2017 report of Roe's continued harassment, stalking, and violation of the no-contact directive.

65. Roe continued to stare and say hello to Plaintiff in the hallway as the school year went on, causing Plaintiff significant fear and anxiety.

66. At a UNL international-themed New Year party at the end of March 2017, Roe stared at Plaintiff throughout the party.

67. In the summer of 2017, due to UNL's failure to protect her from Roe's continued harassment and stalking, Plaintiff made the difficult decision to leave UNL.

68. Plaintiff had been hopeful that UNL would protect her from Roe's harassment and retaliation, but her faith in the school had been completely broken.

69. Even though Plaintiff knew both she and her husband would have to start their Ph.D. programs all over again, she could no longer stand to be anywhere near Roe or UNL. She had to escape from Roe's ongoing harassment and stalking, from which she knew UNL would not protect her.

70. Plaintiff started a Ph.D. program at a different institution in fall 2017.

71. Even after she left UNL, Plaintiff was unable to put the harassment and retaliation from Roe behind her.

72. On May 31, 2017, Strickman emailed Plaintiff and asked her to sign documents so Roe could apply for a patent with the paper she was demoted from first author on, perpetuating Roe's harassment and retaliation against Plaintiff.[8]

73. On September 25, 2017, Roe copied Plaintiff in an email to other UNL students.[9]

---

[8] *See* Exhibit 21.
[9] *See* Exhibit 22.

74. On September 27, 2017, Plaintiff emailed Strickman to notify her that he had again violated the no-contact directive.[10]

75. Strickman did not respond.

76. On September 28, 2017, Plaintiff again emailed Strickman to confirm that Strickman had received the prior day's email.[11]

77. Again, Strickman did not respond.

78. Upon information and belief, no Title IX or police investigation was initiated based on Plaintiff's September 27, 2017, report to IEC of Roe's continued harassment, stalking, and violation of the no-contact directive.

79. On March 14, 2018, Plaintiff emailed Strickman to report that the student who had been promoted to first author on the paper Plaintiff was supposed to be first author on was now making false statements about her.[12]

80. Even though Plaintiff had already transferred to a new educational institution at this point, the effects of Roe's harassment and retaliation were still affecting her.[13]

81. Plaintiff shared all the ways she felt that she had been discriminated against by UNL as a result of Roe's harassment and asked for an official apology.[14]

82. Strickman sent Plaintiff a two-sentence email simply stating that the matter had been resolved by IEC.[15]

---

[10] *See* Exhibit 23.
[11] *See* Exhibit 24.
[12] *See* Exhibit 25.
[13] *Id.*
[14] *Id.*
[15] *Id.*

83. Upon information and belief, no Title IX or police investigation was initiated based on Plaintiff's March 14, 2018, report to IEC of the student's perpetuation of Roe's harassment and stalking.

84. These unwanted reminders of her time at UNL made it impossible for her to escape her memories of Roe's harassment and retaliation and move on with her life.

85. On May 20, 2019, Plaintiff sent a letter to Chancellor Ronnie Green in which she discussed Roe's sexual harassment and UNL's indifference to her plight.[16]

86. Plaintiff's friend also read this letter aloud at a hearing on UNL's prior mishandling of Title IX complaints.

87. Plaintiff never received a response to this letter.

88. As a direct and indirect result of Defendants' actions and inactions, Plaintiff has suffered both financially and emotionally. Plaintiff developed joint pain from the stress of Roe's harassment and IEC's deliberate indifference. In order to alleviate the pain, she had to go to physical therapy and wear knee and wrist pads for over a year. Whenever Plaintiff thinks about her time at UNL, she feels the effects of the stress and joint pain.

89. As a direct and indirect result of Defendants' actions and inactions, Plaintiff's marriage was strained.

90. Plaintiff's husband, who was also a student in the engineering Ph.D. program at UNL, avoided interacting with Roe as much as possible, but he could not completely avoid Roe since all the engineering students work in the same building.

91. Plaintiff did not tell her husband the complete extent of Roe's harassment because she did not want to upset him.

---

[16] *See* Exhibit 26.

92. Plaintiff also did not want to jeopardize her husband's studies, since her husband's advisor was a close friend of Roe and she did not want her husband to feel ostracized from the department like she did.

93. As a direct and indirect result of Defendants' actions and inactions, Plaintiff's mental health was deeply impacted. Plaintiff was constantly in a state of fear and anxiety over Roe's continued harassment and IEC's continued failure to support her. She still becomes emotional whenever she thinks about the abuse she endured, which has taken a toll on both her and her husband. Plaintiff wanted to seek counseling while at UNL but could not bring herself to trust any office at UNL or within the small town of Lincoln to help her. Plaintiff also had trouble focusing on her studies while under Roe's control and did not perform as well as she hoped academically. Plaintiff has moved forward with a new Ph.D. program away from Roe and UNL, but still finds herself haunted by her experiences.

**COUNT I**
**Violation of Title IX**
**Deliberate Indifference to Sex Discrimination**
**20 U.S.C. §§ 1681, *et seq*.**
**(Defendant Board of Regents)**

94. Plaintiff incorporates by reference previously pled paragraphs as if fully pled herein.

95. From December 2014 to September 2017, Plaintiff was subjected to sex-based assault and harassment committed by her male professor.

96. After Plaintiff reported Roe's ongoing sexual harassment and retaliation to IEC on March 7, 2017, Defendants engaged in acts of deliberate indifference.

97. Roe continued to engage in sex discrimination against Plaintiff even after IEC made a finding that Roe had repeatedly violated the Sexual Harassment Policy in his interactions with Plaintiff.

13

98. The ongoing sexual harassment and retaliation were so severe, pervasive, and objectively offensive that Plaintiff was deprived of educational benefits and programs provided by the University.

99. Defendants created and subjected Plaintiff to a hostile educational environment in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 (a) ("Title IX"), because:

    a.  Plaintiff was a member of a protected class,

    b.  She was subjected to sex discrimination, which included sexual harassment and retaliation by a male faculty member;

    c.  The discriminatory acts were based on her sex; and

    d.  She was subjected to a hostile educational environment created by the Defendants' lack of effective action to properly prevent, investigate, and address the sex discrimination.

100. Defendants had actual knowledge of the discriminatory acts, which were created and furthered by Defendants' repeated failure to protect Plaintiff consistent with the University's own policies and state and federal law.

101. Defendants' failure to promptly and appropriately respond to the sex discrimination Plaintiff experienced resulted in Plaintiff, on the basis of her sex, being excluded from participation in, denied the benefits of, and subjected to discrimination in UNL's education program in violation of Title IX.

102. Defendants failed to take immediate, effective remedial steps to resolve the complaints of sex discrimination and instead acted with deliberate indifference to Plaintiff's claims.

103.    Defendants' lack of action and failure to appropriately respond to Plaintiff's reports caused Plaintiff to experience further sexual harassment by Roe.

104.    Defendants persisted in their actions and inaction despite the fact that they had actual knowledge of the discrimination to which Plaintiff has been subjected.

105.    Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted and/or harassed from seeking assistance and protection.

106.    This pattern and practice of behavior constitutes disparate treatment of female students and has a disparate impact on female students.

107.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has sustained injuries and damages, including, but not limited to, loss of her fundamental constitutional rights; economic loss; mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment; psychological damage; and loss of the ordinary pleasures of everyday life.

### COUNT II
**Violation of Title IX**
**Retaliation by Withholding**
**Protection Otherwise Conferred by Title IX**
**20 U.S.C. §§ 1681,** *et seq.*
**(Defendant Board of Regents)**

108.    Plaintiff incorporates by reference previously pled paragraphs as if fully pled herein.

109.    This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 et seq.

110.    Title IX and its interpretive regulations prohibit retaliation against any person who complains about what they reasonably believe to be a Title IX violation, advocates on

behalf of Title IX rights and enforcement, or cooperates in any investigation of a Title IX violation.

111.     Plaintiff protected herself by reporting the harassment she experienced to IEC.

112.     Plaintiff's actions were protected by the anti-retaliation provisions of Title IX.

113.     Defendants took adverse actions against Plaintiff, including Defendant Roe's continued harassment of Plaintiff after he became aware that she had reported him to IEC for a second time.

114.     Defendants' adverse actions against Plaintiff were in direct response to and were in retaliation for the exercise of her rights under Title IX.

115.     Defendants' retaliatory adverse actions against Plaintiff violated Title IX and its interpretive regulations.

116.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has sustained injuries and damages, including, but not limited to, loss of her fundamental constitutional rights; economic loss; mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment; psychological damage; and loss of the ordinary pleasures of everyday life.

## COUNT III
### Denial of Due Process
### 42 U.S.C. § 1983, the Fifth Amendment,
### and the Fourteenth Amendment
### (Defendant Board of Regents and the
### Individual Defendants in their personal capacities)

117.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

118.     Plaintiff alleges violations of 42 U.S.C. § 1983 against Defendant Board of Regents and the Individual Defendants in their personal capacities due to deprivation of her property

16

and liberty interests without adequate notice or a meaningful opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment. All Defendants are state actors and at all relevant times were acting under color of law.

119.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Under the Due Process Clause of the Fourteenth Amendment, Defendants' failure to comply with the administrative requirements of Title IX deprived Plaintiff of her liberty interest in bodily integrity and her property interest in an education arising out of the Code of Student Conduct, LSU's Title IX Policy, and federal law and guidance cannot occur without notice and a meaningful opportunity to be heard.

120.    Defendants' failures include, but are not limited to:

a.    Failure to initiate an investigation after Plaintiff's March 7, 2017, complaint of continued harassment.

b.    Failure to properly consider and evaluate all information provided by Plaintiff in a Title IX investigation;

c.    Failure to comply with their own prescribed remedial measures; and

d.    Failure to notify Plaintiff of her rights under UNL policy and state and federal law after Plaintiff's March 7, 2017, complaint.

121.    Defendants, in their individual capacities and under color of law, subjected Plaintiff to violations of her liberty interest in bodily integrity and her property interest in her education by failing to investigate the ongoing harassment, failing to ensure that the effects of the discrimination against her were remedied, and failing to adequately train and

17

supervise their staff with respect to the handling of Title IX complaints.

122.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has

sustained injuries and damages, including, but not limited to, loss of her fundamental

constitutional rights; economic loss; mental and emotional distress, including anxiety,

mental anguish, humiliation, and embarrassment; psychological damage; and loss of the

ordinary pleasures of everyday life.

**COUNT IV**
**Denial of Equal Protection**
**42 U.S.C. § 1983 and the Fourteenth Amendment**
**(Defendant Board of Regents and the**
**Individual Defendants in their personal capacities)**

123.    Plaintiff incorporates by reference the allegations contained in the previous

paragraphs.

124.    Plaintiff alleges violations of 42 U.S.C. § 1983 against the Defendant Board of

Regents and the Individual Defendants in their personal capacities due to discrimination

on the basis of sex that denied Plaintiff equal protection under the law in violation of the

Equal Protection Clause of the Fourteenth Amendment. All Defendants are state actors and

at all relevant times were acting under color of law.

125.    Upon information and belief, complaints of sex discrimination, including sexual

harassment, sexual assault, stalking, are treated differently than other types of complaints

filed at UNL.

126.    Defendants knew or should have known that female students are more likely to

suffer sexual harassment and sexual violence by a significant margin.

127.    Defendants' treatment of these complaints disparately impacts female students in

violation of Plaintiff's right to equal protection under the law.

128.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sex is presumptively unconstitutional and subject to intermediate scrutiny. Defendants' discrimination against Plaintiff on the basis of sex was not substantially or rationally related to any legitimate government interest.

129.    Defendants discriminated against Plaintiff on the basis of sex by subjecting her to a hostile environment and failing to appropriately respond to and investigate reports of sexual misconduct and other violations detailed previously in this Complaint. Defendants' discrimination against Plaintiff on the basis of sex endangered the safety, privacy, security, and well-being of Plaintiff. Defendants' actions and inactions deprived Plaintiff of her right to equal dignity, liberty, and autonomy by treating her as second-class citizens at UNL.

130.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has sustained injuries and damages, including, but not limited to, loss of her fundamental constitutional rights; economic loss; mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment; psychological damage; and loss of the ordinary pleasures of everyday life.

## **DAMAGES**

131.    Plaintiff incorporates by reference previously pled paragraphs as if fully pled herein.

132.    As a direct and proximate result of the above-described conduct, Plaintiff suffered general, special, incidental, and consequential injury and damages, past, present, and

19

future, in an amount that shall be fully proven at the time of trial. These past, present, and future damages include but are not limited to the following:

a.   Pain, suffering, and emotional distress;

b.   Physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life;

c.   Medical and medical-related expenses;

d.   Pharmaceutical expenses;

e.   Loss of education and educational opportunities;

f.   Additional unnecessary educational expenses;

g.   Loss of employment and earning capacity;

h.   Travel and travel-related expenses;

i.   Prevention from performing daily activities and obtaining the full enjoyment of life;

j.   Expenses and psychological treatment, therapy, and counseling;

k.   A loss of society and companionship; and

l.   All other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

### RELIEF REQUESTED FOR ALL CAUSES OF ACTION

For all the foregoing reasons, Plaintiff prays for judgment against Defendants as follows:

A.   For past, present, and future non-economic damages in an amount to be determined at trial;

B.   For past, present, and future general, special, incidental, and consequential damages in an amount to be determined at trial;

C.   For any appropriate statutory damages;

D.  For costs of this suit;

E.  For punitive damages, according to proof, as appropriate to the individual cause of action;

F.  For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

G.  For reasonable attorneys' fees, costs, and interest, to the fullest extent allowed by law; and

H.  All such additional and/or further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Now comes Plaintiff, by and through her attorneys, Karen Truszkowski and Elizabeth K. Abdnour, and demands a trial by jury.

DATED:      June 25, 2021

Respectfully submitted,

**s/ Karen Truszkowski**
Bar Number: P56929 (MI)
Attorney for Plaintiff
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
Telephone: (844) 534-2560
Fax: (800) 531-6527
Email: karen@temperancelegalgroup.com

**s/ Elizabeth K. Abdnour**
Bar Numbers: 0081795 (OH), P78203 (MI)
Attorney for Plaintiff
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Fax: (517) 709-7700
Email: elizabeth@abdnour.com

21