IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>             Plaintiff,<br><br>        vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and individuals TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS;<br><br><br>             Defendants. | **CASE NO. 4:21-CV-3049** |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE**

---

Submitted by:

Susan K. Sapp, #19121
Lily Amare, #25735
CLINE WILLIAMS WRIGHT JOHNSON
    & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, Nebraska 68508
Telephone: (402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Associate General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
402-472-1201

October 4, 2021        bchambers@nebraska.edu

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................ 4

II.     THE SECOND AMENDED COMPLAINT ............................................... 4

III.    STANDARD OF REVIEW ................................................................... 7

IV.     ARGUMENT .................................................................................... 9

        A.      BRUN IS ENTITLED TO DISMISSAL OF PLAINTIFF'S FIRST AND SECOND
                CAUSES OF ACTION ............................................................... 9

                1.      Plaintiff's First and Second Causes of Action Based On Action Or
                        Inaction that Accrued Prior to February 28, 2017 Are Barred by Statute
                        of Limitations, and Plaintiff Cannot Rely On These Actions or Inactions
                        That Accrued Outside the Statutory Time Period To Support Her Title
                        IX Claims ........................................................................ 9

                2.      Moreover, Plaintiff's Alleged Title IX Violation That Accrued After
                        Plaintiff Withdrew From the University of Nebraska Should Be
                        Dismissed For Lack of Standing ............................................ 11

                3.      Plaintiff's First Cause of Action, Title IX Deliberate Indifference Claim,
                        Should Be Dismissed for Failure to State a Claim ...................... 12

                4.      Plaintiff's Second Cause of Action, Retaliation, Against BRUN Should
                        be Dismissed For Failure To State a Claim. ............................. 16

        B.      BRUN AND STRICKMAN ARE ENTITLED TO DISMISSAL OF PLAINTIFF'S
                THIRD AND FOURTH CAUSES OF ACTION ................................. 16

                1.      Plaintiff's Third and Fourth Causes of Action Against BRUN Should Be
                        Dismissed In Their Entirety Because BRUN is Entitled to Sovereign
                        Immunity ....................................................................... 16

                2.      Plaintiff's Third and Fourth Causes of Action For Action or Inaction
                        That Accrued Prior to February 28, 2017 Are Barred By Statute of
                        Limitations and Plaintiff Cannot Rely On These Actions or Inactions
                        That Accrued Outside of the Statutory Period ........................... 17

                3.      Plaintiff's Third and Fourth Causes of Action Against Tami Strickman
                        Should Be Dismissed Because She is Entitled to Qualified Immunity
                        .................................................................................. 19

                4.      Plaintiff's Section 1983 procedural due process claim against
                        Strickman must be dismissed ............................................... 21

                5.      Plaintiff's Third Cause of Action, Substantive Due Process Claim
                        Against Strickman must Be dismissed...................................... 24

6.    Plaintiff's Fourth Cause of Action, Equal Protection Claim must be dismissed .................................................................................... 25

V.    CONCLUSION ..................................................................................... 28

In accordance with Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), 12(f) and Local Rules NECivR 7.1(a)(1), the Board of Regents of the University of Nebraska ("BRUN" or "Board of Regents") and Tami Stickman ("Strickman"), individually, collectively referred to as "Defendants," respectfully submit this Brief in support of their Motion to Dismiss and to Strike ("Motion") on the Second Amended Complaint filed by Plaintiff Jane Doe ("Plaintiff") *[Filing No. 13]*.

## I.   INTRODUCTION

On February 28, 2021, Plaintiff filed a lawsuit against BRUN and Strickman, among others. On July 27, 2021, Plaintiff filed a Second Amended Complaint.

Defendants respectfully move to dismiss the Second Amended Complaint in its entirety. Specifically, Defendants move to dismiss the First and Second Causes of Action because these claims are barred by statute of limitations, for lack of standing, and failure to state a claim. Moreover, Defendants ask this Court to dismiss Plaintiff's Third and Fourth Causes of Action for the following reasons: first, these claims are barred by the statute of limitations; second, to the extent these claims are asserted against BRUN, they are barred by sovereign immunity; and third, to the extent asserted against Stickman in her individual capacity, Strickman is entitled to qualified immunity. To the extent this Court does not dismiss any or all of the claims, Defendants respectfully request this Court strike all claims that are based on actions or inactions that accrued prior to February 28, 2017.

## II.   THE SECOND AMENDED COMPLAINT

The following factual allegations are recited from Plaintiff's Second Amended Complaint, with reference to the exhibits cited therein and attached to Plaintiff's original Complaint *[Filing No. 1]*. Defendants dispute many of the allegations from Plaintiff's Second Amended Complaint but set forth Plaintiff's contentions solely for purposes of this motion:

1.      Plaintiff was a Ph.D. student at the University of Nebraska—Lincoln from approximately May of 2014 through June of 2017. *[Filing No. 13, ¶ 1, 67]*.

4

2.      John Roe, a Professor in the Department of Mechanical and Materials Engineering, served as Plaintiff's advisor until June of 2016. *[Filing No. 13, ¶ 41 and 56]*.

3.      In June of 2016, Roe moved Plaintiff from first author to second author on a Journal Plaintiff and a group of other students were writing to publish. Plaintiff also alleges Roe prevented her from applying for or accepting internship opportunities. *[Filing No. 13, ¶ 50; Filing 1-11]*.

4.      For the first time, on June 21, 2016, Plaintiff reported to the University of Nebraska—Lincoln's Office of Institutional Equity and Compliance ("IEC") that Roe sexually harassed her and retaliated against her.  *[Filing No. 13, ¶ 51]*. Particularly, Plaintiff reported that Roe kissed her in December of 2015, tried to hug her, told her he loved her, kicked her legs in the summer of 2015, and sent her unsolicited texts and emails of a sexual nature. *[Filing No. 13, ¶ 45, 49, 50]*. Plaintiff also alleged Roe's decision to move Plaintiff from first author to second author was retaliatory based upon her rejection of his sexual advances. *[Filing No. 13, ¶ 47]*.

5.      IEC, through Tami Strickman, began its investigation. *[Filing No. 13, ¶ 52 and 53]*.  IEC removed Roe as Plaintiff's advisor and assigned another advisor.  *[Filing No. 1-11]*.

7.      IEC also issued a no-contact directive. *[Filing No. 13, ¶ 64, 74]*.

8.      On August 12, 2016, IEC, through Strickman, issued a decision and found— "based on the totality of circumstances and the information obtained pursuant to this investigation, and based on a preponderance of the evidence standard of proof"—Roe violated BRUN Policy, RP-2.1.8 which prohibits sexual misconduct. *[Filing No 1-11]*. IEC, through Strickman, also found that the greater weight of the evidence showed Roe's decision to move Plaintiff from first second author was not retaliatory based upon her rejection of his sexual advances. Rather, Strickman concluded that the greater weight of the evidence

showed Roe's decision was based on Plaintiff's subpar work product on the paper relative to the work of the co-author on the paper. *[Id.]*

9.      Based upon the findings and due to the delay in Plaintiff's coursework caused by changing her advisor, IEC directed the graduate school to cover tuition and fees for the remaining six (6) credit hours needed for Plaintiff to complete her Master's program. *[Id.]*

10.     On August 19, 2016, upon Plaintiff's and Roe's request for further review, IEC launched a re-investigation into the issue of whether Plaintiff's removal as first author was in retaliation for buffering the advances by Roe. To do so, it formed an Ad Hoc Committee and charged the committee to determine whether Plaintiff was inappropriately moved from first second author, and to assess whether there was a substantial technical reason for this decision. *[Filing No.  1-12, 1-13, 1-15].*

11.     After further investigation, on October 3, 2016, the Ad Hoc Committee, based upon the critical contributions to science generated to produce this journal, decided Plaintiff's removal from first author was justified.  *[Filing No. 1-13].*

12.     On October 7, 2016, IEC sent Plaintiff a letter with its decision, and found "based on the totality of the circumstances and the information obtained pursuant to this reinvestigation, the greater weight of the evidence shows Respondent had a legitimate, nondiscriminatory reason to list you as second author. As such, Respondent did not engage in retaliatory conduct against you." *[Filing No. 1-15].*

13.     On or about October 25 and November 1, 2016, Plaintiff met with Dr. Judy Walker, Interim Associate Vice Chancellor for Faculty Affairs, to discuss IEC's decision and next steps. *[Filing No. 1-17].*

14.     On November 4, 2016, Plaintiff sent an email to Dr. Walker and stated: "I really appreciate your time and efforts on this case. I think that I need more time for thinking about suggestions in our Tuesday (Nov 1st) meeting." *[Filing No. 1-18].*

15.     On November 7, 2016, Dr. Walker sent an email to Plaintiff and stated:

> When we met on Tuesday, November 1 you indicated that you wanted to rethink whether requesting a formal hearing was in your best interests in light of the possible outcomes we discussed. As we discussed then, in fairness to all parties, this issue must be resolved in a timely manner. We agreed that you would confirm by Friday, November 4 whether you wanted to request a hearing, and that in the absence of such a confirmation no hearing would occur. Your message below does not have that confirmation and so this matter is closed.

*[Id.]*

16.     After four months, on March 7, 2017, Plaintiff contacted Strickman and stated: "I needed to talk to you for some issues. I think based on our agreement, [John Roe] was supposed to not be in contact with me. But in the past weeks, he has started again to communicate saying Hello with smile to me and expecting to answer and disturbing looks. As I feel really disturbed and unsafe because of this, I wanted to report this to you and ask for your help on it. Thanks for your time." *[Filing No. 1-19]*.

17.     On the same day, Strickman replied to the email and asked: "Would you like to go over additional safety planning with investigator Fischer?" *[Filing No. 1-20]*.

18.     According to the Plaintiff, Strickman told Plaintiff she would talk to John Roe. *[Filing No. 13 ¶ 62]*.  No further communication between Plaintiff and Roe was reported to IEC until September 27, 2017, **after** Plaintiff had left the University of Nebraska—Lincoln. Particularly, Plaintiff reported to Strickman that on September 25, 2017, Plaintiff received an email from Roe (along with other recipients) stating: "Thanks [name redacted] for looking into this." *[Filing No. 1-22, 1-23]*.

### III.    STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient, factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic. v. Twombly, 550 U.S. 544, 556 (2007)). A pleading that states a claim for relief must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). ". . . a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

"While a plaintiff need not set forth detailed factual allegations, or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." Warmington v. Bd. of Regents of Univ. of Minnesota, 998 F.3d 789, 795–96 (8th Cir. 2021) (quotation and citation omitted). Therefore, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Under the current pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the ***court to draw a reasonable inference*** that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (emphasis added). Thus, the court, in examining a motion to dismiss, must determine whether the Plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the Complaint to be true. Twombly, 550 U.S. at 558. In other words, although it is not required to contain specific facts establishing a *prima facie* case, it is not enough for a complaint to merely announce its ultimate conclusion or to affix such conclusion to a set of insufficient facts. Rather, a complaint must make a threshold showing with sufficient facts to "state a claim upon which relief can be granted." See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 122 S. Ct. 992, 994 (2002). If not, the complaint should be dismissed.

For purposes of a Rule 12(b)(6) motion, the Court's inquiry is generally "limited to whether the challenged pleadings sets forth sufficient allegations to make out the elements of a right to relief." Stube v. Pfizer Inc., 446 F. Supp. 3d 424, 431 (W.D. Ark. 2020) (citing Peck v. Hoff, 660 F.2d 371, 374 (8th Cir. 1981)). "In deciding Rule 12(b)(6) motions, courts are not strictly limited to the four corners of complaints". Outdoor Cent., Inc. v. GreatLodge.com, Inc., 643 F.3d 1115, 1120 (8th Cir. 2011), as corrected (Aug. 4, 2011). "Courts must accept ... specific factual allegations as true but are not required to accept ...

legal conclusions." Id. (citations omitted). Accordingly, when considering a motion to dismiss, "the Court must ordinarily confine its analysis to the four corners of the complaint and ignore all materials outside the pleadings". Id. (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, the Court may consider "some materials that are part of the public record or do not contradict the complaint ... *as well as materials that are necessarily embraced by the pleadings*." Id. (citation omitted).

Furthermore, the Eighth Circuit, in Brown v. Medtronic, Inc., recognized that, although the court must "accept as true a plaintiff's factual allegations for the purpose of analyzing a motion to dismiss pursuant to Rule 12(b)(6) [as the] plaintiff is the master of his own complaint, the Court is not required, even at this preliminary stage, to draw unreasonable inferences from documents the plaintiff makes a part of the complaint. [W]e also are not required to accept as plausible wholly unrealistic assertions...." 628 F.3d 451, 461 (8th Cir. 2010).

Therefore, this Court, although it may consider the materials embraced by the pleadings, including the exhibits, it is not required to accept the unreasonable inferences Plaintiff makes from these materials. Nor is this Court required to accept as true the legal conclusions contained in the Second Amended Complaint.

Applying this legal standard, the Plaintiff's causes of action alleging Title IX violations and constitutional violations fail to state a plausible claim for relief against Defendants and must be dismissed.

## IV.   ARGUMENT

### A.   BRUN IS ENTITLED TO DISMISSAL OF PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION

#### 1.   PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION BASED ON ACTION OR INACTION THAT ACCRUED PRIOR TO FEBRUARY 28, 2017 ARE BARRED BY STATUTE OF LIMITATIONS, AND PLAINTIFF CANNOT RELY ON THESE ACTIONS OR INACTIONS THAT ACCRUED OUTSIDE THE STATUTORY TIME PERIOD TO SUPPORT HER TITLE IX CLAIMS

In the First and Second Causes of Action, Plaintiff alleges BRUN engaged in acts of deliberate indifference and retaliated against Plaintiff **on or after** Plaintiff reported Roe's ongoing sexual harassment and retaliation to IEC on March 7, 2017 (collectively referred to as "Title IX Claims").

As a threshold matter, alleged University actions or inactions related to Plaintiff's report made on June 21, 2016 and resolved after investigation and re-reinvestigation by November 7, 2016 cannot be relied upon as basis for Plaintiff's Title IX Claims because the statute of limitations to file a lawsuit against BRUN for any Title IX violation pursuant to those facts lapsed on November 7, 2020.

Title IX does not have an express statute of limitations period within the statutory or regulatory language. Instead, Title IX claims are "governed by the state's personal injury statute of limitations." Maher v. Iowa State Univ., 915 F.3d 1210, 1212 n.3 (8th Cir.), cert. denied, 139 S. Ct. 2763 (2019) (quoting Walker v. Barrett, 650 F.3d 1198, 1205 (8th Cir. 2011). Nebraska imposes a four-year statute of limitations for personal injury claims. NEB. REV. STAT. § 25-207.

Plaintiff filed this action on February 28, 2021. As such, it is evident from the face of the Complaint, that any and all alleged acts of harassment or discrimination and subsequent deliberate indifference or retaliation by BRUN—which there was none—that accrued prior to February 28, 2017, are barred by the applicable statute of limitations, and Plaintiff is not allowed to rely on acts that accrued outside the statutory time period. If a "complaint on its face shows that the cause of action is time barred, the plaintiff must allege facts to avoid the bar of the statute of limitations." Anthony K. v. Nebraska Dep't of Health & Hum. Servs., 289 Neb. 540, 552, 855 N.W.2d 788, 798 (2014) (citation omitted).

Title IX claims accrue when a plaintiff knows or should know of the alleged deliberately indifferent or retaliatory act, "not upon the time at which the consequences of

the acts become most painful." See Samuelson v. Oregon State Univ., 162 F. Supp. 3d 1123, 1134 (D. Or. 2016) (quotation and citation omitted). See also Stanley v. Trustees of California State Univ., 433 F.3d 1129, 1136 (9th Cir. 2006) (holding same).

In this case, Plaintiff knew or should have known of the alleged deliberate indifference or retaliatory acts—for the acts related to the investigation and re-investigation of Plaintiff's report of June 21, 2016—at the latest by November 7, 2016, when Dr. Walker closed the case. Therefore, any Title IX Claims based on acts that accrued prior to November 7, 2016 expired on November 7, 2020, and cannot be used as a basis for Plaintiff's Title IX claims.

Wherefore, BRUN respectfully asks that this Court not consider any alleged actions or inactions outside of the statute of limitations—i.e., prior to February 28, 2017—when this Court analyzes Plaintiff's Title IX Claims. Moreover, BRUN respectfully asks this Court to strike or dismiss all claims based on actions or inactions that accrued prior to February 28, 2017.

### 2. MOREOVER, PLAINTIFF'S ALLEGED TITLE IX VIOLATION THAT ACCRUED AFTER PLAINTIFF WITHDREW FROM THE UNIVERSITY OF NEBRASKA SHOULD BE DISMISSED FOR LACK OF STANDING

Furthermore, to the extent Plaintiff claims that her Title IX claims are based on the alleged harassment or discrimination of September 25, 2017, and her emails of September 27 and 28, 2017, Plaintiff does not have standing to pursue such claims because she was a non-student and had not been subjected to discrimination under an education program or activity at the University of Nebraska—Lincoln. Non-students "do not have a personal claim under Title IX" or a "standing to bring a Title IX sex discrimination claim," "because they have not been subjected to discrimination under an education program or activity." Rossley v. Drake Univ., 336 F. Supp. 3d 959, 965 (S.D. Iowa 2018), aff'd, 958 F.3d 679 (8th Cir. 2020) (quotation and citation omitted). See also K. T. v. Culver-Stockton Coll., No. 4:16-CV-165 CAS, 2016 WL 4243965, at *6 (E.D. Mo. Aug. 11, 2016), aff'd, 865 F.3d 1054 (8th Cir.

2017) (concluding a plaintiff, a non-student, lacks standing to bring a Title IX claim); Doe v. Brown Univ., 270 F. Supp. 3d 556 (D.R.I. 2017), aff'd, 896 F.3d 127 (1st Cir. 2018) (holding a non-student of university, who was sexually assaulted by university student on university campus, failed to allege that she was denied equal access to education and, thus, did not state claim under Title IX against university).

Accordingly, as a non-student during the relevant period, Plaintiff does not have standing to bring a Title IX claim against BRUN based on the alleged harassment/discrimination on September 25, 2017, where she was included as a recipient on one of Roe's emails where he was responding to an email that already included Plaintiff as a recipient.

Wherefore, Defendant respectfully asks this Court to dismiss any Title IX claims based on alleged harassment/discrimination on September 25, 2017.

### 3. PLAINTIFF'S FIRST CAUSE OF ACTION, TITLE IX DELIBERATE INDIFFERENCE CLAIM, SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Subject to certain exceptions not applicable in this case, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To be entitled to damages in an implied private right of action under Title IX, a Plaintiff must establish:

(1) She was subjected to sexual harassment or discrimination that was so severe, pervasive and objectively offensive that it effectively bars access to an equal opportunity education;

(2) BRUN is a recipient of a Federal financial assistance;

(3) An "appropriate person" must have actual knowledge of the harassment or discrimination the plaintiff alleges occurred; and

(4) Despite such knowledge, the person with authority was deliberately indifferent to known acts of harassment in its program or activities, which occur under its control.

See KD v. Douglas Cty. Sch. Dist. No. 001, 1 F.4th 591, 598 (8th Cir. 2021) and K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1057 (8th Cir. 2017). See also Davis Next Friend

LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999) ("Davis") and Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290–91 (1998)).

Plaintiff has failed to allege sufficient facts to establish each of the above elements, except for the fact that BRUN was and is a recipient of Federal financial assistance.

**First**, Plaintiff has failed to allege she was subjected to sexual harassment or discrimination that was so severe, pervasive and objectively offensive within the statutory period. As stated above, Title IX makes it unlawful to discriminate on the basis of sex. "Harassment can constitute discrimination if it is 'so ***severe, pervasive, and objectively offensive*** that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" Wolfe v. Fayetteville, Arkansas Sch. Dist., 648 F.3d 860, 864 (8th Cir. 2011) (emphasis added). See also Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629 (1999) ("Plaintiff must show harassment that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victims are effectively denied equal access to an institution's resources and opportunities."); Shank v. Carleton College, 993 F.3d 567, 573 (8th Cir. 2021). In other words, the behavior must "***be serious enough to have the systemic effect*** of denying the victim equal access to an educational program or activity.").

In this case, Plaintiff has failed to put forth sufficient facts to show she suffered sexual harassment or discrimination within the statutory period that was so severe, pervasive and objectively offensive. In addition, her conclusory and unsubstantiated allegation that she was subjected to harassment does not amount to sufficient facts that is required to survive a motion to dismiss.

In Wolfe, the Eighth Circuit agreed it is appropriate to look to Title VII cases for guidance in evaluating Title IX claims. 648 F.3d at 866 n*4. Under a similar, but more complainant friendly legal framework—where a showing of severe, pervasive ***or*** (not "and," as is required under Title IX) offensive conduct is required—the Eighth Circuit has rejected

numerous harassment claims with facts far more egregious than alleged here. See e.g., McMiller v. Metro, 738 F.3d 185, 188-89 (8th Cir. 2013); Anderson v. Family Dollar Stores of Arkansas, Inc., 579 F.3d 858 (8th Cir. 2009); and Duncan v. General Motors Corp., 300 F.3d 928 (8th Cir. 2002).

Particularly, conduct of Roe that Plaintiff alleges occurred within the statutory period are: (1) Roe said "[h]ello to Plaintiff and stare[d], smile[d], and sneer[ed] at Plaintiff when he saw her" and (2) Roe responded to an email that already included Plaintiff as one of the recipients stating "Thanks [name redacted] for looking into this." These alleged conducts are not sufficient to show actionable sexual harassment or discrimination under Title IX.

**Second**, assuming only for purposes of argument that Plaintiff has pled sufficient facts to show that she suffered harassment/discrimination actionable under Title IX, Plaintiff has failed to allege she provided actual knowledge or notice of harassing/discriminatory conduct to a school official to address the complained-of-conduct.

As the Eighth Circuit explained in an opinion published on June 16, 2021:

> The actual notice standard is quite onerous, and favoritism towards the student; inordinate time spent with the student; unprofessional conduct towards the student; and vague complaints about the teacher's behavior toward the student (which do not *expressly* allege sexual abuse of that student) fall short of creating actual notice. See, e.g., Gebser, 524 U.S. at 291, 118 S.Ct. 1989 (finding that "a complaint from parents of other students charging only that [the teacher] had made inappropriate comments during class ... was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student"); Flaherty, 623 F.3d at 585 (finding that "inappropriate" and "suggestive" text messages could not impute actual notice because the messages "did not go so far as to suggest actual sexual conduct or sexual abuse"); P.H., 265 F.3d at 659 (explaining that without reports of sexual contact or suspected sexual contact between teacher and student, the teacher's "conduct of spending too much time with [the student] causing [the student] to be absent from or tardy to classes" did not establish actual notice of ongoing sexual abuse).

KD v. Douglas Cty. Sch. Dist. No. 001, 1 F.4th 591, 598 (8th Cir. 2021).

Similarly in this case, Plaintiff's March 7, 2018 email to Strickman stating Roe "started again to communicate with saying Hello with smile to me and expecting to answer

14

and disturbing looks" and the September 17 and 18 emails to Strickman forwarding Roe's email which thanked another recipient of the email, without an express allegation Roe was sexually abusing Plaintiff, fall short of creating actual notice.

**Third**, to the extent this Court holds the alleged behavior to which BRUN was notified on March 7, 2017 is actionable Title IX harassment or discrimination, Plaintiff fails to allege facts that show BRUN was deliberately indifferent. To the contrary, Plaintiff's allegations show that BRUN took the appropriate remedial action.

In Davis, the Supreme Court explained the element of deliberate indifference as follows:

> We stress that our conclusion here—that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment—does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action….In fact, as we have previously noted, courts should refrain from second-guessing the disciplinary decisions made by school administrators….School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is ***clearly unreasonable in light of the known circumstances***….the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable. This is not a mere "reasonableness" standard, as the dissent assumes….In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not "clearly unreasonable" as a matter of law.

Davis, 526 U.S. at 648–49 (1999). Deliberate indifference involves a situation where a school "turn[s] a blind eye and doe[es] nothing." Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610 (8th Cir. 1999).

In this case, BRUN, through Strickman, immediately responded to the March 7 email and asked if Plaintiff wanted to go through a safety plan, and thereafter, Strickman notified Plaintiff she would talk to Roe to stop these behaviors. No further complaints were submitted by Plaintiff to BRUN relating to Roe for the remainder of her time at the University of Nebraska.

**4.    PLAINTIFF'S SECOND CAUSE OF ACTION, RETALIATION, AGAINST BRUN SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

Plaintiff's Second Cause of Action alleges she was retaliated against by BRUN after her March 7, 2017 email.

Generally, "when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 167–68, (2005). To establish a retaliation claim against BRUN, Plaintiff must first establish a *prima facie* case of retaliation that (1) Plaintiff engaged in a protected activity; (2) there was a subsequent adverse action by BRUN; and (3) the adverse action was causally connected to the protected activity. Rossley v. Drake Univ., 336 F. Supp. 3d 959, 964 (S.D. Iowa 2018), aff'd, 958 F.3d 679 (8th Cir. 2020) ("[In a] Title IX retaliation, plaintiff must allege facts showing [s]he was either an employee or ***was otherwise excluded from participation in, denied the benefits of, or subjected to discrimination under an education program or activity***.").

Plaintiff's claim of retaliation is puzzling. There are insufficient facts—if any—that show Plaintiff was retaliated against by BRUN after she sent her email dated March 7, 2017. There is no allegation that shows that BRUN—during her educational career at the University of Nebraska—denied the benefits of an educational program or activity, including after it became aware of her allegations of sexual harassment. Accordingly, the dismissal of Plaintiff's Title IX claim of retaliation is warranted.

**B.    BRUN AND STRICKMAN ARE ENTITLED TO DISMISSAL OF PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION**

**1.    PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION AGAINST BRUN SHOULD BE DISMISSED IN THEIR ENTIRETY BECAUSE BRUN IS ENTITLED TO SOVEREIGN IMMUNITY**

16

BRUN is entitled to sovereign immunity on Plaintiff's Third and Fourth Causes of Action, which are § 1983 claims for denial of due process and equal protection clause under the Fifth and Fourteenth Amendment—is in part asserted against BRUN, a state agency.

The U.S. Supreme Court and the Eighth Circuit Court have held state entities enjoy sovereign immunity—the privilege of the sovereign not to be sued without its consent—under the Eleventh Amendment and general state sovereign immunity for any kind of relief. See Allen v. Cooper, 140 S. Ct. 994, 1000 (2020) (holding "a federal court generally may not hear a suit brought by any person against a nonconsenting State," pursuant to the Eleventh Amendment immunity and the broader principles of sovereign immunity); Church v. Missouri, 913 F.3d 736, 742 (8th Cir. 2019) (holding states enjoy Eleventh Amendment immunity and broader state sovereign immunity); and Monroe v. Arkansas State Univ., 495 F.3d 591, 594 (8th Cir. 2007) (holding the eleventh amendment bars suit against the state agencies for any kind of relief, not merely monetary damages).

Accordingly, BRUN and the University, state agencies, are entitled to state sovereign immunity under the Eleventh Amendment to the U.S. Constitution and the Nebraska Constitution for any kind of relief. Doe v. Bd. of Regents of Univ. of Nebraska, 280 Neb. 492, 510, 788 N.W.2d 264, 281 (2010), overruled on other grounds by Davis v. State, 297 Neb. 955, 902 N.W.2d 165 (2017). See also Doe v. Univ. of Nebraska, 451 F. Supp. 3d 1062, 1101 (D. Neb. 2020) (holding BRUN and the University are entitled to sovereign immunity).

**2.   PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION FOR ACTION OR INACTION THAT ACCRUED PRIOR TO FEBRUARY 28, 2017 ARE BARRED BY STATUTE OF LIMITATIONS AND PLAINTIFF CANNOT RELY ON THESE ACTIONS OR INACTIONS THAT ACCRUED OUTSIDE OF THE STATUTORY PERIOD**

Plaintiff's Third and Fourth Causes of Action are 1983 claim for denial of due process and equal protection under the Fifth and Fourteenth Amendment is in part asserted against BRUN and Tami Strickman, in her individual capacity.

17

"[I]n Nebraska, § 1983 claims are subject to the four-year statute of limitations in NEB. REV. STAT. § 25-207." Anthony K. v. Nebraska Dep't of Health & Hum. Servs., 289 Neb. 540, 552, 855 N.W.2d 788, 798 (2014). See also Rassier v. Sanner, 996 F.3d 832, 836 (8th Cir. 2021) ("Section 1983 does not contain a statute of limitations; instead, courts apply the state statute of limitations for personal-injury torts.").

"When a section 1983 claim accrues 'is a question of federal law.'" Rassier v. Sanner, 996 F.3d at 836 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007). A claim accrues when "the plaintiff has a complete and present cause of action," or when the "plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (quoting Wallace, 549 U.S. at 388). "The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace, 549 U.S. at 391 (citation and quotation omitted). "In other words, accrual occurs when 'the plaintiff can file suit and obtain relief.'" Rassier, 996 F.3d at 836 (quoting Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California, 522 U.S. 192, 201 (1997).

To state a cause of action under Section 1983, "a plaintiff must allege facts establishing conduct by a person acting under color of state law which deprived the plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States." Anthony K. v. Nebraska Dep't of Health & Hum. Servs., 289 Neb. 540, 553–54 (2014). "Therefore, a § 1983 claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated." Id. (citation and quotation marks omitted).

In the instant case, Plaintiff's specific allegations of when or how Strickman acted in a manner that she violated Plaintiff's rights is in part related to Stickman's response to Plaintiff's report of June 21, 2016, investigation and re-investigation of that report and the subsequent outcome, all of which accrued latest by November 7, 2016. Accordingly, Plaintiff's Section 1983 claims to the extent it is based on actions or inactions outside of the

statutory period are time barred and cannot be used as a basis or in support of Plaintiff's Section 1983 claims.

Wherefore, BRUN respectfully asks this Court to not use any of the acts that fall outside of the statute of limitations—i.e., occurred prior to February 28, 2017—when this Court analyzes Plaintiff's Section 1983 claims. Moreover, BRUN respectfully asks this Court to dismiss or strike all claims based upon acts that accrued prior to February 28, 2017.

### 3.   PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION AGAINST TAMI STRICKMAN SHOULD BE DISMISSED BECAUSE SHE IS ENTITLED TO QUALIFIED IMMUNITY

Plaintiff's Third and Fourth Causes of Action are 1983 claims for denial of due process and equal protection under the Fifth and Fourteenth Amendment is in part asserted against Tami Strickman, in her individual capacity. As it relates to the third cause of action, it is not clear whether Plaintiff is alleging both substantive and procedural due process. For purposes of this motion, BRUN assumes Plaintiff did assert both substantive and procedural due process and seeks to dismiss both.

As an initial matter, Plaintiff's claim under the Fifth Amendment should be dismissed outright because the Fifth Amendment applies to actions of the federal government, but not local governments or officials such as Strickman.  See Livers v. Schenck, 700 F.3d 340, 351 (8th Cir. 2012).   Therefore, because Strickman was not a federal employee during the relevant period, Plaintiff's due process claims should be analyzed only under the Fourteenth Amendment.  But even if Plaintiff's claims were analyzed under the Fifth Amendment, they would still fail for the same reasons discussed herein.

In general, for a successful §1983 claim, Plaintiff must show (1) the Defendants acted under color of state law, and (2) that the alleged wrongful conduct deprived the Plaintiff of a constitutionally protected federal right. Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009). Section 1983 "is not itself a source of substantive rights", but provides "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144, n.

3, 99 S.Ct. 2689, 2694, n.3 (1979). The first step in any such claim is to identify the specific constitutional rights allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271 (1994).

Strickman is a "person" under 42 U.S.C. § 1983 when sued in their individual capacity. Hafer v. Melo, 502 U.S. 21, 27 (1991). Individual "persons" have a defense to actions under § 1983 that governments do not—qualified immunity. Owen v. City of Independence, Mo., 445 U.S. 622, 638 (1980). The doctrine of qualified immunity "is in part an entitlement not to be forced to litigate the consequences of official conduct." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1945-46 (2009); Mitchell v. Forsyth, 472 U.S. 511, 527 (1985). Qualified immunity shields state actors sued in their individual capacities acting pursuant to discretionary authority "insofar as their conduct does not violate **clearly established statutory or constitutional rights** of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982) (emphasis added).

To determine whether the doctrine of qualified immunity applies to a particular case, the Court considers: (1) whether there is a violation of a constitutional right; and (2) whether such right was clearly established in the **specific context of the case at issue**. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (emphasis added); Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010). The Court may address these questions in either order. Williams, 600 F.3d at 1012 (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). It is not enough that a right be established in an abstract sense; rather "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wagner v. Jones, 664 F.3d 259, 273 (8th Cir. 2011).

The question of whether the Plaintiff has sufficiently alleged a violation of a clearly established right is a question of law, see Siegert v. Gilley, 500 U.S. at 232, and should be decided at the earliest possible stage of the litigation, see Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011), making this motion particularly appropriate at this juncture.

20

In this case, there was no violation of a constitutional right, nor was there a right that was clearly established in the specific context of the case at issue.

4.   **PLAINTIFF'S SECTION 1983 PROCEDURAL DUE PROCESS CLAIM AGAINST STRICKMAN MUST BE DISMISSED**

"[A] § 1983 procedural due process claim depends on: (1) whether the state actor's decision impacted a protected liberty or property interest, and if so (2) what process/procedure was constitutionally 'due' before depriving individuals of certain property, liberty or property interests." Kroupa v. Nielsen, 731 F.3d 813, 818 (8th Cir. 2013) (quoting Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976)).

**First**, Plaintiff does not have a protected liberty or property interest in secondary education. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).   Thus, "constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." Hulen v. Yates, 322 F.3d 1229, 1240 (10th Cir. 2003) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)). Contrary to Plaintiff's unsubstantiated allegation that her property interest in education was violated, the law does not clearly recognize that a university graduate student has a constitutionally protected right in continuing his or her academic program.

Neither the Supreme Court nor the Eighth Circuit has **ever** expressly recognized the existence of such a right—protected liberty or property interest in continuing in a graduate program. The U.S. Supreme Court has assumed, *without deciding*, that a graduate student has a constitutionally protected liberty or property interest in continuing in a graduate program at a public university. Doe v. Univ. of Nebraska, 451 F. Supp. 3d 1062, 1108 (D. Neb. 2020) (citing Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 222, 106 S. Ct. 507, 511, 88 L. Ed. 2d 523 (1985)). See also Bd. of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 81 (1978). "Following the Supreme Court's lead, [the Eighth Circuit has] repeatedly

21

assumed without deciding that an academic dismissal may be challenged on substantive due process grounds but upheld the summary rejection of those claims, applying the Supreme Court's deferential standard." Doe, 451 F. Supp. 3d at 1108 (quoting Keefe v. Adams, 840 F.3d 523, 533 (8th Cir. 2016). See e.g. Monroe v. Ark. State Univ., 495 F.3d 591, 594-97 (8th Cir. 2007) and Richmond v. Fowlkes, 228 N.W.3d 854, 859 (8th Cir. 2000). Further, at the state level, the Nebraska Supreme Court called into doubt whether an individual has a protected liberty or property interest in postsecondary education, and noted that the U.S. Supreme Court "has not held that postsecondary education rises to a fundamental right." Doe v. Bd. of Regents of Univ. of Nebraska, 280 Neb. 492, 530, 788 N.W.2d 264, 293 (2010), overruled on other grounds by Davis v. State, 297 Neb. 955, 902 N.W.2d 165 (2017)).

The U.S. District Court for the District of Nebraska confronted this same question in a lawsuit where a plaintiff, a former post-secondary student at the University of Nebraska—Lincoln, asserted among other causes of actions, a section 1983 procedural and substantive due process claim against employees of the University of Nebraska in their individual capacities. Doe, 451 F. Supp. 3d at 1108. In that case, the court held:

> Neither the Supreme Court nor the Eighth Circuit has clearly established that continued enrollment in a post-secondary education program is a property or liberty interest protected by the Fourteenth Amendment's guarantee of substantive due process, and Plaintiff has not identified "a robust consensus of cases of persuasive authority" in support of his substantive due process claim. Plaintiff has also failed to demonstrate that he has a state-created property right that could give rise to a substantive due process claim. The individual Defendants are therefore entitled to qualified immunity.

Doe, 451 F. Supp. 3d at 1110. See also Doe v. Purdue Univ., 928 F.3d 652, 659 (7th Cir. 2019) (holding a college education is "not a 'property' in the usual sense of a word," and "rejected the proposition that an individual has a stand-alone property interest in an education at a state university, including a graduate education."); The Due Process Clause and Students: The Road to A Single Approach of Determining Property Interests in Education, 65 U. Kan. L. Rev. 651, 652 (2017) (stating the majority of the circuits—the

Second, Third, Fourth, Seventh, Ninth and Eleventh Circuits—make a state-specific inquiry to determine whether a property interest exists).

Similarly in this case, the Plaintiff has not alleged and cannot demonstrate that she has protected liberty or property interests in postsecondary education.

Most importantly, for purposes of qualified immunity doctrine, the presence of at least one ruling on this issue from a U.S. District Court of the District of Nebraska holding that postsecondary education is not a property or liberty interest protected by the Fourteenth Amendment's guarantee of substantive due process and the absence of any ruling from the Eighth Circuit or U.S. Supreme Court on the issue is the opposite of clearly established constitutional right. Accordingly, because Plaintiff cannot demonstrate a violation of a clearly established constitutional right, Stickman is entitled to judgment in her favor on the due process claim brought against her.

**Second,** assuming for purposes of argument that Plaintiff does have a protected liberty or property interest in continued education, there was no decision by Strickman that impacted Plaintiff's protected liberty or property interest in continued education. Strickman did investigate Plaintiff's report of June of 2016. She removed Roe as Plaintiff's supervisor and assigned Plaintiff another advisor, and she issued a no-contact directive. Ultimately, Strickman found Roe violated BRUN policy as it relates to sexual misconduct, but found that the removal of Plaintiff as first author was not retaliatory. Based on her findings, Strickman directed the graduate school to cover tuition and fees for the remaining six credit hours needed for Plaintiff to complete her program.

When Plaintiff complained of the outcome, Stickman formed an Ad Hoc Committee to determine whether Plaintiff was inappropriately removed from first author and to assess whether there was a substantial technical reason for this decision. The Ad Hoc Committee decided there were substantial technical reasons for this decision to remove Plaintiff from

23

first to second author, and based on that, Strickman issued a letter dismissing the retaliation claim.

Thereafter, when Strickman received the March 7 email from Plaintiff, she emailed back the same day and asked whether Plaintiff wanted to go through additional safety planning. And, according to Plaintiff, Strickman told Plaintiff she would talk to John Roe.

Accordingly, Plaintiff failed to sufficiently allege which decision of Strickman impacted her alleged protected interest in secondary education.

**Third**, to the extent there was a decision by Stickman that impacted some abstract protected liberty or property interest, there is no law that outlines what is clear and established procedure due to Plaintiff under the alleged circumstances.

### 5. PLAINTIFF'S THIRD CAUSE OF ACTION, SUBSTANTIVE DUE PROCESS CLAIM AGAINST STRICKMAN MUST BE DISMISSED

As a threshold matter, "as with procedural due process, the possession of a protected life, liberty, or property interest is a condition precedent to a substantive-due-process claim." Harrington v. City of Omaha, No. 8:20-CV-412, 2021 WL 2321757, at *22 (D. Neb. June 7, 2021) (Mulvenon v. Greenwood, 643 F.3d 653, 659 (8th Cir. 2011)). Accordingly, for the same reason as thoroughly discussed above, Plaintiff has failed to allege a violation of a protected life, liberty or property interest.

Assuming *arguendo* that Plaintiff has alleged the violation of a protected interest, Plaintiff fails to state a plausible substantive due process claim against Strickman. "To state a plausible substantive-due-process claim, [a plaintiff] must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than … arbitrary, capricious, or in violation of state law.'" Harrington, 2021 WL 2321757, at *22 (quoting Young v. City of St. Charles, 244 F.3d 623, 628 (8th Cir. 2001); Anderson v. Douglas Cnty., 4 F.3d 574, 577 (8th Cir. 1993). "Sufficiently outrageous or truly irrational is a high standard." Harrington, 2021 WL 2321757, at *22 (citing Christiansen v. West Branch Cmty. Sch. Dist., 674 F.3d 927, 937 (8th Cir. 2012). To find a government action sufficiently

24

outrageous requires "violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." Harrington, 2021 WL 2321757, at *22; (citing Christiansen, 674 F.3d at 937-38; C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. 347, 591 F.3d 624, 634 (8th Cir. 2010)).

The facts alleged by Plaintiff are not sufficient to indicate it would meet this onerous standard required to show a violation of substantive due process. In fact, the facts alleged show the opposite—that Plaintiff's report was taken seriously, investigated appropriately and the outcome properly enforced.

Therefore, Strickman respectfully requests this Court dismiss Plaintiff's Third Cause of Action.

### 6.   PLAINTIFF'S FOURTH CAUSE OF ACTION, EQUAL PROTECTION CLAIM MUST BE DISMISSED

The Equal Protection Clause is a section of the Fourteenth Amendment to the U.S. Constitution that provides "no state shall...deny to any citizen within its jurisdiction the equal protection of the laws." "The purpose of the equal protection clause ... is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Robbins v. Becker, 794 F.3d 988, 995 (8th Cir. 2015).

Plaintiff asserts a "disparate impact" gender-based claim under the Equal Protection Clause, class-of-one theory. *[See Filing No. 13, ¶ 126, 128 and 129].*  To successfully assert such a claim, Plaintiff must, as a threshold matter, show she was treated differently by a state actor than others who are similarly situated simply because plaintiff belongs to the particular protected class. See Robbins, 794 F.3d at 996.  "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material

respects." Id. (quotation and citation omitted). Absent a threshold showing that she is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim. Id. See also Harrington, No. 8:20-CV-412, 2021 WL 2321757, at *18 (holding same); Bills v. Dahm, 32 F.3d 333, 335 (8th Cir. 1994) (explaining equal protection comparators must be similarly situated "in all relevant respects"); Nolan v. Thompson, 521 F.3d 983, 990 (8th Cir.2008) (quoting Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir.2004)) ("A class-of-one plaintiff must therefore 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a number of legitimate considerations.").

In the present case, Plaintiff's § 1983 claim fails given that Plaintiff has not stated—and cannot state—facts supporting an inference of gender discrimination under the Equal Protection Clause. The Second Amended Complaint does not contain "a short and plain statement of the claim showing the pleader is entitled to relief," and does not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Hager, 735 F.3d at 1014 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 512 (2002)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). While "legal conclusions can provide the framework of a complaint," they "must be supported by factual allegations that raise a right to relief above the speculative level." Hager, 735 F.3d at 1014 (quoting Iqbal, 556 U.S. at 679, and Twombly, 550 U.S. at 555).

Below are cases where Courts dismissed a § 1983 claim for gender discrimination under the Equal Protection Clause:

- Hager, 735 F.3d at 1014 - 1015: The Eighth Circuit reviewed the district court's denial of a motion to dismiss a § 1983 claim for gender discrimination under the Equal Protection Clause and held the plaintiff failed to allege any facts showing that similarly situated employees were treated differently or any discriminatory conduct before her termination. Concluding the district court

26

erred in denying the defendant's motion to dismiss, the Eighth Circuit reasoned, "[The plaintiff's] conclusory assertion that she was discharged under circumstances similarly situated men were not imports legal language couched as a factual allegation and fails to raise a right to relief above the speculative level." Id. (citing Twombly, 550 U.S. at 555). Because the plaintiff's conclusory legal assertions failed to give the defendant fair notice of the claim and the grounds upon which it rested, dismissal of the plaintiff's § 1983 claim was appropriate. Id.

- Perez v. Does 1-10, 931 F.3d 641, 646 (8th Cir. 2019): The Eighth Circuit concluded the district court did not err in dismissing section 1983 claims against the officer defendants, in part, because "Plaintiffs have not shown how Plaintiffs were treated differently from any similarly situated non-Hispanic residents."

- Harrington v. City of Omaha, No. 8:20-CV-412, 2021 WL 2321757, at *18 (D. Neb. June 7, 2021): The court held Plaintiffs "failed to allege sufficient facts "to establish that the prior tenant is similarly situated to Club 120 in all material respects including timeframe," and therefore, Plaintiffs fail to allege sufficient facts to state a plausible equal protection claim under the class-of-one theory.

- Harrington v. Strong, 363 F. Supp. 3d 984, 1007 (D. Neb. 2019): The Court granted a motion to dismiss for failure to state a claim on plaintiffs' class of one claim because the plaintiffs failed to allege with any degree of specificity the existence of similarly situated individuals from whom he is being treated differently.

Like the deficient pleadings in the above referenced cases, the conclusory legal assertions in Plaintiff's Second Amended Complaint fail to state a § 1983 claim against Strickman. Plaintiff does not allege facts indicating that when compared with other similarly situated individuals, she was treated differently by Strickman based on an impermissible consideration such as gender. Without such factual allegations, the Second Amended Complaint fails to give Strickman fair notice of the Plaintiff's claim and the grounds upon which it rests. Accordingly, Plaintiff's Second Cause of Action asserting a violation of the Equal Protection Clause against Strickman in her individual capacities should be dismissed.

Assuming *solely* for purposes of argument that Plaintiff did allege a similarly-situated individuals, Plaintiff's equal protection claim would still fail because Plaintiff's claim is based on discretionary decision-making by Strickman, a state-actor.   The Supreme Court "has declined to apply the principle against state action 'which by [its] nature involve[s] discretionary decision making based on a vast array of subjective, individualized

assessments.'" Novotny v. Tripp Cty., S.D., 664 F.3d 1173, 1179 (8th Cir. 2011) (quoting

Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008).

Accordingly, Strickman respectfully requests this Court dismisses Plaintiff's Fourth

Cause of Action.

<h2 style="text-align:center">V.    CONCLUSION</h2>

Defendants respectfully request that the Court grant its Motion to Dismiss and enter

an Order dismissing Plaintiff's causes of action against the Defendants in their entirety and

with prejudice, and to strike all claims that accrued prior to February 28, 2017.

Dated this 4th day of October, 2021.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA and TAMI
STRICKMAN, individually and in her
official capacity, Defendants

By:    /s/ Lily Amare
Susan K. Sapp #19121
Lily Amare #25735
Cline Williams Wright
  Johnson & Oldfather, L.L.P.
1900 U.S. Bank Building
233 South13th Street
Lincoln, NE 68508
(402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Associate General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
402-472-1201
bchambers@nebraska.edu

28

## CERTFICATE OF COMPLIANCE

I, Lily Amare, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Microsoft Word 2013 word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 9118 words.

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties who have entered an appearance in this case as well as electronically transmitted.

Karen Truszkowski
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
karen@temperancelegalgroup.com

Elizabeth K. Abdnour
ELIZABETH ABDNOUR LAW, PLLC
1146 S. Washington Ave., Ste. D7
Lansing, MI 48910
elizabeth@abdnour.com

/s/Lily /Amare
Lily Amare

4812-2070-9883, v. 10