## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

JANE DOE,

     Plaintiff,

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA; and
individuals TAMIKO STRICKMAN and
JOHN ROE, individually and in their official
capacities; and OTHER UNIDENTIFIED
DEFENDANTS;

     Defendants.

Case No. 4:21-cv-3049

Hon. John M. Gerrard

**PLAINTIFF'S BRIEF OPPOSING
DEFENDANTS' MOTION TO DISMISS
AND STRIKE**

Karen Truszkowski
Bar Number: P56929 (MI)
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
Phone: (844) 534-2560
Fax: (800) 531-6527
Email: karen@temperancelegalgroup.com

Elizabeth K. Abdnour
Bar Number: 0081795 (OH), P78208 (MI)
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Phone: (517) 292-0067
Fax: (517) 709-7700
Email: elizabeth@abdnour.com

*Attorneys for Plaintiff*

## I.    <u>INTRODUCTION</u>

This Complaint was brought by a female student who came to the University of Nebraska-Lincoln ("UNL") after immigrating to the United States to pursue a graduate degree, but was forced to abandon her studies after being subjected to repeated sexual harassment by her advisor. When she brought this matter to the attention of UNL's Title IX Office, they conducted an investigation explicitly finding that Plaintiff's advisor, Defendant Roe, sexually harassed her.

While Plaintiff was given a new advisor and UNL agreed to pay for her remaining tuition costs, Roe remained on campus, in the very building Plaintiff was expected to work and study in. Although the Title IX office issued a no-contact directive, Roe continued to harass Plaintiff. When this continued harassment was reported to UNL, the Title IX office failed to initiate an investigation or otherwise protect Plaintiff from her harasser. Plaintiff was forced to leave UNL to seek an education elsewhere because she no longer felt safe on campus. Her safety concerns were not only caused by Roe's sexual harassment, but also by the UNL Title IX office's failure to take meaningful steps to protect her.

The facts outlined in the Second Amended Complaint illustrate a Title IX system that entirely failed to protect Plaintiff. Defendants argue that each of the claims supported by these allegations should be dismissed. Plaintiff opposes Defendants' Motion to Dismiss and Strike pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and Local Rule NECivR 7.1(a). Defendants argue these claims should be dismissed because Plaintiffs have failed to state a claim.

Based on Defendants' arguments, Plaintiff consents to dismissing the Board of Regents as a Defendant in Counts III and IV and dismissing the Fifth Amendment Claim in Count III. With respect to the remainder of Plaintiff's claims, the Court should reject the Defendants' arguments because (i) Plaintiff's Title IX and Section 1983 claims were brought within the statutory limitation period and are not time-barred based on the continuing tort doctrine; (ii) Plaintiff has standing to bring claims based on the September 2017 emails based on the earlier Title IX investigation and her extensive relationship with UNL; (iii) Plaintiff has alleged sufficient facts to support claims for deliberate indifference and retaliation; (iv) Defendant Strickman is not entitled to qualified immunity; (v) Plaintiff has adequately stated a claim for a violation of her right to due process. Therefore, Defendants' Motion to Dismiss and Strike should be denied.

## II.      <u>BACKGROUND</u>

On February 28, 2021, Plaintiff filed this action against BRUN and Strickman, among others. Plaintiff filed a Second Amended Complaint on July 27, 2021. In response, Defendants filed a Motion to Dismiss and Strike pursuant to Fed. R. Civ. R. 12(b)(1), 12(b)(6), 12(f), and Local Rule NECivR 7.1(a).

## III.      <u>COUNTS III AND IV</u>

Plaintiff consents to the following:

- Dismiss the Board of Regents as a Defendant in Counts III and IV
- Dismiss the Fifth Amendment Claim in Count III

## IV.      <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss, a complaint must contain a "short a plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a probability requirement. *See Twombly*, 550 U..S. at 556. A complaint states a plausible claim for relief if its "factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores, Inc.*, 558 F.3d 585, 594 (8th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reading the alleged facts, "a court assumes all facts in the complaint to be true and construes all reasonably inferences most favorably to the complainant." *LSP Transmission Holdings, LLC v. Sieben*, 954 F..3d 1018 (8th Cir. 2020) (citing *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012)). Furthermore, "the complaint should be read as a whole, not parsed piece by piece to

3

determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

## V.   ARGUMENT

A.   Plaintiff's Title IX and Section 1983 Claims Were Brought Within the Statutory Limitation Period and Are Not Time-Barred Based on the Continuing Tort Doctrine

Title IX does not expressly provide a statute of limitations under which plaintiffs can bring claims, but instead incorporate the state's personal injury statute of limitations. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 617-18 (8th Cir. 1995). Nebraska's personal injury statute of limitations is four years. Neb. Rev. Stat. § 25-207. As stated by Defendants in their motion to dismiss, Title IX claims accrue when a plaintiff knows or should know of the alleged deliberately indifferent or retaliatory act. *Maher v. Iowa State Univ.*, No. 4:16-cv-570-HCA, 2018 U.S. Dist. LEXIS 88586 (S.D. Iowa Feb. 13, 2018) (citing *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017)).

Like Title IX, Section 1983 does not contain a statute of limitations and courts apply the statute of limitations for personal-injury torts. *Rassier v. Sanner*, 996 F.3d 832, 836 (8th Cir. 2021). Nebraska's personal injury statute of limitations is four years. Neb. Rev. Stat. § 25-207. A 1983 claim accrues when the plaintiff has a "complete and present cause of action." *Rassier*, 996 F.3d at 836 (quoting *Wallace v. Keto*, 549 U.S. 384, 388 (2007)). For the purposes of the statute of limitations, Section 1983 claims accrue "when the plaintiff knows or has reason to know of the injury which is the basis of [her] action." *Haltom v. Parks*, No. 8:15-CV-428, 2018 U.S. Dist. LEXIS 27615 at *6 (D. Neb. Feb. 21, 2018).

In the present case, Plaintiff's claims did not accrue until on or after March 7, 2017. It was on this day that Plaintiff filed a second report with Defendant Strickman due to ongoing harassment occurring in the hallways of the engineering building. Although Strickman responded to Plaintiff's report, and copied UNLPD Officer Fischer, neither the IEC nor UNLPD followed up with Plaintiff regarding the report. There is no evidence suggesting that a Title IX or police investigation followed. It was at this time, not on November 7, 2016, as suggested by Defendants, when Plaintiff's report of continued harassment went unanswered and uninvestigated, that she became fully aware of Defendants' deliberate indifference and realized her injury fully. Thus, applying the four-year statute of limitations, Plaintiff had until March 7, 2021 to bring claims for Defendants' violations of Title IX and Section 1983. As the action was filed on February 28, 2021, Plaintiff's claims fall within the statutory period.

Further, the acts that occurred prior to March 7, 2017, are not time-barred based on Nebraska's continuing-tort doctrine. It is settled law that "when an individual is subject to a continuing, cumulative pattern or tortious conduct, … the statute of limitations does not run until the date of the last injury…" *Alston v. Hormel Foods Corp*., 273 Neb. 422, 426 (2007). Thus, "when a tort is continuing, although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period." *Id*. Here, Plaintiff's injury began on June 21, 2016, when she filed her initial report of harassment. It was Defendant Strickman and the IEC's response to the report, as well as their lack of action to adequately protect Plaintiff, that form the basis for her Title IX claim, which culminated after her March 2017 report. Had the IEC responded appropriately to Plaintiff's initial report, she would not have been subjected to Roe's continued harassment, and she would not have needed to submit another report on March 7, 2017.

Therefore, Plaintiff's Title IX and Section 1983 claims are not time-barred and must not be dismissed by this Court.

B.  Plaintiff Has Standing to Bring Claims Based on the September 2017 Emails Based on the Earlier Title IX Investigation and her Extensive Relationship with UNL

      1.  *UNL's Jurisdiction to Investigate Claims of Sexual Harassment by Employees Extended to Non-Student Reports of Employee Conduct*

That Plaintiff was no longer a student at the time of Roe's September 2017 emails does not preclude her from bringing a claim based on this conduct. While the University's "Response to Allegations of Employee Sexual Misconduct" policy states that a formal complaint *may* be dismissed if the respondent is no longer a student, the policy also states that:

> The University's jurisdiction under the Procedures will continue to extend to conduct that occurs outside the context of the University employment or education program or activity where the Title IX Coordinator or their designee determines that action is necessary 1) in order to protect the health or safety of the University community, 2) there are effects of the conduct that interfere with a person's ability to participate in an education program or activity, including employment, 3) *if the conduct is related to an employee's performance or their capacity to perform their work responsibilities*, or 4) if the conduct occurs when the faculty or staff member is serving in the role of a University employee.

> University of Nebraska, *Procedures for Sexual Misconduct Reports against Employees*, 14, 10 (Aug. 14, 2020), https://nebraska.edu/-/media/unca/docs/offices-and-policies/policies/executive-memorandum/procedures-for-sexual-misconduct-reports-against-employees.pdf (emphasis added).

Here, it is true that Plaintiff was no longer a student in September 2017 when Roe sent her several emails. However, based on the University's own policy, it has jurisdiction over her claims because Roe's conduct was related to his performance of work responsibilities by emailing students regarding research being conducted at the University. Thus, while the University has

discretion to dismiss a complaint brought by a former student, their jurisdiction extends to the conduct at issue in the present case.

> ### 2. *Plaintiff's Previous Relationship with UNL and Title IX Complaint Give Her Standing to Pursue Claims Based on Roe's Conduct After She Left UNL*

Defendants cite *Rossley v. Drake Univ.*, 336 F. Supp. 3d 959 (S.D. Iowa 2018), to support the notion that Plaintiff lacks standing to bring a Title IX claim based on the September 2017 emails because she was not a UNL student at that time. However, *Rossley* is entirely distinguishable from the present case. In *Rossley*, the parent of an adult university student sued the university on the student's behalf under Title IX. 336 F. Supp. 3d at 962. In that case, the court stated that "parents lack standing to bring their own Title IX sex discrimination claims because they have not been subjected to discrimination under an education program or activity." *Id.* at 965. In doing so, the court rejected the "novel argument" that "any Title IX advocate" has a cause of action, "regardless of whether they are an employee, a student, or an individual who has been subjected to discrimination under an education program or activity." *Id.* at 966. Unlike the parent in *Rossley*, Plaintiff is not "any advocate." Rather, she is a former student who was subjected to harassment and discrimination *while attending* UNL as graduate student *and after she left* the program because of that discrimination.

*K.T. v. Culver-Stockton Coll.*, and *Doe v. Brown Univ.*, 270 F.Supp. 3d 556 (D.R.I. 2017), also cited by the Defendants, are likewise distinguishable. In *K.T.*, a prospective student was sexually assaulted by a student while visiting a university. 2016 U.S. Dist. LEXIS 106107 at *2. There, the District Court for the Eastern District of Missouri stated that the student lacked standing as a non-student, highlighting the "material difference between a student who is enrolled, taking classes, and remains on campus with an alleged harasser, and plaintiff, who alleges she only visited

the campus for a day or two." *Id.* at *14. The Plaintiff in the present case is not alleging a violation

of Title IX based on an incident that occurred as a visiting student, but after she left UNL, where

she was a full-time graduate student. Thus, Plaintiff is more like the student who is taking classes

with an alleged harasser than the plaintiff in *K.T.*, who spent mere hours on campus. Finally, in

*Doe*, a case out of the District Court of Rhode Island, a university student was sexually assaulted

on the campus of a university she did not attend. 270 F. Supp. 3d at 558. The court in that case

dismissed her Title IX claim for lack of standing because of the "total absence of a relationship"

between the plaintiff's school and the harasser's school. *Id.* at 562. Unlike in *Doe*, the Plaintiff in

the present case attended the school where her harasser taught (UNL) and continued to be subject

to harassment even after she was forced to leave. Thus, Doe's rationale is not persuasive here.

Based on Plaintiff's status as a previously enrolled student who had been subject to a

pattern of discrimination and harassment throughout her time at UNL (even after the IEC made a

finding that Roe had subjected her to sexual harassment in violation of Title IX), Plaintiff should

be permitted to pursue her claim based on the September 2017 emails.  However, even if this Court

finds that Plaintiff does not have standing to pursue claims based on the September 2017 emails,

she has standing to bring each claim based on Defendants' conduct while Plaintiff was enrolled as

a student at UNL.

C. <u>Plaintiff Has Alleged Sufficient Facts to Support Claims for Deliberate Indifference and
   Retaliation</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face" *Ashcroft*, 556 U.S. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.* A complaint states a plausible claim

8

for relief if its "factual content … allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Braden*, 588 F.3d at 593 (citing *Ashcroft*, 556 U.S. at 678). "A court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *LSP Transmission Holdings*, 954 F.3d at 1025 (citing *U.S. ex rel. Raynor*, 690 F.3d at 955). Further, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. In the present case, Plaintiff's Second Amended Complaint alleges sufficient facts to withstand a motion to dismiss on both the deliberate indifference and retaliation claims.

1. *The Complaint Alleges Sufficient Facts to Support Plaintiff's Claim for Deliberate Indifference*

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Where a plaintiff's Title IX claim is based on harassment, the school is liable where it is "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." *K.T. v. Culver-Stockton Coll.*, 865 F.3d at 1057 (quoting *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003)). *See also Shank v. Carleton Coll.*, 993 F.3d 567, 573 (8th Cir. 2021).

Defendants argue in the motion to dismiss that Plaintiff's Second Amended Complaint fails to allege sufficient facts to establish any of the elements required for a deliberate indifference claim. Plaintiff disagrees. Plaintiff's Second Amended Complaint provides sufficient facts to withstand a motion to dismiss on her deliberate indifference claim.

a. The Harassment Plaintiff Faced was Severe, Pervasive, and Objectively Offensive

Defendants argue that Plaiuntiff must also show that the discrimination must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access" to educational opportunities. *K.T.*, 865 F.3d at 1057 (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). To this point, the defense does not claim that Plaintiff has not alleged enough facts or that the facts she has alleged are not plausible. Rather, the defense is arguing how the law should be applied to the facts. For example, Defendant's motion acknowledges that Plaintiff has been subjected to sexual harassment or discrimination, but claims that it was not "severe, pervasive, or objectively offensive." Specifically, Defendants state that the Roe's alleged conduct is "not sufficient to show actionable sexual harassment or discrimination under Title IX." This is improper at the Motion to Dismiss stage of proceedings, where courts are to "assume[] all facts in the complaint to be true and construe[] all reasonable inferences most favorably to the complainant." *LSP Transmission Holdings*, 954 F.3d at 1025.

Further, this showing is required in the case of student-on-student harassment, as was the case in *K.T.*, but not in the context of teacher-on-student harassment, as is the case here. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (A school district may be held liable for damages under Title IX for the sexual harassment of a student by a teacher when the school has actual notice of and is deliberately indifferent to the harassment); *Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005) ("Because this case involves teacher-on-student harassment, [Plaintiffs] need not establish [the teacher's] conduct was 'so severe, pervasive, and objectively offensive' that it denied [Plaintiff] equal access to educational programs or opportunities."). Here, because

10

Plaintiff was harassed by a professor, she does not need to demonstrate that the harassment was "severe, pervasive, and objectively offensive."

To be sure, even if Plaintiff was required to make this showing, she has alleged facts illustrating that the discrimination was "severe, pervasive, and objectively offensive." Harassment is sufficiently severe or pervasive when it creates "an environment that a reasonable person would find hostile or abusive" and the victim herself "subjectively perceive[s] … to be abusive." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 696 (4th Cir. 2007) (quoting *Harris* v. *Forklift Sys.*, 510 U.S. 17, 21 (1993). When determining whether harassment is severe or pervasive, "all the circumstances are examined, including the positions and ages of the harasser and victim, whether the harassment was frequent, severe, humiliating, or physically threatening, and whether it effectively deprived the victim of educational opportunities or benefits." *Jennings*, 482 F.3d at 686.

Applying this standard, Plaintiff can easily meet the requirements for severity. First, Defendant Roe was in a position of significant authority over Plaintiff as her graduate research advisor. This power can be illustrated by the fact that he was able to demote her to second author on a research paper she was writing and prevented her from getting internships. Second, Roe is significantly older than Plaintiff. At the time of the harassment, Plaintiff was 26 years old and Roe was about 60 years old. The harassment was also frequent, with sexually suggestive texts and emails, as well as unwelcome physical contact occurring on multiple instances for months. The harassment was also physically threatening as Roe attempted to kiss Plaintiff on the mouth without her consent and kicked her legs multiple times. Finally, and most importantly, Plaintiff subjectively believed that Roe's behavior was abusive. Therefore, she reported the conduct to the UNL Title IX Office and Defendant Strickman on multiple occasions and eventually was forced to leave UNL out of fear.  The Defendants argue that the conduct at issue at the time of the second

11

report was not "egregious" enough. Br. in Supp. of Def's Mot. to Dismiss and Strike 14, ECF No. 19. Taken alone, this conduct may not rise to the level of severe harassment. However, taken together with all the surrounding circumstances and the level of harassment Plaintiff had already endured, it is entirely reasonable that she would perceive this as abusive.

To conclude, because Plaintiff was the victim of harassment perpetrated by a professor, she is not required to show that the harassment was "severe, pervasive, and objectively offensive." Even if this Court requires her to make this showing, she has alleged sufficient facts to do so.

b.   Defendants Had Actual Notice of the Harassment

Further, Defendants were actually aware of Roe's harassment of Plaintiff. The Defendants claim that because Plaintiff's March 2017 email report to Strickman did not contain an "express allegation Roe was sexually abusing Plaintiff," there was no actual notice. Defendants cite *K.D. vs. Douglas Cty. Sch. Dist. No. 001*, 1 F.4th 591 (8th Cir. 2021), where the 8th Circuit stated that "favoritism towards the student; inordinate time spent with the student; unprofessional conduct towards the student; and vague comments about the teacher's behavior toward the student" do not create actual knowledge. 1 F.4th at 598. This argument is misguided for several reasons. First, Plaintiff has been able to establish actual knowledge based on 8th Circuit precedent. Second, the harassment Plaintiff endured goes well beyond the examples provided in *K.D.*

First, to establish actual knowledge, a plaintiff must allege the educational institution had "prior notice" of a "substantial risk" of harassment "based on evidence such as previous similar incidents." *K.T.*, 865 F.3d at 1058. *See also Thomas v. Bd. of Trs. of the Neb. State Colls.*, 667 Fed. Appx. 560, 562 (8th Cir. 2016) (a plaintiff may show a school had actual knowledge based on "previous known conduct"); *Doe v. Fairfax Cty. Sch. Bd*, 1 F.4th 257 (4th Cir. 2021) (A school's receipt of a report alleging sexual harassment is sufficient to satisfy the actual notice requirement.)

12

In her email to Defendant Strickman, Plaintiff stated that Roe started communicating with her again, *in direct violation of the no-contact directive* and giving her "disturbing looks." *See* Exhibit 19. Plaintiff explicitly stated that she felt "really disturbed and unsafe." *Id.* As required by the courts in *K.T.* and *Thomas*, Strickman was aware of previous instances of harassment by Roe toward Plaintiff due to Plaintiff's complaints as the harassment that the IEC specifically found had occurred constituted sexual harassment. Thus, Defendants had actual notice of the harassment based on the March 2017 email and Roe's prior harassment.

Second, Plaintiff's situation is entirely distinguishable from the conduct the court in *K.D.* said did not constitute actual knowledge. To begin, Plaintiff's claim is not based on "inordinate time spent" together or "favoritism." Further, Plaintiff did not make "vague comments" about Roe's harassment, which went well beyond "unprofessional conduct." As stated above, Plaintiff provided detailed descriptions of Roe's prior acts of harassment (including sexual emails and texts and non-consensual kissing), and Defendant Strickman and the IEC concluded that these actions violated UNL's Title IX Policy. The March 2017 email to Strickman provided notice that Roe was beginning his campaign of harassment- of which Strickman was aware- once again and sought assistance in preventing the harassment from continuing in the future.

### c.  Defendants were Deliberately Indifferent to the Known Harassment

Finally, Plaintiff has alleged sufficient facts to show that Defendants were deliberately indifferent to the harassment and discrimination she was undergoing. Defendants cite *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607 (8th Cir. 1999), to support an argument that "turning a blind eye" is the definition of deliberate indifference in the Eighth Circuit. This is not the case. The *Kinman* Court stated that "a plaintiff in a Title IX case may not recover against a school district without first showing that a district official with the authority to address the complained-of conduct

13

and take corrective action had actual notice of the harassing behavior and *failed adequately to respond.*" *Kinman*, 171 3.3d at 610 (citing *Gebser*, 524 U.S. at 290). Plaintiff has already established that the appropriate university officials were actually aware of the harassment (see above). Therefore, what this Court must determine is whether those officials failed to adequately respond to Plaintiff's report of harassment.

The leading cases addressing the question of deliberate indifference in the Title IX context in the Eighth Circuit are *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054 (8th Cir. 2017) and *Shank v. Carleton Coll.*, 993 F.3d 567 (8th Cir. 2021). In *K.T.*, the Eighth Circuit stated that "deliberate indifference must, at a minimum, *cause* [students] to undergo harassment or make them liable or vulnerable to it." *K.T.*, 865 F.3d at 1057 (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644-45 (1999) (emphasis added)). The Court in *K.T.* dimissed the plaintiff's claim, stating that the complaint "identified no causal nexus between [the school's] inaction and [the plaintiff's] experiencing sexual harassment." *Id.* at 1058. In *Shank*, the Eighth Circuit relied on the same rules as *K.T.*, adding that "[a]n institution is deliberately indifferent when its 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" 993 F.3d at 573 (citing *Davis*, 526 U.S. at 648).

Plaintiff in the present case can demonstrate both that the UNL's failure to adequately respond to her initial report of sexual harassment caused later harassment, and that UNL's response to both reports was clearly unreasonable. First, Plaintiff can easily demonstrate that the University's failure to adequately respond to the first report of harassment caused later harassment. When Plaintiff reported her harassment, UNL investigated her report and concluded that Defendant Roe did sexually harass her. In response, UNL allowed Plaintiff to switch research advisors and ordered Roe to cease contact with her. However, Roe was allowed to continue

working in the engineering department, in the very same building Plaintiff was expected to work and attend classes. Thus, she was forced to see her harasser on a frequent basis in the halls. This proximity made it possible for Roe to continue harassing her by speaking to her and giving her disturbing looks, which eventually became so distressing that Plaintiff had to leave the University altogether. Had the University taken adequate measures to protect Plaintiff from Roe following her first report, she would not have been subject to further harassment. Thus, the school's inaction led to further sexual harassment, as required by the court in *K.T.*

Further, UNL's response to Plaintiff's initial report and her second report was clearly unreasonable. As described above, the University made no attempt to physically separate Plaintiff and her harasser or prevent him from having access to her. Rather, she was forced to see him in the halls of the engineering building on campus. The no-contact directive issued, without more, did not prevent Roe from continuing to harass Plaintiff at school. Further, when Plaintiff reported the continued harassment to Defendant Strickman, Strickman asked Plaintiff if she wanted to go over her existing safety plan but took no further action. Responding to a report of harassment by offering to review a safety plan that had *failed to protect Plaintiff from harassment*, without an investigation into the claims of harassment or further steps to keep Roe from accessing Plaintiff was clearly unreasonable.

Even applying the standard for deliberate indifference articulated by Defendants in their motion to dismiss ("turning a blind eye"), Plaintiff has established that Defendants were deliberately indifferent to her report of sexual harassment. When Plaintiff reported to Defendant Strickman on March 7, 2017, that Roe continued to harass her in the hallways of the engineering building, Strickman asked if she wanted to discuss her safety plan with the UNLPD. However, neither the IEC nor the UNLPD ever followed up with Doe and no investigation into her complaint

15

followed. By essentially ignoring Plaintiff's cry for help, Defendants "turned a blind eye" to the harassment she was facing.

Based on the foregoing, Plaintiff has alleged sufficient facts to show that Defendants were deliberately indifferent to the harassment she faced. Plaintiff can demonstrate that (i) Defendants had actual notice of the harassment; and (ii) Defendants were deliberately indifferent to the known harassment. Although unnecessary in this case, Plaintiff has also been able to show that she faced harassment that was severe, pervasive, and objectively offensive. Thus, Plaintiff's Title IX Deliberate Indifference claim cannot be dismissed.

### 2.   *The Complaint Alleges Sufficient Facts to Support Plaintiff's Claim for Retaliation*

Defendant follows the same pattern in addressing Plaintiff's retaliation claim.  Unlike many federal and state civil rights statutes, Title IX does not expressly address retaliation. In *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), the United States Supreme Court held that retaliation against a person who complains about sex discrimination is itself a form of discrimination "on the basis of sex" forbidden by Title IX. Applying *Jackson*, courts have recognized the following elements to support a claim for Title IX retaliation: (1) a person engaged in protected activity, (2) the school took a materially adverse action against that person, and (3) that there was a "but-for" causal connection between the protected activity and the materially adverse action.

### a.   *Plaintiff Engaged in Protected Activity*

Plaintiff reported sexual harassment to Defendants.  Under Title IX, that is a protected activity.

### b.   *Defendant Strickman Took Materially Adverse Action Against Plaintiff*

16

Defendant Strickman failed to respond to Plaintiff's additional complaint of harassment even minimally. This constitutes materially adverse action against Plaintiff because, under Title IX, Strickman had a duty to explore the foundation of Plaintiff's complaint of additional harassment at least minimally. Instead, she suggested a review of the safety plan in place, which clearly was not effective, as evidenced by the ongoing harassment itself. Strickman's complete failure to act led to Plaintiff's exposure to further potential harm in the form of additional unwelcome, harassing contacts by John Roe.

        *c.   There Was a "But-For" Causal Connection Between the Protected Activity and the Materially Adverse Action*

Had Strickman responded to Plaintiff's report of harassment by Roe appropriately, Plaintiff would not have been subjected to further harassment. Thus, the failure to respond was causally connected to Roe's further harassment of Plaintiff.

D.   <u>Defendant Strickman Is Not Entitled to Qualified Immunity</u>

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When qualified immunity is invoked in a motion to dismiss, a court must view the facts *in the light most favorable to the plaintiff* and consider whether the complaint plausibly alleges that: (1) the conduct violated a constitutional right; and (2) that the constitutional right was "clearly established" at the time. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). A "clearly established statutory or constitutional right" requires that a reasonable person would be aware that their conduct violated that right in the circumstances under which the conduct occurred. *Harlow*, 457 U.S. at 818. In their motion to dismiss, Defendants claim that "there was no violation of a

constitutional right, nor was there a right that was clearly established in the specific context of the case at issue." Defendants are incorrect as to both points, as Plaintiff has alleged multiple violations of clearly established constitutional rights.

   a. *Defendant Strickman is Not Entitled to Qualified Immunity as to the Equal Protection Claim*

   i.   Plaintiff's Constitutional Right to Equal Protection was Violated Because Strickman was on Notice of the Harassment and Failed to Adequately Respond

The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall … deny to any citizen within its jurisdiction the equal protection of the laws." Numerous cases out of the Eighth Circuit have held that sexual harassment by state actors violates the Fourteenth Amendment's Equal Protection Clause and establishes a Section 1983 claim. *See Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007). An educational institution and its administrators may be liable under Section 1983 for a teacher's sexual harassment of a student where the administrators have notice of the teacher's misconduct and fail to adequately respond to the misconduct. *Cox,* 484 F.3d at 1066; *Gebser*, 524 U.S. at 277.

In the present case, the Second Amended Complaint alleges sufficient facts to show that Defendant Strickman (a UNL official), knew of Roe's (a teacher's) sexual harassment of Plaintiff and failed to adequately respond. Defendant Strickman was on notice of Roe's sexual harassment of Plaintiff after Plaintiff first reported the harassment in June 2016. While Strickman, through the IEC, arranged for Plaintiff to have a new research advisor and put in place a no-contact directive between Roe and Plaintiff, Plaintiff was still forced to see and interact with her harasser, as they both worked in the same department in the same building. This response was wholly inadequate

18

to protect Plaintiff from continued harassment and abuse. Strickman was put on notice of this harassment once again in March 2017, when Plaintiff emailed Strickman to report Roe a second time. The fact that Plaintiff continued to be subject to harassment following the "resolution" of the June 2016 report and investigation illustrates how inadequate Strickman's initial response was. Strickman's response to the March 2017 report was even less adequate- while she replied to Plaintiff's email asking if she would like to review her safety plan, no Title IX or police investigation was initiated. There is no indication that Strickman discussed the report with Roe. Further, it is unclear how going over an existing safety plan that had *failed to keep Plaintiff safe* could be considered an adequate response.

Plaintiff has alleged clear violations of constitutional rights in her complaint and as outlined above. These rights were all clearly established, and any reasonable educational administrator would not only know of those rights, but also know not to violate them. Defendant Strickman knew, or should have known, that her actions in this case violated Plaintiff's rights. Because proper violations of the constitution have been alleged and those rights are clearly established, Defendant Strickman is not entitled to qualified immunity.

ii.   The Right to Equal Protection in the Context of Teacher-on-Student Sexual Harassment is Clearly Established

Likewise, it is hard to imagine a more clearly established right in the eyes of Title IX administrators than the right to equal protection, as they immerse themselves in this very question daily. Defendant Strickman knew, or should have known, that her failure to respond to Plaintiff's report of sexual harassment by an educator at UNL would implicate the Equal Protection Clause and establish a constitutional violation.

19

Based on the foregoing, Defendant Strickman is not entitled to qualified immunity based on a violation of the Equal Protection Clause of the Fourteenth Amendment. First, Plaintiff has adequately alleged a violation of a constitutional right. Second, this right was clearly established. Therefore, this Court should reject Defendant's claim of qualified immunity on these grounds.

        iii.    Plaintiff Has Sufficiently Alleged Facts to Support a Disparate Impact Claim

Defendants argue that Plaintiff has brought a "class of one" theory of gender-based discrimination.  This is a misstatement of the facts as pled.  Plaintiff is not currently aware of whether any other women were disparately impacted by Defendants' actions.  She could not be aware of such, due to the confidential and private nature of Title IX investigations themselves. Following Defendants' argument to its logical conclusion, no plaintiff alleging disparate impact discrimination by a university administrator in a Title IX context could ever succeed with such a claim.  Whether or not Defendant Strickman engaged in disparate impact discrimination against Plaintiff is a factual question which will only be borne out through discovery.

`    Further, as Defendants are aware as some of them are named as defendants in such, a group of UNL student plaintiffs have a concurrently proceeding Title IX matter before this court also alleging similar claims against Defendant Strickman (*Thomas et al. v. University of Nebraska et al.*, No. 4-20-cv-03081, D. Neb.).  In that case, Defendants have filed a motion to sever which is pending before this court, in an effort to prevent the plaintiffs from proceeding as a group and from using one another's experiences as evidence to support each individual plaintiff's claims. Defendants cannot have their cake and eat it too – they cannot both argue that Title IX plaintiffs must have evidence of sex discrimination against other claimants and insist that Title IX plaintiffs each bring their own sex discrimination claims separately.

E.   Plaintiff has Adequately Stated a Claim for Violation of her Right to Due Process

a.   *Plaintiff Has a Liberty or Property Interest in her Continuing Education*

As a threshold matter, analysis of a due process claim, whether substantive or procedural, starts with an examination of the constitutional interest that has been violated. *Carolan v. Kansas City*, 813 F.2d 178, 181 (1987). Defendants claim that Plaintiff does not have a constitutionally protected right to continue her graduate education, and thus cannot bring a claim for due process violations. Plaintiff disagrees. The U.S. Supreme Court has twice assumed, without deciding, that graduate students have a constitutionally protected liberty or property interest in continuing in a graduate program at a public university. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 222 (1985); *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91-92 (1978). Likewise, the Eighth Circuit has repeatedly assumed that academic dismissal may be challenged on due process grounds. *Keefe v. Adams*, 840 F.3d 523, 533 (8th Cir. 2016) (citing *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594-97 (8th Cir. 2007); *Richmond v. Fowlkes*, 228 F.3d 854, 859 (8th Cir. 2000); *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515-16 (8th Cir. 1986)). Plaintiff requests that this court follow the Eighth Circuit's previous lead in allowing her to proceed on these due process claims.

b.   *Plaintiff has Alleged a Procedural Due Process Violation*

"[A] § 1983 procedural due process claim depends on: (1) whether the state actor's decision impacted a protected liberty or property interest, and if so (2) what process/procedure was constitutionally 'due' before depriving individuals of certain property, liberty, or property interests." *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Mathews v. Eldrige*, 424 U.S. 319, 332-33 (1976)).

As stated above, Plaintiff has a constitutionally protected right to continue her academic education. Likewise, Plaintiff was not afforded the process she was "due" following her reports of

sexual harassment to Defendant Strickman. Defendants state that "there was no decision by Strickman that impacted Plaintiff's protected liberty or property interest in continued education." The defense cites the investigation and "resolution" of Plaintiff's June 2016 complaint and the email Strickman sent in response to the March 2017 complaint as evidence that Strickman complied with due process requirements. This argument is misguided.

UNL Policy at the time of the March 2017 complaint states that, after a sexual misconduct complaint is made, the "Title IX Coordinator shall conduct an investigation to determine if the allegation(s) have merit." University of Nebraska, *Student Code of Conduct and Disciplinary Procedures*, 17 (May 2014), on file with Plaintiff's counsel. Such investigations should be concluded within 60 calendar days following receipt of the report. *Id.* When Plaintiff filed a complaint in March 2017 regarding Roe's continued harassment, Defendant Strickman responded to the email asking if Plaintiff would like to go over her safety plan. This response is not adequate under the University's own policy, which requires the Title IX Coordinator to conduct an investigation. No investigation into Plaintiff's claims occurred, in direct violation of UNL's policy. After the March 2017 report, Plaintiff continued to be subject to harassment by Roe. It was because of this ongoing, unaddressed harassment that Plaintiff was forced to leave the University to pursue her studies in a safe environment. It was UNL policy that dictated the procedure Plaintiff was due and UNL failed to follow this policy. Thus, Plaintiff has alleged sufficient facts indicating that Strickman's decision not to investigate impacted Plaintiff's liberty or property interest in education.

### c. Plaintiff has Alleged a Substantive Due Process Violation

The "core of the concept [of substantive due process is] protection against arbitrary action" by the government. *Putnam v. Keller*, 332 F.3d 541, 547 (8th Cir. 2003) (quoting *Cty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).  To establish a substantive due process claim, Plaintiff must show that UNL officials' arbitrary conduct "shocks the conscience." *Id.* at 547-48. Courts may also "consider conduct that evinces a 'deliberate indifference' to protected rights" of the plaintiff, if the UNL officials "...had an opportunity to consider other alternatives before choosing a course of action." *Putnam*, 332 F.3d at 548.

Here, Plaintiff made multiple reports to Defendant Strickman, directly and through the IEC, that she was being sexually harassed by Defendant Roe, her advisor. After the first report, Defendant Strickman and the IEC investigated the allegations and concluded that Roe had sexually harassed Plaintiff. While the IEC arranged for Plaintiff to work with a different advisor and instituted a no-contact directive, Plaintiff was still forced to see Roe in the department they both worked in. Thus, Plaintiff was continuously subject to harassment by Roe, who would smile and sneer at Plaintiff when she passed. She continued to feel so unsafe that she made a second report to Strickman in March 2017. Strickman's only response was an email asking if Plaintiff wanted to go over her existing safety plan. No investigation was initiated, and it doesn't seem that Strickman spoke to Roe about the continued harassment. Asking Plaintiff if she wanted to go over a safety plan that had proven inadequate to keep her safe following a report of continuing sexual harassment does, without more, "shock the conscience" when such a statement comes from a Title IX Coordinator, as necessary to establish a substantive due process claim. Likewise, Strickman had ample opportunity to pursue another course of action—such  as speaking to Roe, conducting further investigation, or imposing sanctions on Roe—but instead chose the path that provided Plaintiff with the least security and protection.

Defendants cite an unpublished District of Nebraska case to emphasize this point. In *Harrington v. City of Omaha*, this Court stated that a plaintiff "must allege that a government

action was 'sufficiently outrageous' or 'truly irrational, that is, something more than … arbitrary, capricious, or in violation of state law.'" 8:20-CV-412, 2021 WL 2321757, at *22 (D. Neb. June 7, 2021). As indicated above, essentially ignoring a student's complaint about repeated and ongoing sexual harassment from a professor is both "truly irrational" and "sufficiently outrageous." This is just what Strickman did when she failed to investigate Plaintiffs March 2017 report of sexual harassment.

To conclude, Plaintiff has stated a claim for procedural and substantive due process claims against Defendant Strickman. Therefore, Plaintiff requests that this court allow her to proceed in this respect.

## **CONCLUSION**

Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss with respect to all defendants as to Counts I and II and with respect to Defendant Strickman as to Counts III and IV and deny Defendants' Motion to Strike. Plaintiff consents to the dismissal of the Board of Regents as a Defendant in Counts III and IV and the Fifth Amendment Claim in Count III.


DATED: November 8, 2021

Respectfully submitted,

**s/ Karen Truszkowski**
Karen Truszkowski
Bar Number: P56929 (MI)
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
Phone: (844) 534-2560
Fax: (800) 531-6527
Email: karen@temperancelegalgroup.com

**s/ Elizabeth K. Abdnour**
Elizabeth K. Abdnour
Bar Numbers: 0081795 (OH), P78208 (MI)
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Phone: (517) 292-0067
Fax: (517) 709-7700
Email: elizabeth@abdnour.com


*Attorneys for Plaintiff*

24

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, I certify that based upon the word count function of Microsoft Word for Mac word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, this Brief contains 7521 words.

<u>**s/ Elizabeth K. Abdnour**</u>
Elizabeth K. Abdnour
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

<u>**s/ Elizabeth K. Abdnour**</u>
Elizabeth K. Abdnour
Attorney for Plaintiffs