IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and individuals TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS;<br><br>　　　　Defendants. | **CASE NO. 4:21-CV-3049** |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND STRIKE**

Submitted by:

Susan K. Sapp, #19121
Lily Amare, #25735
CLINE WILLIAMS WRIGHT JOHNSON
　& OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, Nebraska 68508
Telephone: (402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Associate General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
402-472-1201
bchambers@nebraska.edu

November 19, 2021

1

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 3

II. ARGUMENT ........................................................................................................ 4

    A. Plaintiff Cannot Save Her Claims By Invoking a "Continuing Violation" Theory ................................................................................................................................4

    B. Plaintiff Cannot Save Her Title IX Claim That Accrued After Plaintiff Withdrew From the University of Nebraska When She Readily Admits She was No Longer a Student And Not Engaging in Any Education Program or Activity……………………………………………………………………………….10

    C. Plaintiff's Title IX, Deliberate Indifference Claim Fails As a Matter of Law…………………………………………………………………………………11

    D. Plaintiff's Title IX, Retaliation Claim Fails As a Matter of Law……………………14

    E. Plaintiff's Procedural and Substantive Due Process Claims Fail As a Matter of Law…………………………………………………………………………………15

    F. Plaintiff's Equal Protection Claim Fail As a Matter of Law…………………………16

III. CONCLUSION................................................................................................... 17

In accordance with Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), 12(f) and Local Rules NECivR 7.1(c), the Board of Regents of the University of Nebraska ("BRUN" or "Board of Regents") and Tami Stickman ("Strickman"), individually and in her official capacity, collectively referred to as "Defendants," respectfully submit this Reply Brief in support of their Motion to Dismiss and to Strike ("Motion") on the Second Amended Complaint filed by Plaintiff Jane Doe ("Plaintiff") *[Filing No. 13]*.

## I. INTRODUCTION

Much like the Second Amended Complaint, Plaintiff's brief is riddled with admissions that show Defendants acted in accordance with Title IX and all applicable constitutional rights, rather than sufficient facts that support and state plausible claims to relief. Particularly, Plaintiff agrees and states:

- When Plaintiff reported an allegation of sexual harassment to the Title IX office on June 21, 2016, the Title IX office conducted an investigation. *[See Filing No. 22, pp. 1]*.
- After an investigation, on August 12, 2016, BRUN, through the Title IX investigation, found John Roe ("Roe") violated BRUN policy, which prohibits sexual misconduct. *[See Filing No. 22, pp. 2]*.
- Sometime in August of 2016, Plaintiff was provided a new advisor. *[See Id., Filing No. 22, pp. 18]*.
- BRUN agreed to pay for Plaintiff's remaining tuition costs. *[See Filing No. 22, pp. 2]*.
- Sometime in August of 2016, the Defendants issued a no-contact directive. *[See Filing No. 22, pp. 2 & 18]*.

These admissions are the crux of Defendants' Motion and argument that BRUN and Strickman did all that they were required to do, and more, under the applicable laws, by investigating and taking appropriate remedial actions when BRUN received actual notice of alleged harassment; and, to the extent Plaintiff takes issue with how Defendants responded to the report of June of 2016, she is barred by the statute of limitations and cannot be saved by the continuing violation doctrine.

Accordingly, Plaintiff fails to allege sufficient facts to state plausible claims to relief pursuant to Title IX and the Due Process and Equal Protection clauses.

Moreover, Plaintiff, in her Brief in Opposition, concedes to the dismissal of the Third and Fourth Causes of Action to the extent asserted against BRUN, and the dismissal of the Fifth Amendment claim as to both Defendants. Accordingly, Defendants respectfully request this Court dismiss with prejudice the causes of actions Plaintiff conceded.

## II. ARGUMENT

### A. PLAINTIFF CANNOT SAVE HER CLAIMS BY INVOKING A "CONTINUING VIOLATION" THEORY.

The Second Amended Complaint and Plaintiff's Brief establish that all causes of actions that accrued prior to February 28, 2017 are time barred. "A Court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." Humphrey v. Eureka Gardens Pub. Facility Bd., 891 F.3d 1079, 1081 (8th Cir. 2018) (quoting Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011)). "[T]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Id.

All of Plaintiff's claims are subject to, at most, the four-year statute of limitations after the causes of action accrue. The "standard rule" is that a claim accrues "when the plaintiff has a complete and present cause of action," that is, when "the plaintiff can file suit and obtain relief." See Rassier, 996 F.3d 832, 836 (2021). See also Gabelli v. S.E.C., 568 U.S. 442, 448 (2013). See Rassier, 996 F.3d at 836 (holding the Section 1983 First Amendment retaliation claims generally accrue, and the statute of limitations begins to run, when the retaliatory action occurs because damages result at that time.); Rotkiske v. Klemm, 140 S. Ct. 355, 360 (2019) (holding absent a legislation against the standard rule, "the limitations period commences when the plaintiff has a complete and present cause of action.").

Plaintiff cannot avoid the statute of limitations by asserting the "continuing violation" theory. As an initial matter, Plaintiff does not allege a continuing violation on the part of the Defendants, and in fact, as it relates to her Title IX claims, Plaintiff expressly states in her Second Amended Complaint that her claims are for alleged actions or inactions of the University after March 7, 2017. *[See Filing No. 13, ¶ 95].*

Moreover, the continuing violation doctrine is not applicable to this case. As the United States Supreme Court explained "[D]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Thus, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are ***independently discriminatory*** and charges addressing those acts are themselves timely filed." Id. (emphasis added). See Jones v. Douglas Cty. Sheriff's Dep't, 915 F.3d 498, 500 (8th Cir. 2019) (holding same).

While the Eighth Circuit has not addressed the question of whether the continuing violation theory is applicable to Title IX deliberate indifference or retaliation claims, the Ninth Circuit in Stanley v. Trustees of California State University did, and it is illustrative. 433 F.3d 1129 (9th Cir. 2006). In Stanley, the plaintiff, who was intermittently a student at California State University, Sacramento ("University") from 1998 to 2000, alleged her professor and faculty advisor sexually harassed her beginning in 1999 and the harassment caused her to withdraw her enrollment at various times during her education. Id. at 1132. Plaintiff claims that she reported the harassment to various University offices, but that they did not respond to her complaints. Id. Plaintiff claimed that the harassment continued, with the last alleged harassment occurring in May of 2000. In September of 2000, the plaintiff submitted a formal complaint of sexual harassment to the University, and after an

investigation, the University found that the alleged perpetrator violated University Policy and that the University would take appropriate action. Id. On April 27, 2001, the plaintiff filed a complaint against the university under Title IX and Section 1983. Id.

The University filed a motion for judgment on the pleadings arguing in part that plaintiff's Title IX claim was barred by California's one-year statute of limitations. The plaintiff argued that her claim was not barred by the statute of limitations because the University's alleged deliberate indifference constituted a continuing violation of Title IX. Id. at 1132. The district court granted the motion and held all of the claims, except the Title IX claim, were barred by state sovereign immunity, and the Title IX claim was barred by the applicable statute of limitations. Id. at 1133. The plaintiff appealed. Id. at 1132.

The Ninth Circuit reviewed de novo whether the statute of limitations had run and addressed the question of whether the continuing violation doctrine was applicable to the Title IX claim. The Ninth Circuit, relying on Nat'l R.R. Passenger Corp., correctly held the continuing violation doctrine did not apply to the Title IX claim: "It is readily apparent that the continuing violation doctrine cannot save Stanley's quid pro quo sexual harassment claim, as no discrete acts of sexual harassment occurred within the limitations period; indeed, the last acts are alleged to have occurred in May 2000." Id. at 1137. The Court further held:

> Stanley's hostile environment claim also cannot be saved by the continuing violation doctrine. Stanley has argued that the school's continued deliberate indifference prevents the statute of limitations from beginning to run. Not so.
>
> "Deliberate indifference" is the standard for imputing liability to the Trustees, see Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 292–93, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), not for establishing a hostile environment. In order to support liability, the deliberate "indifference must, at a minimum, cause [students] to undergo harassment or make them liable or vulnerable to it." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 645, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (internal quotation marks and citations omitted) (alteration in original)
>
> Moreover, Stanley's argument conflates her desired remedy with violation of Title IX in a manner that effectively vitiates the statute of limitations. Under Stanley's theory, as long as the Trustees do not provide her desired relief, they

6

> are continuing to be "deliberately indifferent" and subject to suit. At oral argument, Stanley conceded that this would allow her to bring suit twenty years from now. Even leaving Davis aside, we will not adopt an approach that renders the statute of limitations a virtual nullity.

Id.

See also Dibbern v. Univ. of Michigan, No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich. May 18, 2016) (holding the continuing violations doctrine does not apply to any of the Title IX claims asserted, which included deliberate indifference based on harassment claim and retaliation.); Gjeka v. Delaware Cty. Cmty. Coll., No. CIV.A. 12-4548, 2013 WL 2257727, at *5 (E.D. Pa. May 23, 2013) (holding "with no precedent being cited to the contrary, the Court will not expand the continuing violations theory [to Title IX claims] beyond its application to a hostile work environment claim under Title VII, which is not changed in this case."); Thompson v. Indep. Sch. Dist. No. I-1 of Stephens Cty., Okla., No. CIV-12-13-M, 2013 WL 1915058, at *5 (W.D. Okla. May 8, 2013) (holding "[w]hile plaintiff contends that the "continuing violation doctrine" tolls the statute of limitations, plaintiff has not provided any authority in which the "continuing violation doctrine" has been applied to Title IX claims[;] Moreover, equitable tolling doctrines such as the "continuing violation doctrine" are applied sparingly."). Accordingly, the continuing violation theory does not apply to Title IX claims such as the ones asserted herein.

Moreover, the continuing violation theory does not apply to Section 1983 claims. See Humphrey v. Eureka Gardens Pub. Facility Bd., 891 F.3d 1079, 1083 (8th Cir. 2018) (holding continuing violation theory does not apply to Section 1983 claims alleging procedural and substantive due process and equal protection violations where the plaintiff has failed to allege sufficient facts identifying any continuing unconstitutional policy or restraint). See also Montin v. Gibson, No. 4:08CV3082, 2009 WL 5034044, at *2 (D. Neb. Dec. 14, 2009) (continuing violation doctrine does not toll the statute of limitations in Section 1983 claims); Poor Bear v. Nesbitt, 300 F. Supp. 2d 904, 913 (D. Neb. 2004) (finding

the continuing violation doctrine used in employment dispute context inapplicable to Section 1983 claims).

In this case, like the plaintiff in Stanley, the Plaintiff had a complete and present cause of action based on the Defendants' actions or inactions, at the latest, when she was notified on November 7, 2016 that the case was closed. See timeline below:



And, like the plaintiff in Humphrey, Plaintiff does not identify any continuing unconstitutional policy or restraint.

Plaintiff attempts to bootstrap the barred claims—which are based on the discrete acts of responding to the June of 2016 report (see timeline above)—to her threadbare allegation that she was subjected to further harassment in March and September of 2017. Plaintiff is attempting to do so because the alleged discrete acts of March of 2017 and September of 2017 cannot independently be deemed sufficient to show that (1) she was sexually harassed (plaintiff told Strickman that Roe said hello with a smile and expected an answer and gave her disturbing looks, and that Roe responded to an email to which Plaintiff

was also copied), and (2) the response from Defendants was deliberately indifferent, retaliatory or violative of any constitutional rights. The "continuing violation" doctrine "is occasioned by continuing unlawful acts, not continual ill effects from [the] original violation." Brown v. Arkansas Dept. of Human Servs., 452 Fed. Appx. 690 (8th Cir. 2011) (citing Eidson v. State of Tenn. Dept. of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007)). See also Taxi Connection v. Dakota, Minnesota & E. R.R. Corp., 513 F.3d 823, 825 (8th Cir. 2008) ("The continuing violation doctrine does not encompass discrete discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, which are individually actionable."). As such, the continuing violation doctrine does not encompass discrete discriminatory acts of being deliberately indifferent or retaliatory to reported sexual harassment, which is the standard for imputing liability in Title IX matter. Nor does it encompass discrete acts of not providing procedural and substantive due process or equal treatment.

Assuming the continuing violation doctrine generally applies to claims such as the ones asserted herein—solely for purposes of argument—the Plaintiff may be able to rely on acts that occurred outside the statutory time period ***only if*** those acts are related to acts within the statutory period and the employer took no intervening action. Nat'l R.R. Passenger Corp., 536 U.S. at 118. In other words, the Plaintiff cannot base a suit on acts that occurred outside the statute of limitations if the acts pre- and post-limitations period were unrelated, **or if intervening acts by the Defendants severed the acts preceding the limitations period from those subsequent to it**. Id.

The "continuing violations" doctrine is **not applicable** here because there were concrete intervening acts by the Defendants. Particularly, Defendants:

- Investigated the allegation of June of 2016;
- Issued a no-contact directive;
- Removed Roe as Plaintiff's supervisor and advisor;

9

- Assigned Plaintiff a new advisor;
- After investigation and re-investigation, issued a finding, where BRUN found that some alleged conduct of Roe violated BRUN policy;
- Paid for Plaintiff's tuition for the remaining six credit hours needed for Plaintiff to complete her program; and
- After Plaintiff failed to request a formal hearing, closed the matter and notified Plaintiff of such.

These multiple intervening acts by the Defendants severed the acts preceding the limitations from those subsequent to them, thereby precluding the application of the continuing violations doctrine to any of the claims asserted in this case.

It is for these reasons that Defendants respectfully ask this Court to: (1) not consider any alleged actions or inactions outside of the statute of limitations—i.e., those that accrued prior to February 28, 2017—when this Court analyzes Plaintiff's claims against the Defendants, and (2) to strike or dismiss all claims based on actions or inactions that accrued prior to February 28, 2017.

**B.     PLAINTIFF CANNOT SAVE HER TITLE IX CLAIM THAT ACCRUED AFTER PLAINTIFF WITHDREW FROM THE UNIVERSITY OF NEBRASKA WHEN SHE READILY ADMITS SHE WAS NO LONGER A STUDENT AND NOT ENGAGING IN ANY EDUCATION PROGRAM OR ACTIVITY.**

Plaintiff misses the mark when she argues that the University had "jurisdiction over her claims because Roe's conduct was related to his performance of work responsibilities" when addressing BRUN's argument that Plaintiff does not have standing to bring a Title IX claim based on the alleged harassment or discrimination of September 25, 2017. Defendants did not argue in their Motion or Brief in Support whether they had jurisdiction to act on the information Plaintiff provided in September of 2017. Rather, the primary issue presented is whether Plaintiff can meet the main element of her Title IX claim, which is: was she subjected to discrimination or harassment[1] in September of 2017 ***under an education program or***

---

[1] Note that Plaintiff is alleging that Roe harassed her when he responded to an email to which they were both copied and even produced such email.

10

***activity***? And the answer is **no** because, in the words of Plaintiff, "it is true that Plaintiff was no longer a student in September of 2017." *[See Filing No. 22, pp. 6].*

C. **PLAINTIFF'S TITLE IX, DELIBERATE INDIFFERENCE CLAIM FAILS AS A MATTER OF LAW.**

The Plaintiff has failed to plead sufficient facts to demonstrate the elements of a Title IX deliberate indifference claim. First, Plaintiff erroneously argues that she does not have to show that the harassment or discrimination was "severe, pervasive, and objectively offensive." The cases Plaintiff cites (other than the erroneous and inconsistent outlier case from the Eleventh Circuit) do not stand for the proposition that the element of "severe, pervasive, and objectively offensive" is not applicable to teacher-on-student Title IX claims. In fact, in Davis, the U.S. Supreme Court stated "the standard set out in Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277—that a school district may be liable for damages under Title IX where it is deliberately indifferent to known acts of teacher-student sexual harassment—also applies in cases of student-on-student harassment." Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 629–30 (1999). In Gebser, the U.S. Supreme Court addressed, as a matter of first impression, whether there is an implied private right of action for monetary damages under Title IX and laid out some of the framework for such claims. Thereafter, in Davis, the Supreme Court continued its work of filling in the gap where there was one—such as expounding upon what it means to be deliberately indifferent and what it takes to meet the definition of sexual harassment. Particularly, the Court held a funding recipient [such as BRUN] is "properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. at 650. The Court explained its rationale:

11

> The requirement that recipients receive adequate notice of Title IX's proscriptions also bears on the proper definition of "discrimination" in the context of a private damages action. We have elsewhere concluded that sexual harassment is a form of discrimination for Title IX purposes and that Title IX proscribes harassment with sufficient clarity to satisfy *Pennhurst's* notice requirement and serve as a basis for a damages action. See Gebser v. Lago Vista Independent School Dist., 524 U.S., at 281, 118 S.Ct. 1989; Franklin v. Gwinnett County Public Schools, 503 U.S., at 74–75, 112 S.Ct. 1028. Having previously determined that "sexual harassment" is "discrimination" in the school context under Title IX, we are constrained to conclude that student-on-student sexual harassment, if sufficiently severe, can likewise rise to the level of discrimination actionable under the statute. See Bennett v. Kentucky Dept. of Ed., 470 U.S. 656, 665–666, 105 S.Ct. 1544, 84 L.Ed.2d 590 (1985) (rejecting claim of insufficient notice under *Pennhurst* where statute made clear that there were some conditions placed on receipt of federal funds, and noting that Congress need not "specifically identif[y] and proscrib[e]" each condition in the legislation). The statute's other prohibitions, moreover, help give content to the term "discrimination" in this context. Students are not only protected from discrimination, but also specifically shielded from being "excluded from participation in" or "denied the benefits of" any "education program or activity receiving Federal financial assistance." § 1681(a). The statute makes clear that, whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender.

Id., at 649–50[2]. The Court even implied that it would apply the same standard to teacher-on-student harassment, and described how these types of claims may weather the requirement of severe, pervasive and objectively offensive when it stated:

> The fact that it was a teacher who engaged in harassment in Franklin and Gebser is relevant. The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. Peer harassment, in

---

[2] As Spending Clause legislation, a private right of action for damages under Title IX is permitted only under certain limited circumstances. Cannon v. University of Chicago, 441 U.S. 677, 717 (1979); Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 76 (1992). This is because "legislation enacted pursuant to the spending power is much in the nature of a contract, and the legitimacy of Congress' exercise of its power to condition funding on state compliance with congressional conditions rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" Davis at 655. In other words, because Title IX was enacted pursuant to the Spending Clause, private damages actions are available only where the State had adequate notice that it could be liable for the conduct at issue. Id.

Accordingly, to the extent this Court agrees with Plaintiff's argument that the requirement of severe, pervasive and objectively offensive isn't appliable to teacher-on-student harassment, we submit to this Court that BRUN did not have prior notice of any other definition of "sexual harassment" from which it is supposed to be protecting students under Title IX.

particular, is less likely to satisfy these requirements than is teacher-student harassment.

Id, at 653. Moreover, the regulatory agency itself has long provided:

> It is clear from the Guidance that not all behavior with sexual connotations constitutes sexual harassment under Federal law. In order to give rise to a complaint under Title IX, sexual harassment must be sufficiently severe, persistent, or pervasive that it adversely affects a student's education or creates a hostile or abusive educational environment. For a one-time incident to rise to the level of harassment, it must be severe.

Office for Civil Rights; Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 FR 12034-01 (1997).

In fact, the following cases hold that severe, pervasive, and objectively offensive requirement applies to teacher-on-student Title IX claims. See Fry v. Doane Univ., No. 4:18CV3145, 2020 WL 5849414, at *25 (D. Neb. Oct. 1, 2020) (holding plaintiff, who alleged the university was deliberately indifferent to sexual harassment by her teacher, must show that the harassment was severe, pervasive, and objectively offensive); Gordon v. Bd. of Trustees of the Univ. of Arkansas, 168 F. Supp. 3d 1148, 1161 (E.D. Ark. 2016), judgment entered sub nom. Gordon v. The Bd. of Trustees of the Univ. of Arkansas, No. 4:15CV00518 JLH, 2016 WL 1301122 (E.D. Ark. Apr. 1, 2016) (holding same). At the very least, Plaintiff must show that the harassment was severe or pervasive. See Lam v. Curators of the Univ. of Missouri at Kansas City Dental Sch., 122 F.3d 654, 655 (8th Cir. 1997) (holding "a necessary element of a claim under Title IX for hostile environment sexual harassment [by a teacher] is that "the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment."); Jennings v. Univ. of N. Carolina, 482 F.3d 686, 717 (4th Cir. 2007) (same case Plaintiff cites in her Brief *[See Filing No. 22, pp. 11]*) (holding the plaintiff must show that the harassment was "sufficiently severe or pervasive to create a hostile (or abusive) environment in educational program or activity.").

Accordingly, a threshold question in a sexual harassment case under the Gebser/Davis framework is whether the conduct alleged was so severe, pervasive, and objectively offensive that it effectively bars the Plaintiff's access to educational opportunity or benefit.

Plaintiff attempts to muddy the waters by arguing that she has met the elements of a Title IX deliberate indifference claim and discussing discrete acts that occurred outside of the statute of limitations. As thoroughly discussed above, such acts cannot serve as the basis for her Title IX claim. There must exist sufficient facts within the statutory period independently showing the elements of a deliberate indifference claim. Other than the conclusory statement that she was sexually harassed, Plaintiff's Complaint is devoid of sufficient facts that even come close to showing the elements of a Title IX deliberate indifference claim, as thoroughly discussed in Defendants' Brief in Support of the Motion.

D. **PLAINTIFF'S TITLE IX, RETALIATION CLAIM FAILS AS A MATTER OF LAW.**

Grasping at straws, Plaintiff disguises acts of Roe as acts of BRUN to support her retaliation claim. That, she cannot do. The U.S. Supreme Court and the Eighth Circuit have held that liability cannot be imputed to the educational institution for misconduct of the institution's teachers. "A recipient of federal funds may be liable in damages under Title IX ***only for its own misconduct***," and a private damages action under Title IX is only available to redress ***intentional discrimination***. Davis at 640, 642 (emphasis added). The U.S. Supreme Court in Davis "rejected the use of agency principles to impute liability to the district for the misconduct of its teachers" and "limited liability only where the district itself intentionally acted in clear violation of Title IX." Id. The Court in Davis also "declined the invitation to impose liability under what amounted to a negligence standard—holding the district liable for its failure to react to teacher-student harassment of which it knew or ***should have*** known." Id. (emphasis added).

14

Consistent with the U.S. Supreme Court precedent in Does 1-2 v. Regents of the Univ. of Minn., 999 F.3d 571, 579 (8th Cir. 2021), the Eighth Circuit set forth the elements of Title IX retaliation claims. It held: "To plead prima facie retaliation claims, [the Plaintiffs] must allege they participated in activity protected by Title IX, and **the University took adverse action** against them because of their participation in that activity." Id. (emphasis added).

Plaintiff has not alleged sufficient facts that BRUN took any adverse action **against** her, let alone any action that could reasonably be considered adverse. Plaintiff argues Strickman did not respond to an additional complaint of alleged harassment. One wonders how not responding could be considered an "adverse action." Plaintiff then contradicts herself by claiming Strickman did respond to the claim by offering to review a safety plan with Plaintiff. It defies belief that offering to go over additional safety plan with Plaintiff can be deemed an adverse action. Strickman was simply attempting to find a way to make Plaintiff feel safe and alleviate Plaintiff's concern of feeling "unsafe." Strickman did not stop there—she also promised Plaintiff she would talk to Roe, and that was the last Strickman heard from Plaintiff while Plaintiff was a student at the University. This warrants the dismissal of Plaintiff's Title IX retaliation claim against BRUN.

**E.    PLAINTIFF'S PROCEDURAL AND SUBSTANTIVE DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW.**

Plaintiff failed to point to any U.S. Supreme Court or Eighth Circuit case where a court has held, without assuming, that a graduate student is entitled to a constitutionally protected liberty or property interest. This, in and of itself, is sufficient basis to dismiss this claim because this shows that there is no clearly established constitutional right.

Moreover, Plaintiff failed to recognize that the threshold question for the procedural due process claim is what is constitutionally due to Plaintiff, not what process was due

under BRUN's policies. As such, Plaintiff has not and cannot point to any process that was constitutionally due to her that Strickman did not provide.

Even if this Court, *arguendo*, considers the BRUN policy which Plaintiff points in her Brief, that too shall fail. Particularly, the BRUN policy provides that the Title IX Coordinator shall conduct an investigation when someone complains of sexual misconduct. That BRUN policy is not applicable because Plaintiff did not complain of sexual misconduct within the statute of limitations period—all Plaintiff said was Roe said hello to her with a smile, gave her looks, and responded to an email to which they were both copied. This is not sufficient factual allegation showing she complained of sexual misconduct.

With regard to her substantive due process claim, that also cannot survive a motion to dismiss. Once again, Plaintiff's argument that Strickman's response to the March 2017 email (where she asked Plaintiff if she wanted to go through additional safety plans) shocks the conscience is incomprehensible. Therefore, Strickman respectfully requests that this Court dismiss Plaintiff's Third Cause of Action in its entirety.

### F. PLAINTIFF'S EQUAL PROTECTION CLAIM FAIL AS A MATTER OF LAW.

Plaintiff admits that she does not know of anyone who is similarly situated and pleads with this Court to let her proceed based on pure speculation and hope that she may find someone who is similarly situated to her during discovery. Such approach vitiates the purpose of a motion to dismiss and should not be condoned.

To avoid addressing the similarly situated element of the Equal Protection claim, Plaintiff attempts to apply the elements of Title IX, Deliberate Indifference to her Equal Protection claim. For instance, Plaintiff makes the conclusory assertion that Strickman "knew, or should have known, that her failure to respond to Plaintiff's report of sexual harassment by an education at UNL would implicate the Equal Protection Clause…." *[Filing No. 22, pp. 19].* This is nonsense. The key analysis in determining whether the Equal Protection clause has been violated is whether the state actor treated Plaintiff differently

than a similarly situated person, based on her membership in a protected class. See Robbins v. Becker, 794 F.3d 988, 995 (8th Cir. 2015). See also Jones v. Douglas Cty. Sheriff's Dep't, 915 F.3d 498, 500 (8th Cir. 2019) (where the plaintiff alleged "on information and belief—the open position was filled with a male candidate," the court held plaintiff did not plead any facts showing that candidate was similarly situated or went through a reinstatement process and held Her threadbare allegation does not survive a motion to dismiss.)

In this case, Plaintiff has not identified any comparators whatsoever, let alone any who she believes are similarly situated to her in all respects, as required by law. See, e.g., Bills v. Dahm, 32 F.3d 333, 3355 (8th Cir. 1994); Doe v. Bd. of Regents of Univ. of Neb., No. 4:20CV3036, 2020 WL 7645438 (D. Neb. Dec. 23, 2020). Accordingly, Plaintiff is unable to meet any of the elements of equal protection claim, as thoroughly discussed in Defendants' Brief in Support of Motion.

Plaintiff then brings up another lawsuit her attorneys filed with this Court involving nine separate Plaintiffs with distinct factual allegations, where BRUN filed a Motion to Dismiss and Sever and tells this Court that Defendants "cannot have their cake and eat it too." Defendants are not. Defendants are simply asking Plaintiff to ***allege sufficient facts*** to show there are similarly situated individuals. BRUN is ***not*** asking Plaintiff to join the other similarly situated individuals as parties (the supposed cake). Therefore, Strickman respectfully asks this Court to dismiss the Equal Protection claim.

### III. CONCLUSION

Defendants respectfully request that the Court grant its Motion to Dismiss and to Strike and enter an Order dismissing Plaintiff's causes of action against the Defendants in their entirety and with prejudice or striking all claims that accrued prior to February 28, 2017.

Dated this 19th day of November 2021.

BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA and TAMI STRICKMAN, individually and in her official capacity, Defendants

By: /s/ Lily Amare
Susan K. Sapp #19121
Lily Amare #25735
Cline Williams Wright
  Johnson & Oldfather, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, NE 68508
(402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Associate General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
402-472-1201
bchambers@nebraska.edu

**CERTFICATE OF COMPLIANCE**

I, Lily Amare, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Microsoft Word 2013 word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Reply Brief contains 5543 words.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties who have entered an appearance in this case as well as electronically transmitted.

| | |
|---|---|
| Karen Truszkowski<br>TEMPERANCE LEGAL GROUP, PLLC<br>503 Mall Court #131<br>Lansing, MI 48912<br>karen@temperancelegalgroup.com | Elizabeth K. Abdnour<br>ELIZABETH ABDNOUR LAW, PLLC<br>1146 S. Washington Ave., Ste. D7<br>Lansing, MI 48910<br>elizabeth@abdnour.com |

/s/Lily /Amare
Lily Amare