UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, | Case No. 4:21-cv-3049 |
| Plaintiff, | Hon. John M. Gerrard |
| v. | |
| BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and individuals TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS; | |
| Defendants. | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL VIDEOCONFERENCING FOR DEPOSITION OF PLAINTIFF**

Plaintiff Jane Doe, through undersigned counsel, respectfully submits this Reply Brief in support of her Motion to Allow Remote Videoconferencing Deposition of Plaintiff ("Motion"), requesting that this Court issue an order requiring Plaintiff to be deposed remotely by videoconferencing, as opposed to in-person as requested by Defendants.

## I. Introduction

On July 27, 2021, Plaintiff filed a lawsuit against the Board of Regents of the University of Nebraska ("BRUN"), Tamiko Strickman, and others ("Defendants"). Plaintiff was repeatedly sexually harassed by a professor employed by the University of Nebraska Lincoln ("UNL"), and when she reported the harassment, UNL failed to properly investigate and respond to the harassment, and she was retaliated against by her harasser. Because of this extensive abuse, Plaintiff left Nebraska in 2017 and has not returned. Returning to the state where she suffered great psychological and emotional distress would be harmful to her mental and emotional state, and

1

through her counsel, Plaintiff requested to be deposed remotely. Defendants' counsel refused to accommodate this request. On October 13, 2022, Plaintiff filed a Motion to Compel Remote Videoconferencing of Plaintiff and a Memorandum in Support of this Motion, detailing the reasons that videoconferencing the deposition of Plaintiff would be appropriate and efficient in this case. Namely, Plaintiff would suffer psychological and emotional distress from the forced return to Nebraska, and she is also concerned about the risks of exposure to COVID-19.

On October 19, 2022, Defendants filed an Amended Notice to Take Deposition of Plaintiff Jane Doe, and on October 27, 2022, Defendants filed a Brief in Opposition of Plaintiff's Motion to Compel. Defendants argues that (1) the in-person deposition of the Plaintiff is important because of their need to assess Plaintiff's credibility and (2) that Plaintiff's reasons for requesting a remote deposition do not constitute an undue burden. These arguments fail for the reasons below, and Plaintiff respectfully submits this Reply Brief in support of her Motion to Allow Videoconferencing Deposition of Plaintiff.

## II. Argument

First, Defendants make light of the fact that remote depositions are "the new normal." *Grupo Petrotemex, S.A. De C.V. v. Polymetrix AG*, No. 16-cv-2401 (SRN/HB) (D. Minn. July 23, 2020) (citing *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 at *6). However, technology has allowed for remote depositions to be conducted routinely throughout the past two and a half years. Further, remote depositions are specifically allowed for in Fed. R. Civ. P. 30(b)(4), and they enhance the efficiency of depositions as well as protect the safety of all participants.

Defendants then argue that the test set out in *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2020 WL 3469166, at *13 (N.D. Ill. June 25, 2020) is inapplicable to this case

because, in that case, the party requesting that the depositions be conducted remotely was the party taking the depositions. However, the court in that case did not mention that posture as a factor in its decision. Indeed, in the test laid out by the court in *In re Broiler Chicken Antitrust Litig.*, the court refers to "the proponent" and "the opposing party," but it does not define those in terms of which party is taking the deposition. No. 1:16-cv-08637, at *7. Furthermore, the court in that case collected cases in which remote depositions were allowed, and not all those cases had the same requesting party.

Defendants then continue to rely on *Huddleston* to argue that (1) Plaintiff is "not a mere witness," and that (2) "Remote depositions do not allow the parties to ascertain whether a deponent is being coached, or answers are being provided, and unnecessarily complicate the process of displaying exhibits to a deponent." ECF No. 51 at 6 (citing *Huddleston v. Bowling Green Inn. of Pensacola, LLC*, 333 F.R.D. 581, 586-87 (N.D. Fla. 2019)). If this is true, then Defendants are conceding that the deposition of Defendant Strickman was unreliable, as that deposition was conducted remotely. Defendants further baselessly argue that videoconferencing will make it impossible for them to "examine the demeanor[,] tone and body language of Plaintiff." ECF No. 51 at 10. In fact, demeanor, tone, and body language are full visible via videoconference.

As for the assertion that such depositions "unnecessarily complicate the process of displaying exhibits," this is simply not accurate – with the current technology available via Zoom and other remote videoconferencing platforms, it is arguably significantly easier to display exhibits to a witness electronically via a screen with the click of a mouse than by shuffling endlessly through piles of paper.

Plaintiff is "not a mere witness" in this case, but as noted in Plaintiff's Motion, Defendants' reliance on *Huddleston* is misplaced. In *Huddleston*, the plaintiff was requesting the deposition to

3

be conducted via telephone, rather than video conferencing. Conducting a deposition of an important person via telephone would of course impede the questioner's ability to read nonverbal cues. These concerns are ameliorated with videoconferencing. *See e.g.*, *H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, Civ. No. 19-1095 (JNE/BRT) (D. Minn. Sep. 14, 2020) (finding that "Technology has improved such that counsel can observe witnesses rather closely; the size of the video display can be increased to further help counsel see the testifying witness better."). Videoconferencing technology also allows for a large number of documents to be included and referred to in the deposition, despite Defendant's claims to the contrary. *See Id.* (stating that "A 'document laden' or 'document intensive' deposition is [] 'not an obstacle to a successful remote videoconference deposition.'").

Next, Defendants argue that Plaintiff has failed to provide any evidence or reasonable rationale that returning to Nebraska would have a negative impact on her mental, emotional, and potentially physical health. Plaintiff does not argue that the topic of questioning – details of the harassment that Plaintiff suffered – is the basis for requesting a remote deposition. Rather, the stress of traveling to the state where she suffered the harassment is the basis for her request. Plaintiff had no connection to the State of Nebraska prior to arriving to complete her studies at UNL. After leaving in 2017, she hoped to never return to Nebraska – Lincoln, Omaha, or any other city. Her experience of abuse is tightly related to and triggered by the entire state. Locations are known to be triggers of trauma, and while Plaintiff will not be returning to the UNL campus, she will be returning to the state which has disturbing associations for her. University of Nebraska Chancellor Ronnie Green, to whom Plaintiff wrote to try to address her concerns about her harassment and the failures of UNL's Title IX office, and who ignored Plaintiff's letter, is the chancellor over both the Lincoln and Omaha campuses of the University of Nebraska. Plaintiff

wishes it were so simple as to turn off her trauma response with respect to cities other than Lincoln, but such is not possible. As to Defendants' argument that Plaintiff "has chosen the forum voluntarily," Plaintiff asks this Court to imagine for a moment what would have happened if she had filed this litigation in any other federal court – Defendants would have moved to have it dismissed for lack of jurisdiction, and their motion would have been successful. If Plaintiff could have filed her Complaint in any other state, she would have. However, only the District of Nebraska has jurisdiction over this matter.

Defendants completely disregard Plaintiff's concerns about COVID-19. However, the pandemic is still on-going, and travel and long hours in close quarters present risk, regardless of an individual's vaccination status or CDC guidance. The TSA is no longer requiring masking. COVID-19 is an airborne virus. It is common knowledge that many individuals in the United States who are engaging in air travel are not wearing masks; that COVID-19 vaccination has become politically fraught; that risks are increased not only on airplanes but also in airports; that air travelers are advised arrive at the airport at least two hours before one's flight departs; that at some point in a travel journey, one must remove one's mask to eat or, at a minimum, drink water; and that there is no way for an American air traveler, who shares a contained air environment with other passengers for an extended period, to ensure that those around her are COVID-19 free. See, e.g., William A. Haseltine, *Don't You Wish You Didn't Need To Breathe Someone Else's Exhaled Air While Flying?*, FORBES, Jun. 16, 2022, https://www.forbes.com/sites/williamhaseltine/2022/06/16/dont-you-wish-you-didnt-need-to-breathe-someone-elses-exhaled-air-while-flying/?sh=50bb99791ff2; Jamie Ducharme, *Why Experts Say You Should Keep Wearing a Mask on Planes*, TIME, Feb. 28, 2022, https://time.com/6151061/should-you-wear-mask-flights-covid-19-mandates/; Mika Gröndahl,

5

Tariro Mzezewa, Or Fleisher, & Jeremy White, *How Safe Are You From Covid When You Fly?*, N.Y. TIMES, Apr. 17, 2021, https://www.nytimes.com/interactive/2021/04/17/travel/flying-plane-covid-19-safety.html. Plaintiff faces a six-to-eight-hour door-to-door journey from her current place of residence to Defendants' counsel's office in Omaha, Nebraska. Plaintiff's COVID-19 concerns are well-founded and provide a legitimate basis for her request that her deposition take place via videoconferencing.

Finally, Plaintiff wishes to correct an error in Defendants' Response. Defendants write, "Particularly, Plaintiff alleges Roe kissed her in December of 2015, tried to hug her, told her he loved her, kicked her legs in the summer of 2015, and sent her unsolicited texts and emails of a sexual nature. [Filing No. 13, ¶ 45, 49, 50]." In fact, the attempted kiss occurred in December 2014: "On or about December 13, 2014, Roe kissed Plaintiff on the lips while they were in his office." ECF No. 13, ¶ 45.

As noted in Plaintiff's Memorandum in Support of Motion to Allow Remote Videoconferencing Depositions of Plaintiff, the proponent of a remote deposition must advance a legitimate reason for seeking a remote deposition, and once that reason is provided, the burden shifts to the opposing party to make a particularized showing that conducting the deposition remotely would be prejudicial. Plaintiff has provided legitimate reasons for seeking a remote deposition, and Defendants have failed to show how a remote deposition would be prejudicial. These evaluations are within the Court's broad discretion, under consideration of the facts in each case. *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, at *13.

### III. Conclusion

Given the facts here – that Plaintiff would suffer additional psychological, emotional, and potentially physical harm from returning to Nebraska, and that a remote deposition would not be

prejudicial – Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Allow Remote Videoconferencing Deposition of Plaintiff.

DATED: November 3, 2022

Respectfully submitted,

s/ Karen Truszkowski
Bar Number: P56929 (MI)
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
Telephone: (844) 534-2560
Fax: (800) 531-6527
Email: karen@temperancelegalgroup.com

s/ Elizabeth K. Abdnour
Bar Numbers: 0081795 (OH), P78203 (MI) ELIZABETH ABDNOUR LAW, PLLC 1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Email: elizabeth@abdnour.com

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I, Elizabeth Abdnour, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Google Docs word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify that this Brief contains 1952 words.

s/ Elizabeth K. Abdnour
ELIZABETH ABDNOUR LAW, PLLC
Attorney for Plaintiff

**PROOF OF SERVICE**

I hereby certify that on November 3, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

s/ Elizabeth K. Abdnour
ELIZABETH ABDNOUR LAW, PLLC
Attorney for Plaintiff