IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>                **Plaintiff,**<br><br>    vs.<br><br>**BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS,**<br><br>                **Defendants.** | 4:21CV3049<br><br>ORDER |

      This matter comes before the Court on Plaintiff's Motion to Compel Remote Videoconferencing Deposition of Plaintiff (Filing No. 48). Plaintiff resides in Austin, Texas, and Defendants noticed Plaintiff's deposition to take place on December 12, 2022, at defense counsel's office in Omaha, Nebraska. Plaintiff now moves the Court for an order directing her deposition to proceed via videoconferencing pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure.

## BACKGROUND

      Plaintiff commenced this action against Defendants for violations of Title IX and § 1983 on February 28, 2021. (Filing No. 1). Plaintiff alleges that in December 2014, shortly after she began a doctoral engineering program with the University of Nebraska-Lincoln (UNL), her advisor, Defendant John Roe, began sexually harassing her in her position as his research assistant. Plaintiff alleges Roe's sexual advances and harassment continued through 2016. Plaintiff alleges that in June 2016, she met with UNL's Office of Institutional Equity and Compliance (OIEC) to report Roe's sexual harassment and retaliation. After conducting an investigation, the OIEC concluded that Roe violated UNL's sexual harassment policy. Nevertheless, Plaintiff alleges she was forced to continue seeing Roe on campus from November 2016 to March 2017 because her office and labs were located in the same department as Roe. Plaintiff alleges Roe continued to violate a no-contact directive until Plaintiff ultimately made the decision to leave UNL in the summer of 2017 due to UNL's failure to protect her from Roe's continued harassment and stalking.

Plaintiff alleges Roe continued to harass and retaliate against her even after she left UNL and began a PhD program at a new academic institution. (Filing No. 13).

Defendants seek to depose Plaintiff on December 12, 2022, at defense counsel's office in Omaha, Nebraska. Plaintiff resides in Austin, Texas, and requests that her deposition be taken by videoconference. Plaintiff is concerned that she will experience mental, emotional, and psychological distress if she were to return to Nebraska due to her experiences of sexual harassment by Roe over the course of years and UNL's failure to respond to her reports. Plaintiff left Nebraska in 2017 and has not returned to the state since. Plaintiff is further concerned about unnecessary exposure to COVID-19 if she were forced to travel at this time. (Filing No. 49).

Defendants assert they are entitled to depose Plaintiff in the forum in which she has brought suit and that Plaintiff has not made a "compelling showing" that appearing for a deposition in Nebraska would "impose an unduly heavy burden." (Filing No. 51 at pp. 4-5). Defendants contend Plaintiff is a pivotal witness and it is important to depose her in person to assess her credibility and demeanor, affect, nonverbal responses, and facial expressions. Defendants further assert that "[r]emote depositions do not allow the parties to ascertain whether a deponent is being coached, or answers are being provided, and unnecessarily complicate the process of displaying exhibits to a deponent." (*Id.* at p. 6). Defendants additionally raise the argument that Plaintiff has offered no evidence supporting her positions in violation of NECivR. 7.1. (*Id.* at p. 7). Defendants contend their compromise of noticing Plaintiff's deposition to take place in Omaha would address her concerns regarding psychological and mental distress since the allegations in her complaint took place in Lincoln. (*Id.* at p. 8). Finally, Defendants argue that "general concerns regarding COVID-19, without specific evidentiary support, are not good cause to order remote deposition." (*Id.* at p. 9).

## ANALYSIS

Federal Rule of Civil Procedure 30(b)(4) provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). "Courts have long held that leave to take remote depositions pursuant to Rule 30(b)(4) should be granted liberally." *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, at *7 (N.D. Ill. June 25, 2020) (collecting cases). "All that is required to authorize a remote deposition is a legitimate reason put forward by the party proposing to take a

deposition by remote means." *Id.* (citing *Kaseberg v. Conaco, LLC*, 2016 WL 8729927, at *5 (S.D. Cal. Aug. 19, 2016). "Once the proponent of taking a deposition by remote means makes a sufficient threshold showing, the burden then shifts to the opposing party to show how it would be prejudiced if the deposition were taken in that way." *Id.* (citations omitted). "The decision whether to allow a remote deposition essentially involves a careful weighing of the reasons put forth by the proponent of the remote deposition and the claims of prejudice and hardship advanced by the party opposing the deposition." *Id.* (citing *Learning Resources, Inc. v. Playgo Toys Enterprises Ltd.*, 2020 WL 3250723, at *3-4 (N.D. Ill. June 16, 2020) and *Usov v. Lazar*, 2015 WL 5052497, at *2 (S.D. N.Y. Aug. 22, 2015)).

Additionally, "[a]lthough some courts speak colloquially about whether there is 'good cause' to take remote depositions allowed by Rule 30(b)(4), the Rule does not literally require the existence of good cause. Rather, it appears to leave it to the court's broad discretion over discovery to determine whether there is a legitimate reason to take a deposition by telephone or other remote means under all the facts and circumstances of a given case." *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 (citing *Roberts v. Homelite Div. of Textron, Inc.*, 109 F.R.D. 664, 666 (N.D. Ind. 1983)) ("Neither the rule itself nor the notes of the Advisory Committee list the criteria which the trial court should use in exercising its discretion under Rule 30(b)(4) . . . the better reasoned view gives the trial court the same discretion which it enjoys in resolving all other discovery disputes."); see also *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("A district court has very wide discretion in handling pretrial discovery[.]"); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("[M]agistrate judges are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.") (internal quotation marks and citation omitted). Rule 30(b)(4), like all rules, must be "construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." *List v. Carwell*, No. 18-CV-2253 (DSD/TNL), 2020 WL 5988514, at *7 (D. Minn. Oct. 9, 2020) (citations omitted).

Defendants first argue that Plaintiff "erroneously relies on cases where the question was whether leave to take a deposition remotely filed by the party who is *taking* the deposition should be granted." (Filing No. 51 at p. 5) (emphasis added). Defendants assert the framework outlined in *In re Broiler Chicken Antitrust Litigation* does not apply in this case because Defendants are the

3

parties planning on taking her deposition. Because Plaintiff is the deponent, Defendants contend a different, more stringent standard applies to her request for a remote deposition—Plaintiff must make a "compelling showing" that appearing in person for a deposition in Nebraska would "impose an unduly heavy burden." (*Id.* at p. 6) (citing *Moore v. Nebraska Beef, Ltd.*, No. 8:09-CV-00399, 2010 WL 3584390, at *1 (D. Neb. Sept. 7, 2010) (quoting *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 588 (D. Minn. 1999)). But, Rule 30(b)(4) makes no such distinction. Instead, the Rule simply states, "the court may on motion order [] that a deposition be taken by telephone or other remote means." Nothing in the Rule indicates different standards apply depending on the identity of the party moving for the remote deposition, and the framework in *In re Broiler Chicken Antitrust Litigation* is couched in terms of the "proponent of the remote deposition" and "party opposing the deposition," rather than "party noticing the deposition" and "party to be deposed." The Eighth Circuit Court of Appeals has not weighed in on any standard binding this court, and the decades-old cases cited by Defendants were decided at a time when videoconference technology was not as advanced as today. Instead, the Court finds the better, more commonsense reading of Rule 30(b)(4) is to put the initial burden on the party moving for a remote deposition—regardless of whether it is the party to be deposed or the party taking the deposition—to demonstrate a legitimate reason why the court should order the deposition to be taken remotely. If the party moving for a remote deposition makes that showing, then the burden shifts to the opposing party to show how it would be prejudiced if the deposition were taken remotely. What constitutes a "legitimate reason" and "prejudice and hardship" may differ depending on whether the party moving for the remote deposition is the deponent or the party taking the deposition. See, e.g., *Kerr Mach. Co. v. Li Gear, Inc.*, No. 19 CV 6942, 2022 WL 2982456, at *1 (N.D. Ill. July 28, 2022) (finding Plaintiff met its burden under Rule 30(b)(4) to show there were legitimate reasons for the Defendant's noticed depositions of Plaintiff to proceed by remote means, and Defendant had not shown it would be prejudiced if it was required to depose Plaintiff remotely, despite Defendant's insistence Plaintiff's depositions must take place in person "because, among other reasons Plaintiff filed suit in this district.").

The Court finds Plaintiff has met her burden to show legitimate reasons why her deposition should proceed remotely. Plaintiff is an individual residing in Austin, Texas. Plaintiff left Nebraska in 2017 and has not returned due to her experiences of sexual harassment by Roe over the course of years and UNL's failure to respond to her reports. Plaintiff is justifiably concerned

4

that she will experience mental, emotional, and psychological distress returning to the state due to her experiences. True, Plaintiff did commence her lawsuit in this court and thus has availed herself to Nebraska's jurisdiction. However, as Plaintiff points out, in order to attempt to obtain redress for the Defendants' alleged wrongs, no other forum but Nebraska could hear her suit. Certainly, Plaintiff will have to return to this state to testify if her case proceeds to trial, but on the record before the Court, it is unconvinced that it is necessary for Plaintiff to make her first return trip to Nebraska now. Plaintiff also cites a general concern about a desire to save money, which is also a valid reason to seek a remote deposition. (Filing No. 49 at p. 4; Filing No. 40-2 at p. 1); see *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *7 ("A desire to save money taking out of state depositions can suffice to show good cause to take a deposition by remote means."). Plaintiff is further concerned about unnecessary exposure to COVID-19 if she were forced to travel for this deposition, which continues to be a valid ongoing concern. See *H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, No. CV 19-1095 (JNE/BRT), 2020 WL 5512517, at *1 (D. Minn. Sept. 14, 2020) ("Health concerns created by the COVID-19 pandemic can be a legitimate reason to take a deposition by remote means.").

In response, Defendants contend they would be prejudiced by a remote deposition of Plaintiff because she is a pivotal witness and they need to assess her credibility and demeanor, affect, nonverbal responses, and facial expressions in person. Defendants assert the remote deposition would prevent them from ascertaining whether Plaintiff is being coached, being provided answers, and would complicate the process of displaying exhibits. Defendant's reasons for objecting to a videoconference deposition of Plaintiff are the same generic reasons why any party objects to remote depositions, but they have not explained how a videoconference deposition of Plaintiff is inadequate to address those concerns. See, e.g., *Grupo Petrotemex, S.A. de C.V. v. Polymetrix AG*, No. 16-CV-2401 (SRN/HB), 2020 WL 4218804, at *3 (D. Minn. July 23, 2020) ("If the lack of being physically present with the witness were enough prejudice to defeat the holding of a remote deposition, then Rule 30(b)(4) would be rendered meaningless."). "Attorneys and litigants all over the country are adapting to a new way of practicing law, including conducting depositions and deposition preparation remotely." *List*, 2020 WL 5988514, at *9 (D. Minn. Oct. 9, 2020). Since the promulgation of Rule 30(b)(4):

> technology has improved such that counsel can observe witnesses rather closely; the size of the video display can be increased to further help counsel see the testifying witness better. Plaintiffs claim burden and hardship because the

5

> depositions may be document intensive. The current technology, however, can be adapted to allow for documents to be displayed along with a view of the witness, and courts have "found that exhibits can be managed in remote depositions by sending Bates-stamped exhibits to deponents prior to the depositions or using modern videoconference technology to share documents and images quickly and conveniently." . . . A "document laden" or "document intensive" deposition is therefore "not an obstacle to a successful remote videoconference deposition." . . . In addition, there are many resources available from vendors and through the legal community to assist counsel in preparing for remote depositions. . . . Thus, Plaintiffs have presented no specific concerns for the participants that cannot be overcome, and Plaintiffs have not met their burden under the second prong of the analysis. . .to deny Defendant's request for remote depositions.

*H & T Fair Hills*, 2020 WL 5512517, at *3 (internal citations omitted). Further,

> Defendant's conclusory and speculative complaints about the possibility of witness coaching, difficulty handling exhibits, building rapport with witnesses, and judging body language are grievances that can be raised in any case and that lawyers have been addressing in video depositions for more than two years since the onset of the Covid-19 pandemic and prior to that as well. There are ways to deal with these issues and still move this case forward through discovery. . . . It is interesting to consider that before the world as we knew it ended with the advent of the Covid-19 pandemic, courts used to order depositions to proceed by video conference rather than by telephone specifically to address lawyers concerns with being unable to observe non-verbal conduct and witness demeanor.

*Kerr Mach.*, 2022 WL 2982456, at *2; see also *Shockey v. Huhtamaki, Inc.*, 280 F.R.D. 598, 602 (D. Kan. 2012) ("Taking the depositions via videoconferencing, as proposed by Plaintiffs here, addresses Defendant's objection that the deponent's nonverbal responses and demeanor cannot be observed.").

After weighing the reasons put forth by Plaintiff and Defendants' claims of prejudice and hardship, the Court finds Plaintiff's deposition should proceed remotely by videoconference. The Court is not discounting the importance of Plaintiff's deposition to Defendants' development of their defenses. But, ultimately the Court is not convinced that Defendants' general concerns about assessing Plaintiff's credibility and demeanor and use of documents, given the advancements in videoconference technology, show prejudice outweighing Plaintiff's legitimate reasons for seeking a remote deposition in this case.[1] *Cf. Edwards v. Thomas*, No. 4:19-CV-4018, 2021 WL

---

[1] If Defendants determine it is absolutely necessary to depose Plaintiff in person, they may travel to Austin, Texas to do so. This would address all of Defendants' concerns regarding potential coaching and ability to assess Plaintiff's demeanor in person, while also addressing Plaintiff's concerns with returning to Nebraska and traveling during a time when COVID-19 and other viral illnesses are beginning to peak once more. See, e.g., *Kerr Mach. Co.,*

6

8316970, at *2 (W.D. Ark. Nov. 18, 2021) (denying motion for remote deposition of expert witness because his testimony was complex and of "greater importance than a typical discovery deposition" because his deposition was being taken for the purpose of allowing that testimony to be used at trial). Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Compel Remote Videoconferencing Deposition of Plaintiff (Filing No. 48) is granted as set forth in this order.

Dated this 30th day of November, 2022.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

---

2022 WL 2982456, at *1 (concluding that "sitting for a deposition in a conference room in the city where the deponent resides is much different than requiring that deponent to travel by plane, through at least two airports, stay in a hotel for one or more nights, and interact with countless other people"). If defense counsel is not concerned with assuming the risks of COVID-19 to travel to Austin to take Plaintiff's deposition in person with proper COVID-19 protocols, then the Court will not prevent defense counsel from doing so.