# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>                      **Plaintiff,**<br><br>     vs.<br><br>**BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS,**<br><br>                      **Defendants.** | **4:21CV3049**<br><br>**ORDER** |

       This matter comes before the Court on the Motion to Strike Jury Demand (Filing No. 37) filed by Defendant, Board of Regents of the University of Nebraska ("BRUN"). BRUN requests that the Court strike Plaintiff's demand for a jury trial as to her remaining claim under Title IX contained in Count I of her second amended complaint (Filing No. 13). For the following reasons, the Court will grant BRUN's motion to strike.

## BACKGROUND

       As alleged by Plaintiff in her Second Amended Complaint (Filing No. 13), in 2014 Plaintiff enrolled at the University of Nebraska ("UNL") in the Department of Mechanical and Materials Engineering to pursue a PhD after receiving an offer to serve as research assistant for John Roe, a professor in the department. (Filing No. 13 at p. 7). In her role as Roe's research assistant, Roe was Plaintiff's PhD advisor and funded her research. (Filing No. 13 at p. 7). Less than seven months after starting the program, Plaintiff alleges she began to experience consistent and severe sexual harassment by Roe. (Filing No. 13 at pp. 7-13). Plaintiff reported the conduct to UNL's Office of Institutional Equity and Compliance ("IEC") in 2016. (Filing No. 13 at p. 8). Soon after, she received a letter from the IEC stating that Roe had violated BRUN's policy on sexual harassment. (Filing No. 13 at p. 8). The IEC told Plaintiff that Roe was to have no contact with her; however, Plaintiff alleges Roe continued to contact her because their offices were in the same department. (Filing No. 13 at p. 8). In 2017, Plaintiff filed another report with the IEC regarding Roe's alleged ongoing harassment, but received no follow-up. (Filing No. 13 at p. 9). Plaintiff

alleges she left UNL due to Roe's harassment, and continued to be contacted by Roe after she left. (Filing No. 13 at pp. 10-11). Plaintiff sent two additional emails to the IEC in 2017 regarding Roe, but Plaintiff received no response. (Filing No. 13 at pp. 10-11).

On February 28, 2021, Plaintiff commenced the instant action. (Filing No. 1). On July 27, 2021, Plaintiff filed a second amended complaint asserting the following claims: Violation of Title IX, Deliberate Indifference to Sex Discrimination (Count I); Violation of Title IX, Retaliation by Withholding Protection Otherwise Conferred by Title IX (Count II); Denial of Due Process pursuant to 42 U.S.C. § 1983 (Count III); and Denial of Equal Protection pursuant to § 1983 (Count IV). (Filing No. 13). Counts I and II are asserted against BRUN only, while Counts III and IV are asserted against both BRUN and Tamiko Strickman, as the former Associate to the Chancellor, Title IX Coordinator, and Director of the IEC. (Filing No. 13 at pp. 13-19).

Defendants filed a motion to dismiss all claims in Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on October 4, 2021. (Filing No. 18). Alternatively, Defendants moved the Court to strike all claims arising from actions or inactions by Defendants occurring before February 28, 2021, pursuant to Fed. R. Civ. P. 12(f). (Filing No. 18). The Court partially granted Defendants' motion and dismissed Count II against BRUN; Count IV against Strickman; and, as agreed by Plaintiff, dismissed Plaintiff's § 1983 claims against BRUN. (Filing No. 26 at pp. 24-25).

BRUN has now filed a motion to strike Plaintiff's jury demand as to her remaining claim against BRUN for deliberate indifference to sex discrimination under Title IX. (Filing No. 37). BRUN argues Plaintiff does not have a constitutional or statutory right to a jury trial against BRUN, as a state agency, because although Title IX waives the state's sovereign immunity from suit, there is no clear or express language waiving its sovereign immunity from jury trial. (Filing No. 38 at pp. 4-5).

## ANALYSIS

BRUN asserts neither Title IX nor the Seventh Amendment grants a right to a jury trial in a Title IX action against the state or a state entity. Before inquiring into the applicability of the Seventh Amendment in this case, the Court must first "'ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998) (quoting *Tull v. United States*, 481

U.S. 412, 417, n. 3 (1987)) (alteration in original; *accord* Curtis v. Loether, 415 U.S. 189, 192, n. 6 (1974) ("[T]he cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the (constitutional) question may be avoided.") In this case, the constitutional question cannot be avoided because the provisions of Title IX do not contain explicit textual authorization for a jury trial. See 42 U.S.C. § 2000d-7 (2018).

The right to a jury trial in suits over twenty dollars at common law is a protection guaranteed by the Seventh Amendment. U.S. Const. amend. VII. "[T]he thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791," and "applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989) (citing *Curtis*, 415 U.S. at 193). "To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought." *Tull v. United States*, 481 U.S. 412, 417 (1987). The Supreme Court has established a two-part test to determine whether the Seventh Amendment applies to a particular cause of action. See *id.* at 417-18. First, the court must compare the statutory action to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury. *Id.* If it is a type of action analogous to a suit customarily brought in the English law court, the court must next determine whether the remedy sought is legal or equitable in nature. *Id.* If the remedy sought is legal in nature, then the Seventh Amendment provides a right to a jury trial. See *id.*

In this case, the Court must first determine whether Plaintiff's cause of action against BRUN under Title IX is analogous to an action that could have been brought at law in 1791. *See Curtis*, 415 U.S. at 194; *Tull*, 481 U.S. at 417. When the Seventh Amendment was adopted, there was no action equivalent to Plaintiff's Title IX claim against BRUN. "[A]t common law no action for damages. . . lay against public officials acting in their official capacities as agents of the sovereign." *Buss v. Douglas*, 59 F.R.D. 334, 336 (D. Neb. 1973). "If the action is a common law suit or the particular issues arise in a common law suit, but no right of jury trial existed under the common law of England as to that type of action, then there is no right to a jury trial by virtue of the Seventh Amendment." *Westcott v. City of Omaha*, No. CV88-0-28, 1988 WL 383125, at *2

3

(D. Neb. Apr. 11, 1988). "[S]ince there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial." *Gragg v. City of Omaha,* 812 F. Supp. 991, 992-3 (D. Neb. 1993) (citing *Galloway v. United States,* 319 U.S. 372, 388-9 (1943)). As a state agency, BRUN is entitled to state sovereign immunity under the Eleventh Amendment, the Nebraska Constitution, and common law. See *Doe v. University of Nebraska,* 451 F. Supp. 3d 1062, 1101 (D. Neb. 2020). Although a sovereign may consent to a lawsuit against it or its agents, the consent must occur on the sovereign's own terms. See *United States v. Sherwood,* 312 U.S. 584, 586 (1941). "Courts 'give effect' to a state's waiver of sovereign immunity 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Church v. Missouri,* 913 F.3d 736, 743 (8th Cir. 2019) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 305 (1990)); see also *Burke v. Bd. of Trustees of Nebraska State Colleges*, 924 N.W.2d 304, 311 (Neb. 2019) ("A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction."). "[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); see also *Edwards v. Douglas Cnty.*, 953 N.W.2d 744, 750-51 (Neb. 2021) ("[S]tatutes purporting to waive the protection of sovereign immunity are to be strictly construed in favor of the sovereign and against waiver.").

Nebraska has waived its immunity on its own terms through the adoption of the Political Subdivision Tort Claims Act ("PSTCA"). See Neb. Rev. Stat. § 13-902. Under the PSTCA, Nebraska does not consent to a trial by jury, and instead requires suits to "be heard and determined by the appropriate court without a jury." Neb. Rev. Stat. § 13-907. The PSTCA provides:

> …no political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and that no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act. The Legislature further declares that it is its intent and purpose through this enactment to provide uniform procedures for the bringing of tort claims against all political subdivisions, whether engaging in governmental or proprietary functions, and that the procedures provided by the act shall be used to the exclusion of all others.

Neb. Rev. Stat. § 13-902.[1] The PSTCA defines a tort claim as "any claim against a political subdivision for money . . . caused by the negligent or wrongful act or omission of any employee within the political subdivision, while acting within the scope of his or her office or employment." Neb. Rev. Stat. § 13-903(4). If an officer or employee is acting within the scope of his or her office or employment and the conduct falls within an exception to Nebraska's waiver of tort immunity, the PSTCA bars a tort claim against the officer or employee, regardless of the capacity in which he or she was allegedly sued. *Davis v. Nebraska*, 902 N.W.2d 165, 181 (Neb. 2017). "Although Nebraska has, by statute, waived its sovereign immunity with respect to suits against its political subdivisions . . . this waiver is limited and does not permit such actions to be tried before a jury." *Villaneuva v. City of Scottsbluff,* No. 4:11CV31185, 2012 WL 45406 at * 1 (D. Neb. 2012) (citing *Rohren v. Centennial Public School Dist. 67-R,* 2007 WL 4118943 at *1 (D. Neb. 2007)).

Plaintiff argues that the PSTCA would not apply to this Title IX suit. (Filing No. 41 at p. 4). Even if that were true, Plaintiff still fails the first step of the Seventh Amendment analysis. The closest common law claim in 1791 to Plaintiff's Title IX claim is a tort claim. "[T]orts are remedies for invasions of certain rights, such as the rights to personal security, personal liberty, and property." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 727 (1999) (Scalia, J., concurring) (citation omitted). If, as Plaintiff argues, her claim under Title IX does not sound in tort and the PSTCA does not apply, there is no other clearly analogous claim customarily brought in the English law court in 1791. See, e.g., *Frosh ex rel. Rohrbouck v. N. Platte Pub. Sch.*, No. 7:06 CV 5014, 2006 WL 3388642, at *2 (D. Neb. Nov. 21, 2006) ("[S]uits against the State or a school district are not 'suits at common law.'"). Since there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial. *Villaneuva v. City of Scottsbluff*, No. 4:11CV3185, 2012 WL 45406 (D. Neb. Jan. 9, 2012); see also *Tull*, 481 U.S. at 417 (requiring the court to first compare the statutory action to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury).

Plaintiff also argues that because BRUN accepted federal funds, it waived its immunity in a Title IX claim. It is undisputed that a state voluntarily waives sovereign immunity against suits alleging Title IX violations by accepting federal financial assistance. *Fryberger v. Univ. of*

---

[1] The PSTCA does not apply to certain delineated cases, none of which are applicable here. See Neb. Rev. Stat. § 13-910.

5

*Arkansas,* 889 F.3d 471, 474 (8th Cir. 2018) (discussing 42 U.S.C. § 2000d-7(a)(1)). However, nothing in the language of Title IX or 42 U.S.C. § 2000(d)-7 explicitly imposes a waiver of sovereign immunity that includes a jury trial or that requires a trial by jury. Rather, the statute is silent on the issue of whether it provides a right to a jury trial. Without an explicit waiver of immunity as it relates to a jury trial, the Court will construe in favor of immunity. *See Blue Fox,* 525 U.S. at 261 ("[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign."); see also *Frosh ex rel. Rohrbouck,* 2006 WL 3388642, at *2 ("There is no provision in the Rehabilitation Act or the [Individuals with Disabilities Act] either imposing a waiver of sovereign immunity including a jury trial or even requiring trial by jury.").

BRUN, a state agency, has sovereign immunity. There is no provision in Title IX either imposing a waiver of sovereign immunity including a jury trial or even requiring trial by jury. Because there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial. As such, Plaintiff is not entitled to a jury trial for her claim against BRUN. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Strike Jury Demand (Filing No. 37) is granted. Plaintiff's demand for a jury trial as to her remaining claim under Title IX against BRUN is stricken.

Dated this 3rd day of March, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge