IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>    vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and individuals TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS;<br><br>        Defendants. | **CASE NO. 4:21-CV-3049** |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS ANDREW VERZILLI, LIN-CHI WANG, AND DR. FRANK OCHBERG, AND STRIKE DR. FRANK OCHBERG**

Submitted by:

Susan K. Sapp, #19121
Lily Amare, #25735
CLINE WILLIAMS WRIGHT JOHNSON
   & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, Nebraska 68508
(402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com
    AND
Bren H. Chambers, #23150
Deputy General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
(402) 472-1201
bchambers@nebraska.edu

September 15, 2023

## TABLE OF CONTENTS

I.    STATEMENT OF FACTS AND BACKGROUND.......................................................3

    A.    DESIGNATED EXPERT WANG. ..........................................................................3

    B.    DESIGNATED EXPERT VERZILLI.......................................................................5

    C.    DESIGNATED EXPERT DR. OCHBERG.................................................................5

II.    LEGAL STANDARD ...............................................................................................6

III.    ARGUMENT............................................................................................................9

    A.    WANG MUST BE EXCLUDED. ..............................................................................9

        1.    Wang is not qualified to give testimony in a case where the question is whether BRUN was deliberately indifferent to Plaintiff's concerns or whether Strickman violated due process..................10

        2.    Wang's testimony is not grounded in sufficient facts or data as required under FED. R. EVID. 702(b). ...........................................11

        3.    Wang has not identified any method for determining whether the university has violated Title IX or her standard of "best practices;" instead, her opinion is based on her subjective belief. ................14

    B.    VERZILLI MUST BE EXCLUDED. ........................................................................15

    C.    DR. OCHBERG SHOULD BE EXCLUDED AND STRICKEN....................19

        1.    Plaintiff's designation as it relates to Dr. Ochberg is patently deficient......................................................................................19

        2.    Dr. Ochberg's proposed topic of testimony is irrelevant and prejudicial. ................................................................................19

IV.    CONCLUSION.....................................................................................................20

In accordance with Local Rule NECivR 7.1, the Board of Regents of the University of Nebraska ("BRUN" or "Board of Regents") and Tamiko Strickman ("Ms. Strickman"), collectively "Defendants," respectfully submit this Brief in support of Defendants' Motion to Exclude Plaintiff's Experts Andrew Verzilli ("Verzilli") Lin-Chi Wang ("Wang") and Dr. Frank Ochberg ("Dr. Ochberg"), and strike Dr. Ochberg.

## I.   STATEMENT OF FACTS AND BACKGROUND

This is a case in which Plaintiff alleges BRUN was deliberately indifferent in violation of Title IX and Strickman violated her due process rights under the U.S. Constitution. This Court has held that "the defendants' conduct occurring prior to February 28, 2017, is **_time-barred_** and **_may not be used as the basis_** for defendants' liability." [Filing No. 26.]

A complete account of the facts in this case is found in Defendants' contemporaneously filed Statement of Undisputed Material Facts and is incorporated herein as though fully set forth herein. In addition, the following facts, which are particularly pertinent to this Motion, are added for purposes of this Motion.

## A.   DESIGNATED EXPERT WANG.

Wang has been designated by Plaintiff to opine as to whether the University of Nebraska-Lincoln ("University") responded correctly to Plaintiff's complaints against John Roe on or after February 28, 2017. Wang claims the University failed to live up to the "best practices" and "industry standards" of some ambiguous collective of schools Wang has worked for in the past, and Plaintiff fails to draw the parallel between Wang's testimony and the legal standards for proving Plaintiff's claims. Along with an extensive list of uncorroborated and unsupported factual allegations, Wang purports to offer the following opinions:

3

*First*, the University failed to follow its own procedures and practices in place at the time of Plaintiff's March 7, 2017, report. [Ex. S, Report of Wang at 9.]

*Second*, the University failed to follow Title IX "industry best practices" in responding to Plaintiff's March 7, 2017, report. [Id.]

*Third*, Plaintiff's March 7, 2017, report raises a concern of possible stalking. [Id. at 10.]

*Fourth*, the University should have met with Plaintiff to discuss her options for protective measures, resolution of the report, and whether the March 7, 2017, report constituted a possible policy violation. [Id.]

*Fifth*, following Plaintiff's September 27, 2017, and March 14, 2018, reports, the University should have met with Plaintiff or gathered more information on the reports, despite Plaintiff's lack of affiliation with the University at the time of both reports. [Id. at 11.]

*Sixth*, the University failed to respond appropriately to Plaintiff's September 27, 2017, and March 14, 2018, reports according to Title IX guidance and "best practices." [Id. at 12.]

Wang's offered opinions are irrelevant to Plaintiff's claims. Wang's opinions will have no use, other than to confuse the trier of fact as to the standards applicable to Title IX and due process claims.  In addition, Wang is not qualified to testify, nor is her testimony premised on reliable facts. Finally, Wang has provided no method or reliable procedure by which she evaluates whether a university has violated Title IX while responding to reports such as those alleged herein. For the reasons discussed below, Wang should be denied the opportunity to confuse the jury with her lack of expertise, inapplicable "industry standards" and "best practices," and opinion devoid of a methodical or recognized process.

4

**B.      DESIGNATED EXPERT VERZILLI.**

Plaintiff has designated Verzilli, an economic consultant, to testify regarding Plaintiff's alleged loss of earnings resulting from the alleged violations. Verzilli is expected to opine that Plaintiff's loss of earnings from an alleged delay from June 2018 to May 2022 in obtaining her Ph.D. amounts to between $481,871 and $537,879.

Plaintiff's attempt to prove a loss of income resulting from the alleged violations is not probative. The materials reviewed by Verzilli to arrive at his proffered opinion consist only of Plaintiff's Second Amended Complaint [Filing No. 13], Plaintiff's resume, an offer letter from Plaintiff's current employer, Plaintiff's W-2s, and various publications and sources not specifically identified in Verzilli's report. [Ex. U, Report of Verzilli at 1.] Verzilli's testimony is being offered, not to prove actual damages in this matter, but rather, to show the jury some amount, any amount, that the Plaintiff can call "damages" in support of Plaintiff's claims against BRUN and Strickman. Verzilli should be denied the opportunity to testify because his opinion is premised on speculation and hearsay, and his opinion was rendered using an unreliable method for determining economic losses.

**C.      DESIGNATED EXPERT DR. OCHBERG.**

Plaintiff has designated Dr. Ochberg to testify as to the "neurological and psychological effects of institutional trauma and betrayal on an individual," with no additional information about Dr. Ochberg's qualification particular to this case, his opinions, or the facts upon which he relies. [Ex. R, Plaintiff's Expert Designation.] Dr. Ochberg should not be permitted to testify because Plaintiff's designation is patently deficient. In addition, the proposed topic of testimony is wholly irrelevant, prejudicial and unhelpful to the trier of fact.

## II.   LEGAL STANDARD

"This Court acts as a gatekeeper, ensuring that only relevant and reliable scientific evidence is admitted at trial." *Gutherless v. Union Pac. R.R. Co.*, No. 8:20CV442, 2021 WL 5958355, at *1–2 (D. Neb. Dec. 16, 2021) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) and *Shipp v. Murphy*, 9 F.4th 694, 700 (8th Cir. 2021)). Rules 702 and 703 of the Federal Rules of Evidence, as interpreted in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), govern the admissibility of an expert witness's testimony. The party offering the expert testimony has the burden of establishing that such testimony is admissible under FED. R. EVID. 702 ("Rule 702") and *Daubert*. The *Daubert* analysis applies not just to scientific testimony, but to all proposed expert testimony, including testimony based on "technical" and "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 147–49.

Specifically, Rule 702 and *Daubert* require the following. ***First***, Plaintiff must show her experts have "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal citation omitted) ("evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact."). Moreover, Plaintiff must show the experts are qualified by their "knowledge, skill, experience, training, or education." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 915 (8th Cir. 2017) (explaining that the district court must determine whether the expert has "knowledge and experience [in] the relevant discipline.") (citation omitted).

"[E]xperts or skilled witnesses will be considered qualified if, and only if, they possess **special skill or knowledge** respecting the subject matter involved so superior to that of persons in general as to make the expert's formation of a judgment a fact of probative value." *Turner v. Moen Steel Erection, Inc.,* No. 806CV227, 2007 WL 1658683, at *7 (D. Neb. June 5, 2007) (quoting *Hoffart v. Hodge,* 9 Neb. App. 161, 173, 609 N.W.2d 397, 407 (2000)) (emphasis added). "The rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" *In re Initial Pub. Offering Sec. Litig.,* 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (noting "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").

**Second**, the Plaintiff must show that the proposed opinion is reliable or trustworthy. When evaluating the reliability requirement, the proponent of the testimony, Plaintiff, must comply with three additional criteria:

> **One:** **Plaintiff must show that "the testimony is based on sufficient facts or data." FED. R. EVID. 702(b).**

This means that an expert's opinions must be based on more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590. An "expert['s] testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Gutherless,* 2021 WL 5958355, at *1–2 (quoting *Masters v. City of Independence,* 998 F.3d 827, 838 (8th Cir. 2021)). *See also Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 758 (8th Cir. 2006) (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)) ("a court should not admit opinion evidence that 'is connected to existing data only by the *ipse dixit* of the expert'"); *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.,* 408 F.3d 410, 416 (8th Cir. 2005) (If an "expert's opinion is so

7

fundamentally unsupported that it can offer no assistance to the jury, it must be excluded"); *In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 931–32 (D. Minn. 2020) (holding FED. R. EVID. 703 does not allow the expert to serve as a conduit for inadmissible hearsay, nor does it permit him to testify as to an entities/person's mental state, intentions, plans, knowledge, or motivations).

**Two: Plaintiff must demonstrate that "the testimony is the product of reliable principles and methods." FED. R. EVID. 702(c).**

When evaluating the question of reliability, courts consider various non-dispositive factors, including but not limited to: "(1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted." *Gutherless*, 2021 WL 5958355, at *2 (quoting *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021). Courts can also consider other factors to assess reliability, including "factors such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon*, 270 F.3d at 687. In sum, "[t]o satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Marmo*, 457 F.3d at 757–58.

***Three*, Plaintiff must show that "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702(d).**

In doing so, the expert must employ the "same level of intellectual rigor" in their testimony as the practice of an expert in their relevant field. *Marmo*, 457 F.3d at 757 (quoting *Kumho Tire Co.*, 526 U.S. at 152).

Plaintiff's experts' proposed opinions fail to meet these standards.

### III.   ARGUMENT

### A.   WANG MUST BE EXCLUDED.

BRUN is in no way bound by Wang's opinion of "industry standard[s]" or "best practice[s]" when responding to reports that may or may not allege a Title IX complaint, nor is BRUN required to comply with regulatory *guidance* manuals published, and later rescinded, by the U.S. Department of Education.

The correct standard applicable to proving a legal claim for deliberate indifference is whether the University turned a blind eye and did nothing to reported harassment. Deliberate indifference is "a stringent standard of fault that cannot be predicated upon mere negligence." *Doe v. Bd. of Trustees of the Nebraska State Colleges*, No. 22-1814, 2023 WL 5211568, at *3 (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019). "Title IX is not a procedure for courts to second-guess disciplinary decisions made by school administrators." *Id.*

Instead of this correct standard, Plaintiff, through Wang, wants to posit a negligence standard and "best practices" standard through presentation of "industry standards" and outdated government guidance. Plaintiff also wants to present an opinion that the University is somehow required to respond to "potential" harassment, rather than actual reported harassment. Specifically, Wang's opinion responds to the specific question of whether "UNL respond[ed] *appropriately* (in compliance with all

internal and external policies, procedures, guidance, and industry standard best practices) to all reports of **_potential_** Title IX violations made by Jane Doe on or after February 28, 2017." [Ex. S, Report of Wang at 2.] And, in fact, Wang admitted during her deposition she did not consider the requirements of Title IX. [Ex. T, Dep. of Wang at 142:10-14.]

Unqualified testimony regarding ambiguous, subjective, and non-legally-binding standards of what one witness subjectively believes BRUN _should have done_ in response to Plaintiff's concerns has no relevance to Plaintiff's Title IX claim. Because such irrelevant testimony completely disregards the legal standard for proving Title IX deliberate indifference claim, all testimony from Wang should be excluded under Rule 702 as lacking probative value and unhelpful to the trier of fact.

1.   **Wang is not qualified to give testimony in a case where the question is whether BRUN was deliberately indifferent to Plaintiff's concerns or whether Strickman violated due process.**

Plaintiff claims BRUN was deliberately indifferent to her concerns and Strickman violated her due process rights. While Wang leans heavily on her experience as an investigator of sexual harassment allegations by individuals as sufficient experience to provide testimony herein, Wang has no experience investigating the question of whether a university has violated Title IX, or whether the policies or procedures of a university violate Title IX. [Ex. T, Dep. of Lin-Chi Wang at 59:4-60:22.]

Wang, in her deposition, states that her role as a third-party investigator is limited to fact-finding for purposes of creating a report for others to use in determining whether an individual engaged in sexual harassment. [Ex. T, Dep. of Lin-Chi Wang at 62:5-16.] Wang has no experience determining whether institutions or investigators assigned by institutions were deliberately indifferent under Title IX or violated the constitution of the United States.  Wang has never served as counsel for any plaintiff

or defendant in a case alleging Title IX or due process violations. [Ex. D, Dep of Wang at 67:9-18.] As a factfinder, Wang lacks experience drawing conclusions based on the facts of a particular set of circumstances, and yet purports to be an expert in a case where the question is whether a university has violated Title IX and whether a University official violated due process rights.

Most significantly, prior to this case, Wang has never provided expert services in any capacity to any entity. [Ex. D, Dep of Wang at 10:16-24, 71:16-19.] Wang does not have training or experience in determining or providing counsel as to whether a university has violated Title IX or due process rights, and therefore, pursuant to FED. R. EVID. 702(a) should not be given the opportunity to advise the jury on such matters.

## 2. Wang's testimony is not grounded in sufficient facts or data as required under FED. R. EVID. 702(b).

Wang's testimony does not meet the requirement of FED. R. EVID. 702(b) because Wang's opinion is not grounded in facts or data sufficient to render an expert opinion. Information provided to Wang by Plaintiff's counsel includes Plaintiff's complaints, documents produced by BRUN, BRUN's policies, this Court's order on Defendants' motion to dismiss, the deposition of Tami Strickman, and U.S. Department of Education guidance, which has since been rescinded. [Ex. X, Report of Wang at 3.]

Wang claims BRUN failed to properly investigate concerns of Plaintiff, while clearly failing to gather information sufficient to support her subjective opinion. At no time has Wang had a conversation with Plaintiff or John Roe regarding the circumstances of Plaintiff's concerns. [Ex. T, Dep. of Lin-Chi Wang at 12:23-25.] At no time has Wang had a conversation with Officer Eric Fischer, the UNLPD officer who was involved with the investigation of Plaintiff's allegations and concerns. [Ex. T, Dep.

of Lin-Chi Wang at 12:20-22.] At no time has Wang met with any BRUN officials. [Ex. T, Dep. of Lin-Chi Wang at 13:1-4.] Wang does not know the size of the University and, in fact, has never been to the University. [Ex. T, Dep. of Lin-Chi Wang at 53:15-17; 86:4-6.] Wang does not know the University is governed by BRUN. [Ex. T, Dep. of Lin-Chi Wang at 53:18-20.] Wang is unaware of the type of Title IX process that is utilized by the University. [Ex. T, Dep. of Lin-Chi Wang at 53:21-24.] Wang is unaware of the size of the Title IX office at the University. [Ex. T, Dep. of Lin-Chi Wang at 53:25-54:2.] Wang has not had any conversations with anyone regarding what Title IX policies or processes were utilized by the University or why any particular policies or processes were used. [Ex. T, Dep. of Lin-Chi Wang at 54:3-6.] Wang has never requested information regarding this case other than what was provided to her from Plaintiff's counsel. [Ex. T, Dep. of Lin-Chi Wang at 86:7-9.]

Wang testified in her deposition that for purposes of her expert report, all facts provided to her by the Plaintiff were taken as true. [Ex. S, Report of Wang at 3.] Wang's report lists almost three full pages of (alleged) facts she has derived from the information provided by plaintiff's counsel (albeit incomplete information), yet still claims she is not a fact-finder for purposes of her report. [Ex. S, Report of Wang at 3; Ex. T, Dep. of Lin-Chi Wang at 92:21-93:10; 94:1-4.]  Wang further testified that she has not reviewed Defendants' answers to Plaintiff's Complaints herein because she was unaware such existed. [Ex. T, Dep. of Lin-Chi Wang at 91:14-92:1]. Having reviewed only one side of the pleadings and taking Plaintiff's allegations as "true," Wang cannot be said to have rendered an objective and unbiased report.

Wang willfully excluded from her report relevant factual evidence that would support BRUN's defense to Plaintiff's claim. [Ex. S, Report of Wang at 5, ¶ M; Ex. T, Dep. of Lin-Chi Wang at 94:12-21.] Despite reviewing the notes of Officer Fischer from

his meeting with Plaintiff on March 10, 2017, Wang excluded from her report the fact that during such meeting Plaintiff said she had not received any threats, e-mails, calls, or messages from John Roe. [Ex. T, Dep. of Lin-Chi Wang at 94:12-96:15.] Wang's report also fails to include the fact that Plaintiff reported to Officer Fischer that she felt comfortable still doing her work and going to class. [Ex. T, Dep. of Lin-Chi Wang at 96:16-97:15.] Wang's explanation for excluding this highly relevant information is that the information "did not stand out to [her]." [Ex. T, Dep. of Lin-Chi Wang at 94:22-95:17; 96:16-97:1.] Wang claims that such evidence was immaterial as to whether BRUN was responding appropriately to Plaintiff's complaints. *Id.* It is shocking to believe that this highly relevant evidence did not stand out to Wang, who purports to be a seasoned investigator. Clearly Wang was not taking into account all evidence relevant to a claim of deliberate indifference against BRUN.

Because one element that must be proven in a Title IX claim of deliberate indifference is whether the Plaintiff "was subjected to sexual harassment or discrimination that was **so severe, pervasive and objectively offensive that it effectively bars access to an equal opportunity education**," evidence that Plaintiff had received no threats, e-mails, calls, or messages from John Roe, and that Plaintiff still felt comfortable going to class and doing her work would clearly be relevant to whether BRUN responded appropriately to Plaintiff's complaints under Title IX. *KD v. Douglas Cty. Sch. Dist. No. 001*, 1 F.4th 591, 598 (8th Cir. 2021) and *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017). Wang's exclusion of evidence so plainly important to BRUN indicates either that Wang is significantly unqualified in identifying and testifying to matters relevant here, or Wang's willful bias against BRUN and lack of objectivity in rendering her opinions. Under either theory, Wang's opinion is not reliable under the *Daubert* standard for failure to support her opinion upon

13

sufficient facts and data, should not be heard by the jury pursuant to FED. R. EVID. 403 as prejudicial to BRUN, and should be summarily excluded under FED. R. EVID. 702(a) because Wang is clearly incompetent to testify and render an expert opinion.

Wang also includes facts in her report that have no basis in evidence such as ¶ R, which indicates "John Roe continued to stare and say hello to Jane Doe in the hallway as the school year went on. It appears that Jane Doe did not report these additional encounters to UNL." [Ex. S, Report of Wang at 5, ¶ R]. When asked in her deposition where she got such information, Wang replied, "I don't know. I am not sure." [Ex D, Dep of Wang at 97:16-21.] Wang agreed that information to the contrary would be relevant to her opinion, yet never requested such information. [Ex D, Dep of Wang at 97:21-99:21.] Wang's opinion should be excluded because it has obvious factual discrepancies, which make it unreliable under the *Daubert* standard.

**3.     Wang has not identified any method for determining whether the university has violated Title IX or her standard of "best practices;" instead, her opinion is based on her subjective belief.**

Wang in her expert opinion has not described a standard applicable to the Plaintiff's claim of deliberate indifference or violation of due process. Over and over, Wang testified in her deposition that she was not asked to determine whether BRUN violated Title IX, but was rather, asked to determine whether BRUN responded appropriately to Plaintiff's complaints with regard to BRUN's own policies and procedures and alleged "best practices" in the "industry." [Ex. S, Report of Wang.]

Wang relies heavily on one particular guidance document published by the U.S. Department of Education, which outlines certain regulatory ***guidance*** for recipients bound by Title IX. [Ex. S, Report of Wang at 3; Ex. T, Dep of Wang at 81:11-17.] *See* U.S. Dept. of Education, Office of Civil Rights, Title IX Resource Guide, effective April 24, 2015, rescinded on August 26, 2020. Despite her extensive reliance on the

14

Resource Guide, Wang admits she has not researched whether courts use such guidance in deciding cases. [Ex. T, Dep of Wang at 82:11-14.] Wang claims that the industry standard and best practices she refers to throughout her report should be considered both a requirement for universities and a guidance for following Title IX. [Ex. T, Dep of Wang at 104:4-106:7.] To the contrary, the Eighth Circuit has held such documents are guidance documents and do not add requirements to applicable law. *See Doe v. Univ. of Arkansas-Fayetteville*, No. 5:18-CV-05182, 2019 WL 1493701, at *1 (W.D. Ark. Apr. 3, 2019), *aff'd in part, rev'd in part and remanded sub nom. Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858 (8th Cir. 2020) ("A 'Dear Colleague Letter' is a guidance document. Guidance documents "do[ ] not add requirements to applicable law.". . . Rather, the "Dear Colleague Letter" was intended to inform schools of how the Office of Civil Rights evaluates whether they are complying with their Title IX obligations.").

Wang clearly confuses the nonbinding nature of guidance documents with the legal standard with which universities must comply under Title IX. In failing to describe a standard applicable to BRUN from which BRUN deviated in violation of Title IX, Wang fails to render an opinion relevant to this matter and should be excluded from testifying on the additional ground that Wang is not rendering her opinion pursuant to a reliable method as required by Fed. R. Evid. 702(c).

## B.   VERZILLI MUST BE EXCLUDED.

Verzilli offers an opinion based upon speculation, erroneous assumptions, and inadmissible hearsay. Moreover, Verzilli's method is unreliable and he failed to apply principles and methods to the facts of this case.

Verzilli's entire factual basis for his opinions was derived from his review of Plaintiff's Second Amended Complaint and discussions with Plaintiff's counsel. [Ex. V,

Dep. of Verzilli at 8:21-9:2.] Verzilli has never spoken with Plaintiff. [Ex. V, Dep. of Verzilli at 14:17-22.] Verzilli has never seen a transcript, memorandum of courses, or any other educational record of Plaintiff, nor did Verzilli speak with anyone at the University related to the educational status of Plaintiff. [Ex. V, Dep. of Verzilli at 16:15-20; 41:22-43:1.] Verzilli did not even know when Plaintiff switched from the Ph.D. program to the Master's program at the University. [Id.]

As a threshold matter, as thoroughly discussed in Defendants' Brief in Support of their Motion for Summary Judgment, Plaintiff is not entitled to any economic damages in the form of loss of income because the alleged loss of income cannot be tied to conduct post- February of 2017. As provided in the Statement of Undisputed Facts, Plaintiff switched to a Master's program in July of 2016 and decided to attend Georgia Institute of Technology Ph.D. program pre- February of 2017. Yet, Verzilli assumes that Plaintiff suffered loss of income post-February of 2017, without any investigation of this issue and with zero facts to support that assumption. Therefore, this court should exclude all testimony of Verzilli as such testimony lacks probative value pursuant to Federal Rules of Evidence 401 and 702.

Moreover, even though Plaintiff's Second Amended Complaint [Filing No. 13] makes no allegation as to when Plaintiff would have completed a Ph.D. program at the University of Nebraska, Verzilli theorizes that if Plaintiff had remained at the University of Nebraska, Plaintiff would have obtained her Ph.D. in June 2018, within one year of completing her Master's degree. [Ex. U, Report of Verzilli at 1.] Plaintiff's counsel provided this information to him. [Ex. V, Dep. of Verzilli at 64:14-22.] He also erroneously assumes Plaintiff "abandoned" the Ph.D. program post- February of 2017.

The information provided by Plaintiff's counsel, without supporting evidence, is an out of court statement offered for its truth and is therefore treated as inadmissible hearsay under FED. R. EVID. 801 and 802. Further, hearsay information is not information properly relied upon by economic experts rendering opinions pursuant to FED. R. EVID. 703.

Because this underlying factual information is entirety unsupported and because the only other factual information provided to Verzilli was through discussion with Plaintiff's counsel, the premise that Plaintiff would have finished her Ph.D. in June 2018 is speculative and inadmissible hearsay of Plaintiff's counsel and any opinion based thereupon should be excluded, i.e. his entire report. [Ex. V, Dep. of Verzilli at 8:21-10:13.] *See In re ResCap Liquidating Tr. Litig.,* 432 F. Supp. 3d 902, 931–32 (D. Minn. 2020) (holding FED. R. EVID. 703 does not allow the expert to serve as a conduit for inadmissible hearsay).

Verzilli agrees that Plaintiff's actual loss of earnings would be substantially different from the amount stated in his report if Verzilli's assumption that Plaintiff would have graduated with a Ph.D. in June of 2018 were incorrect. [Ex. V, Dep. of Verzilli at 43:2-17.]   Similarly, Verzilli assumes that Plaintiff would have moved to Austin, Texas had she completed her Ph.D. in June 2018, without any evidence to support such assumption. [Ex. V, Dep. of Verzilli at 52:3-10.] Furthermore, again without verifying, Verzilli assumed that Plaintiff's status in the United States in June of 2018 would have allowed her to continue working for an additional three to five years following June of 2018. [Ex. V, Dep. of Verzilli at 15:8-16:14; 62:6-11.] Again, Verzilli undermines his own report by agreeing that Plaintiff's immigration status in June of 2018, which he did not verify, would affect his opinion. [Ex. V, Dep. of Verzilli at 62:6-17.]   Accordingly, Verzilli agreed that if circumstances changed when Plaintiff

was expected to receive her Ph.D., or if her immigration status changed, his opinion as to damages incurred by Plaintiff would need to be altered.  [Ex. V, Dep. of Verzilli at 75:9-22.]

For these reasons, Verzilli should be excluded from testifying due to the significant speculation required for Verzilli to opine as to alleged loss of earnings by Plaintiff. FED. R. EVID. 702(b); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) (An expert opinion cannot be grounded in "subjective belief or unsupported speculation.").

Verzilli's method for arriving at a range of Plaintiff's alleged loss of earnings is sporadic, at best. Verzilli, an economist without engineering experience, estimated that Plaintiff would recoup her alleged lost earnings within three to five years of receiving her Ph.D. in May 2022. [Ex. V, Dep. of Verzilli at 66:22-67:21.]  To determine the earnings Plaintiff lost, Verzilli relied upon salary data from multiple sources which were not specific to Plaintiff's demographical data as a woman of her age in the engineering field. [Ex. V, Dep. of Verzilli at 67:22-68:24; 55:23-58:3.] Verzilli offers no substantive explanation for why he used salary data from Austin, Texas as opposed to Nebraska or Georgia except that Austin was where Plaintiff was located in 2022. [Ex. V, Dep. of Verzilli at 53:2-14.] Verzilli clearly speculates as to the locality where Plaintiff would have earned salary had she completed her Ph.D. program in June of 2018 in Lincoln, Nebraska and offers no objective reason or method for choosing one locality over another when analyzing lost earnings. [Id.] Accordingly, Verzilli's opinions and report must be excluded.

**C.      DR. OCHBERG SHOULD BE EXCLUDED AND STRICKEN.**

**1.      Plaintiff's designation as it relates to Dr. Ochberg is patently deficient.**

Plaintiff's designation of Dr. Ochberg fails to satisfy the basic requirements of Fed. R. Civ. P. 26(a). Plaintiff's designation, other than identifying the topic Dr. Ochberg is expected to testify, fails to provide: a written report, complete statement of all opinions and the basis and reasons for them, the facts or data relied upon, his qualifications particular to this case, list of all cases he testified as expert at trial or by deposition and a statement of the compensation paid for the study and testimony in this case. The designation does not even provide the summary of the facts and opinions to which Dr. Ochberg is expected to testify.

This failure to comply with the disclosure requirements of FED. R. CIV. P. 26(a) forecloses Plaintiff's ability to use such proposed testimony. Specifically, FED. R. CIV. P. 37(c)(1) provides in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See also Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 708 (8th Cir. 2018). Accordingly, Dr. Ochberg must be stricken and should not be allowed to provide evidence on a motion or at trial.

**2.      Dr. Ochberg's proposed topic of testimony is irrelevant and prejudicial.**

Plaintiff's limited disclosure of Dr. Ochberg's intended topic of testimony indicates Dr. Ochberg will attempt to give testimony as to the "neurological and psychological effects of institutional trauma and betrayal on an individual." [Ex. R, Plaintiff's Expert Designation.]

19

Any testimony regarding psychological and neurological impact is irrelevant to this case. First, to the extent such is offered for purposes of the Title IX claim, it must not be considered.  As the Supreme Court recently held, emotional damages are unavailable in cases involving Spending Clause legislation such as Title IX (see Brief in support of Motion for Summary Judgment for complete analysis of this issue). *Cummings v. Premier Rehab Keller*, P.L.L.C., 142 S. Ct. 1562, *reh'g denied*, 142 S. Ct. 2853 (2002).   In *Cummings*, the Court expressly addressed whether emotional damages are an available remedy in cases where the cause of action is based on statutes which prohibits recipients of federal financial assistance from discriminating based on certain protected grounds.  These so-called Spending Clause statutes include Title IX.  *Cummings*, 142 S. Ct. 1562 at 1570.  The Court expressly held damages for emotional distress are not an available remedy under Spending Clause antidiscrimination statutes.  *Id.* at 1572.

In addition, such testimony is irrelevant and prejudicial as there are no expert witnesses who are designated by Plaintiff to testify she is suffering from some sort of psychological and neurological condition. Accordingly, when there is no expert testimony that Plaintiff is suffering from medical condition or testimony establishing a causal connection between any medical (psychological or neurological) condition to the alleged violations, the proposed topic of testimony by Dr. Ochberg is not helpful to the trier of fact, is prejudicial and irrelevant.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court grant their Motion to Exclude Expert Testimony and opinions offered by the above-mentioned experts and to strike.

Dated this 15th day of September, 2023.

<div style="margin-left:40%;">

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA and TAMI
STRICKMAN, individually and in her
official capacity, Defendants

</div>

By:    /s/ Lily Amare
          Susan K. Sapp #19121
          Lily Amare #25735
          Cline Williams Wright
            Johnson & Oldfather, L.L.P.
          1900 U.S. Bank Building
          233 South13th Street
          Lincoln, NE 68508
          (402) 474-6900
          ssapp@clinewilliams.com
          lamare@clinewilliams.com

            AND

          Bren H. Chambers, #23150
          Deputy General Counsel
          University of Nebraska
          3835 Holdrege Street
          Lincoln, NE 68583-0745
          (402) 472-1201
          bchambers@nebraska.edu

## CERTFICATE OF COMPLIANCE

I, Lily Amare, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Microsoft Word 2013 word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 5,859 words.

          s/Lily /Amare
          Lily Amare

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 15, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

                                  /s/Lily /Amare
                                  Lily Amare

4873-0189-6814, v. 2