IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JANE DOE,

          Plaintiff,

   vs.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA; and
individuals TAMIKO STRICKMAN
and JOHN ROE, individually and
in their official capacities; and
OTHER        UNIDENTIFIED
DEFENDANTS;

          Defendants.

**CASE NO. 4:21-CV-3049**

---

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Submitted by:

Susan K. Sapp, #19121
Lily Amare, #25735
CLINE WILLIAMS WRIGHT JOHNSON
   & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, Nebraska 68508
Telephone: (402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com
     AND
Bren H. Chambers, #23150
Associate General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
(402) 472-1201
September 15, 2023      bchambers@nebraska.edu

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY ...............................................................................4

II.    INTRODUCTION.........................................................................................5

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS.......................................7

IV.    STANDARD OF REVIEW.............................................................................7

V.    ARGUMENT...............................................................................................8

    A.    PLAINTIFF CANNOT SHOW ANY DAMAGES THAT ARE RECOVERABLE UNDER TITLE IX........................................................8

        1.    Plaintiff Cannot Recover Emotional Distress, Reputational Harm or Punitive Damages. .....................................................8

        2.    Plaintiff Has Not Suffered Any Special Damages as a Result of BRUN's Alleged Conduct Post-February of 2017. ...................11

        3.    Plaintiff Does Not Have Standing to Assert a Third-Party's Rights or Interest (Her Husband's Interest.)...........................13

    B.    PLAINTIFF CANNOT SHOW BRUN VIOLATED TITLE IX IN 2017......14

        1.    Plaintiff Cannot Show She Was Subjected to Discrimination or Harassment on the Basis of Her Sex After February of 2017. .17

            a.    March of 2017 Concern    ............................................19

            b.    September of 2017 Concern......................................20

                i.    Plaintiff has no standing to bring a Title IX complaint once she was no longer enrolled at the University of Nebraska...............................20

                ii.    Roe's singe email to a group of individuals in which Doe was copied cannot be considered sexual harassment..........................................21

        2.    Plaintiff Cannot Show That an Appropriate Person Knew of Any Harassment or Discrimination. ..............................................21

        3.    Plaintiff Cannot Show Deliberate Indifference. .......................22

        4.    Plaintiff Cannot Show BRUN's Deliberate Indifference Caused Plaintiff to Undergo Harassment or Make Her Liable or Vulnerable to It....................................................................23

C.     PLAINTIFFF CANNOT SHOW A DUE PROCESS, § 1983 VIOLATION.24

     1.     Plaintiff Did Not Have a Protected Life, Liberty or Property Interest with Respect to Her Claims Against Strickman. ........24

     2.     Strickman Did Not Violate Plaintiff's Substantive Due Process. ..........................................................................28

     3.     Strickman Did Not Violate Any Process or Procedure That Was Constitutionally "Due." ........................................................30

     4.     Strickman is Entitled to Qualified IOmmunity. ......................31

     5.     Plaintiff Cannot Assert her Husband's Interest. .....................33

D.     THIS COURT SHOULD GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ENTER FINAL JUDGMENT AS THERE ARE NO ADDITIONAL, VIABLE DEFENDANTS LEFT. ......................33

VI.     CONCLUSION .........................................................................34

In accordance with Federal Rules of Civil Procedure 56 and Local Rules NECivR 7.1 and 56.1, the Board of Regents of the University of Nebraska ("BRUN" or "Board of Regents") and Tami Strickman ("Strickman"), collectively referred to as "Defendants," respectfully submit this Brief in support of their Motion for Summary Judgment.

## I.   <u>PROCEDURAL HISTORY</u>

On July 27, 2021, Plaintiff filed a Second Amended Complaint against BRUN and Strickman, among others. [Filing No. 13.] Defendants filed a Motion to Dismiss and Strike, which was granted in part and denied in part. Specifically, Plaintiff's Title IX retaliation and 1983 equal protection claims were dismissed. Moreover, all section 1983 claims against BRUN were dismissed. The Court also held "the defendants' conduct occurring prior to February 28, 2017, is time-barred and may not be used as the basis for defendants' liability." Accordingly, only the following claims, to the extent not time-barred, remain:

- Against BRUN, Count I, Violation of Title IX, Deliberate Indifference to Sex Discrimination ("Title IX"); and

- Against Strickman, in her individual capacity, violation of the Due Process Clause.

During the pendency of this litigation, Plaintiff never identified the "other unidentified defendants" she sued and did not serve John Roe.

4

## II.   **INTRODUCTION**

Plaintiff is a former student of the University of Nebraska. Plaintiff's lawsuit is premised on her allegation that she was unable to finish her Ph.D. program at the University and had to start her degree over entirely at another university because the Defendants did not appropriately respond to an allegation of harassment in violation of Title IX and Due Process.

The Defendants are entitled to judgment in their favor for various reasons. First, Plaintiff graduated from the University of Nebraska with her chosen degree in August of 2017. Contrary to Plaintiff's allegations, Plaintiff initiated the process to switch from her initial degree objective, Ph.D., to a Master's program in ***June of 2016***. Plaintiff applied for the Master's program in ***June and* early *July of 2016*** and submitted her Memorandum of Courses for the Master's program in ***August of 2016***. Thereafter, in the fall of 2016, she applied to join Georgia Institute of Technology's ("Georgia Tech") Ph.D. program. Accordingly, the events related to her decision to join Georgia Tech occurred in 2016 and are unrelated to the alleged harassment in 2017, the only allegation at issue in this lawsuit.

Second, the University issued a no contact directive and separated Plaintiff and John Roe pre-February of 2017. Specifically, Strickman directed Plaintiff and Roe to not engage in any intentional contact with one another directly or through a third party. It was also determined John Roe would no longer serve in any capacity as Plaintiff's advisor or play any role in decisions related to her academic endeavors. From July of 2016 through her graduation in August of 2017, another individual served as Plaintiff's advisor. In fact, on July 26, 2016, Plaintiff reported

5

to Strickman and Officer Eric Fischer ("Officer Fischer") that she had no safety concerns, because she had a new office, new advisor, and new team.

Third, there was no sexual conduct, abuse, harassment, or any threatening behavior exhibited by John Roe towards Plaintiff post-February of 2017 that would trigger Title IX or Due Process under the U.S. Constitution.

When Plaintiff expressed concern about John Roe smiling and attempting to say "hello" when they ran into each other in a common space, Strickman took her concern seriously by responding to Plaintiff almost immediately. She told Plaintiff that she would tell John Roe not to smile or attempt to say "hello" during any random encounters, which Strickman did. Furthermore, Strickman arranged for a safety planning meeting with Office Fischer, at which time Plaintiff affirmed she felt comfortable attending classes and going to work. At this meeting, Plaintiff also confirmed John Roe did not engage in any threatening behavior towards her.

The University did not receive any additional reports of concern from Plaintiff for the remainder of her time at the University. Plaintiff went on to successfully graduate with her chosen degree: Master of Science in Mechanical Engineering and Applied Mechanics program.

Finally, Plaintiff also argues Roe emailed her after she was no longer enrolled at the University. Even if Roe had directly emailed her--which he did not—Plaintiff was no longer trying to take advantage of the educational opportunities at BRUN. In other words, she had no relationship with the University. Therefore, Title IX and Due Process are inapplicable to any allegations based on conduct that occurred after she graduated and left BRUN.

### III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to NECIVR 56.1(a) & (f), Defendants incorporate their Statement of Undisputed Material Facts filed contemporaneously herewith.

### IV.   STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  As such, the movant "bears the initial responsibility of informing the district court of the basis for its motion" and must "identify those portions of the record which it believes demonstrates the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once movants meet their burden, the plaintiff must respond by setting forth "specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial." *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (quoting *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on which the finder of fact could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791–92 (8th Cir. 2011). "[T]he nonmoving party must 'substantiate his

7

allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putnam v. Unity Health Sys.*, 348 F.3d 732, 733–34 (8th Cir. 2003) (citation omitted).

## V. **ARGUMENT**

### A.    PLAINTIFF CANNOT SHOW ANY DAMAGES THAT ARE RECOVERABLE UNDER TITLE IX.

Plaintiff seeks non-economic damages, special damages, punitive damages, statutory damages, and attorney's fees and costs. [Filing No. 13, at pp. 20-21.] Plaintiff's alleged damages are premised on her allegation that she decided to leave the University in the summer of 2017 "due to UNL's failure to protect her from Roe's continued harassment and stalking." We now know that is not true.

### 1.    Plaintiff Cannot Recover Emotional Distress, Reputational Harm or Punitive Damages.

A private right of action for damages under Title IX, as Spending Clause legislation, is permitted only under limited circumstances. *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979); *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76 (1992). This is because "legislation enacted pursuant to the spending power is much in the nature of a contract, and the legitimacy of Congress' exercise of its power to condition funding on state compliance with congressional conditions rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 655 (1999) ("*Davis*"). In *Gebser* and *Davis*, the U.S. Supreme Court emphasized the importance of close scrutiny of the scope and construction of Title IX to ensure the recipient of federal funds has "notice that it will be liable for

8

monetary awards," before subjecting the recipient to damages liability. *Davis*, 526 U.S. at 641; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). In other words, "if there were any ambiguity, that very ambiguity would require us [The Court] to adopt the less expansive reading of Title IX." *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 628, 629 (6th Cir. 2019).

On April 28, 2022, the U.S. Supreme Court, in *Cummings v. Premier Rehab Keller PLLC*, addressed whether emotional distress is appropriate relief in a private right action to enforce a Spending Clause statute, such as Title IX. 142 S.Ct. 1562 (2022). The Court in *Cummings* found that Congress did not give clear notice to funding recipients that they could be held liable for emotional distress damages. *Id.* at 1580. In reaching this conclusion, the Court relied on an earlier case, *Barnes v. Gorman*, 536 U.S. 181 (2002), which held that remedies for a violation of a Spending Clause statute are limited to "those remedies 'that [are] normally available for contract actions.'" *Cummings*, 142 S.Ct. at 1571. In *Barnes,* the Court held that punitive damages are not available to enforce the Rehabilitation Act, because punitive damages are not "traditionally" available for breach of contract. 536 U.S. at 185, 187.

The Supreme Court in *Cummings* followed *Barnes* and affirmed a Fifth Circuit decision that held emotional distress damages are not available to a private party suing for a violation of a Spending Clause statute, because such damages are not traditionally available in a breach of contract action. *Id.* at 1576.

In *Cummings*, the plaintiff was a deaf and legally blind person who was denied accommodation by a health-care provider, which the plaintiff alleges

9

caused emotional distress and humiliation and caused the plaintiff to seek services elsewhere. *Cummings*, 142 S.Ct. at 1568. The plaintiff filed suit under the Rehabilitation Act and the Affordable Care Act. The Supreme Court explained the Rehabilitation Act, ACA, Title IX, and Title VI were adopted pursuant to the Spending Clause, and therefore, the types of damages recoverable are limited to those available for contract claims. *Id.* at 1569. The U.S. Supreme Court in *Cummings* found no consensus rule allowing contract damages for emotional disturbance, emotional distress, or mental pain and suffering. *Id.* Therefore, the Supreme Court held there was no grounds to conclude that federal funding recipients were on clear notice of this potential remedy. *Id.*

Although *Cummings* was brought under the Rehabilitation Act and the ACA, the Supreme Court's analysis applies to all Spending Clause statutes adopted by Congress, including Title IX. The Court's opinion specifically identifies Title IX along with the Rehabilitation Act and the ACA, and cites *Gebser*, a Title IX case, when discussing remedies in Spending Clause cases.

Furthermore, on June 23, 2023, the U.S. District Court for the District of Nebraska applied *Cummings* to a Title IX case. See *Abdulsalam v. Bd. of Regents of Univ. of Nebraska*, No. 4:22-CV-3004, 2023 WL 4266378, at *5 (D. Neb. June 29, 2023). So have many other courts. *See* also *Party v. Arizona Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 WL 17459745, at *3 (D. Ariz. Dec. 6, 2022) (applying *Cummings* to Title IX claim and holding "non-contractual damages (including emotional distress and reputational harm damages) are no longer valid."); *Doe next friend of Doe v. City of Pawtucket*, No. CV 17-365-JJM-LDA, 2022 WL 4551953 (D.R.I. Sept. 29, 2022) (holding *Cummings* applies to Title IX claims,

10

and therefore, emotional damages are unavailable in Title IX claims); and *Doe 1 v. Curators of Univ. of Missouri*, No. 19-CV-04229-NKL, 2022 WL 3366765, at *3 (W.D. Mo. Aug. 15, 2022) (holding that *Cummings* applies to plaintiffs' Title IX claims.)  Therefore, it is clear *Cummings* applies to all Spending Clause statutes, including Title IX.

Therefore, as a matter of law, *Cummings* precludes liability in damages for emotional distress, punitive damages, and other non-economic damages in lawsuits brought under Title IX, and Plaintiff's claim for such damages should be dismissed.

**2.    Plaintiff Has Not Suffered Any Special Damages as a Result of BRUN's Alleged Conduct Post-February of 2017.**

Plaintiff seeks various special damages related to her move to Atlanta, Georgia to attend Georgia Tech where she earned her Ph.D. [Ex. Q, Plaintiff's Initial Disclosure.] However, it is impossible for Plaintiff to show that these damages are a result of the alleged Title IX violation that occurred post- February of 2017. This Court has already held: "The defendants' conduct occurring prior to February 28, 2017, is time-barred and may not be used as the basis for defendants' liability." [Filing No. 26.]

Plaintiff decided to switch to a Master's program and join the Ph.D program at Georgia Tech prior to February of 2017. Plaintiff admitted she switched to a Master's program in July of 2016. [Ex. N, Dep. of Plaintiff at 34:1 – 36:22.] When asked why she decided to switch to a Master's program and apply to Georgia Tech in the summer of 2016, she testified as follows:

```
18        Q.  Why did you decide to switch from the Ph.D.
19   program to the master's program in the summer of
20   2016?
21        A.  Because I experienced harassment for a long
22   time, and I experienced the retaliation of rejecting
23   the harasser's request.  And I was -- my funding
24   source, as a retaliation, was also cut off.
25             So all of this, and also Title IX office was
```

```
1    not looking that wants to help to solve my concerns.
2    So then I thought that I need to leave.
3         Q.  So those were all of the things that
4    factored into your decision in the summer of 2016 to
5    switch to the master's program; correct?
6         A.  Yes.
7         Q.  In fact, you applied to Georgia Tech
8    November 19th, 2016; correct?
9         A.  I remember I applied to Georgia Tech in fall
10   2016.
11        Q.  And why did you apply to Georgia Tech's
12   Ph.D. program in the fall of 2016?
13        A.  I wanted to go to continue my Ph.D. because
14   I was passionate to continue my study.  And I applied
15   to Georgia Tech because it's really high ranked.  Now
16   it's number five in the United States.  It's a very
17   high-ranked university.  And I knew my background,
18   and I knew that I would do well at Georgia Tech.
19        Q.  So your understanding when you applied in
20   the fall of 2016 is that Georgia Tech's Ph.D. program
21   was higher ranked than UNL's?
22        A.  Yes.
```

[Id.] In other words, ***none*** of her special damages—which all are tied to her decision in the summer and fall of 2016 to switch to a Master's program and to

12

continue her Ph.D. at Georgia Tech —can logically be linked to the alleged Title IX violation based on BRUN's alleged conduct in 2017; hence, such request must be dismissed.

**3.   PLAINTIFF DOES NOT HAVE STANDING TO ASSERT A THIRD-PARTY'S RIGHTS OR INTEREST (HER HUSBAND'S INTEREST.)**

Similarly, Plaintiff cannot recover alleged damages sustained by her husband. Plaintiff's husband did not bring a lawsuit against BRUN or Strickman. And, there is no claim that Plaintiff's husband's rights under Title IX were violated. Despite that, curiously, Plaintiff seeks to recover alleged damages sustained by her husband's decision to switch to a Master's program in 2016 and to move to Georgia Tech to be with her.

As discussed above, this alleged switch to a Master's program occurred in 2016, pre- alleged conduct in 2017; therefore, this alleged special damage was not a result of an alleged Title IX violation based on 2017 conduct.

Moreover, Plaintiff lacks standing to assert any entitlement to allege special damages sustained by a third-party, her husband.  "In order for Plaintiff to proceed with her claims, she must have standing. Standing is a jurisdictional requirement that 'can be raised by the court *sua sponte* at any time during the litigation.'" *Jones v. Vanderslice*, No. 4:11CV3119, 2011 WL 4711946, at *1–2 (D. Neb. Oct. 6, 2011) (quoting *Delorme v. United States,* 354 F.3d 810, 815 (8th Cir.2004)). Plaintiff "must assert her legal rights or interests and not 'the legal rights or interests of third parties.'" *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975)). *See Mosby v. Ligon,* 418 F.3d 927, 933 (8th Cir.2005) (prudential limitations on federal court jurisdiction require parties to assert their own legal

rights or interests; claims for federal relief cannot rest on legal rights or interests of others); *Jones*, 2011 WL 4711946, at *1–2 (holding plaintiff "may not assert the legal rights of her husband without standing to do so."); *Franklin v. Ramey*, No. 2:18-CV-02063, 2018 WL 2448452, at *1 (W.D. Ark. May 31, 2018), *aff'd*, No. 18-2279, 2018 WL 6536446 (8th Cir. Aug. 30, 2018) (holding the plaintiff does not have standing to bring a claim on behalf of his wife).

Nor does Plaintiff's husband have standing to bring his own Title IX sex discrimination claim, as he has not been subject to discrimination under an education program or activity. *See Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 965 (S.D. Iowa 2018), *aff'd,* 958 F.3d 679 (8th Cir. 2020) ("Parents lack standing to bring their own Title IX sex discrimination claims because they have not been subjected to discrimination under an education program or activity."). *See also Haines v. Metro. Gov't of Davidson Cnty., Tenn.*, 32 F. Supp. 2d 991, 1000 (M.D. Tenn. 1998) (holding parents of a child suing under Title IX cannot bring an action to recoup expenses such as medical expenses and loss of services to the child unless suing on behalf of their daughter or son).

Accordingly, because Plaintiff cannot show any actual, recoverable damages she sustained as a result of the alleged 2017 Title IX violation, her Title IX complaint against BRUN must be dismissed.

## B.   PLAINTIFF CANNOT SHOW BRUN VIOLATED TITLE IX IN 2017.

For BRUN to incur liability under Title IX, Plaintiff must establish that BRUN "(1) was deliberately indifferent, (2) to known acts of discrimination, (3) which occurred under its control." *Doe v. Bd. of Trustees of the Nebraska State Colleges*, No. 22-1814, 2023 WL 5211568, at *3 (8th Cir. Aug. 15, 2023). *See also*

14

*Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003) (citation omitted). Additionally, BRUN can only be liable under Title IX for situations in which it "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Ostrander*, 341 F.3d at 750 (quoting *Shrum ex. rel. Kelly v. Kluck*, 249 F.3d 773,782 (8th Cir. 2001)).

> Generally, to establish a Title IX violation, a Plaintiff must establish that:
>
> (1) BRUN is a recipient of Federal financial assistance;
>
> (2) She was subjected to unwelcome sexual harassment or discrimination that was so severe, pervasive and objectively offensive that it effectively bars access to educational opportunities or benefits provided by the school;
>
> (3) "Appropriate person" had actual knowledge of the sexual harassment or discrimination; and
>
> (4) Despite such knowledge, the person with authority was deliberately indifferent to known acts of harassment in its program or activities, which occur under its control.

*Davis*, 526 U.S. at 633. *See also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998); *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017).

As the Court previously noted, the Eighth Circuit cases involving employee-student sexual misconduct have not expressly adopted the "severe, pervasive, and objectively" offensive element found in peer-peer cases. However, other courts have done so. *See Doe I v. Bd. of Educ. of City of Chicago*, 364 F. Supp. 3d 849, 859 (N.D. Ill. 2019) (quoting *Davis*, 526 U.S. at 650; *Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003)) (holding to prevail in

15

a Title IX claim for teacher-on-student harassment, the plaintiff must "allege harassment 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school," and that whether the alleged conduct rises to the level of actionable harassment is a fact-specific inquiry, which "depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved."); *Chancellor v. Pottsgrove Sch. Dist.*, 529 F. Supp. 2d 571, 573 (E.D. Pa. 2008) ("For liability to attach to sexual harassment under Title IX, the teacher's conduct must be 'so severe, pervasive, and objectively offensive that it can be said to deprive the victim[ ] of access to the educational opportunities or benefits provided by the school.'"); *Jones v. University of Detroit Mercy*, 527 F. Supp. 3d 945, 948 (E.D. Mich. 2021)(accord).

Even those jurisdictions that have not adopted the "severe, pervasive and objectively offensive" standard, have adopted the Title VII standard which still requires a subjectively and objectively hostile or abusive environment that is sufficiently severe or pervasive that it barred the Plaintiff from an educational opportunity or benefit. *Irrera v. Humphries*, 695 Fed.Appx. 626 at 628-29)(2d Cir. 2017)(finding as a matter of law that the allegations a teacher blew kisses, winked at, and "looked [the student] up and down in a sexual manner when they encountered each other in common areas" did not rise the level of Title IX sexual harassment."); *K.J as Next Friend for K.D. v. St. Joseph School District,* no.

16

18CV06113, 2019 WL 13259103 at *14 (D. Mo. November 21, 2019)(applying the

severe or pervasive" standard to a teacher's sexual harassment of a student).

**1.    Plaintiff Cannot Show She Was Subjected to Discrimination or Harassment on the Basis of Her Sex After February of 2017.**

Under any standard, Plaintiff cannot demonstrate the alleged conduct in

2017 constituted harassment. In other words, the behavior must "***be serious***

***enough to have the systemic effect*** of denying the victim equal access to an

educational program or activity." *Id.*   The alleged misconduct in this case – a

couple of stray meetings in common areas; Roe saying "hello" to Doe; and Roe

copying Doe, along with several other individuals – simply cannot be considered

actionable sexual harassment.

In *Wolfe*, the Eighth Circuit agreed it is appropriate to look to Title VII cases

for guidance in evaluating Title IX claims. 648 F.3d at 866 n*4. Under a similar,

but more complainant friendly legal framework—where a showing of severe,

pervasive ***or*** (not "and," as is required under Title IX) offensive conduct is

required—the Eighth Circuit has rejected numerous harassment claims with facts

far more egregious than alleged here. *See e.g., McMiller v. Metro*, 738 F.3d 185,

188-89 (8th Cir. 2013) (holding a supervisor's behavior of kissing the plaintiff on

her face on two occasions, placing his arms around her or attempting to do so

three times, and requesting she remove an ingrown hair from an area near his

chin is insufficient to establish severe or pervasive harassment); *Anderson v.*

*Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858 (8th Cir. 2009) (holding

"White's [plaintiff's supervisor] conduct of rubbing Anderson's shoulders or back at

times during her training session, calling Anderson "baby doll" during a telephone

conversation [], accusing her of not wanting to be "one of my girls" [], his one-time, long-distance suggestion that she should be in bed with him and a Mai Tai in Florida, and the insinuation that she could go farther in the company if she got along with him, simply were not severe, pervasive or demeaning enough to have altered a term, condition, or privilege of her employment."); *Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir. 2002) (holding a supervisor's conduct, which allegedly included sexually propositioning the plaintiff, repeatedly touching her hand, requesting that she make a sketch with sexual implications, displaying a poster portraying the plaintiff as "the president and CEO of the Man Hater's Club of America," and asking her to type a copy of a "He–Men Women Hater's Club" manifesto, is not as a matter of law sufficiently severe or pervasive).

### a.   March of 2017 Concern.

Similarly, Plaintiff's allegations fall far short of the demanding harassment standards. The only concern Plaintiff reported to the University while she was still a student occurred in March of 2017. Her concern emanated from John Roe smiling at her and attempting to say "hello" when they randomly encountered each other in a common space—two times in a hallway and one time in a classroom—in a span of three months (January through March). Essentially, Plaintiff was complaining Roe was violating the no contact directive.  There is no allegation Roe made any sexually based remarks, initiated any physical contact, or intimidated her in any way based on Doe's sex.  The isolated incidents of random encounters in common areas fall well short—as a matter of law—of being either severe or

pervasive enough to create a hostile environment that can be said to have deprived Plaintiff of access to an educational program or activity.

The University immediately responded to, and believed, her concern and discovered the following from Plaintiff: that she still felt comfortable doing her work and going to classes; that John Roe did not utter any other word and has ceased all communication and interaction with Plaintiff, except the attempt to say "hello;" that she did not want any immediate accommodation; and that John Roe never threatened her. She admitted to the same during her deposition. During her deposition, she also admitted she has not even seen John Roe since August of 2017.

In this case, it is implausible, if not impossible, for Plaintiff to show the alleged random encounters post-February of 2017 are actionable sexual harassment or discrimination under Title IX.

Plaintiff did not report any other concerns while she was at the University. She successfully graduated with a Master of Science in Mechanical Engineering and Applied Mechanics program in August of 2017.

**b.    September of 2017 Concern.**

The next time Strickman heard from Plaintiff was after she ceased being a student at the University in September of 2017.

**i.    Plaintiff has no standing to bring a Title IX complaint once she was no longer enrolled at the University of Nebraska.**

As a threshold matter, to the extent Plaintiff's Title IX claims are based on alleged harassment that occurred after she graduated from the University of

Nebraska, Plaintiff does not have standing to pursue such claims because she was not student at the University of Nebraska and was not otherwise attempting to access the University's educational programs or activities. Non-students "do not have a personal claim under Title IX" or "standing to bring a Title IX sex discrimination claim," "because they have not been subjected to discrimination under an education program or activity." *Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 965 (S.D. Iowa 2018), aff'd, 958 F.3d 679 (8th Cir. 2020) (quotation and citation omitted). *See also K. T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965, at *6 (E.D. Mo. Aug. 11, 2016), aff'd, 865 F.3d 1054 (8th Cir. 2017) (concluding a plaintiff, a non-student, lacks standing to bring a Title IX claim); *Doe v. Brown Univ.*, 270 F. Supp. 3d 556 (D.R.I. 2017), aff'd, 896 F.3d 127 (1st Cir. 2018) (holding a non-student of university, who was sexually assaulted by university student on university campus, failed to allege that she was denied equal access to education and, thus, did not state a claim under Title IX against university). Accordingly, as a non-student, Plaintiff does not have standing to bring a Title IX claim against BRUN based on the alleged harassment/discrimination that allegedly occurred after she was no longer a student at the University. Therefore, this Court must dismiss any Title IX claims based on alleged harassment/discrimination based on events after she graduated from the University and was no longer a student at the University.

### ii. Roe's single email to a group of individuals in which Doe was copied cannot be considered sexual harassment.

In September of 2017 Roe responded to an email from an individual who reached out to a number of researchers, including Jane Doe, about a jointly

authored article, including Jane Doe. Roe's was directed to the sender, simply thanking him. Roe did not reference Jane Doe, did not engage in communication directly with her, or interact with her in any way. Under the standards set forth in the 8th Circuit and other Title IX jurisprudence, merely copying a person on a group email with the message "thank you" cannot be considered sexual harassment.

2. **Plaintiff Cannot Show That an Appropriate Person Knew of Any Harassment or Discrimination.**

In addition, Plaintiff cannot show actual knowledge or notice of harassing/discriminatory conduct to a school official to address the complained-of-conduct. As the Eighth Circuit explained:

> The actual notice standard is quite onerous, and favoritism towards the student; inordinate time spent with the student; unprofessional conduct towards the student; and vague complaints about the teacher's behavior toward the student (which do not *expressly* allege sexual abuse of that student) fall short of creating actual notice. See, e.g., Gebser, 524 U.S. at 291, 118 S.Ct. 1989 (finding that "a complaint from parents of other students charging only that [the teacher] had made inappropriate comments during class ... was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student"); Flaherty, 623 F.3d at 585 (finding that "inappropriate" and "suggestive" text messages could not impute actual notice because the messages "did not go so far as to suggest actual sexual conduct or sexual abuse"); P.H., 265 F.3d at 659 (explaining that without reports of sexual contact or suspected sexual contact between teacher and student, the teacher's "conduct of spending too much time with [the student] causing [the student] to be absent from or tardy to classes" did not establish actual notice of ongoing sexual abuse).

*KD v. Douglas Cty. Sch. Dist. No. 001*, 1 F.4th 591, 598 (8th Cir. 2021).

Similarly, in this case, Plaintiff's March 7, 2017, email to Strickman stating Roe "started again to communicate with saying Hello with smile to me and

expecting to answer and disturbing looks," falls significantly short of "actual notice," of sexual harassment given the fact that Plaintiff told the University that John Roe never threatened her or uttered any other word other than attempted "hello." He had essentially ceased all contact with her other than the alleged random encounter.

As such, Plaintiff cannot show appropriate personnel knew of conduct that could be viewed as sexual harassment or discrimination based on the information she provided to Strickman and Officer Fischer.

### 3.    Plaintiff Cannot Show Deliberate Indifference.

BRUN, through Strickman and Officer Fischer acted swiftly and effectively both times Plaintiff came forward with concerns in March of 2017 and September of 2017.

Deliberate indifference, involves a situation where a school "***turn[s] a blind eye and doe[s] nothing***." *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610 (8th Cir. 1999). "Deliberate indifference is established when a school responds in a clearly unreasonable manner to harassment considering the circumstances known to it," which "is a stringent standard of fault that cannot be predicated upon mere negligence." *Bd. of Trustees of the Nebraska State Colleges*, No. 22-1814, 2023 WL 5211568, at *3 (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019). "Title IX is not a procedure for courts to second-guess disciplinary decisions made by school administrators." *Id.*

Strickman responded to Plaintiff's March 7 email almost instantaneously. Strickman expressly told Plaintiff she would tell John Roe to refrain from saying

hello and/or smiling at Plaintiff. Strickman also asked if Plaintiff wanted to go through additional safety planning and arranged for a safety meeting with Officer Fischer. Officer Fischer met with Jane Doe personally. True to her word, Strickman visited with John Roe, at which time she told him to not smile or attempt to say "hello" when he saw the Plaintiff around campus. In other words, she investigated the concern and reinforced the no contact directive. This worked: No further complaints were submitted by Plaintiff to BRUN relating to Roe for the remainder of Plaintiff's time at the University.

Moreover, when Strickman received the September of 2017 email from Plaintiff, she promptly followed-up with John Roe about the circumstances of the communication and told John Roe to not contact Plaintiff "under any circumstances," and to only communicate with Plaintiff via Strickman or Dr. Judy Walker, if he needed to communicate with Plaintiff. Again, although the contact between Roe and Doe was minimal and ancillary to an email sent to a number of individuals—i.e. far from any type of sexual harassment—Strickman responded and again reinforced the no contact directive. BRUN received no further complaints.

**4.    Plaintiff Cannot Show BRUN's Deliberate Indifference Caused Plaintiff to Undergo Harassment or Make Her Liable or Vulnerable to It.**

For BRUN to be held liable under Title IX, BRUN's deliberate indifference must "cause students to undergo harassment or make them liable or vulnerable to it." *Bd. of Trustees of the Nebraska State Colleges*, No. 22-1814, 2023 WL 5211568, at *4 (8th Cir. Aug. 15, 2023) (quoting *Shank v. Carleton Coll.*, 993 F.3d 567, 573 (8th Cir. 2021) )(cleaned up). "The reason is that Title IX creates liability for

schools that accept federal funding only if they 'subject' the student to abuse." *Id.* (citing 20 U.S.C. § 1681(a); *cf. Du Bois v. Bd. of Regents of the Univ. of Minn.*, 987 F.3d 1199, 1203 (8th Cir. 2021)). In other words, an educational institution is only deliberately indifferent if its actions cause or made the individual vulnerable to *actual* further harassment.  *See e.g. Bd. of Trustees of the Nebraska State Colleges,* No. 22-1814, 2023 WL 5211568, at *4 (holding "[l]inking the college's actions or inactions to emotional trauma the plaintiff experienced in the wake of sexual harassment or assault, even if proven, is not enough."); *Shank,* 993 F.3d at 573 (holding this standard required plaintiff to demonstrate a "'causal nexus' between the college's conduct ***and the student's experience of sexual harassment or assault***;" in other words, there must be a causal nexus between an institution's action or inaction and the plaintiff's experience of *actual* further sexual harassment or assault.).

In this case, Plaintiff has not alleged and cannot show any actionable sexual assault or harassment after Plaintiff communicated her concerns in March of 2017. Accordingly, BRUN is entitled to judgment in its favor with respect to Plaintiff's Title IX, deliberate indifference claim.

**C.    PLAINTIFFF CANNOT SHOW A DUE PROCESS, § 1983 VIOLATION.**

**1.    Plaintiff Did Not Have a Protected Life, Liberty or Property Interest With Respect to Her Claims Against Strickman.**

"The possession of a protected life, liberty, or property interest is a condition precedent" to both a procedural and substantive due process claims. *Harrington v. City of Omaha,* No. 8:20-CV-412, 2021 WL 2321757, at *22 (D. Neb. June 7, 2021) (*Mulvenon v. Greenwood,* 643 F.3d 653, 659 (8th Cir. 2011)). Accordingly, for the

same reasons as thoroughly discussed above, Plaintiff has failed to allege a violation of a protected life, liberty or property interest.

Plaintiff alleges Strickman violated her liberty interest in bodily integrity and her property interest in education. [Filing No. 13, ¶ __.] **First**, Plaintiff does not have a protected liberty or property interest in a doctoral program. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). Thus, "constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Hulen v. Yates,* 322 F.3d 1229, 1240 (10th Cir. 2003) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985)). Contrary to Plaintiff's unsubstantiated allegation that her property interest in education was violated, the law does not clearly recognize that a university graduate student has a constitutionally protected right in continuing his or her academic program.

The U.S. Supreme Court and the Eighth Circuit have not decided that a graduate student has a constitutionally protected liberty or property interest in continuing in a graduate program at a public university. *See Doe v. Univ. of Nebraska,* 451 F. Supp. 3d 1062, 1108 (D. Neb. 2020) (citing *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 222, 106 S. Ct. 507, 511, 88 L. Ed. 2d 523 (1985)). *See also Bd. of Curators of Univ. of Missouri v. Horowitz,* 435 U.S. 78, 81 (1978). Further, at the state level, the Nebraska Supreme Court called into doubt whether an individual has a protected liberty or property interest in postsecondary

25

education and noted that the U.S. Supreme Court "has not held that postsecondary education rises to a fundamental right." *Doe v. Bd. of Regents of Univ. of Nebraska*, 280 Neb. 492, 530, 788 N.W.2d 264, 293 (2010), overruled on other grounds by Davis v. State, 297 Neb. 955, 902 N.W.2d 165 (2017)).

The U.S. District Court for the District of Nebraska confronted this same question in a lawsuit where a plaintiff, a former post-secondary student at the University of Nebraska—Lincoln, asserted among other causes of actions, a section 1983 procedural and substantive due process claim against employees of the University of Nebraska in their individual capacities. *Doe*, 451 F. Supp. 3d at 1108. In that case, the court held:

> Neither the Supreme Court nor the Eighth Circuit has clearly established that continued enrollment in a post-secondary education program is a property or liberty interest protected by the Fourteenth Amendment's guarantee of substantive due process, and Plaintiff has not identified "a robust consensus of cases of persuasive authority" in support of his substantive due process claim. Plaintiff has also failed to demonstrate that he has a state-created property right that could give rise to a substantive due process claim. The individual Defendants are therefore entitled to qualified immunity.

*Doe*, 451 F. Supp. 3d at 1110. *See also Doe v. Purdue Univ.*, 928 F.3d 652, 659 (7th Cir. 2019) (holding a college education is "not a 'property' in the usual sense of a word," and "rejected the proposition that an individual has a stand-alone property interest in an education at a state university, including a graduate education."); *Bell v. Ohio State Univ.,* 351 F.3d 240, 251 (6th Cir. 2003) (holding that a medical student's interest in continuing her medical school education is not protected by substantive due process); and *Nofsinger v. Virginia Commonwealth Univ.*, 523 F. App'x 204, 205 (4th Cir. 2013) (holding "our review of the record

26

establishes that Nofsinger [plaintiff] failed to allege a protected property interest in her continued enrollment in VCU's graduate program . . ..").

Similarly, Plaintiff cannot demonstrate that she has protected liberty or property interests in a doctoral education.

***Second***, the substantive due process right to bodily integrity has its limits. Verbal conduct like  that allegedly occurring in March of 2017 does not trigger a right to constitutional protection. Generally, "[v]erbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). While "verbal threats are normally insufficient to violate the Constitution ... We have made an exception, however, when the state official engaged in a 'brutal' and 'wanton act of cruelty' even though no physical harm was suffered." *Irving v Dormire*, 519 F.3d 441, 448–49 (8th Cir, 2008) (abrogated on other grounds) (internal quotations omitted). In this case, no threats occurred post- February of 2017 (let alone physical action or harm) toward the Plaintiff. Such an allegation does not trigger constitutional protection.

Because the substantive due process right to bodily integrity has its limits, "[t]he first step in a § 1983 analysis is to 'isolate the precise constitutional violation' which is alleged." *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998). And, with that principle in mind, particular to the claim against Strickman, the Supreme Court of the United States has held the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). "Because 'the Due Process Clause does not require

the State to provide its citizens with particular protective services, [state actors] cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.'" *DeShaney*, 489 U.S. at 196–97.

It is correct the Eighth Circuit applies a "supervisor liability doctrine." *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007). However, this application of §1983 is limited to supervisory school officials. *Id.* "In general, supervisors **in this position** [University President and the Chancellor in the case of *Cox*] are liable under § 1983 for a **subordinate's** violation of a third person's constitutional right only if their deliberate indifference to the offensive conduct and failure to take adequate remedial action proximately caused the injury." *Id.*

Here, as an initial matter, Plaintiff has not raised a supervisor liability claim in her Complaint. Anyway, this doctrine is inapplicable here because Strickman was not John Roe's supervisor during the relevant times, nor is there any allegation in the Complaint that she was. Accordingly, courts have not recognized bodily integrity as a liberty interest with respect to lawsuits against individuals in Strickman's position.

## 2.  Strickman Did Not Violate Plaintiff's Substantive Due Process.

Plaintiff fails to state a plausible substantive due process claim against Strickman. "To state a plausible substantive-due-process claim, [a plaintiff] must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than ... arbitrary, capricious, or in violation of state law.'" *Harrington*, 2021 WL 2321757, at *22 (quoting *Young v. City of St. Charles*, 244 F.3d 623, 628 (8th Cir. 2001); *Anderson v. Douglas Cnty.*, 4 F.3d 574, 577 (8th Cir. 1993). "Sufficiently outrageous or truly irrational is a high standard."

28

*Harrington*, 2021 WL 2321757, at *22 (citing *Christiansen v. West Branch Cmty. Sch. Dist.,* 674 F.3d 927, 937 (8th Cir. 2012). To find a government action sufficiently outrageous requires "violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Harrington*, 2021 WL 2321757, at *22; (citing *Christiansen*, 674 F.3d at 937-38; *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. 347,* 591 F.3d 624, 634 (8th Cir. 2010)).

In this case, there was no act of Strickman that shocks the conscious, i.e. Strickman herself did not engage in bodily harm. If this Court applies the supervisory liability doctrine to assess whether she is liable under § 1983 for John Roe's violation of Plaintiff's constitutional right, the Plaintiff must show: (1) Strickman was John Roe's supervisor; (2) John Roe engaged in an offensive conduct; (3) Strickman was "deliberately indifferent to the ***offensive conduct***;" and (4) failed to "take adequate remedial action proximately caused the injury." *Cox v. Sugg,* 484 F.3d 1062, 1066 (8th Cir. 2007). Plaintiff's claim fails at every turn.

Strickman was not John Roe's supervisor. No act of John Roe post-February of 2017 comes close to the high burden of being offensive conduct required to violate Plaintiff's substantive due process right. *Christiansen v. W. Branch Cmty. Sch. Dist.,* 674 F.3d 927, 937 (8th Cir. 2012) (defining conscience-shocking actions as those "so inspired by malice or sadism rather than a merely careless or unwise

29

excess of zeal that [they] amounted to brutal and inhumane abuse of official power literally shocking to the conscience" (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347,* 591 F.3d 624, 634 (8th Cir.2010)).

Finally, the same analysis as provided in Section B proves that Strickman did not have actual knowledge of sexual harassment or assault occurring in 2017; Strickman immediately and appropriately responded to Plaintiff's concerns of March and September of 2017, and therefore did not engage in deliberate indifference; and Plaintiff cannot point to any injury that occurred post March of 2017 proximately caused by Strickman.

### 3.   Strickman Did Not Violate Any Process or Procedure That Was Constitutionally "Due."

A § 1983 procedural due process claim turns on: "(1) whether the state actor's decision impacted a protected liberty or property interest, and if so (2) what process/procedure was constitutionally 'due' before depriving individuals of certain property, liberty or property interests." *Kroupa v. Nielsen,* 731 F.3d 813, 818 (8th Cir. 2013). *See also Does 1-2 v. Regents of the Univ. of Minnesota,* 999 F.3d 571, 581 (8th Cir. 2021).

As thoroughly discussed above and below, there was no decision of Strickman that impacted a property, liberty or property interest. In the context of procedural due process claim, state action must distinctly alter or distinguish "a right or status previously recognized by state law, removing that interest from the recognition and protection previously afforded by the State." *Kroupa v. Nielsen,* 731 F.3d 813, 818 (8th Cir. 2013).

30

There was **no action** by Strickman that suspended or limited Plaintiff's ability to continue her education. Plaintiff made her decision to switch to the Master's program in 2016, not after March of 2017 as she claimed in her Amended Complaint. No one, including Strickman, asked her to switch to a Master's program. She did that all on her own. In other words, there was no decision by Strickman that impacted Plaintiff's claimed liberty or property interest in continued education.

When Strickman received the March 7 email from Plaintiff, Strickman emailed back the same day. Subsequently, Strickman arranged for an additional safety planning meeting and told John Roe to not even smile or attempt to say hello to Plaintiff if he randomly encountered her around school. And it did not happen again for the remainder of her time at the University. Therefore, any process due was effectively carried out.

To the extent Plaintiff argues Strickman violated the policies of the University, that argument will not fare any better. For one, there was no University process that was required to be followed. Second, a violation of an institution's own policies is not sufficient to rise to the level of a due process violation. *See Batra v. Board of Regents of Univ. of Nebraska*, 79 F.3d 717, 720 (8th Cir. 1996). Accordingly, Plaintiff's procedural due process claim must also be dismissed.

### 4. Strickman is Entitled to Qualified Immunity.

Furthermore, Strickman is protected from suit in her individual capacity by the doctrine of qualified immunity. "Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or

statutory right of which a reasonable official would have known." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011) (citing *Harlow*, 457 U.S. at 818). "As the Supreme Court has reiterated, "'[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curian) (quoting *Ascroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation omitted)).

Plaintiff cannot show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Partridge v. City of Benton*, 929 F.3d 562, 565 (8th Cir. 2019) (internal quotation omitted). The Court may address this analysis in any order and should find that Plaintiff has failed to state a violation of a clearly established constitutional right, and Strickman is entitled to qualified immunity.

Here, it is not enough for Plaintiff to assert she was entitled to due process. Whether the law is "clearly established . . . should not be defined at a high level of generality." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). Rather, the question is whether this particular Plaintiff—a student who has already graduated with her chosen degree (Master's degree)—had a clearly established due process right. As set forth above, it cannot be the case that Strickman violated a clearly established constitutional right of Plaintiff when she responded to Plaintiff's March of 2017 concern almost immediately and addressed the concern.  Holding that such an action violates a "clearly established right" would make it virtually impossible for school administrators to exercise their recognized discretion in instituting disciplinary decisions and responses. *Davis,*

526 U.S. 629, 648. And, to the extent Plaintiff is asserting the due process violation under the guise of the law of Title IX, "Title IX is not a procedure for courts to second-guess disciplinary decisions made by school administrators." *Bd. of Trustees of the Nebraska State Colleges*, No. 22-1814, 2023 WL 5211568, at *3. Accordingly, there was no violation of a constitutional right (as thoroughly discussed above), nor was there a right that was clearly established in the specific context of the case at issue. Thus, Strickman is entitled to qualified immunity.

**5.   Plaintiff Cannot Assert her Husband's Interest.**

As thoroughly discussed above, Plaintiff does not have standing to assert her husband's interest.  Accordingly, for the same reasons as discussed in Sections V.A. 2, such claim must be dismissed.

**D.   THIS COURT SHOULD GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ENTER FINAL JUDGMENT AS THERE ARE NO ADDITIONAL, VIABLE DEFENDANTS LEFT.**

Plaintiff's Second Amended Complaint names John Roe as a Defendant and alleges he violated Plaintiff's due process and equal protection rights in his individual capacity. However, even though the Plaintiff requested a summons to serve John Roe [Filing No. 6] after she filed her initial complaint, she never requested a summons to serve John Roe after she filed her Second Amended Complaint, nor did she file a return of summons attesting she served the initial or Second Amended Complaint upon John Roe. [See Court Docket.] Accordingly, Plaintiff did fail to serve Defendant John Roe within 90 days of filing the Complaint as required by FED. R. CIV. P. 4 (m) and failed to file "proof of service," as required

by Fed. R. Civ. P. 4(l)(1). Therefore, the case against John Roe can also be dismissed.

Furthermore, throughout the pendency of this case, Plaintiff has not identified any other Defendants. Therefore, Plaintiff's lawsuit as to "other unidentified defendants" must also be dismissed, and final judgment should be entered.

## VI.   **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request the Court grant their Motion for Summary Judgment.

Dated this 15th day of September, 2023.

> BOARD OF REGENTS OF THE
> UNIVERSITY OF NEBRASKA and
> TAMI STRICKMAN, individually and
> in her official capacity, Defendants

By:     /s/ Lily Amare
        Susan K. Sapp #19121
        Lily Amare #25735
        Cline Williams Wright
         Johnson & Oldfather, L.L.P.
        1900 U.S. Bank Building
        233 South13th Street
        Lincoln, NE 68508
        (402) 474-6900
        ssapp@clinewilliams.com
        lamare@clinewilliams.com

         AND

        Bren H. Chambers, #23150
        Associate General Counsel
        University of Nebraska
        3835 Holdrege Street
        Lincoln, NE 68583-0745
        (402) 472-1201
        bchambers@nebraska.edu

## CERTFICATE OF COMPLIANCE

I, Lily Amare, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Microsoft Word 2013 word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 8732 words.

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

/s/Lily /Amare
Lily Amare

4867-0888-4337, v. 6