IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and individuals TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS;<br><br>    Defendants. | Case No. 4:21-cv-03049<br><br>**DECLARATION OF TAMIKO STRICKMAN** |

I, Tamiko Hansen, also known as Tamiko Strickman (herein after "Tamiko Strickman" or "Strickman"), make this Declaration in lieu of an affidavit as permitted by 28 U.S.C. § 1746. I am aware that this Declaration will be filed in the United States District Court for the District of Nebraska and that it is the legal equivalent of a statement under oath.

1. I am over the age of 18 and competent in all respects to make this Declaration. The facts contained herein are based upon my personal knowledge.

2. This Declaration is offered as evidence in support of Defendant's Motion for Summary Judgment and Motion to Exclude Plaintiff's Experts and Strike.

3. In 2016, until August of 2016, I served as the Title IX Investigator in the Department of Institutional Equity and Compliance ("IEC") at University of Nebraska—Lincoln ("University"). From approximately September of 2016 through 2019, I served as the Title IX Coordinator in IEC. From approximately September of 2016 through 2019, I also served as Interim Assistant to the Chancellor at the University, which such position's title changed to Associate to the Chancellor in 2018.

4. From 2016 through 2018, IEC was responsible for enforcing Title IX and conducting investigations into Title IX complaints.

5. I am trained to provide a prompt, fair, and impartial process from initial investigation to the final result.

6. During the relevant period, from 2016 through 2018, the University of Nebraska-Lincoln had a policy against sexual misconduct. The University investigated reported allegations of sexual misconduct, which includes reported stalking and sexual assault, terms defined by the Board of Regents Policies and the Student Code of Conduct.

7. Attached hereto as **Exhibit D** is a true and correct excerpt from the Board of Regents Policies, in effect from 2016 through 2018.

8. Attached hereto as **Exhibit E** is the Student Code of Conduct, including Appendix A: Response to Allegations of Student Sexual Misconduct, in effect from 2016 through 2018.

9. Plaintiff was a student at the University from approximately summer of 2014 through August of 2017.

10. John Roe ("Roe") was a Professor in the Department of Mechanical and Materials Engineering at the University and served as Plaintiff's advisor until June of 2016.

11. I did not serve as supervisor of John Roe at anytime during my employment with the University.

12. I did not have any supervisory authority over John Roe at anytime during my employment with the University.

13. On or about June 21, 2016, IEC received a report from Laurie Bellows that Plaintiff reported to her that John Roe sexually harassed and retaliated against her.

14. Immediately thereafter, on June 21, 2016, I reached out to Plaintiff and set up a meeting for June 23, 2016.

15. On June 23, 2016, I met with Plaintiff. At this meeting, Plaintiff reported:

   a) That Roe kissed her in December of 2014;

   b) That Roe told her he loved her, kicked her legs, and told her he wanted to kiss her in the summer of 2015;

   c) That Roe sent her a link to romantic movie via September of 2015; and

   d) Roe moved her from first author to second author on a journal she and a group of other students were writing to publish, in retaliation for rejecting his sexual advances.

16. At this meeting, I told Plaintiff the University has a "zero tolerance retaliation policy" and told her to contact me if she feels like she is being negatively impacted in any way for providing information to IEC.

17. I also told Plaintiff the University Police Department ("UNLPD") is available to her to assess any safety concerns she may have.

18. On June 24, 2016, Plaintiff communicated to me that she wished to file a formal complaint.

19. From June 24, 2016, through August 12, 2016, I investigated the complaint submitted by Plaintiff.

20. On July 5, 2016, I informed Roe of the formal complaint filed by Plaintiff against him and instructed him not to retaliate against Plaintiff. Attached hereto as **Exhibit F** is a true and correct copy of my letter to John Roe on July 5, 2016.

21. Immediately thereafter, I worked with the Department of Engineering to remove John Roe as Plaintiff's advisor.

22. In June and July of 2016, I worked with Plaintiff and the Department of

Engineering to find Plaintiff another advisor, and Plaintiff was assigned another advisor.

23. From July of 2016 on, John Roe did not serve as Plaintiff's advisor.

24. In July of 2016, I directed Plaintiff and John Roe not to engage in any intentional contact with one another directly or through a third party.

25. On July 26, 2016, Plaintiff met with me and Officer Eric Fischer ("Officer Fischer") from UNLPD. At that time, she reported that she had no safety concerns because she had a new office, new advisor and new team.

26. On or about August 12, 2016, once I retrieved all the evidence, finalized interviews, and resolved credibility issues, I finalized my investigation report and issued finding letters.

27. In letters dated August 12, 2016, I notified both Plaintiff and John Roe of my decision, which outlined my findings and recommendations for discipline.

28. I determined the greater weight of the evidence showed John Roe violated BRUN Policy, RP-2.1.8 which prohibits sexual misconduct. In addition, I found that the greater weight of the evidence showed Roe's decision to move Plaintiff from first to second author was not retaliatory based upon her rejection of his sexual advances. I concluded that the greater weight of the evidence showed Roe's decision to remove Plaintiff from first author was based on Plaintiff's subpar work product on the paper relative to the work of the co-author on the paper.

29. Based upon the findings and due to the delay in Plaintiff's coursework caused by changing her advisor, I recommended the graduate school to cover tuition and fees for the remaining six (6) credit hours needed for Plaintiff to complete the Master of Science program. Roe was instructed not to retaliate against Plaintiff. Attached hereto as **Exhibits G and H** are true and correct copies of the finding letters I sent to Plaintiff and John Roe, respectively.

30. On March 7, 2017, Plaintiff contacted me via email. Attached hereto as **Exhibit I** is a true and correct copy of the email exchange between Plaintiff and me in March of 2017.

31. In a matter of 15 minutes, I replied to the email. I told Plaintiff that I will talk to John Roe and direct him not to attempt to say "hello" and smile when/if he encounters her on campus.

32. When Plaintiff stated she still did not feel comfortable, I asked Plaintiff if she wanted to have a safety plan meeting with Officer Fischer, to which Plaintiff agreed.

33. On March 7, 2017, I communicated with Officer Fischer to set up a safety planning meeting for Plaintiff.

34. On March 10, 2017, Plaintiff met with Officer Fischer, which Officer Fischer documented and communicated to me on the same day. Specifically, Officer Fischer reported to me as follows:

> On 03/10/2017 at approximately 1100 hours, I met with [Jane Doe] in reference to some new concerns she has. [Jane Doe] began explaining some "disturbing behaviors" of [John Roe] beginning in January of 2017 (2nd week). [Jane Doe] said [John Roe] was walking into a doorway she was walking into where they became face to face and "stuck". [Jane Doe] told me she felt [John Roe] was blocking the doorway and he said "hello". [Jane Doe] did not respond to [John Roe] and used a doorway next to this one to leave the area. [Jane Doe] was upset at this because she was under the impression [John Roe] is to have no contact with her. [Jane Doe] went on to explain how there were three occasions, two in a hallway and one in a classroom, where [John Roe] walked back and forth slowly by her. [Jane Doe] did not remember the exact days or times, but told me they occurred within the last two months inside Nebraska Hall where her research lab is. [Jane Doe] told me on these occasions he attempted to say "hello", but [Jane Doe] would not respond. [Jane Doe] was upset and disturbed by these contacts because of the no contact he is supposed to have. In review of RMS, [John Roe] has no active no contact orders nor does [Jane Doe]. [Jane Doe] told me she has not received any threats, emails, calls, or messages from [John Roe] and the aforementioned events were what disturbed her. [Jane Doe] told me she felt comfortable still doing her work and going to class. [Jane Doe] had no threats or threatening behavior to report. This information was passed along to the Title IX office for review of their case involving the two. I reviewed [Jane Doe]'s safety plan and

safety resources she has available to her. No safety issues were found at this time. [Jane Doe] did not request any immediate accommodations.

Attached hereto as **Exhibit J** is a true and accurate copy of an email exchange between Officer Eric Fischer and myself on March 10, 2017.

35. On March 12, 2017, I met with John Roe. At that meeting, I informed John Roe of Plaintiff's concern. I asked John Roe to refrain from saying hello and smiling at Plaintiff if he encounters her again, to which John Roe agreed.

36. With respect to Plaintiff's concern, John Roe provided the following statement:

> The events you informed me of both occurred 30 to 40 steps from my office and both were automatic reactions to the situation. I had, and have, no intention to make my former student feel uncomfortable. Please convey to her that I am sorry that my instinctive response to be polite and positive was misunderstood and had made her feel uncomfortable. I had no intension of doing so.
>
> I had also intended to remove her from my skype contacts last fall, but decided not to take any action that could be misunderstood under the circumstances (I am not sure what, or if anything, occurs when you remove a contact). Can you please inform her that I will be taking this action at the end of this week, and that under the circumstances this seems appropriate and is done without any ulterior motivation. It simply seems to be the correct thing to do under the current circumstances.

Attached hereto as **Exhibit K** is a true and accurate copy of an email exchange between John Roe and myself in March of 2017.

37. I am not aware of any interaction between Plaintiff and John Roe for the remainder of her time as a student at the University of Nebraska.

38. On September 27, 2017, after Plaintiff left the University, Plaintiff communicated to me that, on September 25, 2017, John Roe contacted her. Attached hereto as **Exhibit L** are true and correct copies of email communications between Plaintiff and myself that were in September of 2017.

39. On the same day, I communicated to John Roe the following:

> …[Jane Doe] informed me that you contacted her regarding a case in NUTech. I am assuming this involves the project you both worked on. I do not know if you contacted her or not but please ensure you do not contact [Jane Doe] under any circumstances. If[] you need to communicate with her in any form, please contact Dr. Walker or me. If you have any questions, please feel free to contact me.

To which John Roe responded:

> Hi Tami I did not contact [Jane Doe]. I did respond to the Zane Gernhart at NUTech saying "Thanks Zane for looking into this. [John Roe]" which I assume is what she is referring to.

Attached hereto as **Exhibit M** is a true and correct copy of the email exchanges between myself and John Roe dated September 27, 2017.

40. I am not aware of any other interaction between Plaintiff and John Roe other than as discussed in Paragraphs 30 - 39.

41. Plaintiff did not report any sexual misconduct or harassment after February of 2017.

42. At no point did Plaintiff state John Roe was stalking her.

43. At no point after February of 2017 did Plaintiff state that John Roe was sexually harassing her.

44. At no point after February of 2017 did Plaintiff state that John Roe was engaging in sexual misconduct.

45. After February of 2017, Plaintiff did not file a formal complaint with IEC, alleging sexual misconduct or harassment.

46. I am familiar with the foregoing information and if called as a witness, I would competently testify to each fact contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*[signature: Tami Strickman]*

_____
Tamiko Strickman

<u>September 14, 2023</u>
Date

4869-0142-8093, v. 1

8