ADDENDUM A

UNIVERSITY OF NEBRASKA

SEXUAL MISCONDUCT POLICY

**RP-2.1.8 Sexual Misconduct Policy**

EXHIBIT D

**1.      Statement of Policy**

1a.   Beginning with the University of Nebraska charter in 1869, Nebraska law has provided that no person shall be deprived of the privileges of this institution because of sex.  Discrimination on the basis of sex is also prohibited by Federal law. The University of Nebraska has programs to promote awareness of and to help prevent domestic violence, dating violence, sexual assault, and stalking, and to assist members of the university community who are affected by such behavior. Rape, acquaintance rape, domestic violence, dating violence, sexual assault, sexual harassment and stalking are against the law and are unacceptable behaviors under University of Nebraska policy.  These unacceptable behaviors are hereafter referred to as "sexual misconduct." Sexual misconduct is conduct in violation of University policy and state and federal law that the University will take action to eliminate, prevent, and redress once the University has notice that sexual misconduct has occurred.

1b.   The President and Chancellor shall implement procedures to address the rights of all individuals involved in cases of alleged sexual misconduct. This policy applies to all University of Nebraska employees and students regardless of sexual orientation or gender identity, and to all programs and activities under the jurisdiction of the University of Nebraska.  The University may respond to complaints of sexual misconduct whether they are alleged to have occurred on or off University premises and to complaints of misconduct committed by third parties who are not employees or students.

**2.      Awareness, Education, Prevention, and Training Programs**

As required by federal statutes and administrative regulations, the Office of the President and each Chancellor shall publicize and conduct ongoing programs for new students and employees and other members of the University community to promote awareness of the problems caused by sexual misconduct and to help prevent and attempt to reduce the risk of the occurrence of sexual misconduct.  These programs shall include instruction on safe and positive options for bystander intervention that may be carried out by individuals to prevent harm or intervene when there is a risk of sexual misconduct being inflicted on another person.  Training shall be provided to all persons designated as campus security authorities and involved in responding to charges of sexual misconduct.

**3.      Assistance to Persons Subjected to Sexual Misconduct**

3.1    Persons subjected to sexual misconduct may be helped—sometimes anonymously—whether or not a complaint of any kind is filed. Changes in academic, living, transportation, and working situations may be made available on a confidential basis by the University as remedies to protect persons, complainants, or witnesses.  The President and Chancellor shall disseminate information about university programs and resources available to assist persons who have been subjected to sexual misconduct, and about  agencies outside the university located throughout the state that provide related services.  In addition to identifying resources available to provide counseling and medical treatment, university sexual misconduct programs must provide instruction on the importance of preserving evidence as proof of sexual misconduct, and on the availability of protection orders and other remedies that may be afforded to persons who have been subjected to sexual misconduct.   Preservation of evidence is required of all parties. Concealment or destruction of evidence is prohibited under university rules and the law.

3.2    A person who has or had been involved in a dating relationship, or who has or had a marital, shared residential, or familial relationship with the actor may obtain either a harassment or domestic protection order. Persons who have not been involved in a dating relationship may qualify for a harassment protection order.  Violation of harassment or domestic protection orders issued by courts of this or another state or tribal courts can result in a violator's arrest and subject the violator to criminal penalties.

3.3    The Protection from Domestic Abuse Act makes the Nebraska Department of Health and Human Services (DHHS) responsible to provide victims of domestic abuse emergency services, support programs, limited medical help and legal assistance in obtaining a protection order.

**4.      Complaints, Reporting and Investigation Process**

A person subjected to sexual misconduct may be helped whether or not a complaint or report of any kind is filed. Changes in academic, living, transportation, and working situations may be made available by the University as remedies to protect persons, complainants, or witnesses.  There are several avenues potentially available to make a report or formal complaint of sexual misconduct.  A report of sexual misconduct could be made to the University, a civil suit could be filed against the actor responsible for the sexual misconduct, a criminal charge could be filed as a result of a law enforcement investigation, and/or

an administrative complaint can be made to the United States Department of Education, Office of Civil Rights (OCR). A person may also choose not to make a report or take further action.

Complaints to University

    4.0    Students, employees and third parties may complain of violations of the university policy against sexual misconduct. Complaints of sexual misconduct can be made to Campus Security Authorities (CSAs), Investigators, Human Resources or Student Affairs Officers, and Title IX Coordinators. Information on how to file complaints will be publicized by the President and Chancellors.

    4.1    The University will protect the privacy of the parties involved in a sexual misconduct case to the extent possible under the law. In some situations, including those in which disciplinary action is a possible outcome, the law may require disclosure to respondents.

    4.2    The University may be required by law to investigate complaints of sexual misconduct, but that investigation may be limited by the information provided by the Complainant and the Complainant's willingness to pursue a formal complaint.

    4.3    If the Complainant wishes to avoid revealing his or her identity, the University will make every reasonable effort to abide by Complainant's wishes to remain anonymous; however, the University is required to balance such a request with interest in protecting the safety of other members of the community.
        4.3.1  Factors that will be considered in determining whether to disclose a report of sexual misconduct, a complaint, or the identity of the Complainant to a Respondent include: the seriousness of the alleged conduct; the Complainant's age; whether there have been other complaints about the same individual; and the Respondent's rights to receive information about the allegations.
        4.3.2  If the University proceeds with an investigation or other response to the Report of sexual misconduct, then the Investigator will notify the Complainant before the Respondent is contacted. Retaliation against the Complainant or a third party in an attempt to prevent or otherwise obstruct the reporting or remediation of sexual misconduct is prohibited. The Complainant and others contacted during the course of an investigation should be notified of the University's anti-retaliation policy.

    4.4    *Handling of Confidential Reports*
        4.4.1  If the Complainant would like to remain anonymous, the Investigator will:
            4.4.1.1  explain that the University endeavors to investigate the allegations as presented without revealing the Complainant's identity, but that the University cannot ensure complete confidentiality and it may be limited in its ability to take disciplinary action if the Complainant desires to remain anonymous;
            4.4.1.2  advise the Complainant that the University has an obligation to investigate and document allegations of sexual misconduct, to include general information about reports of criminal sexual misconduct in annual security report statistics which do not identify either the person claiming to have been subject to criminal sexual misconduct or the actor alleged to have committed criminal sexual misconduct;
            4.4.1.3  to the extent practicable, provide resources and internally manage the Complainant's situation, as the University would if the Complainant did not request anonymity; and
            4.4.1.4  ask the Complainant to acknowledge and sign a document confirming that s/he has requested anonymity and that may mean that the University is unable to take disciplinary action against the Respondent.

Investigation by University

    4.5    The University will investigate and act upon information that is provided to it about allegations of sexual misconduct.
    4.6    The University is committed to the following when investigating sexual misconduct complaints:
        4.6.1  Assigning investigators who receive annual training on the issues related to domestic violence, dating violence, sexual assault, sexual harassment, and stalking, and how to conduct an investigation that protects the safety of persons involved;
        4.6.2  Basing findings on the greater weight of the evidence standard;
        4.6.3  Treating all parties fairly and equally;
        4.6.4  Notifying all parties that the investigation will be impartial, prompt and equitable; and
        4.6.5  Providing all parties an opportunity to be heard.

University Disciplinary Procedures

    4.7    Investigations of allegations against students will be handled using the Response to Allegations of Student Sexual Misconduct disciplinary procedures.

    4.8    Investigations of allegations against employees will be handled using the Response to Allegations of Employee Sexual Misconduct disciplinary procedures.

    4.9    University internal investigations and any disciplinary or remedial actions are independent of any civil, criminal or external administrative investigation. The University may pursue an investigation, take appropriate remedial action and/or impose disciplinary sanctions against a member of the university community at the same time the actor is facing criminal charges for the same incident, even if the criminal prosecution is pending, has been dismissed, or the charges have been reduced.

**5.    Possible Sanctions after Sexual Misconduct Finding**

Institutional sanctions that may be imposed against students for sexual misconduct range from warning to expulsion. Sanctions against students may be imposed by the Student Affairs Officer, Conduct Officer, or Conduct Board. Institutional sanctions against employees range from warning to termination. Institutional sanctions against employees will be recommended by the Investigator to the person or persons authorized to impose employee sanctions. Institutional sanctions against third parties range from loss of privileges to trespass exclusion orders. Notice of the outcome of a sexual misconduct complaint must be provided to both complainant and respondent.

**6.    Definitions**

For purposes of addressing complaints of sexual misconduct against or by University students and employees, the following uniform definitions shall be used by the University.

    a.  "Actor" means a person accused of sexual misconduct.

    b.  "Advisor" means any person, including legal counsel, who assists the Respondent, Complainant or Investigator during a Conduct proceeding.

    c.  "Bodily injury" shall mean physical pain, illness, or any impairment of physical condition.

    d.  "Campus security authority" (CSA) is a University official charged with the duty to report incidents of sexual misconduct to the person in charge of Clery Act reporting. All officers of a university police department or a campus security department are campus security authorities, but there are other CSAs outside of those offices. The Office of the President and each Chancellor shall prepare and publicize a list of designated campus security authorities.

    e.  "Complainant" means any individual who comes forward to complain of sexual misconduct against or by a member of the University community or a third party.

    f.  "Confidentiality" means that the University will not disclose the names of individuals involved in sexual misconduct cases to others except on a need to know basis or as required by law. The University will instruct employees and students about the requirement not to disclose confidential information. Confidentiality is not the same as anonymity, where an individual is not named or personally identified.

    g.  "Consent" means agreement, approval, or permission as to some act or purpose, given voluntarily by a competent person. Nebraska law states "without consent" means:

        (1) (i) The person was compelled to submit due to the use of force or threat of force or coercion, or (ii) the person expressed a lack of consent through words, or (iii) the person expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;

        (2) The person need only resist, either verbally or physically, so as to make the person's refusal to consent genuine and real and so as to reasonably make known to the actor the person's refusal to consent; and

        (3) A person need not resist verbally or physically where it would be useless or futile to do so.

        (4) In the above text, the word "person" means the individual against whom a wrongful act was allegedly committed, and the word "actor" is the individual alleged to have committed a wrongful act. When the actor knew or should have known that a person was mentally or physically incapable of resisting or understanding the nature of his or her conduct, there is no consent. A person may be incapacitated due to intoxication, mental illness or deficiency or by physical illness or disability to the extent that personal decision-making is impossible. Surprise may also prevent resistance, as where a person is grabbed from behind.

There are some persons who the law presumes are incapable of consenting to sexual contact or penetration by an actor by reason of their age. Under Nebraska law an actor nineteen years of age or older may not subject a person under the age of sixteen years of age to sexual penetration, or a person under fifteen years of age to sexual contact.

h. "Dating violence" is included within the definition of "domestic assault."

i. "Domestic assault" has three definitions which depend on the harm threatened or inflicted by an actor on a person. An actor commits domestic assault if he or she (i) intentionally and knowingly causes bodily injury to his or her intimate partner; (ii) threatens an intimate partner with imminent bodily injury; or (iii) threatens an intimate partner in a menacing manner. An actor commits a more severe form of domestic assault if he or she intentionally and knowingly causes bodily injury to his or her intimate partner with a dangerous instrument. An actor commits the worst form of domestic assault if he or she intentionally and knowingly causes serious bodily injury to his or her intimate partner.

j. "Domestic violence" is included with the definition of "domestic assault."

k. "Force or threat of force" means (a) the use of physical force which overcomes the person's resistance or (b) the threat of physical force, express or implied, against the person or a third party that places the person in fear of death or in fear of serious personal injury to the person of a third party where the person reasonably believes that the actor has the present or future ability to execute the threat.

l. "Intimate partner" means a spouse; a former spouse; persons who have a child in common whether or not they have been married or lived together at any time; and persons who are or were involved in a dating relationship. For purposes of this definition, dating relationship means frequent, intimate associations primarily characterized by the expectation of affection or sexual involvement, but does not include a casual relationship or an ordinary association between persons in a business or social context.

m. "Intimate parts" means the genital area, groin, inner thighs, buttocks or breasts.

n. The term "Investigator" means a University official authorized to investigate and recommend remediation of complaints of sexual misconduct.

o. "In violation" means that it is more likely than not that an actor has committed one or more acts of sexual misconduct. In other words, a greater weight of the evidence standard must be used to find sexual misconduct.

p. The term "may" is used in the permissive sense.

q. "Member of the University community" includes any individual who is a student, staff, faculty member, University official, or any other individual employed by, or acting on behalf of, the University. An individual's status in a particular situation shall be determined by the Investigator or Title IX Coordinator.

r. The term "not in violation" means that it is more likely than not that a member of the University community did not commit one or more acts of sexual misconduct.

s. "Past sexual behavior" means a person's sexual behavior other than when the sexual misconduct is alleged to have occurred.

t. "Person" means the individual who allegedly was, or was determined to have been, subjected to sexual misconduct.

u. "Rape" is included under the definition of sexual assault and means an actor's sexual penetration of a person without consent.

v. "Respondent" is any member of the University who is charged with one or more acts of sexual misconduct.

w. "Retaliation" includes intimidation, threats, harassment, and other adverse action threatened or taken against the Complainant or a third party in an attempt to prevent or otherwise obstruct the reporting of sexual misconduct.

x. "Serious bodily injury" shall mean bodily injury which involves a substantial risk of death, or which involves substantial risk of serious physical disfigurement, or protracted loss or impairment of the function of any part or organ of the body.

y. "Serious personal injury" means great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ.

z. "Sexual assault" is committed when an actor subjects a person to sexual penetration (i) without the consent of the person, (ii) when the actor knew or should have known that the person was mentally or physically incapable of resisting or appreciating the nature of the person's own conduct, (iii) when the actor is at least nineteen years of age and the person is under twelve, or (iv) when the actor is twenty-five years of age or older when the person is at least twelve years of age but less than sixteen years of age.

Sexual assault is also committed when an actor subjects a person to sexual contact (a) without consent of the person, or (b) when the actor knew or should have known that the person was physically or mentally incapable of resisting or appraising the nature of the person's own conduct. Sexual assault by contact should be punished more severely if the actor causes serious personal injury to a person than if the actor shall not have caused serious personal injury.

aa. "Sexual contact" means the intentional touching of a person's intimate parts or the intentional touching of a person's clothing covering the immediate area of the person's intimate parts. Sexual contact also means the touching by the person of the actor's intimate parts or the clothing covering the immediate area of the actor's intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

bb. "Sexual harassment" is unwelcome conduct or behavior of a sexual nature. Both violent and non-violent sexual harassment is prohibited. Sexual harassment can include unwelcome sexual advances, requests for sexual favors and other verbal, nonverbal, or physical conduct of a sexual nature. Conduct that is sufficiently serious to limit or deny a person's ability to participate in or benefit from the University's educational program creates a hostile environment, and is prohibited. Examples of sexual harassment include, but are not limited to: (1) an exposure of an actor's genitals done with the intent to affront or alarm any person, and (2) viewing a person in a state of undress without his or her consent or knowledge.

cc. "Sexual misconduct" includes dating violence, domestic assault, domestic violence, rape, sexual assault, sexual harassment, and stalking.

dd. "Sexual penetration" means sexual intercourse in its ordinary meaning, cunninlingus, fellatio, anal intercourse or any intrusion, however slight, of any part of the actor's or person's body or any object manipulated by the actor into the genital or anal openings of the person's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration does not require emission of semen.

ee. The term "shall" is used in the imperative sense.

ff. "Stalking" means to engage in a knowing and willful course of conduct directed at a specific person or a family or household member of such person with the intent to injure, terrify, threaten, or intimidate.

gg. The term "student" includes all individuals taking courses at the University, whether full-time or part-time, pursuing undergraduate, graduate, or professional studies, whether or not they reside in the University residence halls. Individuals who withdraw after having allegedly committed sexual misconduct, or who are not officially enrolled for a particular term, but who have an expected continued academic relationship with the University, may be considered "students."

hh. The "Student Affairs Officer" is the individual authorized by the University and the University Chancellor to be responsible for the administration of the Student Disciplinary Code, and in certain circumstances includes his or her designee.

ii. The "Title IX Coordinator" is the individual designated by the campus to respond to allegations of sexual misconduct by members of the university community, and in some circumstances can include his or her designee.

jj. The term "University" means University of Nebraska.

kk. The term "University business day" means any calendar day where the campus offices are open for business, excluding weekends and national holidays.

OR

The term "University business day" means any calendar day where the campus offices are open for business and classes are in session, excluding weekends and national holidays.

ll. "University official" includes any individual employed by, associated with, or performing assigned administrative or professional responsibilities in the interests of the University. University officials who are designated as campus security authorities <u>must</u> report crimes to the person in charge of Clery Act reporting. Counselors and Healthcare Professionals are bound by professional rules that may preclude their reporting violations of University rules when they are acting within the scope of their counseling or professional responsibilities.

mm. The term "University premises" includes all land, buildings, facilities, University approved housing and other property in the possession of, or owned, used, or controlled by the University, including adjacent streets and sidewalks.

2014 0530 revised.no line nbr final RP 2.1.8 Sexual Misconduct Policy

**ADDENDUM B**

**UNIVERSITY OF NEBRASKA**

**RESPONSE TO ALLEGATIONS OF SEXUAL MISCONDUCT**

**RP-5.3.3 Procedures for Student Sexual Misconduct Complaints**

Response to Allegations of Student Sexual Misconduct

1. **Introduction**

    a. Beginning with the University of Nebraska charter in 1869, Nebraska law has provided that no person shall be deprived of the privileges of this institution because of sex. Discrimination on the basis of sex is also prohibited by Federal law.

    b. Sexual misconduct is conduct in violation of University policy and state and federal law that the University will take action to eliminate, prevent, and redress once the University has notice that sexual misconduct has occurred. "Sexual misconduct" includes dating violence, domestic assault, domestic violence, rape, sexual assault, sexual harassment (whether sexual violence is involved or not), and stalking. This policy applies to all University of Nebraska students regardless of sexual orientation or gender identity, and to all programs and activities under the jurisdiction of the University of Nebraska. All students are protected against sexual misconduct under this policy, whether the alleged sexual misconduct is committed by another University student, University employee, or third party. Persons who have been subjected to sexual misconduct may be able to receive assistance from the University regardless of whether a charge or report of any kind is filed.

    c. The University will investigate reported allegations of sexual misconduct and may take appropriate remedial action even if the person allegedly subject to misconduct or the Complainant does not wish to pursue formal charges. Any response by the University may be hindered by a person's or the Complainant's desire for anonymity and/or inaction.

    d. Sexual misconduct by or against a student may be investigated by the University whether it is alleged to have been committed on or off campus.

    e. Any person can complain of sexual misconduct against or by a student. Complaints of sexual misconduct may be made using the University's internal processes at the same time that criminal complaints or charges are pursued with the appropriate law enforcement or external agencies. University internal investigation and disciplinary proceedings are independent of any criminal or external proceedings.

    f. The University may pursue disciplinary action against a student at the same time the student is facing criminal charges for the same offense, even if the criminal prosecution is pending, or has been dismissed, or the charges have been reduced.

    g. Complaints regarding sexual misconduct against a student by a student can be made to the campus[1] Student Affairs Officer or Title IX Coordinator.[2] Sexual misconduct complaints by or against employees should be made to the appropriate Human Resources Office or Title IX Coordinator.

    h. University policy prohibits retaliation against any person making a complaint of sexual misconduct or against any person cooperating in the investigation, including but not limited to witnesses. The prohibition of actual or threatened retaliation applies to employees and third parties as well as students.

2. **Investigations of Alleged Sexual Misconduct; Disciplinary Complaints**

    a. Upon receipt of a sexual misconduct complaint or report, the University will provide the Complainant a written notice describing the options of pursuing a criminal complaint with a law enforcement agency, filing an administrative charge with an external agency, and/or using the University's investigation and disciplinary processes. The Complainant may go forward with one or more options at the same time, but the University's investigation may need to be

---

[1]   Insert "UNK, UNL, UNMC or UNO" wherever campus is used in this document.
[2]   Insert the names, telephone numbers, both office and e-mail addresses of the persons with these responsibilities.

46

    delayed temporarily by, or scheduled around, an ongoing criminal or external administrative investigation.

b. Any member of the University community may submit allegations of sexual misconduct against a student. Allegations shall be prepared in writing and directed to the Student Affairs Officer or designee. The Student Affairs Officer shall then direct the allegation(s) to a Conduct Officer for investigation. Any allegation should be submitted as soon as possible after the alleged misconduct takes place, preferably within, but not limited to, seven (7) University business days after the misconduct occurred.

c. The Complainant must state, in writing, if he or she wishes to pursue a complaint. If he or she does not wish to pursue the complaint and/or requests that his or her identity remain anonymous, the Student Affairs Officer will make note of that wish in the report. <u>Regardless of the Complainant's choice, the University is still required to investigate reports of sexual misconduct.</u> The Complainant must be informed if the University cannot ensure anonymity.

d. The Conduct Officer or Title IX Coordinator shall conduct an investigation to determine if the allegation(s) have merit. Investigations of the allegations should be concluded within (60) calendar days of receipt of a report[3], and may be permitted a longer completion period under extraordinary circumstances, but both parties must be informed in writing of the extension of the timeline. If the investigator determines by the greater weight of the evidence that a violation occurred, a recommended disposition should be included in the investigator's report. If the investigation determines it is more likely than not that the Respondent did not violate the Student Code, the complaint may be dismissed without further proceedings. If both the Complainant and the Respondent agree to the dismissal, the complaint is resolved without any further rights of appeal by either party. If the Complainant objects, he or she may appeal the dismissal decision administratively to the Student Affairs Officer within seven (7) University business days. The Student Affairs Officer will either affirm the investigative determination, or refer the complaint for further proceedings. The Student Affairs Officer's decision of the dismissal appeal will be final.

      i. If the Complainant wishes to pursue an Administrative Resolution, the Conduct Officer will determine the Respondent's position and take actions as necessary.
      ii. If the Complainant wishes to pursue a disciplinary hearing, a formal hearing will be held by a Conduct Officer, or in cases where University Suspension or University Expulsion is sought, a hearing before a Conduct Board must be held.
      iii. After the fact-finding investigation the Complainant, the Respondent, and appropriate university officials shall be given timely access to any information that will be used during Administrative Resolution and/or Formal Hearing proceedings.

3. **Interim Protective Measures**

a. "No contact" directives are to be issued in writing to persons involved in any alleged sexual misconduct promptly after the University receives notice of a complaint. Respondents and the Complainant will both be expected to abide by the terms of no contact directives and may go through disciplinary proceedings should they violate the directives.

b. Students who have been subjected to sexual misconduct or Complainants have access to other available University assistance in changing academic and living situations after an alleged incident, if so requested by the student or Complainant and if such changes are reasonably available. Accommodations to minimize the burden on the student or Complainant may include but are not limited to:

      i. Change of an on-campus student's housing to a different on-campus location;
      ii. Assistance from the University in completing the relocation;
      iii. Arranging to end a University housing contract and/or adjusting a student account balance for refund;
      iv. Rescheduling an exam, paper, or assignment;
      v. Taking an incomplete in a class;
      vi. Transferring between class sections;
      vii. Temporary withdrawal;

---

[3]    *See* "Questions and Answers on Title IX and Sexual Violence" guidance issued April 29, 2014 by the U.S. Dept. of Education, Office of Civil Rights (OCR) at F-8 and OCR April 4, 2011 Dear Colleague Letter, page 12. A maximum timeframe of 60 calendar days for the investigation is allowed. This "includes conducting the investigation . . . to determine whether the alleged sexual violence occurred . . . and determining what actions the school will take . . . ." OCR Guidance, supra, at p. 31. This time frame is different and independent from University business days, and is not affected by closing of administrative offices, class schedules, or national holidays.

        viii. Alternative course completion options;
        ix. Arranging to complete a course or lectures via distance education methods with the assistance of technology;
        x. Providing increased security at locations or activities.

c. Any student charged with sexual misconduct has the right to maintain status as a student and attend classes while the case is pending final resolution within the University Conduct process, unless it is determined by the Student Affairs Officer or his/her designee that the student's continued participation as a student, whether inside or outside of the classroom, would seriously disrupt normal operation of the University or constitute an immediate harm, threat of harm, hostile environment and/or danger to the health, safety, or welfare of the Respondent, the Complainant, any person allegedly subject to sexual misconduct, or any member of the University community.

d. Pending completion of an investigation or University Conduct Proceedings, the Student Affairs Officer may at any time temporarily suspend a student when the Student Affairs Officer finds and believes from information coming to his or her attention that the presence of the Respondent on the University premises would seriously disrupt normal operation of the University or constitute an immediate harm, threat of harm, hostile environment and/or danger to the health, safety, or welfare of the Respondent, the Complainant, any person allegedly subject to sexual misconduct, or any member of the University community. The Student Affairs Officer should work with the appropriate academic Dean in making the decision to discontinue the Respondent's continued participation as a student prior to the completion of the formal proceedings.

e. During the suspension described in this section, the Respondent may be denied access to any University premises, including classes, residence hall access, sporting events, and/or all other University programs, activities or privileges for which the student might otherwise be eligible, as the Student Affairs Officer may determine to be appropriate.

f. If a student placed on interim suspension is ultimately found "not in violation" of the Code, such student shall be allowed, at the reasonable discretion of the appropriate faculty, to make up academic work missed while on suspension.

4. **General Provisions Applicable in Cases of Alleged Sexual Misconduct**

a. The Conduct Officer and Conduct Board can hear any allegations of any other violations of the Student Code of Conduct in addition to allegations of sexual misconduct that are directly related to the alleged sexual misconduct. If the Conduct Officer or Conduct Board determines other provisions of the Student Code of Conduct were violated, they may impose proper sanctions.

b. Any student involved in a Conduct proceeding has the right to confidentiality as mandated by the Family Educational Rights and Privacy Act of 1974 (FERPA) and implementing regulations.

c. No process implemented under this Sexual Misconduct Procedure shall be open to the public. The complaining party and the Respondent are entitled to the same opportunities to have others present during a disciplinary proceeding subject to conditions established by the Conduct Officer or Conduct Board. Witnesses may be sequestered and attendance at hearings may be restricted to the Complainant, Respondent and advisors.

d. In such cases when a student fails to appear before the Conduct Officer or Conduct Board, a plea of "not in violation" shall be entered on the Respondent's behalf and the hearing may proceed as scheduled.

e. In all cases, whether the Respondent is present or not, the evidence in support of the allegations shall be presented and considered.

f. The determination of the merits of each case shall be made using a greater weight of the evidence standard, meaning it is more likely than not that a proposition (such as violation of the Code) was proven.

g. The burden of proof shall rest upon the Conduct Officer or Complainant bringing the misconduct charge. A Respondent is presumed not to be in violation of the Code until proven otherwise.

5. **Rights of the Complainant and the Respondent in Sexual Misconduct Proceedings**

    a. Sexual misconduct proceedings will be conducted by trained University officials to provide a prompt, fair, and impartial process from initial investigation to the final result.

    b. Both a Respondent and the Complainant have the right to see sexual misconduct charges in written form.

    c. Both the Respondent and the Complainant have a right to confidentiality during sexual misconduct proceedings to the extent possible. However, the duty of confidentiality does not preclude the University from conducting a meaningful investigation or reporting such incidents as required. The duty of confidentiality shall also extend to all persons involved in processing the complaint and the investigation. The Complainant has a right to anonymity only to the extent that the Complainant does not wish to file an official complaint with the University or does not wish the University to take any action against the Respondent in regard to the complaint.

    d. All charges shall be presented to the Respondent and the Complainant in written form by a University official or the Conduct Officer within seven (7) University business days after the investigation is complete.

    e. Both a Respondent and the Complainant have a right to prepare a written statement in advance of a formal hearing. Both parties will have the right to view each other's statement.

    f. The Complainant and the Respondent have the right to be assisted by any advisor they choose, including legal counsel, at their own expense.

        i. The role of the advisor is limited to providing advice to the party who has requested his/her presence in a manner which does not disturb Conduct proceedings. If an advisor fails to act in accordance with these guidelines, he/she may be barred from participation in the Conduct proceedings.

    g. A Respondent and the Complainant have the right to hear all evidence, present evidence, testify, and to hear and submit questions for witnesses during formal hearings.

        i. Direct questioning of the witnesses by the Respondent and Complainant may be limited. The Conduct Officer presiding at the hearing or Chair of the Conduct Board may control questioning by requiring the Respondent and Complainant to submit questions in writing to determine if the questions are appropriate, and then the presiding Conduct Officer or Chair may pose questions to the witness.

    h. A Respondent and the Complainant have the right to inspect all documents used as evidence and a list of all witnesses for the formal hearing in advance of the hearing.

    i. The Respondent may not be found to have committed sexual misconduct solely because the respondent failed to appear for a conduct hearing.

    j. Sexual misconduct proceedings should be completed in a reasonably prompt time frame.

    k. A Respondent and the Complainant have the right to be notified of the decision rendered. Any initial, interim, and final decision to resolve disciplinary matters must include a statement of any University sanctions imposed together with the rationale for the decision.

6. **Administrative Resolution Procedures in Cases of Alleged Sexual Misconduct**

    a. Both the Complainant and the Respondent may elect to dispose of the claim administratively. This conference will be scheduled not less than three (3), nor more than fourteen (14), University business days after the Conduct Officer's investigation is complete. The Respondent may elect to acknowledge his or her actions and take responsibility. If the Respondent denies responsibility but the investigation determines that it was more likely than not the Respondent violated the Code, the Conduct Officer could propose a resolution and an appropriate sanction. If both the Complainant and the Respondent agree to the proposed sanction, the complaint is resolved without a formal hearing. Mediation shall not be used to resolve sexual assault complaints.

    b. Administrative Resolution procedures may be discontinued at the request of any participant, or terminated by the Conduct Officer. When Administrative Resolution fails, a formal hearing by a Conduct Officer or Conduct Board must be held.

    c. If University Suspension or University Expulsion is sought and the Complainant or the Respondent cannot agree to the proposed sanction, a hearing must be held before the Conduct Board to determine the proper sanction.

    d. When University Suspension or University Expulsion is not sought, a formal hearing will be held before a Conduct Officer. Unless the parties agree, the Conduct Officer who was responsible for investigation of sexual misconduct allegations and/or who attempted an unsuccessful Administrative Resolution will not preside over the formal hearing.

**7. Formal Hearings in Cases of Alleged Sexual Misconduct**

    a. Both a Respondent and the Complainant shall have the right to attend a pre-hearing conference to discuss the issues and facts that will be presented at the hearing, to exchange information about witnesses likely to be called, answer procedural questions, and settle those matters which may be agreeably concluded. The conference will **not** be used to settle the issue of whether or not the violation was committed or to challenge any recommended sanctions. This conference shall be held at least two (2) days prior to the scheduled hearing.

        i. Students will be instructed about the use of past sexual behavior of the Complainant[4] or past sexual assault by the Respondent[5] as evidence at the hearing. In most situations, evidence of the past sexual history of either the Respondent or the Complainant will not be admitted at the hearing except in very limited situations.

    b. A time shall be set for a hearing, not less than three (3), nor more than fourteen (14), University business days after the Respondent and the Complainant have been notified that the complaint was referred to the hearing. Maximum time limits for scheduling of hearings may be extended at the discretion of the Conduct Officer or Conduct Board chair.

    c. Hearings shall conform to the following guidelines:

        i. In cases where the case is referred to a Conduct Board, the Conduct Board shall be composed of at least 3 members of the University community.
        ii. Any real or perceived conflict of interest or bias between the Conduct Officer presiding at a hearing or a member of the Conduct Board and the Respondent or the Complainant must be brought to the attention of the Conduct Officer or Conduct Board no less than two (2) University business days in advance of the hearing.
        iii. The Respondent(s) and the Complainant and/or the Conduct Officer are responsible for presenting their respective cases to the Conduct Officer presiding at the hearing or the Conduct Board.
        iv. The Conduct Board shall select its own Chair with all members possessing voting privileges.
        v. In hearings involving more than one Respondent, the presiding Conduct Officer or Chair of the Conduct Board, in his or her discretion, may permit the hearings concerning each student to be conducted separately.
        vi. The Respondent(s), the Complainant, and the Conduct Officer shall have the right to hear all evidence, present evidence, testify, and to hear and question witnesses.
        vii. The Respondent, the Complainant, and the Conduct Officer shall have an opportunity in advance to inspect documents and a list of witnesses for the hearing no less than two (2) University business days in advance of the hearing.
        viii. Pertinent records, facts, reports, and statements may be accepted as evidence for consideration by a presiding Conduct Officer or Conduct Board. Evidence which possesses probative value commonly accepted by reasonably prudent persons in the conduct of their affairs may be admitted and given probative effect. Incompetent, irrelevant, immaterial, and unduly repetitious evidence should be excluded. The rules of privilege recognized by law shall be given effect. Evidence that would not be admissible in a State Court criminal proceeding by reason of the method or manner in which it was acquired shall not be admitted.
        ix. All procedural and evidentiary questions are subject to the final decision of the presiding Conduct Officer or Chair of the Conduct Board.

    d. After the hearing, the Conduct Board shall determine by simple majority vote whether or not the University Suspension or University Expulsion is warranted. The decision of a presiding Conduct Officer or Conduct Board shall be based solely upon evidence introduced and received

---

[4] *See* Neb. Rev. Stat. § 27-412 (2012 Cum. Supp.) (Relevance of person's alleged past sexual behavior or alleged sexual predisposition), *see also* OCR Guidance F-7.
[5] *See* Neb. Rev. Stat. § 27-415 (2012 Cum. Supp.) (Evidence of crimes of sexual assault in civil cases).

50

     at the hearing. There shall be a verbatim record made, such as by sound recording, of all formal hearings. The formal hearing record shall be the property of the University.

  e. Within seven (7) University business days following the conclusion of formal hearing proceedings, the presiding Conduct Officer or the Conduct Board Chair shall inform the Respondent, the Complainant, and the Title IX Coordinator in writing, of its findings and of the sanction(s) imposed, if any.

  f. The presiding Conduct Officer and the Conduct Board may seek advice from the University's Counsel throughout the hearing process on questions of law and procedure. However, the presiding Conduct Officer and Conduct Board are responsible for making their own factual conclusions.

8. **Conduct Sanctions Against Individual Student For Sexual Misconduct**

  a. The following sanction(s) may be imposed upon any individual student found to be "in violation" of the Code.

    i. <u>Warning</u>: A formal, written notice that the student is violating, or has violated, one or more University Conduct Rules and Regulations and that a continuance of the misconduct may lead to additional disciplinary action. Also, that the incident has been documented and shall remain in the student's Conduct file for the remainder of their University career.

    ii. <u>Probation</u>: A formal, written reprimand for a student's violation(s) of specified University Conduct Rules and Regulations. This probation, including strict campus conduct guidelines, is for a designated period of time and may remain in effect for the remainder of a student's University career. It includes the probability of more severe disciplinary sanctions if the student is found to be in violation of any University Conduct Rules and Regulations during the probationary period.

    iii. <u>Loss of Privileges</u>: Denial of specified privileges for a designated period of time.

    iv. <u>Restitution</u>: Compensation for loss, damage, or injury. This may take the form of appropriate service and/or monetary, and/or material replacement.

    v. <u>Discretionary Sanctions</u>: In accordance with the goal of education and assisting students with conduct problems, this may include work assignments, educational requirements, service to the University or local community, parental notification, or other related discretionary assignments (such assignments must have the prior approval of the Conduct Officer). Any costs associated with the assignment are the responsibility of the student.

    vi. <u>Residence Hall Relocation</u>: Moving a student from one room to another and/or one residence hall to another.

    vii. <u>Residence Hall Suspension</u>: Separation of the student from the residence halls for a definite period of time, after which the student is eligible to return. Conditions for readmission may be specified.

    viii. <u>Residence Hall Expulsion</u>: Permanent removal of the student from any and all of the residence halls. The student may not re-enter the residence halls, under any conditions, even as a visitor. Students expelled from the residence halls remain liable for all Residential and Greek Life costs and meal plan fees and may not be eligible for refunds for the full occupancy period of the students' housing contracts.

    ix. <u>University Suspension</u>: Separation of the student from the University for a definite period of time, after which the student may be eligible for return, contingent upon meeting specified conditions for re-admittance. The student must satisfactorily demonstrate to the Student Affairs Officer that all conditions for re-admittance have been met before the student will be allowed to matriculate.

    x. <u>University Expulsion</u>: Permanent separation of the student from the University, without the possibility of re-admission.

  b. More than one of the sanctions listed above may be imposed for any single violation.

  c. If a student fails to abide by one or more of the sanctions imposed, a hold may be placed on his/her registration account until satisfactory progress is made towards completion.

  d. Other than University Expulsion, disciplinary sanctions shall not be made part of the student's permanent academic record, but shall become part of the student's confidential disciplinary record.

    i. After graduation, and upon application to the Conduct Officer, the student's confidential disciplinary record may be expunged of disciplinary actions other than University Suspension or University Expulsion.

   ii. Cases involving the imposition of sanctions other than University Suspension or University Expulsion shall be expunged from the student's confidential record seven (7) years after graduation, final disposition of the case, or as otherwise authorized or required by law.

9. **Appeals**

   a. A decision reached after a formal hearing may be appealed by the Respondent, the Complainant, or the Conduct Officer within seven (7) University business days of delivery of the decision to the parties involved in the formal hearing.

   b. Appeals shall be in writing and shall be delivered to the Appeals Officer appointed by the Chancellor.

   c. Appeals may be filed for one or more of the following purposes:

      i. To determine whether the original hearing was conducted fairly in light of the charges and evidence presented, and in conformity with prescribed procedures giving the complaining party a reasonable opportunity to prepare and present evidence that the Code was violated, and giving the Respondent a reasonable opportunity to prepare and to present a rebuttal of those allegations.
      ii. To determine whether the sanction(s) imposed were appropriate.

   d. An appeal that does not clearly raise one or more of the issues listed above shall be dismissed without further consideration.

   e. An appeal shall be limited to review of the record of the initial hearing and supporting documents unless the Appeals Officer, after notice to the Complainant and Respondent, requests additional information from the presiding Conduct Officer, Chair of the Conduct Board, Complainant or Respondent.

   f. The Appeals Officer shall complete review of the appeal normally within fourteen (14) University business days after receipt of the record and any additional information, and shall promptly issue a written decision to the Respondent, the Complainant and the Conduct Officer.

10. **Definitions**

    a. "Actor" means a person accused of sexual misconduct.

    b. "Administrative Resolution" is at least one conference between the Conduct Officer and a Respondent and the Complainant to determine whether a student has violated the Code and to impose sanction(s), if warranted.

    c. The term "advisor" means any person, including legal counsel, who assists the Respondent, Complainant or Conduct Officer during a Conduct proceeding.

    d. The term "Appeals Officer" means the person authorized by the Chancellor to determine on appeal whether the result of a formal hearing should be affirmed or modified.

    e. "Bodily injury" shall mean physical pain, illness, or any impairment of physical condition.

    f. The term "Code" means the campus Student Code of Conduct.

    g. The term "Complainant" means any individual who comes forward to the Student Affairs Officer, Title IX Coordinator or Human Resource Officer to complain of sexual misconduct by a student, member of the University community or a third party.

    h. The term "Conduct Board" means persons authorized by the Student Affairs Officer to determine whether a student has violated the Code and to impose sanction(s), if warranted. The Conduct Board must include one or more student members when sanctions of suspension or expulsion are involved.[6]

    i. The term "Conduct Officer" means a University official authorized by the Student Affairs Officer to investigate and determine whether or not the Code has been violated. The Conduct Officer may also engage in attempts at administrative resolution or preside at a formal hearing when University Suspension or Expulsion is not sought as a sanction against a student.

---

[6] Section 5.4(e) of the Bylaws of the Board of Regents requires "a hearing before a regularly constituted board in all cases involving expulsion or suspension."

j. "Confidentiality" means that the University will not disclose the names of individuals involved in a sexual misconduct case to others except on a need to know basis or as required by law. The University will instruct employees and students about the requirement not to disclose confidential information. Confidentiality is not the same as anonymity, where an individual is not named or personally identified.

k. "Consent" means agreement, approval, or permission as to some act or purpose, given voluntarily by a competent person. "Without consent" means:

(1) (i) The person was compelled to submit due to the use of force or threat of force or coercion, or (ii) the person expressed a lack of consent through words, or (iii) the person expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;

(2) The person need only resist, either verbally or physically, so as to make the person's refusal to consent genuine and real and so as to reasonably make known to the actor the person's refusal to consent; and

(3) A person need not resist verbally or physically where it would be useless or futile to do so.

(4) In the above text, the word "person" means the individual against whom a wrongful act was allegedly committed, and the word "actor" is the individual alleged to have committed a wrongful act. When the actor knew or should have known that a person was mentally or physically incapable of resisting or understanding the nature of his or her conduct, there is no consent. A person may be incapacitated due to intoxication, mental illness or deficiency or by physical illness or disability to the extent that personal decision-making is impossible. Surprise may also prevent resistance, as where a person is grabbed from behind.

There are some persons who the law presumes are incapable of consenting to sexual contact or penetration by an actor by reason of their age. Under Nebraska law an actor nineteen years of age or older may not subject a person under the age of sixteen years of age to sexual penetration, or a person under fifteen years of age to sexual contact.

l. "Dating violence" is included within the definition of "domestic assault."

m. "Domestic assault" has three definitions which depend on the harm threatened or inflicted by an actor on a person. An actor commits domestic assault if he or she (i) intentionally and knowingly causes bodily injury to his or her intimate partner; (ii) threatens an intimate partner with imminent bodily injury; or (iii) threatens an intimate partner in a menacing manner. An actor commits a more severe form of domestic assault if he or she intentionally and knowingly causes bodily injury to his or her intimate partner with a dangerous instrument. An actor commits the worst form of domestic assault if he or she intentionally and knowingly causes serious bodily injury to his or her intimate partner.

n. "Domestic violence" is included within the definition of "domestic assault."

o. "Force or threat of force" means (a) the use of physical force which overcomes the person's resistance or (b) the threat of physical force, express or implied, against the person or a third party that places the person in fear of death or in fear of serious personal injury to the person of a third party where the person reasonably believes that the actor has the present or future ability to execute the threat.

p. "Intimate partner" means a spouse; a former spouse; persons who have a child in common whether or not they have been married or lived together at any time; and persons who are or were involved in a dating relationship. For purposes of this definition, dating relationship means frequent, intimate associations primarily characterized by the expectation of affection or sexual involvement, but does not include a casual relationship or an ordinary association between persons in a business or social context.

q. "Intimate parts" means the genital area, groin, inner thighs, buttocks or breasts.

r. The term "in violation" means that it is more likely than not[7] that a student committed one or more violations of the Code.

---

[7] By making a finding of whether it is more likely than not that a violation did or did not occur, a "greater weight of the evidence" standard is being used.

53

s. The term "may" is used in the permissive sense.

t. The term "member of the University community" includes any individual who is a student, staff, faculty member, University official, or any other individual employed by, or acting on behalf of the University. An individual's status in a particular situation shall be determined by the investigating Conduct Officer or Title IX Coordinator.

u. The term "not in violation" means that it is more likely than not that a student did not commit one or more violations of the Code.

v. "Past sexual behavior" means a person's sexual behavior other than when the sexual misconduct is alleged to have occurred.

w. "Person" means the individual who allegedly was, or was determined to have been, subjected to sexual misconduct.

x. "Rape" is included under the definition of sexual assault by an actor's sexual penetration of the person without consent.

y. "Respondent" is any student who is charged with having violated one or more provisions of the code.

z. "Retaliation" includes intimidation, threats, harassment, and other adverse action threatened or taken against the Complainant or a third party in an attempt to prevent or otherwise obstruct the reporting of sexual misconduct.

aa. "Serious bodily injury" shall mean bodily injury which involves a substantial risk of death, or which involves substantial risk of serious physical disfigurement, or protracted loss or impairment of the function of any part or organ of the body.

bb. "Serious personal injury" means great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ.

cc. "Sexual assault" is committed when an actor subjects a person to sexual penetration (i) without the consent of the person, (ii) when the actor knew or should have known that the person was mentally or physically incapable of resisting or appreciating the nature of the person's own conduct, or (iii) when the actor is nineteen years of age or older and the person is at least twelve but less than sixteen years of age.

Sexual assault is also committed when an actor subjects a person to sexual contact (a) without consent of the person, or (b) when the actor knew or should have known that the person was physically or mentally incapable of resisting or appraising the nature of the person's own conduct. Sexual assault by contact should be punished more severely if the actor causes serious personal injury to a person, than if the actor shall not have caused serious personal injury.

dd. "Sexual contact" means the intentional touching of a person's intimate parts or the intentional touching of a person's clothing covering the immediate area of the person's intimate parts. Sexual contact also means the touching by the person of the actor's intimate parts or the clothing covering the immediate area of the actor's intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

ee. "Sexual harassment" is unwelcome conduct or behavior of a sexual nature. Sexual harassment can include unwelcome sexual advances, requests for sexual favors and other verbal, nonverbal, or physical conduct of a sexual nature. Conduct that is sufficiently serious to limit or deny student's ability to participate in or benefit from the University's educational program creates a hostile environment, and is prohibited. Examples of sexual harassment include, but are not limited to: (1) an exposure of an actor's genitals done with the intent to affront or alarm any person, and (2) viewing a person in state of undress without his or her consent or knowledge.

ff. "Sexual misconduct" includes dating violence, domestic assault, domestic violence, rape, sexual assault, sexual harassment, and stalking.

gg. "Sexual penetration" means sexual intercourse in its ordinary meaning, cunninlingus, fellatio, anal intercourse or any intrusion, however slight, of any part of the actor's or person's body or any object manipulated by the actor into the genital or anal openings of the person's body which

      can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration does not require emission of semen.

hh. The term "shall" is used in the imperative sense.

ii. "Stalking" means to engage in a knowing and willful course of conduct directed at a specific person or a family or household member of such person with the intent to injure, terrify, threaten, or intimidate.

jj. The term "student" includes all individuals taking courses at the University, whether full-time or part-time, pursuing undergraduate, graduate, or professional studies, whether or not they reside in the University residence halls. Individuals who withdraw after having allegedly committed sexual misconduct, or who are not officially enrolled for a particular term, but who have an expected continued academic relationship with the University, may be considered "students."

kk. The "Student Affairs Officer" is the individual authorized by the University and the University Chancellor to be responsible for the administration of the Code, and in certain circumstances includes his or her designee.

ll. The "Title IX Coordinator" is the individual designated by the campus to respond to allegations of sexual misconduct by students, and in some circumstances can include his or her designee.

mm. The term "University" means University of Nebraska.

nn. The term "University business day" means any calendar day where the campus offices are open for business, excluding weekends and national holidays.

OR

      The term "University business day" means any calendar day where the campus offices are open for business and classes are in session, excluding weekends and national holidays.

oo. The term "University official" includes any individual employed by, associated with, or performing assigned administrative or professional responsibilities in the interests of the University.  Counselors and Healthcare Professionals are bound by professional rules that may preclude their reporting violations of University rules.

pp. The term "University premises" includes all land, buildings, facilities, University approved housing and other property in the possession of, or owned, used, or controlled by the University, including adjacent streets and sidewalks.

2014 0530 revised.no line nbr final RP 5.3.3 Student Sexual Misconduct Procedures