University Documents Concerning
Student Rights and Responsibilities

# <u>Student Code of Conduct and Disciplinary Procedures</u>

<u>Appendix A:</u>  Response to Allegations
of Student Sexual Misconduct

<u>Appendix B:</u>  Policy for Responsible
Use of University Computers
and Information Systems

<u>Appendix C:</u>  Statement on University of
Nebraska Response to Copyright
Infringement Notifications

<u>Appendix D:</u>  Student Records Policy

<u>Appendix E:</u>  Crime Prevention and Safety
at the University of Nebraska-Lincoln

**EXHIBIT
E**



# Student Code of Conduct

## Student Code of Conduct

## Preamble

The community of scholars at the University of Nebraska-Lincoln is dedicated to personal growth and academic excellence.  By choosing to join the community, each member agrees to comply with certain standards of civilized behavior; and therefore, the University of Nebraska-Lincoln adopts this Student Code of Conduct, in order that it might:  (1) promote a campus environment that supports its educational, research, and outreach missions; (2) protect the members of the community and its resources from disruption and harm; (3) provide a guide to appropriate individual and group behavior; and (4) foster ethical standards and civic virtues, all in keeping with the STUDENT STATEMENT OF VALUES adopted by the Association of Students of the University of Nebraska-Lincoln on January 15, 2014.

All allegations of sexual misconduct, including sexual assault, sexual violence, dating violence, domestic violence, or stalking are investigated and addressed following the procedures set forth in the "University of Nebraska-Lincoln Response to Allegations of Student Sexual Conduct", adopted pursuant to Board of Regents Policy 5.3.3, attached to this Student Code as Appendix "A," or as Appendix "A" may be hereafter amended.

## Student Statement of Values

We the students of the University of Nebraska-Lincoln, as the Cornhusker community, are true to the values we uphold.  We treat each other and ourselves with respect; we are dependable, following through on obligations; we are committed, faithful to a cause that is greater than ourselves; we are diligent citizens, engaging in service and our community; we share a caring spirit, demonstrating interest and concern; and we are open-minded, valuing the ideas of others; we engage in responsible social conduct that reflects credit upon the University community and model good citizenship in any community.  We work with integrity to fulfill the mission of higher education and strive for excellence while forever carrying the banner of UNL.

Still, on our journeys toward becoming the best versions of ourselves, we learn from the mistakes we make.  Furthermore, we understand that rules, regulations, and sanctions do not exist merely as punitive measure, but rather as guiding principles leading us toward success.  This Code of Conduct seeks to create standards, consistent with our values, of the highest order to which we hold our peers and ourselves.

## Article I:  Definitions

1.  The terms "University" and "UNL" mean the University of Nebraska-Lincoln.

2.  The term "student" includes all persons enrolled at the University, either as a resident student or an on-line student, whether full-time or part-time.  The term "student" also includes:
    a.  A person who withdraws from enrollment at the University after allegedly violating the Student Code, but before the offense is adjudicated;
    b.  A person once enrolled as a student, not officially enrolled for a particular term in which an offense is committed, but who has a continuing relationship with the University;
    c.  A person living in any University residence hall or family housing, although not enrolled at the University; and
    d.  A person participating as a learner in a program sponsored by the University, even if such program is conducted away from University premises, in any location, including other states and countries.

3.  The term "faculty member" means any person hired by the University to conduct classroom, research, or teaching activities or who is otherwise considered by the University to be a member of its faculty.

4.  The term "University official" includes any person employed by the University, performing assigned administrative or professional responsibilities.

5.  The term "member of the University community" includes any person who is a student, faculty member, University official or any other person employed the University.  A person's status in a particular situation shall be determined by the Dean of Students.

6.  The term "University premises" includes all land, buildings, facilities, and other property in the possession of or owned, used, or affiliated with the University (e. g., Greek Houses, Residence Halls, University vehicles, or off-campus research facilities including adjacent streets and sidewalks).

7.  The term "RSO" means any recognized student organization with any number of persons who have complied with the formal requirement for University recognition.

8. The term "shall" is used in the imperative sense.

9. The term "may" is used in the permissive sense.

10. The term "school day(s)" refers to those days during the Fall semester and the Spring semester when classes are in session.

11. The term "policy" means the written regulations of the University and the University of Nebraska as found in, but not limited to, the Student Code, Residence Life Handbook, the University of Nebraska and the University of Nebraska-Lincoln web pages, the computer use policy (Executive Memorandum No. 16), and Graduate/Undergraduate Bulletins.

12. The term "Complainant" means any person who submits a charge alleging that a student violated this Student Code. When a student believes that s/he has been a victim of another student's misconduct, the student who believes s/he has been a victim will have the same rights under this Student Code as are provided to the Complainant, even if another member of the University community also submitted the charge.

13. The term "Respondent" means any student or RSO accused of violating this Student Code.

14. The term "Conduct Officer" shall mean the Dean of Students or a University official authorized the Vice Chancellor for Student Affairs to impose sanctions upon students or RSOs found to have violated the Student Code of Conduct or other published University policies and regulations prescribing standards of student conduct.

15. The terms "Disciplinary Procedures" or "University Disciplinary Procedures" refers to the provisions which comprise the hearing process described in Article IV of this Student Code.

16. The terms "Conduct Board" and "University Conduct Board" refer to that body of students and faculty selected pursuant to the provisions of Article IV, paragraph 10.1, which presides over hearings conducted as part of the Disciplinary Procedures.

17. The terms "Appeals Board" and "University Appeals Board" refer to that body of students and faculty selected pursuant to the provisions of Article IV, paragraph 11.1, which hears appeals of the decision made by the Conduct Board.

## Article II:  Student Code Authority

1. The Dean of Students is that person designated by the University to be responsible for the administration of the Student Code and is authorized by the Vice Chancellor for Student Affairs, as the Conduct Officer, to impose sanctions upon students or RSOs found to have violated the Student Code or other published University policies and regulations prescribing standards of student conduct.

2. Decisions made by the University Conduct board, or if appealed, then by the University Appeals Board, shall be final.  No other UNL or University of Nebraska appeal is available.

## Article III:  Proscribed Conduct

### A.  Jurisdiction of the University Student Code of Conduct

1. The Student Code shall apply to conduct that occurs:
   a. On University premises, including all University of Nebraska locations, physical campuses and any University affiliated programs located in other states or countries.
   b. Off University premises, if the conduct is determined by the Dean of Students to adversely affect the University community, its members, its reputation or the pursuit of its objectives.

2. The Student Code applies to student conduct which occurs from the time of enrollment through the actual awarding of a degree, even if the conduct occurs prior to the start of classes or is discovered after a degree is awarded.

3. An RSO is responsible before a member's conduct from the time the student is admitted to membership until the earlier of the student's permanent termination from membership or is awarded a degree.

All allegation of sexual misconduct, including, sexual assault, sexual violence, dating violence, domestic violence or stalking are investigated and addressed following the procedures set forth in the "University of Nebraska-Lincoln Response to Allegations of Student Sexual Conduct", adopted pursuant to Board of Regents Policy 5.3.3, attached to this Student Code as Appendix "A," or as Appendix "A" may be hereafter amended.

### B.  Conduct – Rules and Regulations

Any student found to have committed or to have attempted to commit the

# Student Code of Conduct

following misconduct is subject to the disciplinary sanctions outlined in Article IV:

1.  Acts of academic dishonesty, including but not limited to the following:

1a. Cheating:  Copying or attempting to copy from an academic test or examination of another student; using or attempting to use unauthorized materials, information, notes, study aids or other devices for an academic test, examination or exercise; engaging or attempting to engage the assistance of another individual in misrepresenting the academic performance of a student; or communication information in an unauthorized manner to another person for an academic test, examination or exercise.

1b. Fabrication or Falsification:  Falsifying or fabricating any information or citation in any academic exercise, work, speech, research, test or examination.  Falsification is the alteration of information, while fabrication is the invention or counterfeiting of information.

1c. Plagiarism:  Presenting the work of another as one's own (i.e., without proper acknowledgement of the source) and submitting examination, theses, reports, speeches, drawings, laboratory notes or other academic work in whole or in part as one's own when such work has been prepared by another person or copied from another person.  Materials covered by this prohibition include, but are not limited to, text, video, audio, images, photographs, websites, electronic and online materials, and other intellectual property.

1d. Abuse of Academic Materials:  Destroying, defacing stealing, or making inaccessible library or other academic resource material.

1e. Complicity in Academic Dishonesty:  Helping or attempting to help another student to commit an act of academic dishonesty.

1f. Falsifying Grade Reports:  Changing or destroying grades, scores or marking on an examination or in a faculty member's records.

1g. Impermissible Collaboration:  Collaborating on any academic exercise, work, speech, test or examination unless expressly authorized by the faculty member.  It is the obligation of the student to know whether collaboration is permitted.

1h. Misrepresentation to Avoid Academic Work:  Misrepresentation by fabrication an otherwise justifiable excuse such as illness, injury, accident, etc., in order to avoid or delay timely submission of academic work or to avoid or delay the taking of a test or examination.

1i. Other:  Academic units and members of the faculty may prescribe and give students prior notice of additional standards of conduct for academic honesty in a particular course, and violation of any such standard of conduct shall constitute misconduct under this Student Code and the University Disciplinary Procedures.

Any student found guilty of academic dishonesty may be subject to both academic and disciplinary sanctions.

a.  In cases where a faculty member finds that a student has committed any act of academic dishonesty, the faculty member may, in the exercise of his or her professional judgment, impose an academic sanction as severe as giving the student a failing grade in the course.  Before imposing an academic sanction the faculty member shall first attempt to discuss the matter with the student.  If deemed necessary by either the faculty member or the student, the matter may be brought to the attention of the student's major adviser, the faculty member's department chairperson or head, or the dean of the college in which the student is enrolled.  When academic sanction is imposed which causes the student to receive a lowered course grade, the faculty member shall make a report in writing of the facts of the case and the academic sanction imposed against the student to the faculty member's department chairperson or head and to the Conduct Officer.  The student shall be provided with a copy of this report.  Further, the faculty member may recommend the institution of disciplinary proceedings against the student for violation of this Student Code, if the faculty member in the exercise of his or her professional judgment believes that such action is warranted.

b.  In cases where a faculty member's finding of academic dishonesty is admitted by the student and an academic sanction is imposed by the faculty member, which the student believes to be too severe, the student shall have the right to appeal the severity of the academic sanction through the applicable grade appeal procedure.

c.  In cases where a faculty member's finding of academic dishonesty is disputed by the student, the matter shall be referred to the Conduct Officer for disposition in accordance with the University Disciplinary

Procedures. Any academic sanction imposed by the faculty member shall be held in abeyance pending a final decision under the University Disciplinary Procedures. If it is determined through these procedures that the student did not commit academic dishonesty, the faculty member's academic sanction shall be set aside. If it is determined that the student committed academic dishonesty, the faculty member's academic sanction shall be imposed in addition to any disciplinary sanction which may be imposed under the University Disciplinary Procedures.

d. The provision of this Student Code relating to academic dishonesty and the procedures applicable thereto do not apply to law students in the College of Law, who are governed by the Honor Code of the College of Law, which may be found on the College of Law's official website.

2. Furnishing False information to any University official, faculty member, or office.

3. Forgery, alteration, or misuse of any University document, record, or instrument of identification.

4. Disruption or obstruction of teaching, research, administration, disciplinary, proceedings, and other University activities on or off-campus, including its public service functions on or off-campus, or of other authorized non-University activities.

5. Physical abuse, verbal abuse, threats, intimidation, harassment, coercion, and/or other conduct that threatens or unreasonably endangers the mental or physical health, safety or reputation of any person or oneself, including any such conduct achieved through means of social media or any other means of electronic communication.

6. Attempted or actual theft of and/or damage to property of the University or property of a member of the University community on or off campus.

7. Hazing, defined as any activity by which a person intentionally or recklessly endangers the physical or mental health or safety of an individual for the purpose of initiation into, admission into, affiliation with, or continued membership with any student organization. Such hazing activity shall include, but not be limited to, whipping, beating, branding, forced and prolonged calisthenics, prolonged exposure to elements, forced consumption of any food, liquor, beverage, drug or harmful substance not generally intended for human consumption, prolonged sleep deprivation, or any brutal treatment of the performance of any act which endanger the physical or mental health or safety of any person.

8. Improper Initiation Rituals, more specifically described as, intentionally adopting or implementing a practice of activity for the purpose of initiation, admission into, affiliation with, or as a condition for continued membership in a group or RSO that requires exertion or deprivation or embarrassment over a sustained period of time that can reasonably be expected to interfere with a student's academic performance, or if publicly known could reasonably be expected to diminish the reputation of the group, RSO, or the University, whether within or outside of the University. Any practice or activity that is not publicly advertised in advance of its implementation shall be presumed to violate this section and the group or RSO shall have the burden of showing that its practice or activity does not violate this section. The express or implied consent of the victim will not be a defense.

9. Failure to comply with direction of University officials or law enforcement officer acting in the course and scope of their University job duties and/or failure to identify oneself to these persons when requested to do so.

10. Unauthorized possession, duplication or use of keys and/or keycards to any University premises or unauthorized entry to or use of University premises.

11. Violation of any UNL or University of Nebraska policy, rule, or regulation published in hard copy or available electronically on the UNL or University of Nebraska websites.

12. Violation of any federal, state or local law.

13. Use, possession, manufacturing, or distribution of marijuana, heroin, narcotics, or other controlled substances, or drug paraphernalia, except as expressly permitted by law.

14. Use, possession, manufacturing, or distribution of alcoholic beverages on University premises (except as expressly permitted by the University), or public intoxication. Alcoholic beverages may not, in any circumstance, be used by, possessed by, or distributed to any person under twenty-one (21) years of age in the State of Nebraska.

a. UNL Student Diversion Policy

# Student Code of Conduct

(Seeking emergency treatment for alcohol poisoning or drug reactions)

1. Students calling 911 (or similar police/emergency medical services) to assist another person experiencing adverse drug reactions or acute alcohol poisoning or other serious alcohol-related injury are eligible to participate in an alternative to normal Student Code procedure. Students seeking to participate in this alternative must meet with a designated Dean of Students staff member to honestly and openly discuss the circumstances surrounding the incident and the decision to call 911/seek emergency medical services.

2. Students who receive emergency medical assistance for acute alcohol poisoning or a serious alcohol-related injury are eligible for an alternative to the normal Student Code procedure. In lieu of discipline, the student must pay for and complete the Brief Alcohol Screening and Intervention for College Students (BASICS) program or such other similar program designated by the University. In addition, the student shall complete such further recommendations made by professional staff as a result of BASICS evaluation, provided that the recommendations do not violate the student's rights, including but not limited to those rights set forth in the Americans with Disabilities Act.

3. Students who qualify for and complete these alternative requirements will have their Student Code charges set aside and the incident will not be recorded in the behavioral conduct record of the student,

provided the student commits no additional major violations of the Student Code within a twelve month period.

b. Procedure

1. In order for this policy to be in effect, emergency medical services (e.g. 911) must be summoned and must respond directly to the situation.

2. Students will receive a letter from the Dean of Students or appropriate Residence Hall Director informing them of misconduct charges. Upon meeting with the designated Dean of Students staff member, it will be determined if the student may be eligible for the UNL Student Diversion Policy.

3. If the students is deemed eligible for the UNL Student Diversion Policy by the Dean of Students staff member, then upon the student fulfilling the requirements of the policy, the student's record will indicate no violation of the Student Code.

While the policy diverts penalties within the Disciplinary Procedures, students may still be charged by law enforcement officials with violations of federal, state or local laws.

15. Illegal or unauthorized possession of firearms, explosives, other weapons, or dangerous chemicals on University premises or, the use of any such item, even if legally possessed, in a manner that harms, threatens or causes fear for others.

16. Participating in an on-campus demonstration, riot or activity that infringes, or incites others to infringe, on the rights of other members of the University

community, including, but not limited to, the ability to legally express oneself, to attend classes or other University activities and programs, or to engage in one's University job duties.

17. Obstruction of the free flow of pedestrian or vehicular traffic on University Premises or at University sponsored or supervised functions.

18. Conduct that is disorderly or indecent, including public urination; breach of peace; or aiding, abetting, or procuring another person to breach the peace on University premises or at functions sponsored by, or participated in by, the University or members of the University community.

A person commits disorderly conduct if she or he:
   a. Engages in fighting, assault and battery;
   b. Makes unreasonable noise and continues to do so after being asked to stop; or
   c. Disrupts a lawful assembly of persons.

19. Theft or other misuse of computer facilities and resources, including but not limited to:
   a. Unauthorized entry into a file, to copy, use, read, or change the contents, or for any other purpose.
   b. Unauthorized transfer of a file.
   c. Use of another individual's identification and/or password.
   d. Use of computing facilities and resources to interfere with the work of another student, faculty member or University Official.
   e. Use of computing facilities and resources to send obscene or abusive messages.
   f. Use of computing facilities and resources to interfere with

normal operation of the University computing system.

g. Use of computing facilities and resources in violation of copyright laws.

h. Any violation of the University Computer Use Policy (Executive Memorandum No. 16)

20. Smoking in any University facility or vehicle. (The University Tobacco Free Campus Policy is found at www.unl.edu.)

21. Turning in false fire alarm or bomb threat or misusing fire safety equipment on University Premises, including any student housing unit is a Student Code violation.

22. Failing to report a fire or any other extremely dangerous condition when known or recognized on the campus.

23. Violation of any student housing unit policy or regulation. (The Housing Rights and Responsibilities policy is found at housing.unl.edu.)

24. Sexual assault or any other uninvited behavior of a sexually explicit nature including but not limited to sexual harassment, dating or domestic violence, and stalking. All allegations of sexual misconduct, including sexual assault, sexual violence, dating violence, domestic violence, or stalking are investigated and addressed following the procedures set forth the "University of Nebraska-Lincoln Response to Allegation of Student Sexual Conduct," adopted pursuant to Board of Regents Policy 5.3.3, attached to this Student Code as Appendix "A," or as Appendix "A" may hereafter be amended.

25. Abuse of the University Disciplinary Proceedings, including but not limited to:

a. Failure to obey the notice from a Conduct Board or University official to appear for a meeting or hearing as part of the Disciplinary Proceedings.

b. Falsification, distortion, or misrepresentation of information before a Conduct Board.

c. Disruption or interference with the orderly conduct of a Conduct Board proceeding.

d. Filing a malicious or frivolous complaint.

e. Attempting to discourage an individual's desire or efforts to engage in a permitted participation or use of the Disciplinary Procedures.

f. Attempting to influence the impartiality of a member of a Conduct Board prior to, and/or during the course of, the Conduct Board proceeding.

g. Harassment (verbal or physical) and/or intimidation of a member of a Conduct Board prior to, during, and/or after a disciplinary proceeding.

h. Failure to comply with the sanction(s) imposed under the Student Code.

## C. Violation of Law and University Discipline

When a student is charged by federal, state, or local authorities with a violation of law, the University will not request or agree to special consideration for that individual because of his or her status as a student. If the alleged offense is also being processed under the Student Code, the University may advise off-campus authorities of the existence of the Student Code and how such matters are typically handled within the University community. The University will attempt to cooperate with law enforcement and other agencies in the enforcement of criminal law on campus and in the condition imposed by criminal

courts for the rehabilitation of student violators. Individual students and other members of the University community remain free to interact with governmental representatives as they deem appropriate.

## D. Referral to Civil or Criminal Authorities

When circumstances warrant, the University administration will refer acts of misconduct to appropriate civil or criminal justice authorities.

# Article IV: Student Code of Conduct Disciplinary Procedures

1. General
   1.1 Right to Disciplinary Proceeding. Except in cases of temporary suspension ordered by the Chancellor or Vice Chancellor for Student Affairs as hereafter provided, suspension, expulsion or other disciplinary sanction for misconduct may not be imposed without a disciplinary proceeding in accordance with these Disciplinary Procedures.

   1.2 Student Court Jurisdiction. Nothing in these Disciplinary Procedures shall affect the jurisdiction of the Student Court of the Association of Students of the University of Nebraska (ASUN) with respect to ASUN constitutional matters, RSOs and other non-disciplinary student matters.

   1.3 Disciplinary Procedures of Subordinate Conduct Boards. All subordinate conduct boards shall model their disciplinary procedures insofar as possible after these Disciplinary Procedure. See Section 13

# Student Code of Conduct

relating to subordinate conduct boards.

1.4 Conduct Officer. The Conduct Officer shall mean the Dean of Students or a University official authorized by the Vice Chancellor for Student Affairs to impose sanctions upon students or RSOs found to have violated the Student Code or other published University policies and regulations prescribing standards of student conduct.

2. Rights of the Complainant and Respondent

2.1 Complaint. Any member of the University community may file a written misconduct complaint against a student or RSO alleging misconduct under the Student Code or other policy. Misconduct complaints shall be filed in the Office of Student Affairs.

2.2 Responsibility of the Conduct Officer. If the Conduct Officer determines that the misconduct alleged in a complaint warrants the institution of disciplinary proceedings, he or she shall insure compliance with these Disciplinary Procedures.

2.3 Disqualification of Conduct Officer. In the event the Conduct Officer may be a material witness in any disciplinary proceeding or for any reason cannot perform his or her duties under these Disciplinary Procedures, the Vice Chancellor for Student Affairs shall appoint an acting Conduct Officer to perform such duties.

2.4 Review of Complaint. The Conduct Officer shall make a preliminary investigation of each complaint to determine whether it may be disposed of without

institution of disciplinary proceedings. Within 20 school days after receipt of a writer misconduct complaint against a student or RSO, the Conduct Officer must decide on one of three course of action: (a) dismiss the complaint, (b) propose an administrative disposition to the student or RSO, or (c) initiate a disciplinary proceeding before the University Conduct Board or a subordinate conduct board.

2.5 Informal Meeting. The Conduct Officer may conduct an informal meeting with a student or RSO accused of misconduct to discuss the misconduct alleged. Prior to any such informal meeting the student or RSO accused of misconduct shall be appraised in writing of the following:
   a. The source and nature of the misconduct complaint which has be filed.
   b. That the student or RSO is entitled to be accompanied by legal counsel or an adviser at the expense of the student or RSO at any meeting or hearing relevant to the misconduct alleged in the complaint.
   c. That the student or RSO is under no obligation at any time to admit the misconduct alleged or to make any other statement at any meeting or hearing relevant to the misconduct alleged.
   During any informal meeting, the Conduct Officer may proceed with administrative disposition of a complaint pursuant to Section 4.2 of these Disciplinary Procedures if the Conduct Officer determines that administrative disposition is appropriate and if the same is

accepted by the student or RSO as provided in Section 4.2.

2.6 Failure to Appear. If a student or RSO accused of misconduct fails to appear at an informal meeting requested by the Conduct Officer, the Conduct Officer may initiate disciplinary proceedings before the University Conduct Board of a subordinate conduct board.

3. Temporary Suspension
   Pending initiation of disciplinary proceedings by the Conduct Officer, the Chancellor or Vice Chancellor for Student Affairs may at any time temporarily suspend a student from the University or deny a student readmission when the Chancellor or Vice Chancellor for Student Affairs finds and believes from information coming to his or her attention that the presence of the student on the University campus would seriously disrupt the University or constitute a danger to the health, safety or welfare of other persons, the students, or property of the University or members of the University community. If a student is temporarily suspended by the Chancellor or Vice Chancellor for Student Affairs, the Chancellor or Vice Chancellor for Student Affairs shall promptly instruct the Conduct Officer to initiate appropriate disciplinary proceedings against the student within two (2) working days after temporary suspension is imposed. If a student placed on temporary suspension is ultimately found not guilty of misconduct, such student shall be allowed if at all possible to make up academic

work missed while on temporary suspension.

4. Administrative and Conduct Board Disciplinary Proceedings.

4.1 General. If the Conduct Officer determines that the institution of a University disciplinary proceeding for alleged misconduct is in the best interests of the University and/or the University community, such proceeding shall be instituted against the student or RSO accused of misconduct in accordance with the procedures for administrative disposition or the procedures for conduct board disposition hereinafter provided.

4.2 Administrative Disposition. The Conduct Officer, in the exercise of his or her reasonable judgment and when agreed to in writing by the student or RSO, shall have authority by administrative disposition of a disciplinary proceeding to impose any of the disciplinary sanctions provided in sections 7. The proposed administrative disposition shall list all Student Code violations with which the student or RSO is being charged as a result of the alleged misconduct. Where an administrative disposition proposed by the Conduct Officer is not accepted in writing by the student or RSO, the student or RSO shall have the right to have the matter of the alleged misconduct referred to the University Conduct Board. The student or RSO shall have three (3) school days within which to accept or reject an administrative disposition proposed by the Conduct Officer. If the student or RSO fails to accept or reject the proposed administrative disposition within such three day

period, rejection will be presumed and the matter shall be referred to the University Conduct Board or a subordinate conduct board as provided in Section 4.3.

4.3 Conduct Board Disposition. If a student or RSO rejects administrative disposition of a disciplinary proceeding proposed by the Conduct Officer, the Conduct Officer shall institute a disciplinary proceeding against the student or RSO before the University Conduct Board or before a subordinate conduct board for the misconduct alleged in the complaint. The disciplinary proceeding so instituted shall be limited to those Student Code violation listed in the rejected administrative disposition, unless new evidence becomes available after the administrative disposition was rejected. Further, the Conduct Officer in the exercise of his or her reasonable judgment may institute a disciplinary proceeding for alleged misconduct directly before the University Conduct Board or before a subordinate conduct board without first offering administrative disposition to a student or RSO accused of misconduct.

4.4 Jurisdiction. The University Conduct Board shall have general original jurisdiction under these Disciplinary Procedures to hear and decide any disciplinary proceedings against a student or RSO accused of misconduct. Subordinate conduct boards shall have limited original jurisdiction to hear and decide disciplinary proceedings according to their respective disciplinary procedures. (See Section 13.1(e) relating to jurisdiction of subordinate conduct boards.)

5. University Conduct Board Procedure

5.1 Notice. All disciplinary proceedings before the University Conduct Board shall be instituted by written notice delivered to the student accused of misconduct or delivered to an officer of the RSO accused of misconduct. Such written notice shall contain the following information:

a. Source of the misconduct complaint.

b. Statement of alleged facts constituting misconduct under the Student Code or other policy.

c. Citation of the specific provision(s) of the Student Code of Conduct or other policy alleged to have been violated.

d. Description of the pertinent information (e.g. records, statements, images or other information) to be presented in support of the alleged misconduct.

e. Date, time and place of the hearing before the Conduct Board. Each hearing shall be at least three (3) school days after the date of receipt of the written notice.

f. A statement that the student or RSO accused of misconduct may be accompanied by legal counsel or other adviser at the hearing before the Conduct Board, to be provided at the expense of the student or RSO, and that such legal counsel or adviser may advise the student or RSO, but may not directly participate in the hearing.

g. That the student or RSO accused of misconduct is under no obligation to admit the truth of the alleged misconduct or to make any other statement at the hearing relevant to the alleged misconduct, and that refusal to testify or make a statement will

# Student Code of Conduct

not be considered as an indication of guilt.

h. That the student or RSO accused of misconduct has the right to inspect before the hearing in the office of Student Affairs ends to present at the hearing, and that the student or RSO will be advised in writing prior to the hearing of any pertinent information subsequently discovered, which the Conduct Officer intends to present at the hearing and given an opportunity to inspect such information.

5.2   Failure to Appear.  The student accused of misconduct or a student officer of the RSO accused of misconduct will be expected to be present at the hearing before the Conduct Board.  If the student or a student officer of the RSO fails to appear at the time and place designated for the hearing, the Conduct Board shall proceed with the hearing if a majority of the Conduct Board members present are satisfied that the student or RSO has received written notice as required by Section 5.1.  The Conduct Board will then proceed in the absence of the student or RSO and render a decision, based upon the information presented at the hearing.

5.3   Quorum.  Every student or RSO accused of misconduct in disciplinary proceedings before the Conduct Board is entitled to a hearing by a quorum of the Conduct Board.  A quorum will consist of at least two faculty members and three student members of the Conduct Board. If a quorum is not present, the student or student officer of the RSO, as the case may be, and the Conduct Officer may stipulate and agree in writing that the Conduct

Board hearing may be conducted and the case may be decided by those Conduct Board members present even though a quorum has not been established.  If there is no such stipulation, the hearing shall be rescheduled as soon as is reasonably possible.

5.4   Status Pending Conduct Board Proceedings.  The status of a student accused of misconduct shall not be altered an the right of a student to be present on campus and to attend classes shall not be suspended during the time of any pending disciplinary proceeding against the student unless the Chancellor or the Vice Chancellor for Student Affairs determine that suspension of the student is required for compelling reasons, including but not limited to the protection of the health, safety or welfare of the student, other persons, or the property of the University and/or the members of the University community.  The status of an RSO accused of misconduct shall not be altered pending any disciplinary proceeding, unless the Chancellor or Vice Chancellor for Student Affairs determines that suspension of the RSO from the University is required for compelling reasons in order to protest the health, safety or welfare of the members of the University community, their property or that of the University.

5.5   Disqualification of a Conduct Board Member

a.   If any member of the Conduct Board believes that associations, relationships, or other circumstances exist such that he or she is unable, or is perceived to be unable, to render a fully fair and impartial decision, such Conduct Board member shall

disqualify himself or herself from participation in the proceeding. Additionally, a member my elect not to serve on the Conduct Board for a particular proceeding if the member in the exercise of reasonable discretion believes there may be an appearance of impropriety by serving as a member of the Conduct Board for that proceeding.  The foregoing shall not relieve the Conduct Board from the requirement of maintaining a quorum as required by Section 5.3 above.

b.   At the beginning of any hearing before the Conduct Board, prior to any presentation of pertinent information related to the alleged misconduct, each member of the Conduct Board shall state and affirm on the record that to the best of their knowledge and belief, he or she is able, and knows of no reason why, he or she would be unable, or would be perceived as unable, to render a fully fair and impartial decision for the matter before the Conduct Board.

5.6   Conduct Board Hearings Closed. All hearings of the Conduct Board shall be private and closed to the public; provided that the Complainant, the Respondent and their advisors, if any, shall be allowed to attend the entire portion of the hearing at which information is presented. Admission of any other person to the hearing shall be at the discretion of the Conduct Board in consultation with the Conduct Officer.  Neither the Complainant, nor the Respondent, nor their advisors, if any, shall be allowed to attend the deliberations of the Conduct Board.

5.7   Right to Separate Hearing.  In any proceeding involving more than one Respondent, any Respondent

may request and the Conduct Board, at its discretion may grant, a separate disciplinary proceeding before the Conduct Board.

5.8 Hearing During the 15th Week, Finals Week and Summer Sessions. Conduct hearings may not be available during the last two weeks of each semester (15th Week and Finals Weeks) and during summer school sessions. During these time periods the Vice Chancellor for Student Affairs may designate one or more hearing officers who shall be authorized to serve as the Conduct Board, to conduct hearings and render decisions in disciplinary proceedings in accordance with the procedures governing the Conduct Board to the extent reasonably applicable.

5.9 Decisions. The Conduct Board shall render a written decision in each proceeding in accordance with the requirements of Sections 7.1 and 7.2 of these Disciplinary Procedures.

6. Rules Applicable to the Conduct Board Hearing

6.1 Pertinent Information and Summary Presentations. Pertinent information related to the alleged misconduct shall be submitted in the following order: (i) information presented by the Conduct Officer in relation to the alleged misconduct, (ii) information presented by the student or RSO accused of misconduct, and (iii) further information or explanation presented by first, the Conduct Officer, followed by the accused student or RSO, such presentations to be confined to rebutting the other's information

presented at the hearing. After the presentation of all pertinent information, the Conduct Officer shall be given the opportunity to make a presentation summarizing the information and position of the University, followed by a presentation by the student or RSO summarizing the Respondent's position.

6.2 Witnesses. The Conduct Board, the Complainant and the Respondent may arrange for witnesses to present pertinent information to the Conduct Board. Witnesses will provide information to and answer questions from the Conduct Board. Questions may be suggested by the Complainant or the Respondent to be answered by each other or by other witnesses. This will be conducted the Conduct Board with such questions directed to the chairperson, rather than to the witness directly. This method is used to preserve the educational tone of the hearing and to avoid creation of an adversarial environment. Questions of whether potential information will be received shall be resolved in the discretion of the chairperson of the Conduct Board.

6.3 Attorney or Adviser Not Allowed to Participate in Hearing. An attorney or other adviser for a Complainant or a Respondent may be present at the hearing solely to advise, and may not directly participate in the hearing. Without limiting the generality of the foregoing sentence, an attorney or other adviser shall not be permitted to make oral presentation or arguments, ask questions of the Conduct Board examine or cross-examine a witness, or object to testimony of

a witness or to introduction of other evidence. Failure of an attorney to abide by this section may result in a ruling against the Attorney's client for noncompliance with these Disciplinary Procedures. Each of the Complainant and Respondents are expected to present their own pertinent information and, therefore, advisors are not permitted to speak or to participate directly in any hearing before the Conduct Board.

6.4 Evidentiary Rules. Formal rules of process, procedure, and technical rules of evidence, like those applied in criminal or civil court, are not used, nor are they applicable, in proceedings before the Conduct Board. Incompetent, irrelevant, immaterial, and unduly repetitious information may be excluded. The Conduct Board shall in its sole discretion determine whether information shall be heard at the hearing and/or considered in its deliberations.

6.5 Verbatim Record. The Conduct Board shall make a confidential verbatim record of each hearing. Such verbatim record shall be made by such method of recording or recording device as the University deems suitable. The recording shall be the property of the University. Copies of such record may be obtained by a Respondent upon payment of the cost of duplication and used only for the purpose of an appeal under these Disciplinary Procedures or as otherwise required by law. In no event shall the record of a Conduct Board hearing be used in a manner which violates the privacy or other rights of any students, University

# Student Code of Conduct

employee or other person, whether such rights are set forth in law or the policies of the University/University of Nebraska. Any form of distribution of the recording, other than as permitted above, shall constituent a separate and actionable violation of the Student Code.

7.  Conduct Board Decision

    7.1 The Conduct Board's decision shall be made on the basis of whether it is more likely than not that the Respondent violate the Student Code.  After hearing and considering the pertinent information presented, the Conduct Board shall, by a majority vote, render a decision as follows:

    a.  Not in Violation.  Misconduct has not been proved; **or**

    b.  In Violation.  Misconduct be been proved.  IN this case the Conduct Board may decide not to impose a disciplinary sanction, if mitigating circumstance warrant that no sanction be imposed, or it may decide to impose one or more, or any combination, of the disciplinary sanctions follows:

        1.  Warning – A notice in wiring to the Respondent that the Respondent is violating or has violated specific designated section of the Student Code.

        2.  Probation – A written reprimand for violation of specific designated section of the Student Code:

            Probation is for a designated period of time and includes the probability of more severe disciplinary sanctions if the Respondent is found to violate the terms of the probation or any

provision of the Student Code during the probationary period.

3.  Loss of privileges – Denial of specified privileges for a designated period of time.

4.  Fines – Previously established and published fines may be imposed.

5.  Restitution – Compensation for loss, damage, or injury.  This may take the form of appropriate service and/or monetary or material replacement.

6.  Discretionary Sanctions – Work assignments, essays, service to the University, or other related discretionary assignments.

7.  Residence Hall Suspension – Separation of the Respondent from the residence halls for a definite period of time, after which the Respondent is eligible to return.  Conditions for readmission may be specified.

8.  Residence Hall Expulsion – Permanent separation of the Respondent from the residence halls.

9.  University Suspension – Separation of the Respondent from the University for a definite period of time, after which the Respondent is eligible to return.  Conditions for readmission may be specified.

10. University Expulsion – Permanent separation of the Respondent from the University.

11. Revocation of Admission and/or Degree – Admission to or a degree awarded from the University may be revoked for fraud, misrepresentation, or other violation of University standards in obtaining the degree, or for other serious

violation committed by a student prior to graduation.

12. Withholding Degree – The University may permanently withhold awarding a degree, or withhold the award of a degree pending the completion of the Disciplinary Procedures, including the completion of all sanctions imposed, if any.

7.2 Written Decisions; Deliver.  The Conduct Board shall render its decisions in writing within ten (10) school days after the conclusion of a hearing.  Each decision shall contain findings of fact as well as the Conduct Board's disposition of the proceedings and shall be delivered to the Office of the Vice Chancellor for Student Affairs together with the verbatim record of the Conduct Board hearing.  Within one school day of rendering the decision, a copy of the decision shall be mailed to the Respondent by the U.S. post at the address of record as verified at the hearing, or e-mailed to an address designated by the Respondent at the hearing.  In disciplinary proceedings involving crimes of violence, the Conduct Officer will if, requested by the alleged victims, disclose to the alleged victims whether the Respondent was found in violation of the Student Code.  The disciplinary sanctions imposed on any Respondent may be disclosed to the victims at the discretion of the Conduct Officer.  Violations of the Student Code which may be considered crimes of violence include, but are not limited to, physical abuse, sexual assault, and hazing.

8.  Procedural Interpretation; Supplemental Rule

Questions of interpretation arising with respect to the Student Code and its Disciplinary Procedures shall be determined in the discretion of the Conduct Officer.  The Conduct Board may adopt supplemental rules and regulations, not in conflict with the provisions of these Disciplinary Procedures, which the Board shall determine to be necessary for the fair and impartial conduct of its proceedings.

9.   Rehearing

A student or RSO found in violation of the Student Code by the Conduct Board may petition the Conduct Board to rehear the proceedings upon the discovery of new and pertinent information within 90 days from the date of the decision of the Conduct Board, except that in cases of suspension a petition for rehearing request may be filed anytime during the term of suspension, and in cases of expulsion there shall be no time limit on the filing of a petition for rehearing.  The Conduct Board will judge the sufficiency of the new information, and no appeal may be taken from its decision to either grant or deny the request to rehear the disciplinary proceedings.  IF a rehearing is granted, the verbatim record of the original hearing shall be fully admissible and considered by the Conduct Board.  In order to prevail, the Respondent must demonstrate that, based upon the new information, the original decision is wrong and should be modified or rescinded.

10.   Conduct Board Composition and Term of Office

10.1   Membership.  The University Conduct Board shall five student members and four faculty members.  The ASUN Senate shall provide the Chancellor with fifteen recommendations from which he or she will select five regular student members and five alternate student members to serve on the Conduct Board. The Faculty Senate shall provide the Chancellor with twelve recommendations from which he or she will select four regular faculty members and four alternate faculty members to serve on the Conduct Board.  All members shall attend a Conduct Board training session prior to serving on the Conduct Board.

10.2   Vacancies.  Vacancies on the Conduct Board, including temporary vacancies may be filled by the Vice Chancellor for Student Affairs or his or her designee from the list of alternate members appointed by the Chancellor.  Should the need arise, the Faculty Senate and the ASUN Senate shall at the request of the Chancellor submit additional lists of alternate members to the Chancellor.  Should the Faculty Senate or the ASUN Senate refuse or for any reason fail to submit any of the above-mentioned lists of alternate members to the Chancellor when requested, the Chancellor shall directly make any appointment required to fill a vacancy on the Conduct Board.

10.3   Term of Office.  Student members of the University Conduct Board shall be appointed for a term of one academic year from the first day of Fall term classes extending through the last day of Spring term classes.  Faculty members shall be appointed for a term of three academic years, with at least one new three-year term commencing each year.  Members may be reappointed provided their names are included on the lists submitted to the Chancellor pursuant to Section 10.1.  Members may not serve more than two consecutive terms.

10.4   Chairperson.  The Conduct Board shall select a student chairperson and a faculty chairperson, either of whom may preside at Conduct Board hearings.

10.5   Removal from the Conduct Board.  If any of the following situation occur, a member may be removed from the Conduct Board by the Vice Chancellor for Student Affairs:

a.   A member fails to respond to meeting notices more than twice in a single semester.

b.   A student member is found to be in violation of the Student Code.

c.   A member is found to be in violation of the privacy or other rights of any member of the University community who is involved in a disciplinary proceedings, whether such rights are set forth in law or the policies of the University/University of Nebraska.

The Vice Chancellor for Student Affairs determines, in his or her discretion, that a member has engaged in conduct that so adversely impacts and reflects upon the member's honesty, integrity, or moral values, so as to render him or her unable to meaningfully and credibly participate in the hearing, deliberations, or decision of the Conduct Board.

# Student Code of Conduct

11.  Appeals and University Appeals Board Procedure.

11.1   Right of Appeal.  A student or RSO found in violation of the Student Code by the University Conduct Board or any subordinate Conduct Board shall have the right to appeal to the University Appeals Board which has exclusive appellate jurisdiction in all disciplinary proceedings.

11.2   Timeliness.  Any appeal must be submitted in writing to the University Appeals Board and received in the Office of the Vice Chancellor for Student Affairs within fourteen (14) calendar days after the date of mailing or e-mailing the Conduct Board decision to the Respondent.

11.3   Issues to be Considered on Appeal.  The Appeals Board will consider only the following issues on appeal:
a.  That the information presented to and received by the Conduct Board was not sufficient to support its decision.
b.  That sanctions imposed by the Conduct Board were excessive and not in keeping with the gravity of the misconduct.
c.  That the Conduct Board failed to follow the Disciplinary Procedures and that as a result of such failure the student or RSO did not receive a fair and impartial hearing. An appeal which does not clearly raise in writing one or more of the three issues listed above shall be dismissed without further consideration.  The Appeals Board shall limit its review to the issue or issues raised in the written appeal and not others.  The Appeals Board shall complete its review of the written appeal within 20 school

days after its receipt, and shall promptly issue written notice of its decision to the student or student RSO.

11.4   Oral Presentations.  In considering an appeal, the Appeals Board may ask either the student or RSO making the appeal and the Conduct Officer to make an oral presentation.  In this case the student or RSO making the appeal shall first make an oral presentation followed by an oral presentation by the Conduct Officer.  The Appeals Board may ask questions of all parties.

11.5   Record of Proceedings Before the Conduct Board.  Upon request by the Appeals Board, the Conduct Office shall deliver to the Appeals Board the record of the Conduct board proceedings, including the recording of the Conduct Board hearing.

11.6   Disposition by Appeals Board.  After reviewing an appeal complying with the requirements of Section 11.3, the Appeals Board may decide as follows:
a.  Affirm the Conduct Board decision, or
b.  Modify or rescind any sanction imposed by a Conduct Board if the Appeals Board finds that good cause exists for the modification or rescission.

11.7   Status Pending Appeals Board Proceedings.  Any sanction imposed by a Conduct Board shall be suspended until an appeal is decided by the University Appeals Board.  The status of a student shall not be altered and the right of a student to be present on campus and to attend classes shall not be suspended during the time of any

appeal proceeding, unless the Chancellor or the Vice Chancellor for Student Affairs determines that suspension of the student is required for compelling reasons, including but not limited to the protection of the health or safety or welfare of the student, other persons, or property of the University and/or the members of the University community.  The status of an RSO shall not be altered pending any appeal proceedings, unless the Chancellor or Vice Chancellor for Student Affairs determine that suspension of the RSO from the University is required for compelling reasons in order to protect the health, safety or welfare of the members of the University community, their property, or that of the University.

11.8   Quorum.  A quorum will consist of one faculty member and two student members.  If a quorum is not present, the student or student officer of the RSO, as the case may be, and the Conduct Officer may stipulate and agree in writing that the appeal may be heard by those Appeals Board members present even though a quorum has not been established.  If there is no such stipulation, the proceeding shall be rescheduled as soon as is reasonably possible.

11.9   Disqualification of an Appeals Board Member.  If any member of the Appeals Board believes that associations, relationships, or other circumstances exist such that he or she is unable, or is perceived to be unable, to render a fully fair and impartial decision, such Appeals Board member shall disqualify himself or herself from participation in the proceeding.  Additionally, a

member may elect not to serve on the Appeals Board for a particular appeal proceeding if the member in the exercise of reasonable discretion believes there may be an appearance of impropriety by serving as a member of the Appeals Board for that appeal proceeding. The foregoing shall not relieve the Appeals Board from the requirement of maintaining a quorum as required by Section 11.8 above.

11.10  Attorney or Adviser Not Allowed to Participate. An attorney or other adviser for a Complainant or Respondent may be present at any proceedings of the Appeals Board solely to advise, but may not directly participate in the proceedings. Without limited the generality of the foregoing sentence, an attorney or other adviser shall not be permitted to make oral presentations, arguments, or ask questions of the Appeals Board. The Complainants and Respondents are expected to present their own appeal and, therefore, advisors are not permitted to speak or to participate directly in any proceedings before the Appeals Board.

11.11  Verbatim Record. The Appeals Board shall make a confidential verbatim record of its proceedings. Such verbatim record shall be made by such method of recording or recording devices the University deems suitable. The recording shall be the property of the University.

11.12  Appeals During 15th Week, Final Week and Summer Sessions. Appeals Board hearings may not be available during the last two weeks of each semester (15th Week and Finals Week) and during summer school sessions. During these time period the Vice Chancellor for Student Affairs may designate one or more hearing officers who shall be authorized to hear appeals to render decision in accordance with the procedure governing the Appeals Board to the extent such procedures are reasonably applicable.

11.13  Appeals Board Proceedings Closed. All proceedings of the Appeals Board shall be private and closed to the public; provided that the Complainant, the Respondent and their advisors, if any, shall be allowed to attend the entire appeal hearing.

11.14  Appeals Board Decision. The decisions of the Appeals Board shall be final and may not be further appealed within UNL or the University of Nebraska.

12.  Appeals and Board Composition and Term of Office.

12.1  Membership. The University Appeals Board shall have four student members and three faculty members. The ASUN Senate shall provide the Chancellor with eight recommendations from which he or she will select four regular student members to serve on the Appeals Board. The Faculty Senate shall provide the Chancellor with six recommendations from which he or she will select three faculty members to serve on the Appeals Board. Members shall attend a Conduct Board training session prior to serving on the Board.

12.2  Term of Office. Members of the University Appeals Board shall be appointed for a term of one academic year. Members may be reappointed provided their names are included on the lists submitted to Chancellor pursuant to Section 11.1. Members may not serve more than two consecutive terms.

12.3  Chairperson. The Appeals Board shall select a student chairperson and a faculty chairperson, either of whom may preside at Appeals Board hearings.

12.4  Removal from the Appeals Board. If any of the following situation occur, a member may be removed from the Appeals Board by the Vice Chancellor for Student Affairs:

a.  A member fails to respond to meetings notices more than twice in a single semester.

b.  A student member is found to be in violation of the Student Code.

c.  A member is found to be in violation of the privacy or other rights of any member of the University community who is involved in a disciplinary proceedings, whether such rights are set forth in law or the policies of the University/University of Nebraska.

13.  Subordinate Conduct Board Structure

13.1  Subordinate Conduct Boards. The Vice Chancellor for Student Affairs may require that Subordinate Conduct Boards be established by the Director of University Housing in conjunction with the Resident Hall Association, and by the Director of Greek Affairs in conjunction Interfraternity Council and

# Student Code of Conduct

Panhellenic Association. The disciplinary procedures under

which a Subordinate Conduct Board will function must be in conformity with these Disciplinary Procedures and shall not become effective until approved by the Vice Chancellor for Student Affairs. All Subordinate Conduct Boards shall be established in accordance with the following requirements:

a. Composition. Student members of a subordinate Conduct Board shall be nominated by members of the cognizant student governing or coordinating body and appointed by the Vice Chancellor for Student Affairs. Faculty and staff members of a Subordinate Conduct Board shall be nominated by the cognizant director (University Housing or Greek Affairs) and appointed by the Vice Chancellor for Student Affairs.

b. Term of Office. Members of the subordinate Conduct Board shall be appointed for a term of one academic year beginning the first day of Fall term classes and extending through the last day of Spring term classes. Each member has the obligation to attend an orientation session to be held before the first case may be heard.

c. Quorum. Each Subordinate Conduct Board will establish its own rules with respect to the quorum required to conduct a hearing.

d. Staff Adviser. Subordinate Conduct Boards will have staff advisers from the appropriate departments within the Office of Student Affairs.

e. Jurisdiction. Each Subordinate Conduct Board will have limited original jurisdiction as provided in its disciplinary procedures over alleged violations of the Student

Code, University policies and rules of specific student groups, e.g. Residence Halls or Greek sororities and fraternities. The specific jurisdiction and issues relating to interpretation of jurisdiction, of any Subordinate Conduct Board shall be deiced by the vice Chancellor for Student Affairs.

f. Decision. After hearing a case, a Subordinate Conduct Board may decide as follows:
 1. Not Responsible. Misconduct has not been proved; or
 2. Responsible. Misconduct has been proved. In this case a Subordinate Conduct Board may decide to not impose a disciplinary sanction, if mitigating circumstances warrant that no sanction be imposed, or it may decide to impose one or more of the following disciplinary sanction:
   a. Warning: A notice in writing to the Respondent that the Respondent is violating or has violated specific designated sections of the Student Code or other applicable rules.
   b. Restitution: Compensation for loss, damage, or injury. This may take the form of appropriate service and/or monetary or material replacement.
   c. Conduct Probation: A written reprimand for violation of specific designated section of the Student code or other applicable rules. Probations is for a designated period of time and includes the probability of more severe

disciplinary sanctions, if the Respondent is found to violate the terms of the probation or any provision of the Student Code or applicable rule, during the probationary period.
   d. Behavioral Requirement: A directive to engage in a certain behavior, such as service or denial of privilege provided that the sanction do not violate a students' rights, including but not limited to the American with Disabilities Act (e.g. required mental health counseling.)

g. Appeals. Appeals from decisions of a Subordinate Conduct Board may be made to the University Appeals Board in accordance with Section 11 of these Disciplinary Procedures.

14. Disciplinary Records

   Transcripts of University Academic records will not include information concerning disciplinary action, except in case of expulsion. Information from disciplinary and counseling files will not be made available to unauthorized persons without the express written consent of the person involved, or as otherwise authorized, or required by law. Disciplinary records shall be destroyed seven years after the last sanction was imposed, except in case of expulsion, where disciplinary records shall be permanently maintained. Notwithstanding the foregoing, records of Honor Code violations of the College of Law shall be maintained only as provided by said Honor Code.

15. Readmission after Expulsion

Any student who has been expelled from the University under these Disciplinary Procedures may at any time after seven (7) years from the date of expulsion request readmission to the University by written petition to the Vice Chancellor for Student Affairs, who may or may not grant readmission at his or her discretion.

## Article V:  Interpretation and Revision

Any question of interpretation or application of the Student Code shall be referred to the Dean of Students or his or her designee for final determination.

## Appendix A:  Response to Allegations of Student Sexual Misconduct

1.  Introduction

1a. Beginning with the University of Nebraska charter in 1869, Nebraska law has provided that no person shall be deprived of the privileges of this institution because of sex. Discrimination on the basis of sex is also prohibited by Federal law.

1b. Sexual misconduct is conduct in violation of University policy and state and federal law that the University will take action to eliminate, prevent, and redress once the University has notice that sexual misconduct has occurred. "Sexual misconduct" includes dating violence, domestic assault, domestic violence, rape, sexual assault, sexual

harassment (whether sexual violence is involved or not), and stalking. This policy applies to all University of Nebraska students regardless of sexual orientation or gender identity, and to all programs and activities under the jurisdiction of the University of Nebraska. All students are protected against sexual misconduct under this policy, whether the alleged sexual misconduct is committed by another University student, University employee, or third party. Persons who have been subjected to sexual misconduct may be able to receive assistance from the University regardless of whether a charge or report of any kind is filed.

1c. The University will investigate reported allegations of sexual misconduct and may take appropriate remedial action even if the person allegedly subject to misconduct or the Complainant does not wish to pursue formal charges. Any response by the University may be hindered by a person's or the Complainant's desire for anonymity and/or inaction.

1d. Sexual misconduct by or against a student may be investigated by the University whether it is alleged to have been committed on or off campus.

1e. Any person can complain of sexual misconduct against or by a student. Complaints of sexual misconduct may be made using the University's internal processes at the same time that criminal complaints or charges are pursued with the appropriate law enforcement or external agencies. University internal investigation and disciplinary proceedings are independent of any criminal or external proceedings.

1f. The University may pursue disciplinary action against a student at the same time the student is facing criminal charges for the same offense, even if the criminal prosecution is pending, or has been dismissed, or the charges have been reduced.

Complaints regarding sexual misconduct against a student by a student can be made to the:

- UNL Student Affairs Officer
  Laurie Bellows, PhD
  402-472-3755
  106 Canfield Administration Building
  Email: lbellows1@unl.edu

- UNL Title IX Coordinator
  Tami Strickman
  402-472-3417
  128 Canfield Administration Building
  Email: tami.strickman@unl.edu

Sexual misconduct complaints by or against employees should be made to the appropriate Human Resources Office or Title IX Coordinator.

- UNL Human Resources Office
  Bruce Currin, Director
  402-472-3105
  407 Canfield Administration Building
  Email: bcurrin1@unl.edu

1g. University policy prohibits retaliation against any person making a complaint of sexual misconduct or against any person cooperating in the investigation, including but not limited to witnesses. The prohibition of actual or threatened retaliation applies to employees and third parties as well as students.

2.  Investigations of Alleged Sexual Misconduct; Disciplinary Complaints

2a. Upon receipt of a sexual misconduct complaint or report, the University will provide the Complainant a written notice describing the options of pursuing a criminal complaint with a law enforcement agency, filing an administrative charge with an external agency, and/or using the University's investigation and disciplinary processes. The Complainant may go forward with one or more options at the same time, but the University's investigation may need to be delayed temporarily by, or scheduled around, an ongoing criminal or

# Student Code of Conduct

external administrative investigation.

2b. Any member of the University community may submit allegations of sexual misconduct against a student. Allegations shall be prepared in writing and directed to the Student Affairs Officer or designee. The Student Affairs Officer shall then direct the allegation(s) to a Conduct Officer for investigation. Any allegation should be submitted as soon as possible after the alleged misconduct takes place, preferably within, but not limited to, seven (7) University business days after the misconduct occurred.

2c. The Complainant must state, in writing, if he or she wishes to pursue a complaint. If he or she does not wish to pursue the complaint and/or requests that his or her identity remain anonymous, the Student Affairs Officer will make note of that wish in the report. Regardless of the Complainant's choice, the University is still required to investigate reports of sexual misconduct. The Complainant must be informed if the University cannot ensure anonymity.

2d. The Conduct Officer or Title IX Coordinator shall conduct an investigation to determine if the allegation(s) have merit. Investigations of the allegations should be concluded within (60) calendar days of receipt of a report, and may be permitted a longer completion period under extraordinary circumstances, but both parties must be informed in writing of the extension of the timeline. If the investigator determines by the greater weight of the evidence that a violation occurred, a recommended disposition should be included in the investigator's report. If the investigation determines it is more likely than not that the Respondent did not violate the Student Code, the complaint may be dismissed without further proceedings. If both the Complainant and the Respondent agree to the dismissal, the complaint is resolved without any further rights of appeal by either party. If the

Complainant objects, he or she may appeal the dismissal decision administratively to the Student Affairs Officer within seven (7) University business days. The Student Affairs Officer will either affirm the investigative determination, or refer the complaint for further proceedings. The Student Affairs Officer's decision of the dismissal appeal will be final.

  i. If the Complainant wishes to pursue an Administrative Resolution, the Conduct Officer will determine the Respondent's position and take actions as necessary.
  ii. If the Complainant wishes to pursue a disciplinary hearing, a formal hearing will be held by a Conduct Officer, or in cases where University Suspension or University Expulsion is sought, a hearing before a Conduct Board must be held.
  iii. After the fact-finding investigation the Complainant, the Respondent, and appropriate university officials shall be given timely access to any information that will be used during Administrative Resolution and/or Formal Hearing proceedings.

## 3.  Interim Protective Measures

3a. "No contact" directives are to be issued in writing to persons involved in any alleged sexual misconduct promptly after the University receives notice of a complaint. Respondents and the Complainant will both be expected to abide by the terms of no contact directives and may go through disciplinary proceedings should they violate the directives.

3b. Students who have been subjected to sexual misconduct or Complainants have access to other available University assistance in changing academic and living situations after an alleged incident, if so requested by the student or Complainant and if such changes are reasonably available. Accommodations to minimize the burden on the student or Complainant may include but are not limited to:

  i. Change of an on-campus student's housing to a different on-campus location;
  ii. Assistance from the University in completing the relocation;
  iii. Arranging to end a University housing contract and/or adjusting a student account balance for refund;
  iv. Rescheduling an exam, paper, or assignment;
  v. Taking an incomplete in a class;
  vi. Transferring between class sections;
  vii. Temporary withdrawal;
  viii. Alternative course completion options;
  ix. Arranging to complete a course or lectures via distance education methods with the assistance of technology;
  x. Providing increased security at location or activities.

3c. Any student charged with sexual misconduct has the right to maintain status as a student and attend classes while the case is pending final resolution within the University Conduct process, unless it is determined by the Student Affairs Officer or his/her designee that the student's continued participation as a student, whether inside or outside of the classroom, would seriously disrupt normal operation of the University or constitute an immediate harm, threat of harm, hostile environment and/or danger to the health, safety, or welfare of the Respondent, the Complainant, any person allegedly subject to sexual misconduct, or any member of the University community.

3d. Pending completion of an investigation or University Conduct Proceedings, the Student Affairs Officer may at any time temporarily suspend a student when the Student Affairs Officer finds and believes from information coming to his or her attention that the presence of the Respondent on the University premises would seriously disrupt normal operation of the University or constitute

an immediate harm, threat of harm, hostile environment and/or danger to the health, safety, or welfare of the Respondent, the Complainant, any person allegedly subject to sexual misconduct, or any member of the University community. The Student Affairs Officer should work with the appropriate academic Dean in making the decision to discontinue the Respondent's continued participation as a student prior to the completion of the formal proceedings.

1e. During the suspension described in this section, the Respondent may be denied access to any University premises, including classes, residence hall access, sporting events, and/or all other University programs, activities or privileges for which the student might otherwise be eligible, as the Student Affairs Officer may determine to be appropriate.

1f. If a student placed on interim suspension is ultimately found "not in violation" of the Code, such student shall be allowed, at the reasonable discretion of the appropriate faculty, to make up academic work missed while on suspension.

### 4.   General Provisions Applicable in Cases of Alleged Sexual Misconduct

4a. The Conduct Officer and Conduct Board can hear any allegations of any other violations of the Student Code of Conduct in addition to allegations of sexual misconduct that are directly related to the alleged sexual misconduct. If the Conduct Officer or Conduct Board determines other provisions of the Student Code of Conduct were violated, they may impose proper sanctions.

4b. Any student involved in a Conduct proceeding has the right to confidentiality as mandated by the Family Educational Rights and Privacy Act of 1974 (FERPA) and implementing regulations.

4c. No process implemented under this

Sexual Misconduct Procedure shall be open to the public. The complaining party and the Respondent are entitled to the same opportunities to have others present during a disciplinary proceeding subject to conditions established by the Conduct Officer or Conduct Board. Witnesses may be sequestered and attendance at hearings may be restricted to the Complainant, Respondent and advisors.

4d. In such cases when a student fails to appear before the Conduct Officer or Conduct Board, a plea of "not in violation" shall be entered on the Respondent's behalf and the hearing may proceed as scheduled.

4e. In all cases, whether the Respondent is present or not, the evidence in support of the allegations shall be presented and considered.

4f. The determination of the merits of each case shall be made using a greater weight of the evidence standard, meaning it is more likely than not that a proposition (such as violation of the Code) was proven.

4g. The burden of proof shall rest upon the Conduct Officer or Complainant bringing the misconduct charge. A Respondent is presumed not to be in violation of the Code until proven otherwise.

### 5.   Rights of the Complainant and the Respondent in Sexual Misconduct Proceedings

5a. Sexual misconduct proceedings will be conducted by trained University officials to provide a prompt, fair, and impartial process from initial investigation to the final result.

5b. Both a Respondent and the Complainant have the right to see sexual misconduct charges in written form.

5c. Both the Respondent and the Complainant have a right to confidentiality during sexual misconduct

proceedings to the extent possible. However, the duty of confidentiality does not preclude the University from conducting a meaningful investigation or reporting such incidents as required. The duty of confidentiality shall also extend to all persons involved in processing the complaint and the investigation. The Complainant has a right to anonymity only to the extent that the Complainant does not wish to file an official complaint with the University or does not wish the University to take any action against the Respondent in regard to the complaint.

5d. All charges shall be presented to the Respondent and the Complainant in written form by a University official or the Conduct Officer within seven (7) University business days after the investigation is complete.

5e. Both a Respondent and the Complainant have a right to prepare a written statement in advance of a formal hearing.  Both parties will have the right to view each other's statement.

5f. The Complainant and the Respondent have the right to be assisted by any advisor they choose, including legal counsel, at their own expense.
   i.   The role of the advisor is limited to providing advice to the party who has requested his/her presence in a manner which does not disturb Conduct proceedings. If an advisor fails to act in accordance with these guidelines, he/she may be barred from participation in the Conduct proceedings.

5g. A Respondent and the Complainant have the right to hear all evidence, present evidence, testify, and to hear and submit questions for witnesses during formal hearings.
   i.   Direct questioning of the witnesses by the Respondent and Complainant may be limited.  The

# Student Code of Conduct

conduct Officer presiding at the hearing or Chair of the Conduct Board may control questioning by requiring the Respondent and Complainant to submit questions in writing to determine if the questions are appropriate, and then the presiding Conduct Officer or Chair may pose questions to the witness.

5h. A Respondent and the complainant have the right to inspect all documents used as evidence and a list of all witnesses for the formal hearing in advance of the hearing.

5i. The Respondent may not be found to have committed sexual misconduct solely because the respondent failed to appear for a conduct hearing.

5j. Sexual misconduct proceedings should be completed in a reasonably prompt time frame.

5k. A Respondent and the Complainant have the right to be notified of the decision rendered.  Any initial, interim, and final decision to resolve disciplinary matters must include a statement of any University sanction imposed together with the rationale for the decision.

## 6.  Administrative Resolution Procedures in Cases of Alleged Sexual Misconduct

6a. Both the Complainant and the Respondent may elect to dispose of the claim administratively.  The conference will be scheduled not less than three (3), nor more than fourteen (14), University business days after the Conduct Officer's investigation is complete.  The Respondent may elect to acknowledge his or her actions and take responsibility. If the Respondent denies responsibility but the investigation determines that it was more likely than not the Respondent violated the Code, the Conduct Officer could propose a resolution and an

appropriate sanction.  If both the Complainant and the Respondent agree to the proposed sanction, the complaint is resolved without a formal hearing. Mediation shall not be used to resolve sexual assault complaints.

6b. Administrative Resolution procedures may be discontinued at the request of any participant, or terminated by the Conduct Officer.  When Administrative Resolution fails, a formal hearing by a Conduct Officer or Conduct Board must be held.

6c. If University Suspension or University Expulsion is sought and the Complainant or the Respondent cannot agree to the proposed sanction, a hearing must be held before the Conduct Board to determine the proper sanction.

6d. When University Suspension or University Expulsion is not sought, a formal hearing will be held before a Conduct Officer.  Unless the parties agree, the Conduct Officer who was responsible investigation of sexual misconduct allegations and/or who attempted an unsuccessful Administrative Resolution will not preside over the formal hearing.

## 7.  Formal Hearings in Cases of Alleged Sexual Misconduct

7a. Both a Respondent and the Complainant shall have the right to attend a pre-hearing conference to discuss the issues and facts that will be presented at the hearing, to exchange information about witnesses likely to be called, answer procedural questions, and settle those matters which may be agreeably concluded. The conference will **not** be used to settle the issue of whether or not the violation was committed or to challenge any recommended sanctions. This conference shall be held at least two (2) days prior to the scheduled hearing.

i.  Students will be instructed about the use of past sexual behavior of the Complainant or past sexual assault by the Respondent as evidence at the hearing. In most situations, evidence of the past sexual history of either the Respondent or the Complainant will not be admitted at the hearing except in very limited situations.

7b. A time shall be set for a hearing, not less than three (3), nor more than fourteen (14), University business days after the Respondent and the Complainant have been notified that the complaint was referred to the hearing. Maximum time limits for scheduling of hearing may be extended at the discretion of the Conduct Officer or Conduct Board chair.

7c. Hearings shall conform to the following guidelines:
i.  In cases where the case is referred to a Conduct Board, the Conduct Board shall be composed of at least 3 members of the University community.
ii.  Any real or perceived conflict of interest or bias between the Conduct Officer presiding at a hearing or a member of the Conduct Board and the Respondent or the Complainant must be brought to the attention of the Conduct Officer or Conduct Board no less than two (2) University business days in advance of the hearing.
iii.  The Respondent(s) and the Complainant and/or the Conduct Officer are responsible for presenting their respective cases to the Conduct Officer presiding at the hearing or the Conduct Board.
iv.  The Conduct Board shall select its own Chair with all members possessing voting privileges.

v.  In hearings involving more than one Respondent, the presiding Conduct Officer or Chair of the Conduct Board, in his or her discretion, may permit the hearing concerning each student to be conducted separately.

vi.  The Respondent(s), the Complainant, and the Conduct Officer shall have the right to hear all evidence, present evidence, testify, and to hear and question witnesses.

vii.  The Respondent, the Complainant, and the Conduct Officer shall have an opportunity in advance to inspect documents and a list of witnesses for the hearing no less than two (2) University business days in advance of the hearing.

viii.  Pertinent records, facts, reports, and statements may be accepted as evidence for consideration by a presiding Conduct Officer or Conduct Board.  Evidence which possesses probative value commonly accepted by reasonably prudent persons in the conduct of their affairs may be admitted and given probative effect.  Incompetent, irrelevant, immaterial, and unduly repetitious evidence should be excluded.  The rules of privilege recognized by law shall be given effect.  Evidence that would not be admissible in a State Court criminal proceedings by reason of the method or manner in which it was acquired shall not be admitted.

ix.  All procedural and evidentiary questions are subject to the final decision of the presiding Conduct Officer or Chair of the Conduct Board.

7d. After the hearing, the Conduct Board shall determine by simple majority vote whether or not the University Suspension or University Expulsion is warranted.  The decision of a presiding Conduct Officer or Conduct Board shall be based solely upon evidence introduced and received at the hearing.  There shall be a verbatim record made, such as by sound recording, of all formal hearings.  The formal hearing record shall be the property of the University.

7e. Within seven (7) University business days following the conclusion of formal hearing proceedings, the presiding Conduct Officer or the Conduct Board Chair shall inform the Respondent, the Complainant, and the Title IX Coordinator in writing, of its findings and of the sanction(s) imposed, if any.

7f. The presiding Conduct Officer and the Conduct Board may seek advice from the University's Counsel throughout the hearing process on questions of law and procedure.  However, the presiding Conduct Officer and Conduct Board are responsible for making their own factual conclusions.

## 8.  Conduct Sanctions Against Individual Student for Sexual Misconduct

8a. The following sanction(s) may be imposed upon any individual student found to be "in violation" of the Code.

i.  Warning:  A formal, written notice that the student is violating, or has violated, one or more University Conduct Rules and Regulations and that a continuance of the misconduct may lead to additional disciplinary action.  Also, that the incident has been documented and shall remain in the student's Conduct file for the remainder of their University career.

ii.  Probation:  A formal, written reprimand for a student's violation(s) of specified University Conduct Rules and Regulations.  This probation, including strict campus conduct guidelines, is for a designation period of time and may remain in effect for the remainder of a student's University career.  It includes the probability of more severe disciplinary sanctions if the student is found to be in violation of any University Conduct Rules and Regulations during the probationary period.

iii.  Loss of Privileges:  Denial of specified privileges for a designated period of time.

iv.  Restitution:  Compensation for loss, damage, or injury.  This may take the form of appropriate service and/or monetary, and/or material replacement.

v.  Discretionary Sanctions:  In accordance with the goal of education and assisting students with conduct problems, this may include work assignment, educational requirements, service to the University or local community, parental notification, or other related discretionary assignments (such assignments must have the prior approval of the Conduct Officer).  Any costs associated with the assignment are the responsibility of the student.

vi.  Residence Hall Relocation:  Moving a student from one room to another and/or one residence hall or another.

vii.  Residence Hall Suspension:  Separation of the student from the residence halls for a definite period of time, after which the student is eligible to return.  Conditions for readmission may be specified.

viii.  Residence Hall Expulsion:  Permanent removal of the student from any and all of the residence halls.  The student mnot re-enter the residence halls, under any conditions, even as a visitor.  Students expelled from the residence halls remain liable

# Student Code of Conduct

for all Residential and Greek Life costs and meal plan fees and may not be eligible for refunds for the full occupancy period of the students' housing contracts.

ix. University Suspension: Separation of the student from the University for a definite period of time, after which the student may be eligible for return, contingent upon meeting specified conditions for re-admittance.  The student must satisfactorily demonstrate to the Student Affairs Officer that all conditions for re-admittance have been met before the student will be allowed to matriculate.

x. University Expulsion:  Permanent separation of the student from the University, without the possibility of re-admission.

8b. More than one of the sanctions listed above may be imposed for any single violation.

8c. If a student fails to abide by one or more of the sanctions imposed, a hold may be placed on his/her registration account until satisfactory progress is made towards completion.

8d. Other than University Expulsion, disciplinary sanctions shall not be made part of the student's permanent academic record, but shall become part of the student's confidential disciplinary record.

i. After graduation, and upon application to the Conduct Officer, the student's confidential disciplinary record may be expunged of disciplinary actions other than University Suspension or University Expulsion.

ii. Cases involving the imposition of sanctions other than University Suspension or University Expulsion shall be expunged from the student's confidential record seven (7) years after graduation,

final disposition of the case, or as otherwise authorized or required by law.

## 9.  Appeals

9a. A decision reached after a formal hearing may be appealed by the Respondent, the Complainant, or the Conduct Officer within seven (7) University business days of delivery of the decisions to the parties involved in the formal hearing.

9b. Appeals shall be in writing and shall be delivered to the Appeals Officer appointed by the Chancellor.

9c. Appeals may be filed for one or more of the following purposes:

i. To determine whether the original hearing was conducted fairly in light of the charges and evidence presented, and in conformity with prescribed procedures giving the complaining party a reasonable opportunity to prepare and present evidence that the Code was violated, and giving the Respondent a reasonable opportunity to prepare and to present a rebuttal of those allegations.

ii. To determine whether the sanction(s) imposed were appropriate.

9d. An appeal that does not clearly raise one or more of the issues listed above shall be dismissed without further consideration.

9e. An appeal shall be limited to review of the record of the initial hearing and supporting documents unless the Appeals Officer, after notice to the Complainant and Respondent, requests additional information from the presiding Conduct Officer, Chair of the Conduct Board, Complainant or Respondent.

9f. The Appeals Officer shall complete review of the appeal normally within fourteen (14) University business days after receipt of the record and any additional information, and shall promptly issue a written decision to the Respondent, the Complainant and the Conduct Officer.

## 10.  Definitions

10a. "Actor" means a person accused of sexual misconduct.

10b. "Administrative Resolution" is at least one conference between the Conduct Officer and a Respondent and the Complainant to determine whether a student has violated the Code and to impose sanction(s), if warranted.

10c. The term "advisor" means any person, including legal counsel, who assists the Respondent, Complainant or Conduct Officer during a Conduct proceeding.

10d. The term "Appeals Officer" means the person authorized by the Chancellor to determine on appeal whether the result of a formal hearing should be affirmed or modified.

10e. "Bodily injury" shall mean physical pain, illness, or any impairment of physical condition.

10f. The term "Code" means the campus Student Code of Conduct.

10g. The term "Complainant" means any individual who comes forward to the Student Affairs Officer, Title IX Coordinator or Human Resource Officer to complain of sexual misconduct by a student, member of the University community or a third party.

10h. The term "Conduct Board" means persons authorized by the Student Affairs Officer to determine whether a student has violated the Code and to

impose sanction(s), if warranted.  The Conduct Board must include one or more student members when sanctions of suspension or expulsion are involved.

10i. The term "Conduct Officer" means a University official authorized by the Student Affairs Officer to investigate and determine whether or not the Code has been violated.  The Conduct Officer may also engage in attempts at administrative resolution or preside at a formal hearing when University Suspension or Expulsion is not sought as a sanction against a student.

10j. "Confidentiality" means that the University will not disclose the names of individuals involved in a sexual misconduct case to others except on a need to know basis or as required by law.  The University will instruct employees and students about the requirement not to disclose confidential information.  Confidentiality is not the same as anonymity, where an individual is not named or personally identified.

10k. "Consent' means agreement, approval or permission as to some act or purpose, given voluntarily by a competent person.  "Without consent" means:

1)  (i) The person was compelled to submit due to the use of force or threat of force or coercion, or (ii) the person expressed a lack of consent through words, or (iii) the person expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;

2)  The person need only resist, either verbally or physically, so as to make the person's refusal to consent genuine and real and so as to reasonably make known

to the actor the person's refusal to consent; and

3)  A person need not resist verbally or physically where it would be useless or futile to do so.

4)  In the above text, the word "person" means the individual against whom a wrongful act was allegedly committed, and the word "actor" is the individual alleged to have committed a wrongful act.  When the actor knew or should have known that a person was mentally or physically incapable of resisting or understanding the nature of his or her conduct, there is no consent.  A person may be incapacitated due to intoxication, mental illness or deficiency or by physical illness or disability to the extent that personal decision making is impossible.  Surprise may also prevent resistance, as where a person is grabbed from behind.  There are some persons who the law presumes are incapable of consenting to sexual contact or penetration by an actor by reason of their age.  Under Nebraska law an actor nineteen years of age or older may not subject a person under the age of sixteen years of age to sexual penetration, or a person under fifteen years of age to sexual consent.

10l. "Dating violence" is included within the definition of "domestic assault."

10m. "Domestic assault" has three definitions which depend on the harm threatened or inflicted by an actor on a person.  An actor commits domestic assault if he or she (i) intentionally and knowingly causes bodily injury to his or her intimate partner; (ii) threatens an intimate partner with imminent

bodily injury; or (iii) threatens an intimate partner in a menacing manner.  An actor commits a more severe form of domestic assault if he or she intentionally and knowingly causes bodily injury to his or her intimate partner with a dangerous instrument.  An actor commits the worst form of domestic assault if he or she intentionally and knowingly causes serious bodily injury to his or her intimate partner.

10n. "Domestic violence" is included within the definition "domestic assault."

10o. "Force or threat of force" means (a) the use of physical force which overcomes the person's resistance or (b) the threat of physical force, express or implied, against the person or a third party that places the person in fear of death or in fear of serious personal injury to the person of a third party where the person reasonably believes that the actor has the present or future ability to execute the threat.

10p. "Intimate partner" means a spouse; a former spouse; persons who have a child in common whether or not they have been married or lived together at any time; and persons who are or were involved in a dating relationship.  For purposes of this definition, dating relationship means frequent, intimate associations primarily characterized by the expectation of affection or sexual involvement, but does not include a casual relationship or an ordinary association between persons in a business or social context.

# Student Code of Conduct

10q. "Intimate parts" means the genital area, groin, inner thighs, buttocks or breasts.

10r. The term "in violation" means that it is more likely than not that a student committed one or more violations of the Code. By making a finding of whether it is more likely than not that a violation did or did not occur, a "greater weight of the evidence" standard is being used.

10s. The term "may" is used in the permissive tense.

10t. The term "member of the University community" includes any individual who is a student, staff, faculty member, University official, or any other individual employed by, or acting on behalf of the University. An individual's status in a particular situation shall be determined by the investigating Conduct Officer or Title IX Coordinator.

10u. The term "not in violation" means that is more likely than not that a student did not commit one or more violations of the Code.

10v. "Past sexual behavior" means a person's sexual behavior other than when the sexual misconduct is alleged to have occurred.

10w. "Person" means the individual who allegedly was, or was determined to have been, subjected to sexual misconduct.

10x. "Rape" is included under the definition of sexual assault by an actor's sexual penetration of the person without consent.

10y. "Respondent" is any student who is charged with having violated one or more provisions of the code.

10z. "Retaliation" includes intimidation, threats, harassment, and other adverse action threatened or taken against the Complainant or a third party in an attempt to prevent or otherwise obstruct the reporting of sexual misconduct.

10aa. "Serious bodily injury' shall mean bodily injury which involves a substantial risk of death, or which involves substantial risk of serious physical disfigurement, or protracted loss or impairment of the function of any part or organ of the body.

10bb. "Serious personal injury' means great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ.

10cc. "Sexual assault" is committed when an actor subjects a person to sexual penetration (i) without the consent of the person, (ii) when the actor knew or should have known that the person was mentally or physically incapable of resisting or appreciating the nature of the person's own conduct, or (iii) when the actor is nineteen years of age or older and the person is at least twelve but less than sixteen years of age.

Sexual assault is also committed when an actor subjects a person to sexual contact (a) without consent of the person, or (b) when the actor knew or should have known that the person was physically or mentally incapable of resisting or appraising the nature of the person's own conduct. Sexual assault by contact should be punished more severely if the actor causes serious personal injury to a

person, than if the actor shall have caused serious personal injury.

10dd. "Sexual contact" means the intentional touching of a person's intimate parts or the intentional touching of a person's clothing covering the immediate area of the person's intimate parts. Sexual contact also means the touching by the person of the actor's intimate parts or the clothing covering the immediate area of the actor's intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

10ee. "Sexual harassment" is unwelcome conduct or behavior of a sexual nature. Sexual harassment can include unwelcome sexual advances, requests for sexual favors and other verbal, nonverbal, or physical conduct of a sexual nature. Conduct that is sufficiently serious to limit or deny student's ability to participate in or benefit from the University's educational program creates a hostile environment, and is prohibited. Examples of sexual harassment include, but are not limited to: (1) an exposure of an actor's genitals done with the intent to affront or alarm any person, and (2) viewing a person in state of undress without his or her consent or knowledge.

10ff. "Sexual misconduct" includes dating violence, domestic assault, domestic violence, rape, sexual assault, sexual harassment, and stalking.

10gg. "Sexual penetration" means sexual intercourse in its ordinary meaning, cunninlingus, fellatio, anal intercourse or any intrusion,

Appendix A/Appendix B:  Policy for Responsible Use of University Computers and Information Systems 24

however slight, of any part of the actor's or person's body or any object manipulated by the actor into the genital or anal openings of the person's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration does not require emission of semen.

10hh. The term "shall" is used in the imperative sense.

10ii. "Stalking" means to engage in a knowing and willful course of conduct directed at a specific person or a family or a household member of such person with the intent to injure, terrify, threaten, or intimidate.

10jj. The term "student" includes all individuals taking courses at the University, whether full-time or part-time, pursuing undergraduate, graduate, or professional studies, whether or not they reside in the University residence halls. Individuals who withdraw after having allegedly committed sexual misconduct, or who are not officially enrolled for a particular term, but who have an expected continued academic relationship with the University, may be considered "students."

10kk. The "Student Affairs Officer" is the individual authorized by the University and the University Chancellor to be responsible for the administration of the Code, and in certain circumstances includes his or her designee.

10ll. The "Title IX Coordinator" is the individual designated by the campus to respond to allegations of sexual misconduct by students, and in some circumstances can include his or her designee.

10mm. The term "University" means University of Nebraska, Lincoln.

10nn. The term "University business day" means any calendar day where the campus offices are open for business, excluding weekend and national holidays.

10oo. The term "University official" includes any individual employed by, associated with, or performing assigned administrative or professional responsibilities in the interests of the University. Counselor and Healthcare Professionals are bound by professional rules that may preclude their reporting violations of University rules.

10pp. The term "University premises" includes all land, buildings, facilities, University approved housing and other property in the possession of, or owned, used, or controlled by the University, including adjacent streets and sidewalks.

# Appendix B:  Policy for Responsible Use of University Computers and Information Systems

1.  Purpose

    It is the purpose of this Executive Memorandum to set forth the University's administrative policy and provide guidance relating to responsible use of the University's electronic information systems.

2.  General

    The University of Nebraska strives to maintain access for its faculty, staff, students, administrators, and Regents (the "users") to local,

national, and international sources of information and to provide an atmosphere that encourages sharing of knowledge, the creative process and collaborative efforts within the University's educational, research and public service missions.  Access to electronic information systems at the University of Nebraska is a privilege, not a right, and must be treated as such by all users of these systems.  All users must act honestly and responsibly.  Every user is responsible for the integrity of these information resources.  All users must respect the rights of other computer users, respect the integrity of the physical facilities and control, and respect all pertinent license and contractual agreements related to University information systems.  All users shall act in accordance with these responsibilities, and the relevant local, state and federal laws and regulations.  Failure to so conduct oneself in compliance with this Policy may result in denial of access to University information systems or other disciplinary action.

The University of Nebraska is a provider of a means to access the vast and growing amount of information available through electronic information resources.  The University of Nebraska is not a regulator of the content of that information and takes no responsibility for the content of information, except for that information the University itself and those acting on its behalf create.  Any persons accessing information through the University of Nebraska information systems must determine for themselves and their charges whether any source is appropriate for viewing.

# Student Code of Conduct

Accepting any account and/or using the University of Nebraska's information systems shall constitute an agreement on behalf of the user or other individual accessing such information systems to abide and be bound by the provisions of the Policy. The University may restrict or prohibit the use of its information systems in response to complaints presenting evidence of violations of University policies or state or federal laws. When it has been determined that there has been a violation, the University may restrict or prohibit access by an offending party to its information systems through University-owned or other computers, remove or limit access to material posted on University-owned computers or networks, and, if warranted, instituted other disciplinary action.

3. Definitions

For purposes of this policy the following definitions shall apply:

a. Electronic communications shall mean and include the use of information systems in the communicating or posting of information or material by way of electronic mail, bulletin boards, World Wide Web (internet), or other such electronic tools.

b. Information systems shall man and include computers, networks, servers and other similar devices that are administered by the University and for which the University is responsible. "Networks" shall mean and include video, voice and data networks, routers and storage devices.

c. Obscene with respect to obscene material shall mean (1) that an average person applying contemporary community standards would find the material taken as a whole predominantly appeals to the prurient interest or a shameful or morbid interest in nudity, sex, or excretion, (2) the material depicts or describes in a patently offense way sexual conduct specifically set out in Neb. Rev. Stat. §§ 28-807 to 28-809, as amended, and (3) the material taken as a whole lacks serious literary, artistic, political, or scientific value.

4. Permitted Uses

a. University Business Use and Limited Personal Use

University information systems are to be used predominately for University-related business. However, personal use is permitted so long as it conforms with this Policy and does not interfere with University operations or an employee user's performance of duties as a University employee. As with permitted personal use of telephones for local calls, limited personal use of information systems does not ordinarily result in additional costs to the University and may actually result in increased efficiencies. Personal use of any University information system to access, download, print, store, forward, transmit or distribute obscene material is prohibited. UNDER ALL CIRCUMSTANCES, PERSONAL USE BY EMPLOYEES MUST COMPLY WITH SUBSECTION b. OF THIS THIS SECTION AND SHALL NOT CONFLICT WITH AN EMPLOYEE'S PERFORMANCE OF DUTIES AND RESPONSIBILITIES FOR THE UNIVERSITY. Personal use may be denied when such use requires an inordinate amount of information systems resources (e.g. storage capacity).

b. Prior Approval Required for Personal Use for Outside Consulting, Business or Employment.

Personal use of University information systems resources or equipment by any user for personal financial gain in connection with outside (non-University) consulting, business or employment is prohibited, except as authorized for employees by Section 3.4.5 of the Bylaws of the Board of Regents. Employee personal use in conjunction with outside professional consulting, business or employment activities is permitted only when such use has been expressly authorized and approved by the University Administration or the Board of Regents, as appropriate, in accordance with the requirements of said Section 3.4.5 of the Bylaws.

5. Access

Unauthorized access to information systems is prohibited. No one should use the ID or password of another; nor should anyone provide his or her ID or password to another, except in the casenecessary to facilitate computer maintenance and repairs. When any user terminate his or her relation with the University of Nebraska, his or her ID and password shall be denied further access to University computing resources.

6. Misuse of Computers and Network Systems

Misuse of University information systems is prohibited. Misuse includes the following:

a. Attempting to modify or remove computer equipment, software, or peripherals without proper authorization.

b. Accessing without proper authorization computers, software, information or networks to which the University belongs,

Appendix B:  Policy for Responsible Use of University Computers and Information Systems 26

regardless of whether the resources accessed is owned by the University or the abuse take place from a non-University site.

c. Taking actions, without authorization, which interfere with the access of others to information systems.

d. Circumventing logon or other security measures.

e. Using information systems for any illegal or unauthorized purpose.

f. Personal use of information systems or electronic communications for non-University consulting, business or employment, except as expressly authorized pursuant to Section 3.4.5 of the Bylaws of the Board of Regents.

g. Sending any fraudulent electronic communication.

h. Violating any software license or copyright, including copying or redistributing copyrighted software, without the written authorization of the software owner.

i. Using electronic communication to violate the property rights of authors and copyright owners. (Be especially aware of potential copyright infringement through the use of e-mail.  See the provisions under "E-Mail" contained in this Policy.)

j. Using electronic communications to harass or threaten users in such a way as to create an atmosphere which unreasonably interferes with the education or the employment experience. Similarly, electronic communications shall not be used to harass or threaten other information recipients, in addition to University users.

k. Using electronic communications to disclose proprietary information without the explicit permission of the owner.

l. Reading other users' information or files without permission.

m. Academic dishonesty.

n. Forging, fraudulently altering or falsifying, or otherwise misusing University or non-University records (including computerized records, permits, identification cards, or other documents or property).

o. Using electronic communications to hoard, damage, or otherwise interfere with academic resources available electronically.

p. Using electronic communications to steal another individual's works, or otherwise misrepresent one's own work.

q. Using electronic communications to fabricate research data.

r. Launching a computer worm, computer virus or other rogue program.

s. Downloading or posting illegal, proprietary or damaging material to a University computer.

t. Transporting illegal, proprietary or damaging material across a University network.

u. Personal use of any University information system to access, download, print, store, forward, transmit or distribute obscene material.

v. Violating any state or federal law or regulation in connection with use of any information system.

7. Privacy

a. User Privacy Not Guaranteed. When University information systems are functioning properly, a user can expect the files and data he or she generate to be private information, unless the creator the file or data takes action to reveal it to others. Users should be aware, however, that no information system is completely secure.  Persons both within and outside of the University may find ways to access files.  ACCORDINGLY, THE UNIVERSITY CANNOT AND DOES NO GUARANTEE USER PRIVACY and users should be continuously aware of this fact.

b. Repair and Maintenance of Equipment.  User should be aware that on occasion duly authorized University information systems technological personnel have authority to access individual user files or data in the process of performing repair or maintenance of computing equipment the University deems is reasonably necessary, including the testing of systems in order to ensure adequate storage capacity and performance for University needs.  Information systems technological personnel performing repair or maintenance of computing equipment are prohibited by law from exceeding their authority of access for repair and maintenance purposes or from making any use of individual user files or data for any purpose other than repair or maintenance services performed by them.

c. Response to a Public Records Request, Administrative or Judicial Order or Request for Discovery in the Court of Litigation.  Users should be aware that the Nebraska public records statutes are very broad in their application.  Certain records, such as unpublished research in progress, proprietary information, personal information in personnel and student records are protected from disclosure. However, most other University records contained in electronic form require disclosure if a public record request is made.  Users should remember this when creating any electronic information, especially e-mail. Also, users should be aware that

# Student Code of Conduct

the University will comply with any lawful administrative or judicial order requiring the production of electronic files or data stored in the University's information systems, and will provide information in electronic files or data stored in the University's information systems in response to legitimate requests for discovery of evidence in litigation in which the University is involved.

d. Response to Misuse of Computers and Network Systems. When for reasonable cause, as such cause may be determined by the Office of the Vice President and General Counsel, it is believed that an act of misuse as defined in section 6 above has occurred, then the chief information services officer serving Central Administration or serving the relevant campus may access any account, file or other data controlled by the alleged violator and share such account information, file or other data with those persons authorized to investigate and implement sanctions in association with the misuse of the University's computer and information systems. Should any of the chief information service officers reasonably believe that a misuse is present or imminent such that the potential for damage to the system or the information stored within it, is genuine and serious (e.g. hacking, spamming or theft), then the chief information officer may take such action as is necessary to protect the information system and the information stored in it, including the denial of access to any University or non-University user, without a determination from the Office of the Vice President and

General Counsel regarding reasonable cause; provided however, that the chief information officer shall contact the Office of the Vice President and General Counsel as soon as possible to confirm that any protective action take were appropriate and within the parameters of this executive memorandum.

e. Access to Information Concerning Business Operations. Employees regularly carry out the business functions of the University suing the University's information systems. Business records, inquiries and correspondence are often stored such that individuals may control the access to particular information stored within the University's information system. Should any employee become unavailable, be incapacitated due to illness or other reasons, or refuse to provide the information necessary to carry out the employee's job responsibilities in a reasonably timely manner, then following consultation with and approval by the Office of the Vice President and General Counsel, the chief information officer of Central Administration or of the relevant campus may access the employee's records in order to carry out University business operations on behalf of the unavailable or uncooperative employee.

8. E-mail

a. Applicability. ALL POLICIES STATE HEREIN ARE APPLICABLE TO E-MAIL. E-mail should reflect careful, professional and courteous drafting-particularly since it is easily forwarded to others. Never assume that only the addressee will read your e-

mail. Be careful about attachments and broad publication messages. Copyright laws and license agreements also apply to e-mail.

b. E-mail Retention. E-mail messages should be deleted once the information contained in them is no longer useful. When all e-mail communications are sent, the e-mail information is stored in one or more backup files for the purposes of "disaster recovery", i.e. inadvertent or mistaken deletions, system failure. In order to provide for the recovery of deleted e-mail, while maintaining efficient use of storage capabilities, e-mail information on backup files shall be retained for a period of time not to exceed seven days.

9. Web Pages

The Central Administration and each University campus may establish standards for those Web Pages considered to be "official" pages of the University. All official Web Pages shall contain the administrative unit's logo in the header and footer in order to identify it as an official University of Nebraska Web Page. No other Web Pages shall be allowed to use University of Nebraska logos without the express permission of the University.

Originators of all Web Pages using information systems associated with the University shall comply with Unive3rsity policies and are responsible for complying with all federal, state and local laws and regulations, including copyright laws, obscenity laws, laws relating to libel, slander and defamation, and laws relating to piracy of software.

The persons creating a Web Page are responsible for the accuracy of the information contained in the Web Page.

Appendix B/Appendix C:  Statement on University of Nebraska Response to Copyright Infringement Notifications 28

Content should be reviewed on a timely basis to assure continued accuracy. Web Pages should include a phone number or e-mail address of the person to whom questions/comments may be addressed, as well as the most recent revision date.

10.  Notification

This Policy shall be published in all employee and faculty handbooks and student catalogs, and placed on the World Wide Web in order to fully notify users of its existence.

11.  Application and Enforcement

This Policy applies to all administrative units of the University of Nebraska.  The Central Administration and each University campus is encouraged to provide supplemental policy guidance, consistent with this Policy, designed to implement the provisions herein.

Each University campus shall be responsible for enforcing this Policy in a manner best suited to its own organization.  It is expected that enforcement will require cooperation between such departments as computer systems administration, human resources, affirmative action, academic affairs and student affairs.  Prior to any denial of access or other disciplinary action, a user shall be provided with such due process as may be recommended by the University's Office of the General Counsel.

Reference:  August 28, 2001

## Appendix C:  Statement on University of Nebraska Response to Copyright Infringement Notifications

The University of Nebraska does not routinely monitor its computer network

to detect the infringement of copyright protected material such as music, movies, televisions programs, games, software and books.  The University receives copyright infringement notifications of various kinds from the owners of the copyright protected material that has allegedly been infringed.

The Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, provides copyright owners or their representatives with a statutory procedure for notifying e3ntities that provide online services or network access, or facilities for that purpose (known as service providers), of infringing activities by their subscribers or account holders.  The University is a Service Provider within the definition provided by § 512 (k) of DMCA.  More information about the DMCA and how to contact the University regarding copyright infringement is on the University of Nebraska's website at http://www.nebraska.edu/siteinfo.

A DMCA notice has six parts that are mandated by 17 U.S.C. § 512(c)(3)(A): (1) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.  (2) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted words at a single online site are covered by a single notification, a representative list of such works at that site.  (3) Identification of the material that is claimed to be access to which is to be disabled, and information reasonably sufficient to permit the Service Provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the party may be contacted.  (5) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.  (6) A statement that the information in the notification is

accurate, and under penalty of perjury, the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

Response to DMCA Notices

Receipt of a DMCA notice indicates that the University's policy on computer use, see http://www.nebraska.edu/about/exec_memo16.pdf, may have been violated by the user at the IP address identified in the DMCA notice.  The University respects the rights of ownership for all intellectual or entertainment property protected by copyright and explicitly prohibits the illegal sharing of copyright protected material.  The University responds to DMCA notices that substantially comply with the statutory requirements within ten working days of receipt by (1) removing the allegedly infringing material if it is on our network, (2) disabling access for the person at the address, and/or (3) taking other appropriate action against the user at the IP address.  The University does NOT release the name of a user to the sender of a DMCA notice upon receipt of a DMCA notice.  The University only provides identifying information about an IP address to a copyright owner in response to a valid subpoena.  University legal counsel determines how to respond to a subpoena.

DMCA "take down" notices are useful in dealing with allegedly infringing information that resides on a Service Provider's system or network as a result of a user's action.  Downloading of music, movies, games, software, etc. that is copyright protected may violate the copyright owner's rights.  Sharing of copyrighted information by uploading without the authorization of the owner can also be a copyright violation.  Running of peer-to-peer file sharing software such as Gnutella, Ares, Warez, Blubster, Edonkey, KaZaA, Limewire, Shareaza, BitLord and Bit-Torrent may

# Student Code of Conduct

put a user at serious risk of violating the rights of copyright owners in copyright protected materials that are shared. Copyright owners engage in monitoring of Internet traffic to detect the use of file sharing that violates their rights to copy and distribute copyrighted materials they own. A Service Provider that merely acts as a conduit for transitory digital network communications is usually not in a position to "take down" infringing file sharing material in response to a DMCA notice.

Response to Preservation Notices

In March 2007, the University began to receive e-mails from RIAA called preservation notices. A preservation notice is notice to the University /Service Provider to preserve specific records that could be useful in a subsequent court case by an RIAA member against a person accused of copyright infringement who has used an IP address on the University/Service Provider's Network. The University will not take any action in response to preservation notices.

Disabling Peer-to-Peer Program

When the user is informed that an infringement notice has been received, the user should be told that the user has a duty to preserve evidence that relates to the claims against the user. The user should not attempt to delete any peer-to-peer programs that were on the user's computer, or to delete copyrighted recordings that were downloaded or made available for uploading before the infringement notice was sent. A user may obtain information on disabling, but not deleting a peer-to-peer program at www.musicunited.org.

Individuals who receive their Internet access from a Service Provider other than the University (e.g. Time Warner Roadrunner, Alltel DSL, Qwest, etc.), may want to ask their Service Provider how they will handle notices of copyright infringement.

Walter Weir, Chief Information Officer, University of Nebraska

## Appendix D:  Student Records Policy

*The student records policy at the University of Nebraska-Lincoln is in compliance with the Family Education Rights and Privacy Act (FERPA).*

I. Kinds of Information Maintained About Students

A. **Academic Information**
1. All records and documents pertaining to a student's academic standing and progress are maintained in a student's cumulative academic folder, e.g., admissions application, high school transcript, semester grade reports, cumulative academic records, etc.
2. Cumulative files containing academic information are maintained by the Office of registration and Records, by some college offices (students should inquire of their dean), by some faculty advisers, by some academic departments in which a student has his/her major, and by the International Student and Scholar Office.

B. **Behavioral Information**
1. Behavioral information records including all documents pertaining to disciplinary proceedings and notices of sanctions imposed as a result of official University disciplinary action are maintained in confidential files. These files are kept separate from a student's cumulative academic calendar.
2. Confidential files containing behavioral information are maintained in the University Housing, the Office of Greek Affairs, and/or the Office of the Vice

Chancellor for Student Affairs, depending on the origin and disposition of the behavioral case. The chief administrator of each office is responsible for the overall supervision of the files in that office.

C. **Other Student Services**
1. Certain educational records and personal information for job placement purposes may be maintained in Career Services under the supervision of the chief administrator or supervisor (includes Teacher Placement Office, and in some academic colleges (e.g., the College of Agriculture, the College of Law, etc.) for students enrolled in those colleges. Each college dean is responsible for overall supervisions of files in his/her college.
2. Cumulative files containing scholarship and financial aid application while supporting data and records of scholarship and financial data and records of scholarship and financial aid awards previously made are maintained in the Office of Scholarships and Financial Aid under the supervision of the Director of Scholarships and Financial Aid.
3. Files containing records of a student's financial accounts (tuition and loan) are maintained in the Office of Student Accounts under the supervision of the Office of the Comptroller.

II. Who Has Normal Access to These Files
A. **Academic Information**
   Faculty advisers, college deans, departmental chairpersons, financial aid and university registrar personnel, and counselors or advisers in offices where academic information is maintained would normally have access to academic files. Other University personnel have access to academic information only for purposes

related to their administrative function and/or job responsibilities. Persons and agencies outside the University have access to academic information only with the written consent of the student or in accordance with Federal Law.

**B. Behavioral Information**

Normally, only staff members employed within the office or division where student behavioral information is maintained would have access to such information. Other University personnel have access to student behavioral information only for purposes related to their educational function and/or job responsibilities.  Persons or agencies outside the University have access to student behavioral information only with the written consent of the student or in accordance with Federal Law.

**C. Other Student Services Information**

1. University personnel employed in offices maintaining placement functions (i.e., Career Services and some academic colleges are normally the only persons who have access to a student's placement files.  University personnel outside of those University offices maintaining placement functions would have access only for purposes related to their educational function and/or job responsibilities.  Persons or agencies outside the University community would have access to student behavioral information *only with* the written consent of the student or in accordance with Federal Law.

2. Scholarships and Financial Aid office personnel are normally the only persons who have access to scholarship and financial aid files only for purposes related to their educational function and/or job responsibilities.  Persons and agencies outside the University community have access to such

information *only with* the written consent of the student or parent(s), if parental financial information is involved or in accordance with Federal Law.

3. Student Accounts office personnel are normally the only persons who have access to a student's financial account information.  Other University personnel have access to financial account information only for purposes related to their educational function and/or job responsibilities.  The Office of Student Accounts considers all students as "dependents" for the purpose of the release of financial account information excluded from parents or guardians, the student must notify the Office of Student Accounts before the tenth calendar day of each semester.  Other persons and agencies outside the University community have access to such information *only with* the written consent of the student or in accordance with Federal Law.

**III. Procedures to Access Files**

Students who wish to gain access to their personal file within a University office or department should contact the chief administrator or supervisor of that office or department.  The chief administrator or supervisor of the office will advise the student of the necessary steps to be taken and of any costs to be assessed to the student for reproduction of file materials.

**IV. Challenge Procedures**

Students who wish to challenge the accuracy of any document contained within a cumulative file should contact the chief administrator or supervisor of the office which maintains that file.  That person will hear the student's reasons for the challenge and attempt to informally resolve or arbitrate any contested points or issues.  If an informal disposition cannot be made, the student has the right to a hearing before

an impartial board duly established for such purpose.  Students desiring a hearing should contact the appropriate dean or director to: (1) request a hearing, (2) establish a hearing date, and (3) obtain copies of the hearing board's rules and procedures.  The student shall be given notice of the date, place, and time reasonably in advance of the hearing.  The student shall be afforded a full and fair opportunity to present evidence relevant to the issues and may be assisted by individuals of his/her own choice at his/her own expense.  After the hearing is held, a written decision will be issued within a reasonable period of time after the conclusion of the hearing.  The decision shall be based solely upon the evidence presented at the hearing and shall include a summary of the evidence and the reasons for the decision.

**V. Copies of Cumulative Record Documents**

Copies of documents contained within a student's cumulative file will be made available to the student upon written request. (Exception:  Copies of transcripts and records furnished by other colleges, universities, or schools will not be made available to the student if the document in question is available through the initiating agency.)  The actual cost of reproducing these records may be assessed to the student.  Upon receiving a request to reproduce documents in a cumulative file, the office involved will notify the student requesting the documents of any reproduction costs which the student must pay.

**VI. Release of Information to a Third Party**

When a student provides written consent for release of information to another school, business, or agency, the University office or department complying with the request will notify the school, business, or agency involved that it may not pass on the information

# Student Code of Conduct

obtained to a third party without the further consent of the student.

VII. Public or Directory Information
The following information pertaining to students has been declared to be public information by the Board of Regents of the University of Nebraska:
1. Student name
2. Dates of registered attendance
3. Nature of any degrees granted and dates conferred
4. Major
5. College
6. Classification
7. Home address
8. Campus address
9. Phone
10. Marital status

Students are advised that information other than public or directory information may be released in emergency or life-threatening situations in accordance with Federal Law.

## Appendix E:  Crime Prevention and Safety at the University of Nebraska-Lincoln

For a community of 30,000 people, the University of Nebraska-Lincoln has been fortunate.  The campus has experienced a very limited number of reported crimes in the past.  In a continuous effort to prevent and control crime the University of Nebraska Police Department, the Division of Student Affairs, and other units of the University have developed policies and programs to insure that all members of the campus community and their possessions are protected to the greatest degree possible.  The University offers bystander intervention training to all members of the campus community to create a climate where everyone is empowered to safely and effectively prevent relationship violence and other crimes.

### Reporting Criminal Actions or Other Emergencies

As responsible members of the campus community all faculty, staff and students are expected to promptly report any criminal acts to the proper authorities. Suspicious behavior, potential criminal actions and other emergencies on campus can be reported to University Police by dialing 472-2222, 911, or through the use of any of the emergency phones located around the campuses. Reports can be made anonymously, by phone or in person to UNLPD or other UNL departments.  Confidentiality may be requested will be afforded to the extent allowed by law.

### Campus Security Policy and Campus Crime Statistics

The security of all members of the campus community is of vital concern to the University of Nebraska.  In accordance with the Student Right to Know and campus security legislation, the University of Nebraska publicly disseminates its policies concerning campus security and its crime statistics for recent years.  Information regarding crime prevention advice and training, the law enforcement authority of the University Police, policies concerning the reporting of a crime, crime statistics and other general safety information can be found in the University's Annual Campus Security and Fire Safety Report (ASR) at http://police.unl.edu or http://police.unl.edu/annualreport, or may be requested from the University Police Department, by calling 472-2222.

### Institutional Response to Such Reports

University Police officers are fully trained and commissioned law enforcement personnel, and they investigate every criminal act that is reported.  The reports they prepare are submitted to the appropriate University, city, county, state or federal authorities.  Offenses which are committed by students, faculty members, staff members or visitors may be referred for criminal prosecution

and/or University disciplinary action. Victim support services are available and offered to victims.  Contact information and the services provided by UNL departments are listed in the University's Annual Campus Security and Fire Safety Report.

### Victim Assistance

Any University of Nebraska student or employee who has been sexually assaulted or physically harmed is strongly encouraged to contact the UNLPD from the location where the assault occurred or a safe location. This includes date rape, domestic or dating violence and incidents of stalking.
As a component of an investigation, the UNLPD will refer victims of physical crimes to the University's designated local victim advocate and/or University counseling and health care services.

As a guide, University Housing residents should contact any Housing/Residence Life staff. Students that are the victims of sexual offenses, domestic/dating violence and/or stalking have the right to request that the University changes their housing hall or room assignment and/or class schedules. Victims also have the right to request changes to their transportation and working situations if applicable. Requests for assistance in making the desired changes may be directed to the Vice Chancellor for Student Affairs or the Housing Residence Hall Director.

Victims are encouraged to contact University officials, including the UNL Title IX coordinator, as they will provide assistance and take the appropriate action, even if the victim does not choose to have the crime reported to law enforcement. Any person that is the victim of a sexual offense, dating/domestic violence or stalking is

Appendix E:  Crime Prevention and Safety at the University of Nebraska-Lincoln 32

first and foremost encouraged to contact someone with whom they feel the most comfortable. If the initial report is to someone that is not a University campus security authority (CSA), the victim or the contacted person should report the incident either to the UNLPD or to a Campus Security Authority (CSA) as soon as they are able (preferably directly to the UNLPD).  A listing of CSA's can be found on the University Police website at http://police.unl.edu.  Students that have been victims of a sexual offense, dating violence, domestic violence or stalking should be aware that any University personnel will assist the student in notifying the appropriate authorities whenever this assistance is requested.

As a guide, University Housing residents should contact any Housing/Residence Life staff. Students that are the victims of sexual offenses, domestic/dating violence and/or stalking have the right to request that the University changes their housing hall or room assignment and/or class schedules. Victims also have the right to request changes to their transportation and working situations if applicable. Requests for assistance in making the desired changes may be directed to the Vice Chancellor for Student Affairs or the Housing Residence Hall Director.

Victims may directly contact the local victim advocate and/or University counseling and health care services. UNL contracts with Voices of Hope, Lincoln's community victim services agency, to offer free, confidential services for victims of sexual assault, stalking and relationship violence. The Victim Advocate will not share information with anyone without the victim's permission, and will help victims understand the options available to them. Services include assistance with protection orders, safety planning, confidential counseling, and connection to services offered by Voices of Hope.

Contact the Voices of Hope 24-Hour Crisis line at (402) 475-7273 for 24-hour/7 day a week confidential support and assistance for victims of sexual assault, relationship violence and stalking. To schedule an appointment call (402) 472-0203 or visit with the Victim Advocate during walk-in hours at the Women's Center (340 Nebraska Union) from 2 to 6 p.m. on Tuesdays.

Additional support services for students who experience violence or other crimes are available through Counseling and Psychological Services at the University Health Center, 402-472-7450, 1500 U Street.  Reports of sexual harassment, including sexual assault, domestic/dating violence and/or stalking will be forwarded to the University's Title IX Coordinator as required by law. Information regarding services for students exploited by violent or relationships transgressions is available at the University Health Center web site, http://health.unl.edu, and through the Victim Services Program web site, http://involved.unl.edu/gender/advocate.php, or by calling 472-0203.



The six documents contained within are also included in the
University of Nebraska-Lincoln On-line Undergraduate and Graduate Bulletins.

It is the policy of the University of Nebraska-Lincoln not to discriminate on the basis of gender, age, disability,
race, color, religion, marital status, veteran's status, national or ethnic origin or sexual orientation.

May 2014