**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

JANE DOE,

     Plaintiff,

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA; and
individuals TAMIKO STRICKMAN and
JOHN ROE, individually and in their official
capacities; and OTHER UNIDENTIFIED
DEFENDANTS;

     Defendants.

Case No. 4:21-cv-3049

Hon. John M. Gerrard

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFF'S EXPERT WITNESSES**

Karen Truszkowski
Bar Number: P56929 (MI)
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, Michigan 48912
Phone: (844) 534-2560
Fax: (800) 531-6527
Email: karen@temperancelegalgroup.com

Elizabeth K. Abdnour
Bar Number: 0081795 (OH), P78208 (MI)
ABDNOUR WEIKER, LLP
500 E. Michigan Ave., Ste. 130
Lansing, Michigan 48912
Phone: (517) 994-1776
Fax: (614) 417-5081
Email: liz@education-rights.com

*Attorneys for Plaintiff*

## I.    <u>INTRODUCTION</u>

Plaintiff Jane Doe, by and through her undersigned counsel, respectfully submits this Brief in Opposition to Defendants' Motion to Exclude Expert Testimony of Plaintiff's Experts Andrew Verzilli, Lin-Chi Wang and Dr. Frank Ochberg, and Strike Dr. Ochberg ("Motion") filed by Defendants Board of Regents of the University of Nebraska ("BRUN") and Tamiko Strickman ("Strickman"), collectively "Defendants." ECF No. 76.

1

## II.   <u>STATEMENT OF FACTS</u>

Defendants' Motion seeks to limit and exclude testimony from Plaintiff's expert witnesses. In their Motion, Defendants ignore expert witnesses' relevant experience to argue that they are unqualified to offer expert opinions relating to the present case at hand.   Defendants also mischaracterize expert witnesses' reports and testimony in this case, stating in conclusory fashion that the opinions are irrelevant and prejudicial. To the contrary, each expert witness is reputable in their respective fields, and provide thoughtful analysis grounded in their relevant area of expertise. To the extent that Defendants take issue with the materials that the expert witnesses relied upon in forming their opinions, this Court's prior rulings make clear that this goes to weight and credibility, rather than the admissibility of the testimony. Defendants' Motion should be denied in its entirety.

### a.   **Designated Expert Lin-Chi Wang**

Defendants' motion seeks to limit and exclude testimony from Plaintiff's Title IX expert, Lin-Chi Wang ("Wang"). Wang is undeniably qualified to opine as an expert on the subjects for which she is proffered as an expert and has significant hands-on professional experience working in a university Title IX office. Curriculum Vitae of Lin-Chi Wang ("Wang CV"), ECF No. 78-6, at 4-6.

Wang is a well-respected Title IX practitioner with over seven years of experience specifically dedicated to conducting investigations and trainings related to Title IX. As a Title IX and Equity Investigator at Michigan State University from March 2016 through June 2018, Wang "conducted investigations and made findings of claims of sexual misconduct, relationship violence, stalking, sexual exploitation, discrimination or harassment based on a protected category, and retaliation involving students, faculty, staff, and third parties pursuant to the University's Relationship Violence and Sexual Misconduct and Anti-Discrimination policies." *Id.* at 5. As the

Director of Equity and Title IX Coordinator and Associate Dean of Students, Wang "implemented and oversaw all efforts at the institution related to civil rights and equal opportunity compliance, including Title IX . . . ." and "[s]erved as primary investigator and conducted prompt, unbiased, and equitable investigations of formal complaints made under the [institution's nondiscrimination] policy. *Id.* at 4. Wang even "[d]rafted and facilitated approval process of the College's anti-discrimination policies and processes, including Title IX, in 2018-19." *Id.*

Most recently, Wang has opened her own practice under Wang Law, LLC, a "[n]ationwide solo civil rights law practice focused on Title IX . . .compliance, policy and practice, consulting, training, investigations, and adjudications for schools and workplaces." *Id*. Wang also provides "[c]onfidential counseling for leaders and managers on complex decision-making related to anti-discrimination, sexual harassment, . . . and/or Title IX matters." *Id*. Furthermore, in the past seven years alone, Wang has also engaged in various professional trainings, both as a speaker and an attendee, related to coordination, investigation, and decision-making processes under Title IX throughout her various Title IX-related positions. *Id*. at 4-5. Though Defendants attempt to assert in their Motion that Wang must be disqualified as an expert, there is no question of Wang's qualifications.

In addition to being qualified, Wang is expected to offer opinion testimony on accepted practices, policies, and procedures for the development and implementation of effective Title IX programs, which will assist the jury in deliberating on material issues relevant to this litigation. As set forth in the following pages, Wang's testimony meets the requirements of Rule 702 of the Federal Rules of Evidence and is both relevant and reliable, and Defendants have failed to meet its burden of proof in establishing grounds on which Wang's testimony should be limited or excluded. Accordingly, Defendant's Motion must be denied.

### b. Designated Expert Andrew Verzilli

Defendants' Motion further seeks to limit the testimony of Andrew Verzilli ("Verzilli"), an expert in economics and wage forecasting, who has been retained to testify on Plaintiff's loss of earning capacity and future wages in the above-captioned litigation. As set forth below and in the memorandum that follows, Verzilli is highly credentialed and qualified to testify on the matter.

Verzilli is a qualified economist proffered to opine on economic damages in the form of loss of wages and future earnings. Verzilli holds a bachelor's degree in business administration from Drexel University and a master's degree in business administration in finance from LaSalle University. Curriculum Vitae of Andrew Verzilli ("Verzilli CV"), ECF No. 78-6 at 7. Verzilli is a highly sought-after economist that has testified in numerous cases regarding quantifying a plaintiff's lost earning capacity. Since 1988, Verzilli has provided "economic and financial analysis in the preparation of reports for litigation in various jurisdictions," including involvement in litigation concerning earning capacity estimates. *Id.* at 7. His expert testimony has been "provided in State and Federal courts" across the country. *Id.* Verzilli has published and presented a multitude of publications involving estimating earning capacity, productivity, economic growth, and economics in civil litigation since 1991. *Id.* at 9-11. Though Defendants attempt to assert in their Motion that Verzilli must be disqualified as an expert, there is no question of Verzilli's qualifications.

There is also no question that his opinions are relevant to the disputed issues in the case and probative on those issues. Verzilli's testimony includes, "without limitation, economic analysis quantifying Plaintiff's lost earning capacity." ECF No. 78-6 at 1. Using the record available, he provides economic analysis and opinions regarding the estimated lost wages. As addressed herein, there is nothing methodologically exotic about this: it is what economists do in

4

every case concerning lost wages. Considering the depth and breadth of Verzilli's experience, along with his formalized training and credentials, he is exceedingly qualified in his field and will be helpful to the trier of fact in understanding the economic implication and financial costs related to the impact of the events at issue in this matter to the Plaintiff.

### III.   <u>LEGAL STANDARD</u>

The admissibility of an expert witness' testimony is governed by Federal Rules of Evidence 702 and 703. Rule 702 governs the admission of expert witness testimony in federal court by establishing criteria for the admissibility of such testimony, with a focus on qualifications, reliability, and relevance to the case at hand.  FED. R. EVID. 702. Specifically, Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id.*; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The overarching inquiry envisioned by Rule 702 is the validity, and thus the evidentiary relevance and reliability, of the principles that underlie a proposed expert submission. *Daubert*, 509 U.S. at 594-95.  In making that determination of whether an individual may offer expert testimony under Rule 702, "the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.'"  *Id.* (citing FED. R. EVID. 702, Advisory Committees Notes to 2000 Amendments).

Rule 702 has been analyzed by courts under the applicable standard in *Daubert*, which requires the trial judge to act as a "gatekeeper," determining whether the proposed expert testimony meets these criteria and should be admitted as evidence in the case. *Id*. at 597.  *Daubert* confirms

5

that an expert witness' "[p]roposed testimony must be supported by appropriate validation . . . based on what is known," and "must be derived by the scientific method." *Id*. at 590. Further, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591-92. *Daubert* makes it clear that "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." This Court has long held that a court should consider whether expert testimony proffered in the case is sufficiently tied to the facts of the case such that it will aid the trier of fact in resolving a factual dispute at issue. *Lancaster v. BNSF Ry. Co.,* 75 F.4th 967 (8th Cir. 2023) (citing *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1055 (8th Cir. 2000) and quoting *Daubert*, 509 U.S. at 590).

The *Daubert* standard is flexible, and the criteria for assessing expert testimony can vary depending on the nature of the case and the specific field of expertise. The factors analyzed in *Daubert* do not constitute a "definitive checklist or test." *Id.* at 593, affirmed by *Kumho Tire Co.*, 526 U.S. at 150. This flexibility allows judges to tailor their assessments to the specific circumstances. *Daubert* clarifies that Rule 702 allows an expert witness to offer a "wide latitude" of opinions, "including those that are not based on firsthand knowledge or observation." *Id.* at 592. *Kumho Tire Co.* further clarifies that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 141-42 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997)). The Supreme Court concluded "that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

Moreover, nothing in *Daubert* changed the fundamental rule that the factual basis of an expert opinion "goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995). As such, questions of conflicting evidence are meant to be left for the jury's determination. *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 930 (8th Cir. 2001) (citing *Hose*, 70 F.3d at 976). "The rejection of expert testimony is the exception and not the rule." FED. R. EVID. 702, Advisory Committee Notes to 2000 Amendments. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. The U.S. Court of Appeals for the Eighth Circuit has upheld the evidentiary standard detailed in *Daubert* and *Kumho*. *See Bonner*, 259 F.3d at 929-930.  That standard is not only flexible but is tied intricately to the facts of an individual case—this Court has held that "'not every guidepost outlined in *Daubert* will necessarily apply to expert testimony depending on the facts of the case.'" *Fitzpatrick v. Louisville Ladder Group*, Case No. No. 8:99CV29 (D. Neb. Mar. 19, 2001) (quoting *Jaurequi v. Carter Manufacturing Co., Inc.,* 173 F.3d 1076, 1082 (8th Cir. 1999)). The Eighth Circuit has also held that the *Daubert* reliability factors should only be relied upon to the extent that they are relevant. *Jaurequi*, 173 F.3d at 1083 (citing *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir. 1995)).

At the same time, Rule 703 helps ensure that expert opinions in court are based on reliable and relevant information. FED. R. EVID. 703.  Rule 703 sets out the requirements for the bases of expert opinions and the types of evidence that experts can rely on when forming their opinions. *Id*. Specifically, Rule 703 requires:

> If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the

opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

*Id.* "Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *U.S. v. Lopez*, 880 F.3d 974, 980 (8th Cir. 2018) (citing *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997) and quoting *Hose*, 70 F.3d at 974). In essence, Rule 703 allows expert witnesses to give their opinions or inferences in court, while requiring that those opinions be based on facts or data that are both reasonably reliable and of a type that experts in that particular field would typically rely upon when forming their opinions. FED. R. EVID. 703.

"As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (quoting *Daubert*, 509 U.S. at 590, 596). In *Streit v. Halverson*, the U.S. District Court for the Western District of Missouri concluded that the expert economic witness's "testimony on impairment to wages and benefits [was] sufficiently reliable." Case No. 17-4225-CV-WJE, 2018 WL 3763811, at *10 (W.D. Mo. Aug. 8, 2018). In that case, the expert had "reviewed all of the relevant materials," which included: the complaint, the plaintiff's taxes over several years, and the case information form. *Id.* The expert witness "calculated [the p]laintiff's remaining life expectancy using data from the National Center for Health Statistics (National Vital Statistics Reports, 2017) and used statistical averages published by the Bureau of Labor Statistics and the Federal Reserve to determine wage growth, interest rates, and consumer prices over the relevant time period." *Id.* To be sure, the district court clarified that "economists are permitted to give testimony to show that raises in income or promotions would most probably

occur." *Id.* (internal quotations omitted) (quoting *Johnson v. Serra*, 521 F.2d 1289, 1296 (8th Cir. 1975)).

Here, the proposed testimony and expert reports of Plaintiff's experts Wang and Verzilli reflect opinions that are well-founded and reliable, and their testimony will be relevant and helpful to the trier of fact at trial. The proposed testimony and expert reports of Plaintiff's experts therefore meet the standards for admissibility under both the Federal Rules of Evidence and *Daubert* and, therefore, should not be excluded.

## IV.   <u>ARGUMENT</u>

### A.  **Expert Lin-Chi Wang Must Not Be Excluded.**

In their Brief in Support of their Motion and throughout their examination of Wang during her deposition, Defendants attempt to attack Wang's strong credibility with baseless arguments. To Defendants, the most significant issue with Wang is that, "prior to this case, Wang has never provided expert services in any capacity to any entity," while providing no case law to support this identified significance. ECF No. 76 at 11. By Defendants' logic, no one could ever be qualified as an expert witness without any past experience as an expert witness, which would lead to the absurd result of no person ever being qualified as an expert witness. Everyone must start somewhere, and the fact that Wang has not previously served extensively as an expert witness is, in and of itself, irrelevant. Indeed, *Daubert* confirms that experts are to be qualified by "knowledge, skill, experience, training *or* education" rather than in a narrow sense as Defendants attempt to do. *Daubert*, 509 U.S. at 594-95 (emphasis added) (citing FED. R. EVID. 702, Advisory Committee Notes to 2000 Amendment). All testimony from Wang has probative value that is helpful to the trier of fact, as addressed below.

### i.   *Wang's testimony of specialized knowledge will help the trier of fact to determine facts in issue.*

Defendants attempt to argue that Wang must be disqualified as an expert witness because she "completely disregards the legal standard for proving a Title IX deliberate indifference claim." ECF No. 76 at 10. However, Plaintiff has never attempted to assert that Wang is a legal expert. In fact, had Wang provided a legal conclusion as to whether UNL was deliberately indifferent in violation of Title IX, that would have been a reasonable basis for Defendants to argue that this Court should exclude her testimony. *See, e.g.*, *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993) (citing *Kostelecky v. NL Acme Tool/NL Indus. Inc.,* 837 F.2d 828, 830-31 (8th Cir. 1988)). Wang's specialized knowledge as a Title IX practitioner is asserted to help the trier of fact understand how a reasonable person in Strickman's position would have appropriately responded to Plaintiff's reports about John Roe's ongoing sexual harassment and stalking of her.

The core issue in this case is whether BRUN was deliberately indifferent to Plaintiff's reports. Plaintiff intends to use Wang for the purpose of assessing the appropriateness of UNL's response, which will in turn help the trier of fact determine whether UNL acted with deliberate indifference. Wang's specialized knowledge will enable her to aid the trier of fact in understanding the deficiencies in UNL's response to Plaintiff's Title IX report. In her export report, Wang outlined her qualification as a Title IX expert. ECF No. 85-16, at PageID 948-9. Specifically, Wang disclosed that her "experience with interpreting and implementing Title IX compliance requirements is extensive." *Id.* at 948. Wang has held various positions including her current position, a solo legal practitioner and consultant "focused on comprehensive Title IX and anti-discrimination compliance services for schools and workplaces," an institutional civil rights investigator in the Office of Institutional Equity at Michigan State University, and Director of Equity and Title IX Coordinator at Muhlenberg College. *Id.* Wang further disclosed that she has "received specialized training on Title IX law and practice, conducting prompt, impartial, and

objective Title IX investigations, duties as a Title IX Coordinator, Clery Act compliance at institutions of higher education, sexual assault trauma-informed interviewing, and sexual harm restorative justice facilitation." *Id.*   Wang is also "an independent contractor with Title IX Solutions, and [provides] services such as training, policy review and writing work for them, consulting, advising, and investigations." Ex. 1, Wang Dep. 154:17-20.

In her deposition testimony, Wang disclosed that as a Title IX and Equity Investigator at Michigan State University from March 2016 until June 2018, she "conducted investigations, and [] made findings of claims of sexual misconduct, relationship violence, stalking, sexual exploitation, discrimination or harassment based on a protected category, and retaliation involving students faculty, staff, and third parties pursuant to the university's relationship violence and sexual misconduct and anti-discrimination policies."  *Id.* at 25:3-10.  As the Title IX Coordinator at Muhlenberg College, Wang was tasked with ensuring "that the college's policy and process and practices were compliant with Title IX." *Id.* at 48:10-11.  Wang also "implemented and oversaw all efforts at the institution related to civil rights and equal opportunity compliance, including Title IX," "enforced the institution's nondiscrimination policy in responding to reports and coordinating resolution processes of possible policy violations…as a primary investigator," and provided investigation training to the internal investigators. *Id.* at 48:18-21, 24-25; 49:1-2; 51. Wang also testified that she was tasked with overhauling the college's anti-discrimination and Title IX policy, which required her to research Title IX policies and procedures over other institutions of similar size. *Id.* at 51-52. In creating the new policy, Wang testified that the policies aligned with her "experience of Title IX investigations along with the research" conducted to ensure that the university had been "conducting complaint Title IX investigations." *Id.* at 57:11-14. Wang clearly

possesses specialized knowledge that will help the trier of fact to determine facts at issue in the present matter.

Defendants would like to use Wang's limited experience with investigating complaints against institutions as a whole, rather than complaints submitted to an institution against specific individuals, that Wang cannot qualify as an expert in this case. However, Defendants fail to consider that perhaps no complaints submitted against the institutions during this time were due to her knowledge of and compliance with Title IX. Even so, Wang also testified that she has served as a Title IX expert "in litigation where a plaintiff claimed a violation of Title IX and that the university was deliberately indifferent to the plaintiff." *Id*. at 74:9-19. This, in combination with all her expertise and qualifications as previously noted, demonstrates that Wang does indeed have training and experience in determining whether a university has violated Title IX, and must be given the opportunity to advise the trier of fact on such matters.

### ii.   Wang's testimony is grounded in sufficient facts and data as required under Rule 702.

In her expert report, Wang disclosed that she reviewed and considered the following documents in forming her option: Plaintiff's Complaint and Second Amended Complaint; Defendants' Initial Disclosures; UNL policies and amendments through February 7, 2020; *Jane Doe v. Board of Regents of the University of Nebraska, et al.* Memorandum and Order on Defendants' Motion to Dismiss; and the transcript from the *Jane Doe v. Board of Regents of the University of Nebraska, et al.* deposition of Defendant Strickman. ECF No. 85-16 at PageID 948. Wang's expert report focused on what Plaintiff knew based on the information provided to Plaintiff. Ex. 1, Wang Dep. 127.

Defendants assert that because Wang did not conduct her own investigation or discovery of the case by interviewing witnesses, her testimony must be excluded. However, this completely

mischaracterizes the standard under *Daubert*. *Daubert* allows for the flexibility of an expert witness to offer a wide range of opinions, which specifically includes opinions "that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. The fundamental rule of the admissibility of expert witness testimony is that the factual basis of an expert's opinion "goes to the credibility of the testimony, not the admissibility." *Hose*, 70 F.3d at 974. Attacking the credibility of an expert witness in this manner must occur via cross-examination of the expert at trial, not through a *Daubert* motion.

Defendants also argue that because Wang did not include a piece of information that Defendants consider to be relevant to "whether the Plaintiff 'was subjected to sexual harassment or discrimination that was so severe, pervasive and objectively offensive that it effectively bars access to an equal opportunity education,'" that Wang must not be an expert in Title IX. ECF No. 76 at 13. It is true that "[i]f a party believes that an expert opinion has not considered all of the relevant facts, an objection to its admission is appropriate." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (citing *Kumho Tire Co.*, 526 U.S. at 154 and *General Electric Co.*, 522 U.S. at 146). However, this Honorable Court already determined this to be the incorrect standard from which to prove a Title IX claim of deliberate indifference of *student-on-student* harassment, and thus this cannot be used as a basis for attempting to exclude Wang's testimony. ECF No. 26 at 9-10. This Court wrote in pertinent part that

> Where a plaintiff's claim is based on sexual harassment of a student by a teacher, the educational institution may be liable if an official of the grant recipient with authority to address harassment complaints had actual notice of the teacher's alleged misconduct, and the official's inadequate response amounted to deliberate indifference to the discrimination. . . . Actual notice may be established where it is shown that an official of the grant recipient with authority to address harassment complaints had prior knowledge of harassment previously committed by the same perpetrator. . . . And once a grant recipient has actual notice of sexual harassment, it may be deliberately indifferent if the response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.

*Id.* at 7-8 (internal quotations and citations omitted) (citing *KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 597-98 (8th Cir. 2021); *Cox v. Sugg*, 484 F.3d 1062, 1067 (8th Cir. 2007); *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017); *Maher v. Iowa State Univ.*, 915 F.3d 1210, 1213 (8th Cir. 2019); and *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).  Further, Wang clarified in her deposition testimony that her expert report provided her opinion as to whether UNL's response to Plaintiff's report was appropriate based on her opinion of whether Strickman had actual notice of the alleged harassment.  Ex. 1, Wang Dep. 112. This is exactly in line with the standard outlined by this Court.

In her deposition, Wang testified that UNL was not in compliance with best practices for the following reasons:

> Ms. Strickman did not offer to meet with Jane Doe. Ms. Strickman did not assign a Title IX investigator to reach out to Jane Doe. Jane Doe was not offered interim or protective measures. Jane Doe was not provided with remedial options to address her report. Ms. Strickman did not ask Jane Doe whether she wanted Ms. Strickman to talk to John Roe about the report. Ms. Strickman did not offer to issue a written no-contact order to John. And Jane Doe was not informed that her report of possible ongoing sexual harassment or other possible Title IX policy violations was determined not to be a possible policy violation.

*Id*. at 113:23-25; 114:1-11.  Wang further testified that "in order for Title IX guidance, best practice, application of the internal Title IX policy and process to come into play, [the University] would have had to make an assessment as to…if Jane Doe's reports would trigger the application of the…internal Title IX policy and process." *Id*. at 116:10-16. Wang testified that "Ms. Strickman had [not] made an assessment as to whether there had been a determination made if this was enough information to determine that there was or was not a policy violation potentially," even though in her experience it is "incumbent upon the individual in [the Title IX] office to make an assessment as to [whether this could] be a potential policy violation or…implicate [the

institution's] policy." *Id*. at 120:17-20; 122:6-10. Wang opined that "as a best practice[,] generally[,] the school should give the complainant as much information, be as transparent as possible and give the complainant as much agency as possible as to…how they would like to proceed [with their complaint] and what is within the school's power and authority to do according to their policy and procedures." *Id*. at 128:15-22.

For these reasons, Wang's opinion and testimony is grounded in sufficient facts and data. Using the record available, she provides regulatory analysis and opinions regarding the implications of Title IX regulations and related guidance from the federal government. Wang's testimony includes, "without limitation, proper Title IX procedures required of federal funding recipients and whether [the University] complied with those procedures with respect to Plaintiff's reports of Title IX violations." ECF No. 78-6 at 1. Accordingly, this Court must deny Defendants' motion.

### iii.   *Wang's testimony is the product of reliable principles and methods.*

Wang has sufficiently identified her methods for determining whether UNL violated Title IX or her standard of "best practices" and provided an objective opinion. Wang "gave [her] opinion based on [her] experience as a Title IX practitioner and [her] understanding of the guidance and of best practices in doing this work." Ex. 1, Wang Dep. 136:7-10. Wang testified that best practice in this area "is a combination of compliance requirements and interpretation of those compliance requirements and what that looks like in application," and that these "best practices" could be considered requirements because they "stem from regulations and statutes and case law." *Id*. at 104:13-19.

Wang's opinions on best practices and material mistakes in the context of Title IX are admissible and will aid the trier of fact in understanding industry standards and practices and the

complex regulatory scheme at issue in this case. Wang testified that she is competent in industry standard best practices "by discussing with colleagues, by attending conferences of those in the industry doing this work, and best practices that have emerged and that are discussed among practitioners." *Id.* at 102:17-22. Wang testified that she has researched best practices in Title IX across the country through reading emerging case law, discussion with other colleagues about trainings, and reviewing opinions issued in Title IX lawsuits. *Id.* at 103-104.

Though Defendants argue that Wang "clearly confuses the nonbinding nature of guidance documents with the legal standard with which universities must comply under Title IX," Wang testified that prior to 2020 other than Title IX, the law itself, there was not anything written into any law or statute or anything instructing Title IX offices how to do their job; Wang asserts that "[t]hey came from guidance documents from the Department of Education" and that prior to 2020, "[g]uidance documents were being used to train individuals," as well as "materials created by national organizations." ECF No. 76 at 15; Ex. 1, Wang Dep. 158:1-3, 9-10, 20-21. Wang testified that in her experience as a Title IX practitioner, prior to 2020, "these guidance documents were being treated as if they were compliance documents" and that practitioners "were to[,] as closely as [they] could[,] adhere to the information provided in those guidance documents[,] and that not following what was provided in those guidance documents could be considered a violation of Title IX." Ex. 1, Wang Dep. 159:9-15. Moreover, Wang even clarified in her testimony that her expert report provided her opinion as to whether UNL's response to Plaintiff's report was appropriate, *not* whether UNL engaged in best practices. *Id.* at 112.

Defendants also argue that in her expert report, Wang relied upon a now-rescinded U.S. Department of Education, Office of Civil Rights ("OCR"), Title IX Resource Guide, and that this must be another basis for excluding her testimony as an expert witness. However, Defendants

16

ignore that Wang clearly testified that she relied upon this guide, even though it has been rescinded, because it is "applicable to the dates in question that [she] was asked to review." *Id*. at 82:8-10. Nonetheless, Wang disclosed that in addition to reviewing and considering the Title IX Resource Guide, effective on April 24, 2015, and rescinded on August 26, 2020, in forming her opinion, she also relied upon her own training and experience extensively. ECF No. 85-16 at PageID 948. Notably, Wang confirmed that she does have a general understanding of related case law, but the "governing document that [she was] working from [was] the University's policy and procedure." Ex. 1, Wang Dep. 84:17-25; 85:1-2. Thus, Wang has clearly rendered an opinion relevant to this matter pursuant to reliable principles and methods and her opinion must not be excluded by this Court. As such, this Court should deny Defendants' motion to limit or exclude any of Wang's testimony on this basis.

### B.  Expert Andrew Verzilli Must Not Be Excluded.

In their Motion and throughout their examination of Verzilli during his deposition, Defendants attempted to argue that Verzilli must be disqualified as an expert witness "due to the significant speculation required for Verzilli to opine as to alleged loss of earnings by Plaintiff," which Defendants deem as inadmissible hearsay. ECF No. 76 at 18. Like their opposition to expert Lin-Chi Wang's testimony, Defendants further argue that because Verzilli did not conduct his own investigation or discovery of the case by interviewing witnesses, his testimony must be excluded. However, Verzilli's specialized knowledge as an economist is asserted to help the trier of fact understand the quantifiable nature of Plaintiff's lost earning capacity. Though Defendants assert, through reference to their Motion for Summary Judgment, that Plaintiff is not entitled to damages in the form of loss of income, Plaintiff thoroughly discusses in her own Opposition to Defendants' Motion for Summary Judgment that she *is* entitled to damages for loss of employment and earning

capacity.[1] All testimony from Verzilli contains probative value that is helpful to the trier of fact in appropriately determining the damages suffered by Plaintiff in this case.

### i. *Verzilli's testimony is grounded in sufficient facts and data as required under Rule 702.*

Verzilli prepared "an analysis of the loss in [Plaintiff]'s earnings as a result of the delay in the completion of her Ph.D. program." Ex. 2, Verzilli Dep. 9:5-7. According to Verzilli's expert report, he reviewed the Second Amended Complaint; Plaintiff's resume; Plaintiff's December 2, 2021, offer letter from Advanced Microdevices, Inc.; and Plaintiff's W-2 forms from 2017 through 2021, as well as various publications and source documents. ECF No. 85-18 at PageID 1005. Verzilli consulted the Centers for Disease Control and Prevention 2019 U.S. Life Tables, the U.S. Bureau of Labor Statistics (including the 2019 Career and Salary Report and Employer Costs for Employee Compensation), the Census Bureau (including the American Community Survey), and the U.S. Department of the Treasury. *Id.* at PageID 1005-9.

At his deposition, Verzilli testified that he was not aware that Plaintiff's immigration status had been converted to an F1 Visa and that her loss of earning would be different if she were to return to her home country. Ex. 2, Verzilli Dep. 19-21. However, Verzilli clarified that, regardless of whether a student is a citizen, a permanent resident, or on a visa status, the framework for analyzing a subject's earning capacity remains the same. *Id.* at 30-31. He also clarified that he would appropriately adjust his opinion to reflect Plaintiff's F-2 Visa status prior to providing his testimony at trial. *Id.* at 41. As such, this is not a basis to exclude Verzilli as an expert witness.

Verzilli also testified that he did not study the specific labor market in the State of Nebraska; rather, he testified that he researches national data when examining a subject by age and

---

[1] For further discussion of caselaw applicable to this Subsection, *see* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment filed contemporaneously herewith. Plaintiff expressly incorporates by reference all legal arguments set forth therein, as if pleaded *in extenso* here.

education and looks at the state in which the subject is living to analyze occupations, which, in Plaintiff's case, is Texas.   *Id*. at 13-14.   Thus, Defendants' argument that Verzilli's lack of knowledge about the labor market in Nebraska should disqualify him fails.

Notwithstanding the foregoing, the factual basis of an expert's opinion "goes to the credibility of the testimony, not the admissibility," and must be reserved for Defendants' must reserve their attacks to the credibility of Verzilli's testimony for their own cross-examination., 70 F.3d at 974.  Defendants would have this Court take away the opportunity for the trier of fact to deliberate on Verzilli's testimony; but that is not what Rule 702 and *Daubert* permit. *Kumho Tire Co.* clarifies that "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 141-42 (citing *General Electric Co.*, 522 U.S. at 143). "The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

Again, the flexibility outlined by *Daubert* allows for opinions "that are not based on firsthand knowledge or observation" to be offered by expert witnesses. *Daubert*, 509 U.S. at 592. Verzilli testified that he understands that a plaintiff has a duty to make reasonable attempts to mitigate damages, and that, on a case-by-case basis, he will examine the nature of the job, the subject's age, and the subject's earnings to analyze the appropriate length of time for a victim of sexual misconduct to regain employment. Ex. 2, Verzilli Dep. 34-35. Verzilli confirmed that he used an estimate of three to five years as the duration that it would take for Plaintiff to fully mitigate her future loss, as he estimated it to be that length of time until she would be able to reach where she would have been had she not been forced to withdraw from UNL. *Id*. at 66-67. In addition, Verzilli testified that the American Community Survey, which shows data including productivity,

life cycle increases, and inflation was accurately considered in determining Plaintiff's earning capacity. *Id*. at 56-61. Verzilli further confirmed that he did not look at tuition as a damage to Plaintiff and did not consider it as income. *Id*. at 65-66.

Should Defendants wish to cross-examine Verzilli on perceived weaknesses in his data or ask that he perform alternative calculations based other assumptions, they are entitled to do so. They are not, however, entitled to have his opinions excluded on this basis. Verzilli is a well-qualified expert economist whose method is sound, and his opinions will be relevant and helpful to the trier of fact in determining material issues at trial. He should therefore be permitted to provide expert testimony, and Defendants' Motion should be denied.

### ii. *Verzilli's testimony is the product of reliable principles and methods.*

The court in *Streit* confirmed that "[a]ny assumptions made by an economist may impact the weight of the evidence as evaluated by the jury, but are not sufficient basis to exclude the testimony altogether." *Streit*, Case No. 17-4225-CV-WJE at *14 (citing *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 211-12 (8th Cir. 1981)). Moreover, Rule 703 states in pertinent part that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of . . . ." FED. R. EVID. 703. With regard to the admissibility of data and facts relied upon by Verzilli, Rule 703 further states that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id*. Verzilli testified that although he did not review Plaintiff's educational records to verify that she was on track to earn her Ph.D. in 2018, in his experience of financial loss analysis, he generally assumes that a subject is going to graduate in a timely manner. Ex. 2, Verzilli Dep. 14, 16. Further, no evidence has been provided by Defendants throughout the discovery process to indicate that Plaintiff was not on track to graduate timely. Because Verzilli relied upon

information like the court-approved information relied upon by the expert witness economist in *Streit,* Verzilli's testimony rests upon "good grounds, based on what is known" and should not be "excluded by the court at the outset."  *Streit*, Case No. 17-4225-CV-WJE at *10; *see also Mead Johnson & Co.*, 754 F.3d at 562 (quoting *Daubert*, 509 U.S. at 590, 596).

Defendants even attempt, as a last-ditch effort, to assert that Verzilli cannot be qualified as an expert because he does not have "engineering experience," and failed to rely upon salary data "specific to Plaintiff's demographical data as a woman of her age in the engineering field." ECF No. 76 at 18. Like their unfounded argument opposing Wang as an expert witness due to her not having experience with providing trial testimony before this case, Verzilli and other expert witnesses in economics cannot possibly required to have experience in every single career that they explore as economists in making their economic analyses of loss earning capacity, and it is astonishing that Defendants would even suggest to this Court that this is a requirement of an expert under Rule 702.

Verzilli testified that he typically reviews an estimated 300 to 350 cases per year, participates in approximately 10 to 20 depositions per year, and has been working in this capacity for 30 years. Ex. 2, Verzilli Dep. 24-25, 29. Verzilli has analyzed cases concerning international students working in the U.S. on visa status. *Id*. at 30. Verzilli further testified that over the past 30 years, he has met many *Daubert* challenges and that judges have previously ruled that his education is "sufficient" for "the standard of being an expert." *Id*. at 33.

As an economist with over 30 years of experience, Verzilli reasonably relied upon a multitude of trustworthy statewide and national governmental sources to determine his opinion, and thus his reliance on the facts presented to him through Plaintiff's Second Amended Complaint and W-2 forms need not be admissible for the opinion to be admitted. Even so, the probative value

in helping the trier of fact evaluate Verzilli's economic analysis quantifying Plaintiff's lost earning capacity, which the trier of fact would be unable to do on its own, highly outweighs any prejudicial effect his testimony could have on the trier of fact.  Regardless, Defendants did not make the argument that Verzilli's testimony could be prejudicial.  Accordingly, Defendants' Motion should be denied as to Verzilli.

### b.  Plaintiff Withdraws Dr. Frank Ochberg as an Expert Witness in this Matter.

Plaintiff will not be using Dr. Frank Ochberg as an expert witness in this matter and does not object to Defendants' motion to exclude and strike his testimony.

### C.  CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' Motion to Exclude Expert Testimony of Plaintiff's Experts Andrew Verzilli and Lin-Chi Wang.

DATED: November 13, 2023                          Respectfully submitted,

/s/ Karen Truszkowski                                  /s/ Elizabeth K. Abdnour
Karen Truszkowski                                      Elizabeth K. Abdnour
Bar Number: P56929 (MI)                           Bar Numbers: 0081795 (OH), P78208 (MI)
TEMPERANCE LEGAL GROUP, PLLC         ABDNOUR WEIKER, LLP
503 Mall Court #131                                    500 E. Michigan Ave., Ste. 130
Lansing, MI 48912                                       Lansing, MI 48912
Phone: (844) 534-2560                                Phone: (517) 994-1776
Fax: (800) 531-6527                                    Fax: (614) 7745-2001
Email: karen@temperancelegalgroup.com    Email: liz@education-rights.com

*Attorneys for Plaintiff*

### CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in Neb. Civ. R. 7.1(d).

Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify that this Brief contains 7163 words.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour