# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

JANE DOE,

      Plaintiff,

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA; and
individuals TAMIKO STRICKMAN and
JOHN ROE, individually and in their official
capacities; and OTHER UNIDENTIFIED
DEFENDANTS;

      Defendants.

Case No. 4:21-cv-3049

Hon. John M. Gerrard

**PLAINTIFF'S BRIEF OPPOSING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

---

Karen Truszkowski
Bar Number: P56929 (MI)
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, Michigan 48912
Phone: (844) 534-2560
Fax: (800) 531-6527
Email: karen@temperancelegalgroup.com

Elizabeth K. Abdnour
Bar Number: 0081795 (OH), P78203 (MI)
Abdnour Weiker, LLP
500 East Michigan Ave. Suite 130
Lansing, Michigan 48912
P: (517) 994-1776
F: (614) 417-5081
liz@education-rights.com

*Attorneys for Plaintiff*

---

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 3

II.    STANDARD OF REVIEW ................................................................................... 3

III.   RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AND
       STATEMENT OF ADDITIONAL MATERIAL FACTS .................................... 4

IV.    ARGUMENT ........................................................................................................ 4

A.    Deliberate Indifference ............................................................................................ 4
   i.    Plaintiff has alleged actionable sexual harassment under Title IX. .................... 4
   ii.   Plaintiff has standing to assert a claim based on Roe's September 2017 conduct. ............ 9
   iii.  Notice ................................................................................................................. 11
   iv.   UNL's response to Plaintiff's continued harassment was deliberately indifferent........... 12
   v.    UNL's deliberate indifference made Plaintiff more vulnerable to and subjected her to
         further harassment................................................................................................ 16
   vi.   Damages.............................................................................................................. 19

B.    Violation of Right to Due Process ......................................................................... 26

V.    CONCLUSION.................................................................................................... 26

## I.   INTRODUCTION

Plaintiff, through undersigned counsel, respectfully submits this Brief Opposing Defendants' Motion ("Motion") filed by the Board of Regents of the University of Nebraska ("BRUN") and Tamiko Strickman.  ECF No. 77.

As an initial matter, Defendants' Brief in Support of their Motion for Summary Judgment contains no citations to the record or to their Statement of Material Facts.  In addition to failing to comply with Neb. Civ. R. 7.1(a)(2)(A), Defendants have not met their initial burden of pointing to which evidence in the record demonstrates a lack of a material dispute for trial.  While they have submitted a separate Statement of Facts, there is no link between these facts and their legal arguments.  Accordingly, Defendants' Motion for Summary Judgment should be denied.  *See* Neb. Civ. R. 7.1 ("a party who does not follow this rule may be considered to have abandoned in whole or in part that party's position on the pending motion").

Beyond that, genuine issues of material fact exist for jury determination as to whether Plaintiff has sufficient evidence to prove Defendant BRUN engaged in deliberate indifference to her reports of violations of Title IX. Thus, Defendants' Motion should be denied.

## II.   STANDARD OF REVIEW

Summary judgment is warranted only if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the movant bears the initial burden of informing the court of the basis for the motion and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).  The facts must be viewed in the light most favorable to the non-moving party.  *Id.*  "The non-moving party receives the benefit of all

reasonable inferences supported by the evidence, but has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *Shank v. Carleton Coll.*, 993 F.3d 567, 573 (8th Cir. 2021) (quoting *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 844 (8th Cir. 2015)).

## III.   RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS

Plaintiff hereby incorporates by reference her Response to Defendants' Statement of Material Facts and her Statement of Additional Facts being filed contemporaneously with this Brief pursuant to Neb. Civ. R. 56.1(b)(1) and (2).

## IV.   ARGUMENT

### A.  Deliberate Indifference

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1618(a). A school may be liable for teacher-on-student harassment when "an official of the [school] with authority to address harassment complaints had actual notice of the teacher's alleged misconduct, and the official's inadequate response amounted to deliberate indifference to the discrimination." *K.D. v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 597-98 (8th Cir. 2021) (citing *Cox v. Sugg*, 484 F.3d 1062, 1067 (8th Cir. 2007)).

### i.  Plaintiff has alleged actionable sexual harassment under Title IX.

Defendants argue that the heightened "severe, pervasive, and objectively" offensive standard applied to conduct in *student-on-student* harassment cases should apply in the instant case. ECF No. 77 at 15. Yet, Defendants' argument is wholly unpersuasive, and Plaintiff need not meet this heightened standard. To the contrary, "[c]ourts recognize that harassment by a

4

teacher inherently harms students and affects their educational experience: 'no one questions that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system.'" *Doe I v. Bd. of Educ. of City of Chi.*, 364 F. Supp. 3d 849, 861 (N.D. Ill. 2019 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998)); *see also Moeck v. Pleasant Valley Sch. Dist.*, 983 F. Supp. 2d 516, 530 (M.D. Pa. 2013) ("One might argue that sexual harassment from a teacher toward a student is always inappropriate . . . .").

Here, Plaintiff alleges that after UNL's finding that John Roe, Plaintiff's advisor and professor, was guilty of sexual harassment, Roe repeatedly violated UNL's no-contact directive. Several courts have recognized violations of no-contact directives as constituting actionable sexual harassment under Title IX, especially after a prior finding of sexual misconduct. *See, e.g.*, *Pogorzelska v. Vandercook Coll. of Music*, No. 19-cv-5683, 37-40 (N.D. Ill. Jun 5, 2023) (finding severe harassment not precluded as a matter of law on summary judgment where student encountered her harasser twice on campus after the college had found him guilty of sexual misconduct and had imposed a no-contact directive); *Owens v. La. State Univ.*, No. 21-242-WBV-SDJ (M.D. La. Mar. 31, 2023) (finding deliberate indifference adequately alleged where school failed to respond after assailant violated no-contact directive twice after having found assailant guilty of prior sexual misconduct).

In March 2017, Plaintiff emailed Tamiko Strickman, UNL's Title IX investigator, expressing her concern that Roe was saying hello and expecting an answer, smiling at her, and giving her other "disturbing looks." Mot. for Summ. J. Ex. I at PageID 912, ECF No. 85-7. Plaintiff expressed that these interactions made her feel "really disturbed and unsafe" and accepted Strickman's offer of additional safety planning with Officer Eric Fischer of the University of

Nebraska Lincoln Police Department ("UNLPD").  *Id.*  In her deposition, Plaintiff testified that Roe violated the no-contact order four or five times over the course of several weeks.  Pl. Dep. 119:14, 25.  On two occasions, Plaintiff turned around to find Roe violating the no-contact order by staring at her from behind.  Pl. Dep. 120:7-14.  In other instances, Roe would not let Plaintiff pass in the hallway without stopping and saying hello, smiling at Plaintiff, and sneering at her, further violations of the no-contact order.  Pl. Dep. 120:4-6, 18-21; 121:21-25.  On one such occasion, Plaintiff encountered Roe when entering a room and felt that Roe then blocked the doorway—she had to use another doorway to leave the area, yet another violation of the no-contact order.  Ex. 8 at BRUN 3281.  Other times, Roe would violate the no contact order by "walking back and forth slowly by her."  *Id.*

Then, in September 2017, Roe again violated the no-contact order by including Plaintiff in his response to an email thread with other people related to data Plaintiff worked on during her studies at UNL.  Mot. for Summ. J. Ex. M at PageID 922, ECF No. 85-11; Pl. Dep. 132:4-8.  Given Roe's history of harassment and repeated prior violations of the no-contact order, Plaintiff understood Roe's email as an attempt to reopen communication with her in violation of the order.  Mot. for Summ. J. Ex. L at PageID 918, ECF No. 85-10.

To provide further context, these interactions occurred after the UNL Title IX Office established in August of 2016 that Roe had in fact sexually harassed Plaintiff, including kissing Plaintiff on the mouth in his office without her consent.  Strickman Dep. 71:10-12; Pl. Dep. 64:21-22.  Roe had then engaged in a pattern of alarming conduct including allegedly telling Plaintiff twenty to thirty times that he wanted to kiss her, sending her sexually suggestive texts and emails, and sending her an inappropriate link to a movie about marriage betrayal and having an affair.  Pl. Dep. 71:17-23, 83:22-25, 102:16-18, 102:15-18.  After repeatedly resisting Roe's advances, he

began to verbally abuse her, kicking her shins while she sat across from him in his office and several times shouting angrily at her in an out-of-control manner. Ex. 8 at BRUN 3276; Pl. Dep. 76:22-24, 77:17-21.  In 2016, Strickman had instructed Roe to avoid communicating with Plaintiff directly.  Strickman Dep. 72:23-25, 73:1-5.  Thus, Plaintiff was understandably "disturbed" by Roe's continued contact.

Defendants do not contradict the facts underlying Plaintiff's claim.  Instead, they argue that Roe's violations of the no-contact directive do not meet the high bar for "severe, pervasive, and objectively" offensive conduct—a standard typically applied in *student-on-student* sexual harassment cases under Title IX.  ECF No. 77 at 15.  However, this Court already rejected this argument, finding the heightened standard inapplicable to the instant action involving *teacher-on-student* harassment.  ECF No. 26 at 10-11, Mem. and Order granting in part and denying in part Def.' Mot. to Dismiss.  That finding is the law of the case.  *See Davis v. Stadion Money Mgmt.*, Case No. 8:19-cv-556, at 14 (D. Neb. Sept. 27, 2021) (declining to reconsider argument previously addressed in order addressing the defendant's motion to dismiss); *see also Morris v. Am. Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993) (holding "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  In its opinion, the Court noted that it found no case in the Eighth Circuit applying the "severe, pervasive, and objectively" offensive standard in the context of teacher-on-student harassment.  ECF No. 26 at 10.  The Court also found its decision "align[ed] with the Supreme Court's analysis in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)."  ECF No. 26 at 10.  In so holding, the Court highlighted the Supreme Court's reasoning in *Davis* that the bar for liability should be higher in the student-on-student context given that under those circumstances, schools are addressing conduct by students who are "still learning

how to interact appropriately with their peers."  ECF No. 26 at 10 (citing *Davis*, 526 U.S. at 651-52).  This holding is consistent with other circuits' holdings on this matter. *See*, *e.g*., *Wamer v. Univ. of Toledo*, 27 F.4th 461, 469 (2022); *Sanches v. Carrollton-Farmers Branch Indep*., 647 F.3d 156, 166 (5th Cir. 2011); *Sauls v. Pierce Cnty. Sch. Dist*., 399 F.3d 1279, 1284 (11th Cir. 2005).

Notwithstanding the Court's thorough analysis and the holdings of other Circuit Courts, Defendants seek to change the Court's mind by pointing to a few out-of-circuit district court cases mistakenly applying the "severe, pervasive, and objectively" offensive standard in the teacher-on-student context.  Two out of the three cases Defendants cite predate the Eighth Circuit precedent relied upon by the Court.  ECF No. 77 at 15.  Moreover, in the first case Defendants cite, *Doe I v. Bd. of Educ. of City of Chicago*, 364 F. Supp. 3d 849 (N.D. Ill. 2019), the court initially (mistakenly) set forth the  "severe, pervasive, and objectively" offensive standard but later noted that teacher-on-student harassment was different and required a lesser showing, going on to find that the plaintiffs had adequately alleged harassment.  *Bd. of Educ. of City of Chicago*, 364 F. Supp. at 860-61.  The second case cited, *Chancellor v. Pottsgrove Sch. Dist*., 529 F. Supp. 2d 571 (E.D. Pa. 2008), involved a motion to exclude evidence and did not substantively address the plaintiff's Title IX claim.  The third case Defendants provide, *Jones v. Univ. of Detroit Mercy*, 527 F. Supp. 3d 949 (E.D. Mich. 2021), cites *Davis* (without a pincite) for the proposition that a plaintiff must show harassment "severe, pervasive, and objectively offensive" "whether 'student on student' or 'teacher on student.'"  *Jones*, 527 F. Supp. 3d at 948.  But, of course, *Davis* did not hold as such because that case involved only student-on-student harassment.  In any case, the Court is already aware of the *Davis* case.

Defendants next erroneously rely on case law addressing hostile environment claims, not deliberative indifference claims under Title IX as another basis for arguing that a heightened standard should apply to Plaintiff's alleged harassment.   ECF No. 77 at 16 (citing *Irrera v. Humphries*, 695 F. App'x 626 at 628-29 (2nd Cir. 2017); *K.J. as Next Friend for K.D. v. St. Joseph Sch. Dist.*, No. 18-cv-6113, 2019 WL 13259103 at *14 (D. Mo. Nov. 21, 2019)).   Although the elements of both theories overlap, only hostile environment claims—considered to be analogous to Title VII hostile work environment claims—require a showing that the alleged harassment was severe or pervasive.    *See Doe v. Miami Univ.*, 882 F.3d 578, 589-590 (6th Cir. 2018). Accordingly, Plaintiff need not show that the harassment she experienced was severe and/or pervasive, and objectively offensive for purposes of the instant Title IX deliberative indifference claim.  For the same reason, the string of Title VII hostile work environment cases that Defendants cite to illustrate instances where courts found complained-of conduct did not meet this heightened requirement are inapposite.  ECF No. 77 at 17 (citing *McMiller v. Metro*, 738 F.3d 185, 188-89 (8th Cir. 2013); *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858 (8th Cir. 2009); *Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir. 2002) (all involving Title VII hostile environment claims)).   In sum, as illustrated above, the record adequately demonstrates that Plaintiff experienced actionable harassment based on Roe's post-February 2017 violations of Strickman's no-contact directive.  *See, e.g.*, *Pogorzelska*, No. 19-cv-5683, 37-40  (N.D. Ill. Jun 5, 2023); *Owens*, No. 21-242-WBV-SDJ (M.D. La. Mar. 31, 2023).

### ii.  Plaintiff has standing to assert a claim based on Roe's September 2017 conduct.

Defendants separately argue that because Plaintiff was no longer a student at UNL at the time, Plaintiff does not have statutory standing to assert a Title IX claim based on Roe's harassment in September 2017. ECF No. 77 at 19-20.  This argument was also previously rejected by the Court

in its Memorandum and Order addressing Defendants' Motion to Dismiss.  ECF No. 26 at 23-24.
There, the Court held that "the critical question is whether the defendants' conduct continued to
exclude or deny [Plaintiff] access to an educational program even after she transferred."  ECF No.
26 at 24.  The Court found that Plaintiff had adequately alleged that Defendants' actions "deprived
Doe of access to an educational program and prevented her from returning to finish a degree for
which she had already acquired substantial credit."  ECF No. 26 at 24.

Defendants simply reiterate their prior argument that because Plaintiff was not a student at
UNL at that time, cannot assert a claim—citing the same authority they previously relied on
involving plaintiffs who were never students at the offending institution.  ECF No. 77 at 20 (citing
*Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 965 (S.D. Iowa 2018) (parent brought personal Title
IX claim); *K.T. v. Culver-Stockton Coll.*, No 4:16-cv-165-CAS, 2016 WL 4243965, at *6 (E.D.
Mo. Aug. 11, 2016), *aff'd*, 865 F.3d 1054 (8th Cir. 2017) (Title IX claim brought by visiting
prospective student); *Doe v. Brown Univ.*, 270 F. Supp. 3d 556 (D.R.I. 2017), *aff'd*, 896 F.3d 127
(1st Cir. 2018) (Title IX claim by visiting student).  As the Court previously held, these cases are
"not applicable to determining standing in the instant case."  Because Defendants provide no new
argument or relevant authority whatsoever, they have not met their burden of proving this
affirmative defense.  *See Rossley*, 336 F.  Supp. 3d at 963 (recognizing statutory standing argument
under Title IX as a non-jurisdictional affirmative defense that is in essence a motion to dismiss for
failure to state a claim).

Due to Roe's continued harassment and UNL's deliberately indifferent response, Plaintiff
was eventually forced to leave UNL and begin a new PhD program from scratch at another
institution. Pl. Dep. 35:18-25, 36:1-2, 103:25, 104:1-25, 105:1-2.  Plaintiff left UNL prematurely
because of the ongoing harassment from Roe and UNL's failure to properly address it and protect

her, including by failing to enforce its own no contact order.  UNL's inaction and failures denied Plaintiff the benefit of earning her PhD, towards which she had already amassed significant credit hours, and caused her to miss opportunities she could have taken advantage of if she had remained a student at UNL.  Returning to UNL to finish her PhD was not an option, as Roe's disregard for the no-contact directive continued even after she left, and UNL offered her no additional safety measures and continued to render the no contact order useless by failing to enforce it.  Thus, Plaintiff has standing to assert a Title IX claim based on Roe's continued harassment in September 2017.  *See*, *e.g.*, *Williams v. Bd. of Regents of Univ. of Sys. of Ga.*, 477 F.3d 1282, 1297-98 (11th Cir. 2007) (finding victim of sexual assault who withdrew from the university asserted deliberate indifference under Title IX because the university's failure to respond prevented her from safely returning to the school, depriving her of an educational opportunity).

### iii.  Notice

Defendants also assert that Plaintiff cannot show actual knowledge or notice of harassment.  ECF No. 77 at 21.  Defendants do not contest that Plaintiff emailed UNL's Title IX investigator, Tamiko Strickman, who possessed the authority to address the harassment, and notified her of Roe's continued contact with her in March 2017 and September 2017.  Mot. for Summ. J. Ex. I, ECF No. 85-7; Mot. for Summ. J. Ex. L, ECF No. 85-10.  Defendants also do not contest that Strickman was aware of Plaintiff's prior harassment.  Instead, they assert that the complained-of conduct in March and September 2017 did not amount to sexual harassment, and therefore Strickman did not have actual notice of harassment.  ECF No. 77 at 21.  This is redundant of Defendants' prior argument that Roe's contact with Plaintiff post-February 2017 did not constitute actionable sexual harassment and has already been addressed above, and makes no logical sense

given that Strickman herself advised Plaintiff to meet with the police for extra safety precautions. *See* Section IV(A)(i).

### iv.   UNL's response to Plaintiff's continued harassment was deliberately indifferent.

Defendants assert that UNL's response to Plaintiff's complaints of continued harassment by Roe was not deliberately indifferent as a matter of law.   "An institution is deliberately indifferent when its 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"  *Shank*, 993 F.3d at 573 (quoting *Davis*, 526 U.S. at 648).  Construing the evidence in the record in Plaintiff's favor, a reasonable jury could find that Strickman's failure to speak with Plaintiff about her reports of multiple violations of the no-contact directive or to contemplate safety measures beyond the verbal no-contact directive constituted a clearly unreasonable response, particularly given UNL's prior finding that Roe was guilty of sexually harassing Plaintiff as well as the close proximity of Plaintiff and Roe's work spaces in the engineering building.

At the time Plaintiff emailed Strickman on March 7, 2017, about Roe's recent violations of the no-contact directive, Plaintiff and Roe's offices remained located in the same building, and thus Plaintiff was forced to regularly encounter her harasser in the course of her work and studies, which she testified felt like "torture[]".  Pl. Dep. 120:4-6, 138:7-10.  Although Strickman testified that she had directed Roe not to contact Plaintiff, Strickman acknowledged that UNL is a "small campus," so Plaintiff and Roe were "apt to run into each[other]."   Strickman Dep. 72:23-24.  Moreover, the parameters of the no-contact directive, of which there is no written record, were not well defined.  According to Strickman, she told Roe not to engage in "intentional contact" with Plaintiff, noting that she "generally give[s] the example" of two people running into each other on campus instructing that one should "do your best to ignore the other person and keep moving on

your own." Strickman Dep. 72:23-25, 73:1-5.  In her email responding to Plaintiff's March 7, 2017, complaint, Strickman clarified that Roe was merely "directed to have no direct contact with [Plaintiff] meaning: one on one conversation, advising [her] (etc.) . . . ." Mot. for Summ. J. Ex. I at PageID 912, ECF No. 85-7.  In fact, Officer Fischer's notes from his March 10, 2017, meeting with Plaintiff indicate that in review of his records, Roe had "no active no contact orders."  Ex. 8 at BRUN 3281.

When Strickman responded to Plaintiff's March 7, 2017, email reporting Roe's no-contact violations, she did not offer to meet with Plaintiff to gain further information about the encounters, nor did she offer any additional safety measures, such as issuing a written no-contact order or changing work schedules or workstations.  Mot. for Summ. J. Ex. I, ECF No. 85-7; Ex. 3 at BRUN 0711.  Instead, she merely told Plaintiff that she would talk to Roe and tell him to stop.  Mot. for Summ. J. Ex. I at PageID 912, ECF No. 85-7.  This was even though Plaintiff specifically stated in her e-mail that she felt "unsafe" and "really disturbed." *Id*.  Plaintiff then sent a follow up email to Strickman reiterating that she did not feel comfortable with the current situation.  Mot. for Summ. J. Ex. I at PageID 911, ECF No. 85-7.  At that point, Strickman asked Plaintiff if she wanted to "go over additional safety planning with investigator Fischer." *Id*.

On March 10, 2017, Plaintiff met with Officer Fischer, and his report from the meeting states that he "reviewed [Plaintiff's] safety plan and safety resources she has available to her." Mot. for Summ. J. Ex. J at PageID 915, ECF No. 85-8.  The only "Safety Plan Checklist" produced by Defendants is dated June 27, 2016.  Ex. 8 at BRUN 3284-5.  The form indicates with a checkmark that Plaintiff would like "immediate academic accommodations to ensure [that the] victim is not faced with [the] suspect throughout their activity on campus." *Id*. at 3285.  The form instructs below this item in bold that the officer filling out the form alongside the victim should

"explain [whether] the victim does not have to appear in class and/or other campus activities and recommend that doing so should be avoided; coordinate with Title IX . . . regarding these needs." *Id*. Scribbled in this box is a hand-written note: "Title IX Aware" with no further details. *Id*. Fischer did not provide any additional safety measures or accommodations to Plaintiff.

Fischer forwarded his meeting notes to Strickman with the subject-line asking "Thoughts?" without attaching the Safety Plan Checklist. Mot. for Summ. J. Ex. J at PageID 915, ECF No. 85-8. Strickman ignored Officer Fischer's email. For her part, Strickman testified that she was not aware whether Plaintiff had a "safety plan," which she believed was "between the police officer and [Plaintiff]." Strickman Dep. 69:22-24, 117:14-17, 118:22-25, 119:1. Somehow, Strickman apparently was not aware that the "Safety Plan Checklist" used by Officer Fischer instructed coordinating and implementing appropriate academic accommodations with her office. While the Safety Plan Checklist covered more additional safety measures such as a protective order or emergency shelter (given that it is a police form), the Title IX Office was responsible for arranging other safety measures like moving offices or coordinating work schedules. Ex. 8 at BRUN 3284-5; Ex. 3 at BRUN 0711.

Construing the record in Plaintiff's favor, although Fischer's notes to Strickman indicated that Plaintiff did not request any immediate safety measures from the university police, a jury could infer that this did not necessarily mean she did not want any further accommodations whatsoever. In fact, Plaintiff had previously asked whether Roe's office could be moved because she did not feel safe and would otherwise be forced to regularly encounter him. Pl. Dep. 146:13-25, 147:1-4. Strickman denied this request, and there is no indication in the record that anyone in the Title IX Office contemplated moving office locations or any other measures after Plaintiff's March 2017 complaint. Strickman Dep. at 126:16-19. Strickman agreed in her deposition that it

14

was ultimately her responsibility to ensure that appropriate safety measures were in place. Strickman Dep. 122:1-4.

Strickman spoke with Roe and seemed to accept his minimization of the harassment as an attempt to be polite during unintentional run-ins. Mot. for Summ. J. Ex. K, ECF No. 85-9. This was despite Plaintiff's descriptions of Roe blocking her, walking slowly back and forth near her, saying hello and expecting a response, and giving her disturbing looks. Mot. for Summ. J. Ex. J at PageID 915, ECF No. 85-8; Ex. I at PageID 912, ECF No. 85-7. According to Plaintiff's expert, Lin-Chi Wang, this sort of conduct should have raised concerns of stalking, defined by the Nebraska Board of Regents Policy as "[engaging] in a knowing and willful course of conduct directed at a specific person . . . with the intent to injure, terrify, threaten, or intimidate." Mot. for Summ. J. Ex. S at PageID 957, ECF No. 85-16. Yet Strickman never spoke with Plaintiff about Roe's no-contact violations, nor did she offer Plaintiff any accommodations beyond the existing verbal no-contact directive. While Strickman did offer further safety planning with the university police, she did this without knowing whether Plaintiff had a safety plan and then failed to follow up with Officer Fischer about his meeting with Plaintiff.

Similarly, when Plaintiff emailed Strickman in September 2017 informing her that Roe had recently emailed her directly and explaining that she interpreted the email as both a violation of the no-contact directive and an attempt to reopen communication with her, Strickman was deliberately indifferent by failing to respond to Plaintiff in any way beyond acknowledging receipt of her email. Mot. for Summ. J. Ex. L, ECF No. 85-10. Strickman did not seek any further details from Plaintiff. Strickman contacted Roe without informing Plaintiff and then did not follow up with Plaintiff in any way.

In *Porzelska v. Vandercook College of Music*, the Northern District of Illinois permitted the plaintiff's deliberate indifference claim to proceed to trial where, after being notified of multiple violations of a no-contact order, the school responded by merely giving the harasser a "talking-to." Case No. 19-cv-5683 at 40-41 (N.D. Ill. Jun 5, 2023). Here, as in *Porzleska*, the institution had previously found the harasser guilty of sexual misconduct and was aware that the school's small campus would make run-ins almost inevitable, yet failed to offer interim measures beyond a verbal, informal no-contact order even after being notified by the plaintiff that it was not working. *Id.* at 40-43. Given Roe's history of sexual harassment towards Doe (including non-consensual physical contact and abuse within the engineering building), the close proximity of Plaintiff and Roe's workspaces, and Plaintiff's reports of repeated violations of the verbal no-contact directive, a reasonable jury could find that Strickman, and by extension UNL's, failure to speak with Plaintiff or to entertain or implement further safety measures amounted to deliberate indifference.

### v. UNL's deliberate indifference made Plaintiff more vulnerable to and subjected her to further harassment.

Defendants assert that pursuant to *Doe v. Board of Trustees of Nebraska State Colleges*, Case No. 22-1814 (8th Cir. Aug. 15, 2023) and *Shank v. Carleton College*, 993 F.3d 567, 572 (8th Cir. 2021), Plaintiff must demonstrate "a causal nexus between an institution's action or inaction and the [P]laintiff's experience of *actual* further sexual harassment or assault." ECF No. 77 at 24. However, binding Eighth Circuit precedence does not require such a showing. Even if it did, Plaintiff's experience of further harassment after her June 2016 and March 2017 reports demonstrate a causal link between UNL's inaction and further harassment by Roe.

In *Shank*, the Eighth Circuit recited the well-established rule that for an institution to be liable under Title IX, "the institution's deliberate indifference must 'cause[] students to undergo

harassment' or *'make them liable or vulnerable to it.'"*  993 F.3d at 573 (quoting *Davis*, 526 U.S. at 645) (emphasis added).  The panel in *Shank* also acknowledged the recent prior holding in *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003) in which the court stated that an institution's deliberate indifference must "directly cause the abuse to occur *or make students vulnerable to such abuse*." *Id.* (emphasis added).  In *K.T. v. Culver-Stockton College*, the Eighth Circuit similarly applied the rule from *Davis* that for liability to attach, an institution's "deliberate indifference must, at a minimum, cause [students] to undergo harassment *or make them liable or vulnerable to it*."  865 F.3d 1054 at 1057 (quoting *Davis*, 526 U.S. at 644) (emphasis added).

Despite the numerous Eighth Circuit cases applying the controlling Supreme Court precedent of *Davis* requiring that a plaintiff show that the institution's deliberate indifference either caused her to experience harassment *or* made her more vulnerable to future harassment, the panel in *Doe v. Board of Trustees of the Nebraska State Colleges*, seemingly reads out the "more vulnerable" language to hold that the plaintiff's claim failed because she did not "show a causal nexus between [the institution's] actions and the sexual assaults or harassment."  Case No. 22-1814 at 7, reh'g denied (8th Cir. Aug. 15, 2023).  In so holding, the court noted that after the assault at issue took place and the school responded, "there were no more incidents of harassment of abuse."  *Id.*  Because this requirement of post-notice harassment or assault contradicts both the binding Supreme Court precedent of *Davis* and prior binding Eighth Circuit authority, the holding in *Doe v. Board of Trustees of the Nebraska State Colleges* does not constitute binding authority on this Court.  *See McDonough v. Anoka Cnty.*, 799 F.3d 931, 941 (8th Cir. 2015) ("one panel of this court ordinarily cannot overrule another panel" unless the earlier decision "is cast into doubt by a decision of the Supreme Court").  In such situations, the prior decisions remain controlling authority.  *See, e.g.*, *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009).

17

Regardless, because Plaintiff experienced harassment after UNL's initial response in 2016 and again after their March 2017 response, even if this Court were to apply *Doe v. Board of Trustees of the Nebraska State Colleges*, a reasonable jury could find that UNL's deliberate indifference caused her to experience further harassment. In the instant case, Strickman had notice of Roe's prior sexual harassment yet permitted Roe to remain in the same office in the engineering building where Plaintiff's office and labs were located with only a verbal no-contact directive in place. Thus, Plaintiff predictably was forced to repeatedly encounter her harasser during her studies and work. After Plaintiff reported Roe's continued harassment, no new safety measures were implemented. Continuing with the status quo, which had been shown to be ineffective at preventing harassment and ensuring Plaintiff's safety while completing her degree left Plaintiff vulnerable to future harassment. Further, Plaintiff experienced harassment after her March 2017 report, when Roe directly emailed her in September 2017, again violating the no-contact directive. Accordingly, UNL's deliberate indifference left Plaintiff exposed and vulnerable to further harassment, which she then experienced in September 2017.

In *Culver-Stockton*, the court found that the plaintiff failed to allege that the school's deliberate indifference caused her to experience harassment or made her more vulnerable to harassment, because the plaintiff had simply alleged that the school's failure to provide counseling and treatment after her sexual assault resulted in emotional distress. 865 F.3d 1054 at 1058. Thus, the court understandably held that more was needed to establish liability. *Id.* Similarly, in *Shank*, the court explained that emotional trauma following a harassing incident is not enough to recover under Title IX. 994 F.3d at 576 (citing *Culver-Stockton Coll.*, 865 F.3d at 1058).

Here, Plaintiff not only experienced the ongoing harm of continuing to encounter her harasser, but chose to leave UNL prematurely to avoid Roe, abandoning her PhD program after

having already completed the coursework portion and being published —choosing instead to start over at another institution.  Pl. Dep. 35:18-25, 36:1-2, 103:25, 104:1-25, 105:1-2.  Thus, UNL's failure to respond appropriately to Plaintiff's reports of harassment deprived her of an educational benefit—the completion of her PhD program.  This represents cognizable harm under Title IX. *See Rossley*, 958 F.3d at 684; *Shank*, 993 F.3d at 573.  Accordingly, based on the evidence in the record, a reasonable jury could find UNL subject to liability under Title IX.  *See Davis*, 526 U.S. at 644-45; *see also Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103 (10th Cir. 2019).

### vi.  Damages

Plaintiff has alleged damages in the form of medical expenses and special damages resulting from her premature departure from UNL and the abandonment of her PhD program, both of which are recoverable under Title IX.  Defendants argue that the Supreme Court's recent decisions in *Cummings v. Premier Rehab Keller P.L.L.C.*, 142 S.Ct. 1562, reh'g denied, 142 S.Ct. 2853 (2022) and *Barnes v. Gorman*, 536 U.S. 181 (2002), holding that emotional distress damages and punitive damages, respectively, are not available for violations of the Rehabilitation Act apply with equal force to Title IX, another Spending Clause statute.  ECF No. 77 at 8-11.  This Court is not bound to apply *Cummings* or *Barnes* to Plaintiff's Title IX claims, as the Eighth Circuit has not yet addressed the applicability of these cases to claims arising under Title IX.  Even if it chooses to do so, Plaintiff's claims for other compensatory and consequential damages remain recoverable even in ACA and Rehabilitation Act actions post-*Cummings*.

### 1.  Emotional distress damages

As a preliminary matter, *Cummings* was, as stated, a case involving the availability of damages in private actions under the Rehabilitation Act of 1973 and the Affordable Care Act, not Title IX, and there is no binding authority requiring this Court to extend *Cummings* to Title IX

actions.  Moreover, several courts in other circuits have declined to extend *Cummings* to Title IX and maintained that damages for emotional distress remain available to plaintiffs asserting claims thereunder post-*Cummings*.  *See*, *e.g.*, *Doe v. Purdue Univ.*, No. 18-CV-89-JEM, 2022 WL 2828238, at \*4 (N.D. Ind. July 20, 2022) (holding evidence of emotional distress or harm admissible because *Cummings* was not a Title IX action, but rather applied only to Rehabilitation Act and Patient Protection and Affordable Care Act claims, and further, "since *Cummings* does not hold that it limits Title IX damages, it does not justify precluding evidence of Plaintiffs' consequential damages."); *Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 3:21-CV-2080-D, 2022 WL 1470957, at \*3 (N.D. Tex. May 10, 2022) (limiting the holding in *Cummings* to cases brought under the Rehabilitation Act).

The lynchpin of the *Cummings* decision is the Court's holding that recovery in private actions brought in accordance with legislative acts passed under the Spending Clause should be limited to those remedies traditionally available in actions for breach of contract—which have not traditionally allowed damages for mental anguish.  Accordingly, a brief discussion of damages in suits for breach of contract is instructive.

*Cummings* and its progeny cite to the Restatement (Second) of Contracts in defining "traditional" contract remedies that remain available in Spending Clause cases.  According to the Restatement, "[e]very breach of contract gives the injured party a right to damages against the party in breach," and subject to certain limitations, "the injured party is entitled to recover for all loss actually suffered." Restatement (Second) of Contracts §§ 346, 347 (1981).

Addressing remedies for contractual breach, the Restatement explains that, "[o]rdinarily, when a court concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had" upon entering the contract.  The court will

therefore "attempt[ ] to put him in as good a position as he would have been … had there been no breach." Restatement (Second) of Contracts § 344(a) (1981).  This "expectation interest," however, is not the only interest that may be protected.   *Id.*   If the beneficiary of the contract "changed his position in reliance on the contract by, for example, incurring expenses in preparing to perform, in performing, or in foregoing opportunities to make other contracts… the court may recognize a claim based on his reliance rather than on his expectation." *Id.*  "The interest protected in this way is called "'reliance interest.'" *Id.*  Remedies to protect these interests are non-exclusive. Restatement (Second) of Contracts § 345(a) (1981).

Damages in cases of contractual breach "are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed."  Restatement (Second) of Contracts § 347 (1981).  In some cases, "the sum awarded will do this adequately as, for example, where the injured party has simply had to pay an additional amount to arrange a substitute transaction and can be adequately compensated by damages based on that amount."  *Id.*  In other cases, however, "the sum awarded cannot adequately compensate the injured party for his disappointed expectation as, for example, where a delay in performance has caused him to miss an invaluable opportunity."  *Id.*  Such losses are described in the Restatement as follows:

> Items of loss other than loss in value of the other party's performance are often characterized as incidental or consequential. Incidental losses include costs incurred in a reasonable effort, whether successful or not, to avoid loss, as where a party pays brokerage fees in arranging or attempting to arrange a substitute transaction. Consequential losses include such items as injury to person or property resulting from defective performance.

*Id.* (internal citations omitted).  However, the Restatement cautions, "[t]he terms used to describe the type of loss are not, however, controlling, *and the general principle is that all losses, however described, are recoverable*."  *Id.* (emphasis added).

The Supreme Court has held that compensatory damages are available for intentional violations of Title IX. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 70-71 and 76 (1992). Thus, even where Courts have found that *Cummings* bars claims for emotional distress damages under Title IX, they have still found that "there is nothing in the decision that bars a plaintiff from seeking other forms of compensatory damages under these three statutes." *A.T. v. Oley Valley Sch. Dist.*, Case No. CV 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023) (denying summary judgment and permitting Plaintiffs to proceed to trial on claims for lost income, lost opportunity, fringe benefits, attorney fees, costs, and any other non-emotional distress damages). *Williams v. Colorado Dep't of Corr.*, Case No. 21-CV-02595-NYW-NRN, 2023 WL 3585210, at *7 (D. Colo. May 22, 2023) (dismissing claims for emotional distress damages but permitting requests for damages for economic loss and physical pain and suffering to remain).  Accordingly, Courts have repeatedly found that *Cummings* does not bar a plaintiff's Title IX claims wholesale where they seek compensatory damages and other remedies beyond emotional distress damages. *Doe v. Town of N. Andover*, Case No. 1:20-CV-10310-IT, 2023 WL 3481494, at *12 (D. Mass. May 16, 2023). Because the plaintiffs incurred expenses and economic losses due to the defendant's violations of Title IX, they were "entitled to recover for all loss[es] actually suffered." *See* Restatement (Second) of Contracts § 347 (1981).

### 2. *Compensatory damages*

Regardless, in additional to damages for emotional distress, Plaintiff seeks compensatory damages in the form of medical expenses and special damages she incurred due to Roe's

harassment and UNL's deliberately indifferent response.  Defendants do not argue that such damages are unavailable under Title IX.  Several recent district court cases have confirmed the continued availability of a wide range of damages for Title IX violations, including medical expenses and other compensatory damages.  *See*, *e.g., A.T v. Oley Valley Sch. Dist*., No. 17-4983 at *4 (permitting the plaintiff's claims to proceed to trial for damages based on lost income, lost opportunity, fringe benefits, attorneys fees, costs, and any other non-emotional distress damages); *Doe v. Town of N. Andover*, No. 1:20-cv-10310 at *12 (permitting claims for damages in the form of tuition, school expenses, and other consequential damages resulting from the plaintiff's assault); *cf. Williams v. Colorado Dep't of Corr.*, Case No. 21-cv-2595, 2023 WL 3585210, at *7 (D. Colo. May 22, 2023) (permitting request for damages for economic loss and physical pain and suffering under ADA and Rehabilitation Act).  Accordingly, Plaintiff's claims for medical expenses and special damages—and fees and costs—are cognizable under Title IX.

Defendants' Brief in Support of their Motion for Summary Judgment does not address in any way Plaintiff's request for medical expenses.  The Amended Complaint specifically requests such damages.  *See* ECF No. 13 at 20 (requesting "medical and medical-related expenses," "pharmaceutical expenses," and "expenses and psychological treatment, therapy, and counseling").  Moreover, Plaintiff testified in her deposition that she developed joint pain in her wrists and knees resulting from the stress of the harassment she experienced while at UNL for which she sought treatment, including between 2017 and 2018.  Pl. Dep. 10-14.  At the time of her initial disclosures, Plaintiff estimated a cost of $1,000 for physiotherapy treatment.  Mot. for Summ. J. Ex. Q at 3, ECF No. 85-15.

Courts have also found that plaintiffs remain entitled to recover for medical treatment necessitated by injuries resulting from violations of anti-discrimination Acts following *Cummings.*

The same is true for any physical injuries incurred as a result.  These holdings are consistent with *Cummings,* as it is widely accepted that damages are available for personal injury in breach of contract actions.  *See* 11 Corbin on Contracts § 59.1; UCC § 2-715(2)(b).  In fact, "distinguished authority has asserted that when conduct that causes bodily harm is wrongful not because it is a breach of … an express contract made by the defendant, there is no reason for applying a different rule as to the damages that can be recovered. § 6.9. Common law, 6 La. Civ. L. Treatise, Law of Obligations § 6.9 (2d ed.) (citing Corbin on Contracts 428 (1964)).  Accordingly, Plaintiff's claim for damages in the form of medical expenses should proceed to trial.  *See*, *Pennington v. Flora Community Unit School District No. 35*, Case No. 3:20-cv-11, 2023 WL 348320, at *2-4 (S.D. Ill. Jan. 20, 2023) (permitting request for expenses for treatment for physical and psychological injury under Rehabilitation Act and ADA); *Doe v. City of Pawtucket*, Case No. 17-365 (D.R.I. Sep. 29, 2022) (finding claim for medical treatment for injuries remains available post-*Cummings*).

Defendants assert that Plaintiff cannot recover special damages related to her decision to switch to a master's program and leave UNL early without a PhD.  ECF No. 77 at 11.  Plaintiff began her PhD program at UNL in 2014.  Pl. Dep. 27:22-25.  By the time she left UNL in 2017, she had completed all the coursework for her PhD and was published in a scholarly journal.  Pl. Dep. 104:14-17.  Because Plaintiff could not face having to continually see her harasser in the engineering building where her office and labs were located, as he continued to stalk her without any effective action by UNL, Plaintiff left before completing her PhD in 2017.  Pl. Dep. 27:7-9, 35:21-25, 36:1-2, 138:6-25.  If she had stayed, she would have completed her PhD by 2018.  Pl. Dep. 104:14-17; ECF No. 85-18 at PageID 1006, Mot. for Summ. J. Ex. U.  Instead, Plaintiff decided to switch to a master's program—even though she already had a master's degree—so that she could leave as soon as possible.  Pl. Dep. 26:22-24, 163:1-2.  After leaving UNL, Plaintiff

started a new PhD program from scratch at another university, which took another four years and nine months to complete.  Pl. Dep. 28:6-8, 19-21.  Accordingly, Plaintiff seeks special damages associated with having to leave and start her PhD over again, including expenses associated with relocating to Atlanta, additional educational expenses at her new university, and lost earnings due to the delay in obtaining her PhD.  Sec. Am. Compl. ¶ 131, ECF No. 13; Mot. for Summ. J. Ex. Q, ECF No. 85-15.

According to Defendants, Plaintiff is not entitled to special damages resulting from her decision to abandon her PhD at UNL because she decided to leave UNL early and start again at another institution prior to Roe's harassment in 2017.  ECF No. 77 at 11-13.  To the contrary, while Plaintiff may have initially contemplated leaving UNL in 2016 after Roe's initial harassment and took steps to do so, the record demonstrates that she later resolved to persist in her studies.  It wasn't until after Roe's continued harassment in the spring of 2017 and UNL's failure to respond that Plaintiff finally decided to leave, which she did in August 2017.

In her deposition, Plaintiff testified that she began the process of adding a master's degree program and applying to new programs in 2016 due to Roe's harassment.  Pl. Dep. 34:1-4, 18-25, 35:1-2, 7-10.  Plaintiff also testified that she subsequently reconsidered this decision upon learning about the existence of UNL's Title IX Office because she thought the Title IX Office would be able to help her and ensure her safety.  Pl. Dep. 104:20-24.  That Plaintiff attempted to continue her PhD studies after Roe's initial harassment is reflected by Plaintiff's email to Roe informing him of her plan to switch to a master's program so that she could graduate early—in *December 2016*.  Ex. 7.  Plaintiff did not graduate with her master's until *August 2017*.  Ex. 6.  Thus, although Plaintiff initially considered leaving UNL in 2016, it wasn't until it became clear to her that UNL was not going to protect her that she thought, "I need to leave."  Pl. Dep. 105:9-16.  After the initial

Title IX investigation, Roe remained in his office in the engineering building where Plaintiff was forced to repeatedly encounter him, which left Plaintiff exposed to further harassment which she then experienced in 2017 while attempting to continue her work and studies.  Pl. Dep. 138:6-14. UNL failed to adequately respond to her subsequent complaints of harassment, leaving her vulnerable and in a situation that felt like "torture."  Pl. Dep. 138:11-17.

After being subjected to further harassment by Roe and UNL's continued failure to protect her, Plaintiff resolved to leave—which she did in the fall of 2017.  This was a decision Plaintiff did not take lightly given her enormous sacrifice of time, effort, and resources, being only one year away from completing her PhD.  Pl. Dep. 104:14-19.  Plaintiff's deposition testimony and other record evidence cited above presents a material dispute of fact concerning when Plaintiff decided to leave UNL and whether her decision to leave with only a master's degree rather than to stay (or return after leaving) to finish her PhD was caused by UNL's deliberate indifference to Roe's 2017 harassment.  As such, this question should be presented to the jury for purposes of assessing special damages.

**B.  Violation of Right to Due Process**

Based on a thorough review of Defendants' arguments and cited law, Plaintiff makes no arguments regarding whether Defendant Strickman violated her constitutional rights.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

Dated: November 13, 2023                    Respectfully Submitted,

 */s/ Karen Truszkowski*                          */s/ Elizabeth K. Abdnour*

26

Karen Truszkowski                          Elizabeth K. Abdnour
Temperance Legal Group                     Abdnour Weiker LLP
503 Mall Court #131                        500 E. Michigan Ave., Ste. 130
Lansing, Michigan 48912                    Lansing, Michigan 48912
P: (844) 534-2560                          P: (517) 994-1776
F: (800) 531-6527                          F: (614) 417-5081
karen@temperancelegalgroup.com             liz@education-rights.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in Neb. Civ. R. 7.1(d). Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify that this Brief contains 8107 words.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour