UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, | Case No. 4:21-cv-3049 |
| Plaintiff, | Hon. John M. Gerrard |
| v. | |
| BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and individuals TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS; | PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF MATERIAL FACTS**

1. The Plaintiff was a student at the University of Nebraska—Lincoln ("University") from approximately summer of 2014 through August of 2017. [Filing No. 13, ¶ 1, 67; Dr. Lily Wang's Declaration ("Dec. of Dr. Wang") ¶ 5, 10; Exhibit C, the official UNL Graduate Academic Record (Transcript) ("Ex. C"); Declaration of Tamiko Strickman ("Dec. of Strickman"), ¶ 9.]

   **RESPONSE: Undisputed.**

2. Initially, Plaintiff's degree objective was the Ph.D. program at the University. [Dec. of Dr. Wang, ¶ 5; Declaration of Lily Amare ("Dec. of Amare"), ¶ 4; Exhibit N, Plaintiff's Deposition ("Ex. N, Dep. of Plaintiff") at 34:1 – 5.]

   **RESPONSE: Disputed.** Both Plaintiff and her husband enrolled at UNL with the objective that they would each obtain a PhD. Both already had their master's degrees in engineering from another university.

1

3. In June of 2016, Plaintiff began the process of switching her degree objective to Master of Science program. [Ex. N, Dep. of Plaintiff at 34:1 – 14.]

**RESPONSE: Disputed.** Plaintiff did not apply to switch to a master's degree program. She applied to add a UNL master's degree program to her already established UNL PhD program.

4. In June and early July of 2016, Plaintiff submitted the Graduate Student Application to gain admission to the Master of Science in Mechanical Engineering and Applied Mechanics program, with specialization in Materials Engineering, effective the summer semester/term of 2016. [Dec. of Dr. Wang, ¶ 6, 7; Exhibit A, Email Communication dated July 6, 2016, and Graduate Student Application ("Ex. A"); Ex. N, Dep. of Plaintiff at 34:15 – 25.]

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff was admitted into the master's degree program. This was an addition to her PhD program, not a substitution for the PhD program.

5. Plaintiff's Graduate Student Application was approved, and she officially switched to the Master of Science program effective summer of 2016. [Dec. of Dr. Wang, ¶ 8.]

**RESPONSE: Disputed.** Plaintiff did not switch to the Master of Science program. She added it to her already established PhD program.

6. On August 18, 2016, Plaintiff submitted a revised Memorandum of Courses for admission to candidacy for the Master of Science degree. [Dec. of Dr. Wang, ¶ 9; Exhibit B, Plaintiff's Memorandum of Courses submitted on August 18, 2016.]

**RESPONSE: Undisputed.**

7. On November 19, 2016, Plaintiff applied for Graduate Admission at Georgia Institute of Technology ("Georgia Tech") with a degree objective of Ph.D. to begin in Fall 2017 semester. [Dec. of Amare, ¶ 5, Ex. O, Graduate Admission Application to join Georgia Tech's Ph.D. program; Ex. N, Dep. of Plaintiff at 35:7-22.]

2

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff applied to Georgia Tech after her case with IEC was closed without an acceptable resolution.

8. She applied to Georgia Tech in November of 2016 because, in her own words:

> I wanted to go to continue my Ph.D. because I was passionate to continue my study. And I applied to Georgia Tech because it's really high ranked. Now it's number five in the United States. It's a very high-ranked university. And I knew my background, and I knew that I would do well at Georgia Tech.

[Id.]

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff did apply to Georgia Tech. At the time she applied, she still hoped she could finish her PhD at UNL. After the IEC investigation was closed without a resolution, Plaintiff anticipated that she might have to leave UNL to avoid further harassment from Roe. Therefore, she applied to Georgia Tech as a potential back-up plan.

9. In 2016, Plaintiff's husband also switched to a master's program at the University of Nebraska. [Ex. N, Dep. of Plaintiff at 155:6-18.]

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff's husband added a master's degree program to his already established PhD program.

10. On August 12, 2017, Plaintiff graduated with Master of Science in Mechanical Engineering and Applied Mechanics, with specialization in Materials Engineering and with minor in Chemical Engineering. [Dec. of Dr. Wang, ¶ 10; Ex. A.]

**RESPONSE: Undisputed.**

11. Plaintiff began her Ph.D. program at Georgia Tech in August of 2017. [Dec. of Amare, ¶ 6, Exhibit P, Georgia Tech Transcript.]

**RESPONSE: Undisputed.**

3

12. John Roe ("Roe") was a Professor in the Department of Mechanical and Materials Engineering at the University and served as Plaintiff's advisor until June of 2016. [Filing No. 13, ¶ 41 and 56; Dec. of Strickman, ¶ 10.]

**RESPONSE: Undisputed in part and disputed in part.** To the best of Plaintiff's recollection, Roe remained her advisor until July 2017.

13. During the relevant period, from 2016 through 2018, the University had a policy against sexual misconduct. [Dec. of Strickman, ¶ 5; Exhibit D, Board of Regents Policies ("Ex. D"); Exhibit E, Student Code of Conduct ("Ex. E").]

**RESPONSE: Undisputed.**

14. During the relevant period, the University of Nebraska investigated and addressed sexual misconduct, including sexual assault and stalking, in accordance with the "University of Nebraska—Lincoln Response to Allegations of Student Sexual Misconduct," adopted pursuant to Board of Regents Policy 5.3.3., attached to the Student Code, as Appendix, "A." [Dec. of Strickman, ¶ 5, 7; Ex. E.]

**RESPONSE: Disputed.**

15. The Student Code of Conduct provides that "no person shall be deprived of the privileges of this institution because of sex," and explicitly provides that the "University will investigate reported allegations of sexual misconduct and may take appropriate remedial action. . . ." [Id.]

**RESPONSE: Undisputed.**

16. "Stalking" is defined "as the act of engaging in a knowing and willful course of conduct directed at a specific person or a family or a household member of such person with the intent to injure, terrify, threaten, or intimidate." [Ex. E, App. A, § 10ii.]

**RESPONSE: Undisputed.**

4

17. "Sexual assault" is defined as:

"Se*xual assault" is* committed when an actor subjects a person to sexual penetration (i) without the consent of the person, (ii) when the actor knew or should have known that the person was mentally or physically incapable of resisting or appreciating the nature of the person's own conduct, or (iii) when the actor is nineteen years of age or older and the person is at least twelve but less than sixteen years of age. Sexual assault is also committed when an actor subjects a person to sexual contact (a) without consent of the person, or (b) when the actor knew or should have known that the person was physically or mentally incapable of resisting or appraising the nature of the person's own conduct. . . . [Ex. E, App. A, § 10cc.]

**RESPONSE: Undisputed.**

18. During the relevant period, the Office of Institutional Equity and Compliance ("IEC") was responsible for enforcing Title IX and conducting investigations into Title IX complaints. [Dec. of Strickman, ¶ 4.]

**RESPONSE: Undisputed.**

19. During the relevant period, Strickman served as the Associate to the Chancellor and Title IX Coordinator at the University. [Dec. of Strickman, ¶ 3.]

**RESPONSE: Undisputed.**

20. Strickman was trained to serve as Title IX Coordinator and investigator. [Dec. of Strickman, ¶ 5.]

**RESPONSE: Undisputed.**

21. Strickman did not serve as John Roe's supervisor. [Dec. of Strickman, ¶ 11.]

**RESPONSE: Undisputed.**

22. Strickman did not have any supervisory authority over John Roe. [Dec. of Strickman, ¶ 12.]

**RESPONSE: Undisputed.**

23. On or about June 21, 2016, IEC received a report from Laurie Bellows that Plaintiff reported to her that John Roe sexually harassed and retaliated against her. [Filing No. 13, ¶ 51; Dec of Strickman, ¶ 13.]

**RESPONSE: Undisputed.**

24. On June 21, 2016, IEC, through Strickman, reached out to Plaintiff and set up a meeting for June 23, 2016. [Dec. of Strickman, ¶ 14].

**RESPONSE: Undisputed.**

25. On June 23, 2016, Plaintiff met with Strickman and made the following allegations:

   a. That Roe kissed her in December of 2014;

   b. That Roe told her he loved her and wanted to kiss her, and kicked her legs in the summer of 2015;

   c. That Roe sent Plaintiff a link to romantic movie in September of 2015; and

   d. Roe moved her from first author to second author on a journal Plaintiff and a group of other students were writing to publish in retaliation for rejecting his sexual advances. Dec. of Strickman, ¶ 15.]

**RESPONSE: Undisputed.**

26. At this meeting, Strickman told Plaintiff the University has a "zero tolerance retaliation policy" and to tell Strickman if she feels like she is being negatively impacted in any way for providing information to IEC. [Dec. of Strickman, ¶ 16.]

**RESPONSE: Disputed.**

27. Strickman also told her the University Police Department is available to her to talk to her about any safety concerns she may have. [Dec. of Strickman, ¶ 17.]

**RESPONSE: Undisputed.**

28. On June 24, 2016, Plaintiff communicated to IEC she wished to file a formal complaint. [Dec. of Strickman, ¶ 18.]

**RESPONSE: Undisputed.**

29. From June 24, 2016, through August 12, 2016, Ms. Strickman investigated the complaint submitted by Plaintiff. [Filing No. 13, ¶ 52 and 53; Dec. of Strickman, ¶ 19.]

**RESPONSE: Undisputed.**

30. On July 5, 2016, Strickman informed Roe of the formal complaint filed by Plaintiff against him and instructed him not to retaliate against Plaintiff. [Dec. of Strickman, ¶ 20; Exhibit F, Letter to John Roe on July 5, 2016 ("Ex. F").]

**RESPONSE: Undisputed.**

31. Immediately thereafter, Strickman worked with the Department of Engineering to remove John Roe as Plaintiff's advisor. [Dec. of Strickman, ¶ 21.]

**RESPONSE: Disputed.** Roe was not immediately removed as Plaintiff's advisor. It was approximately two weeks before he was removed.

32. In June and July of 2016, Strickman worked with the Department of Engineering to find and assign another advisor. [Dec. of Strickman, ¶ 22.]

**RESPONSE: Undisputed.**

33. Plaintiff was assigned another advisor. [Dec. of Strickman, ¶¶ 23, 24.]

**RESPONSE: Undisputed.**

34. In addition, Strickman directed Plaintiff and Roe to not engage in any intentional contact with one another directly or through a third party. [Dec. of Strickman, ¶ 24.]

**RESPONSE: Undisputed.**

35. On July 26, 2016, Plaintiff met with Strickman and Officer Eric Fischer from the University Police Department, and reported she had no safety concerns because she had a new office, new advisor, and new team. At that time, Strickman and Officer Eric Fischer told her to communicate with them if she had any safety concerns in the future. [Ex. N, Dep. of Plaintiff at 99:8-100:11; Dec. of Strickman, ¶ 25.]

**RESPONSE: Disputed.**

36. On or about August 12, 2016, once Strickman retrieved all the evidence, finalized interviews, and resolved credibility issues, Strickman finalized her investigation report and issued finding letters. [Dec. of Strickman, ¶26.]

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff acknowledges receipt of a findings letter. She disputes that all the evidence was retrieved and reviewed.

37. In letters dated August 12, 2016, Strickman notified both Plaintiff and John Roe her decision, which outlined her findings and recommendations for discipline. [Dec. of Strickman, ¶¶ 27 – 29; Exhibit G, Finding Letter to Plaintiff ("Ex. G"); Exhibit H, Finding Letter to John Roe ("Ex. H").]

**RESPONSE: Undisputed.**

38. Strickman determined the greater weight of the evidence showed Roe violated BRUN Policy, RP-2.1.8 which prohibits sexual misconduct. [Id.]

**RESPONSE: Undisputed.**

39. In addition, Strickman found that the greater weight of the evidence showed Roe's decision to move Plaintiff from first to second author was not retaliatory based upon her rejection of his sexual advances. Strickman concluded that the greater weight of the evidence showed Roe's decision to remove Plaintiff from first author was based on Plaintiff's subpar work product on the paper relative to the work of the co-author on the paper. [Id.]

8

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff acknowledges that these were Strickman's findings. Plaintiff denies that Roe's decision to remove Plaintiff from first author was not retaliatory and was because of subpar work product on the paper.

40. Based upon the findings and due to the delay in Plaintiff's coursework caused by changing her advisor, Strickman recommended the graduate school to cover tuition and fees for the remaining six (6) credit hours needed for Plaintiff to complete the Master of Science program. [Dec. of Strickman, ¶ 29; Ex. G.]

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff acknowledges that Strickman made this recommendation. However, Plaintiff never actually received any reimbursement for her fees.

41. In addition, Strickman outlined John Roe's consequences as follows:

You shall undergo Title IX sexual harassment training within 30 days of this recommendation becoming final. Further, you shall no longer serve in any capacity as Complainant's advisor or play any role in decisions related to Complainant's academic endeavors. [Ex. H.]

**RESPONSE: Undisputed in part and disputed in part.** Roe may have been sanctioned as reported in this allegation, but this information was never communicated to Plaintiff.

42. Roe was instructed not to retaliate against Plaintiff. [Dec. of Strickman, ¶ 29; Ex. H.]

**RESPONSE: Undisputed.**

43. On March 7, 2017, Plaintiff contacted Strickman and stated: "I needed to talk to you for some issues. I think based on our agreement, [John Roe] was supposed to not be in contact with me. But in the past weeks, he has started again to communicate saying Hello with smile to me and expecting to answer and disturbing looks. As I feel really disturbed and unsafe because of this, I wanted to report this to you and ask for your help on it. Thanks for your time." [Filing No.

9

1-19; Decl. of Def. Strickman, ¶ 30; Exhibit I, Email Exchange Between Plaintiff and Strickman from March 7, 2017 ("Ex. I").]

        **RESPONSE: Undisputed.**

    44.    In a matter of 15 minutes, Strickman replied to the email and stated: "Thank you for the email [Jane Doe]. [John Roe] was directed to have no direct contact with you meaning: one on one conversation, advising you (etc.) I will reach out to him and ask him to refrain from saying hello and/or smiling at you. Please feel free to contact me if you have any additional questions/concerns." [Dec. of Strickman, ¶ 31; Ex. I.]

        **RESPONSE: Undisputed.**

    45.    Plaintiff then responded: "Thanks for your reply. Actually, I do not feel comfortable. Because it is not a hello and smile and look of a person who respects me. It feels bad. Because I can differentiate between normal and abnormal behavior. Thanks again." [Dec. of Strickman, ¶ 32; Ex. I.]

        **RESPONSE: Undisputed.**

    46.    On the same day, Strickman replied to the email and asked: "Would you like to go over additional safety planning with investigator Fischer?" [Filing No. 1-20; Dec. of Strickman, ¶ 32; Ex. I.]

        **RESPONSE: Undisputed.**

    47.    Plaintiff expressed her wish to go over additional safety planning. [Id.]

        **RESPONSE: Undisputed.**

    48.    On March 7, 2017, Strickman communicated with Officer Fischer to set up a safety planning meeting. [Dec. of Strickman, ¶ 33.]

**RESPONSE: Disputed.** Plaintiff contacted Officer Fischer herself and copied Strickman on the email. Strickman did not initiate the communication with Fischer.

49. On March 10, 2017, Plaintiff met with Officer Fischer, which Officer Fischer documented and communicated to Strickman on the same day. Specifically, Officer Fischer reported to Strickman as follows:

> On 03/10/2017 at approximately 1100 hours, I met with [Jane Doe] in reference to some new concerns she has. [Jane Doe] began explaining some "disturbing behaviors" of [John Roe] beginning in January of 2017 (2nd week). [Jane Doe] said [John Roe] was walking into a doorway she was walking into where they became face to face and "stuck". [Jane Doe] told me she felt [John Roe] was blocking the doorway and he said "hello". [Jane Doe] did not respond to [John Roe] and used a doorway next to this one to leave the area. [Jane Doe] was upset at this because she was under the impression [John Roe] is to have no contact with her. [Jane Doe] went on to explain how there were three occasions, two in a hallway and one in a classroom, where [John Roe] walked back and forth slowly by her. [Jane Doe] did not remember the exact days or times, but told me they occurred within the last two months inside Nebraska Hall where her research lab is. [Jane Doe] told me on these occasions he attempted to say "hello", but [Jane Doe] would not respond. [Jane Doe] was upset and disturbed by these contacts because of the no contact he is supposed to have. In review of RMS, [John Roe] has no active no contact orders nor does [Jane Doe]. [Jane Doe] told me she has not received any threats, emails, calls, or messages from [John Roe] and the aforementioned events were what disturbed her. [Jane Doe] told me she felt comfortable still doing her work and going to class. [Jane Doe] had no threats or threatening behavior to report. This information was passed along to the Title IX office for review of their case involving the two. I reviewed [Jane Doe]'s safety plan and safety resources she has available to her. No safety issues were found at this time. [Jane Doe] did not request any immediate accommodations.

[Dec. of Strickman, ¶ 34; Ex. J.]

**RESPONSE: Undisputed.**

50. On March 12, 2017, Strickman met with John Roe. [Dec. of Strickman, ¶ 35.]

**RESPONSE: Undisputed.**

11

51. At that meeting, Strickman informed John Roe what Plaintiff reported. Strickman instructed John Roe to refrain from saying hello and smiling at Plaintiff if he encounters her again. [Id.]

**RESPONSE: Undisputed.**

52. John Roe provided the following statement:

The events you informed me of both occurred 30 to 40 steps from my office and both were automatic reactions to the situation. I had, and have, no intention to make my former student feel uncomfortable. Please convey to her that I am sorry that my instinctive response to be polite and positive was misunderstood and had made her feel uncomfortable. I had no intension of doing so.

I had also intended to remove her from my skype contacts last fall, but decided not to take any action that could be misunderstood under the circumstances (I am not sure what, or if anything, occurs when you remove

a contact). Can you please inform her that I will be taking this action at the end of this week, and that under the circumstances this seems appropriate and is done without any ulterior motivation. It simply seems to be the correct thing to do under the current circumstances.

[Dec. of Strickman, ¶ 36; Ex. K, Email exchange between John Roe and Strickman in March of 2017.]

**RESPONSE: Undisputed.**

53. There was no report of interaction between Plaintiff and John Roe for the remainder of Plaintiff's time as a student at the University of Nebraska. [Dec. of Strickman, ¶ 37.]

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff does not dispute that she did not report any further interactions with Roe to UNL. However, she did not report any further harassment as she realized that any further reporting would be futile.

54. On September 27, 2017, after Plaintiff left the University, Plaintiff reported to Strickman that on September 25, 2017, Roe contacted her. [Dec. of Strickman, ¶ 38; Exhibit L, email communications between Plaintiff and Strickman in September of 2017

12

("Ex. L").]

**RESPONSE: Undisputed.**

55. On the same day, Strickman communicated to John Roe the following:

…[Jane Doe] informed me that you contacted her regarding a case in NUTech. I am assuming this involves the project you both worked on. I do not know if you contacted her or not but please ensure you do not contact [Jane Doe] under any circumstances. If[] you need to communicate with her in any form, please contact Dr. Walker or me. If you have any questions, please feel free to contact me.

To which John Roe responded:

Hi Tami I did not contact [Jane Doe]. I did respond to the Zane Gernhart at NUTech saying "Thanks Zane for looking into this. [John Roe]" which I assume is what she is referring to. The e-mail is attached.

[Dec. of Strickman, 30, Ex. M, Email Exchange Between Strickman and John Roe on September 27, 2017.]

**RESPONSE: Undisputed.**

56. In fact, the email exchange showed John Roe was responding to Zane Gernhart's email addressed to the researchers of the article Plaintiff, John Roe and other students wrote/published. [Id.]

**RESPONSE: Undisputed in part and disputed in part.** Plaintiff acknowledges that Roe may have been responding to a group email. However, the email group consisted of only four people. Plaintiff's name would have been easily recognized and removed from Roe's response.

57. From July of 2016 to the present, John Roe has never texted, called or emailed Plaintiff, other than responding to the group email as discussed above. [Ex. N. Dep. of Plaintiff at 142:18-143:4.]

**RESPONSE: Undisputed.**

13

58. From July of 2016 to the present, other than attempting to say hello or perhaps smiling, John Roe has never said another word to Plaintiff. [Id.; Dec. of Strickman, ¶ 40.]

**RESPONSE: Undisputed in part and disputed in part.** Roe may not have verbally talked to Plaintiff, but he made other unwelcome communications to Plaintiff as reported in March 2017.

59. Plaintiff has not seen John Roe at all since she left the University. [Id.]

**RESPONSE: Undisputed.**

60. At no point did Plaintiff state that John Roe was stalking her. [Dec. of Strickman, ¶ 42.]

**RESPONSE: Disputed.** Plaintiff may not have expressly used the word "stalking" to describe Roe's behavior. She did, however, report actions on the part of Roe that would constitute stalking. Plaintiff's first language is not English, and she was not familiar with the term "stalking."

61. At no point after February of 2017 did Plaintiff state that John Roe was sexually harassing her. [Dec. of Strickman, ¶ 43.]

**RESPONSE: Disputed.** In March 2017, Plaintiff reported multiple instances of Roe's sexual harassment.

62. At no point after February of 2017 did Plaintiff state that John Roe was engaging in sexual misconduct. [Dec. of Strickman, ¶ 44.]

**RESPONSE: Disputed.** In March 2017, Plaintiff reported multiple instances of Roe's sexual misconduct.

63. Plaintiff did not report any sexual misconduct or harassment after February of 2017. [Dec. of Strickman, ¶ 40 - 45.]

**RESPONSE: Disputed.** In March 2017, plaintiff reported multiple instances of Roe's sexual misconduct and harassment.

64. Plaintiff did not file a formal complaint alleging sexual misconduct after February of 2017. [Dec. of Strickman, ¶ 45.]

**RESPONSE: Disputed.** In March 2017, Plaintiff reported multiple instances of Roe's sexual misconduct. Strickman admitted that no record was kept of the misconduct Plaintiff reported to Strickman at that time. Strickman did not advise Plaintiff as to potential next steps. In September 2018, Plaintiff reported an email in which Roe had copied Plaintiff. If there was something additional Plaintiff needed to do to report Roe's ongoing sexual misconduct, Plaintiff was never notified what that was.

15

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

1. Plaintiff, along with her husband, was a graduate student at the University of Nebraska-Lincoln (UNL) from the summer of 2014 through August 2017. She reluctantly left UNL with one year remaining to obtain her PhD in mechanical engineering. Decl. of Pl. ¶¶ 1, 12, 24-27.

2. Plaintiff and her husband came to UNL from their home country as international students. Decl. of Pl. ¶ 4.

3. Plaintiff and her husband chose UNL as the university where they would both pursue their PhDs so they would not be separated. Decl. of Pl. ¶¶ 5-6.

4. Plaintiff's husband, despite being fully funded at another American university, chose UNL because of UNL's electrical engineering program, and computer science department. Decl. of Pl. ¶¶ 5.

5. The Plaintiff followed her husband also enrolling in the UNL doctoral engineering program. Plaintiff and her husband came to UNL both having already earned master's degrees at another institution. Decl. of Pl. ¶¶ 6-7.

6. It was the goal of Plaintiff and her husband to both earn their PhDs from UNL. Decl. of Pl. ¶ 2.

7. After starting her doctoral program at UNL, the Plaintiff was subjected to sexual harassment by her advisor, John Roe ("Roe"). Decl. of Pl. ¶ 8.

8. After filing a complaint with the university Office of Institutional Equity and Compliance, ("IEC"), on June 23, 2016, Defendant Strickman began investigating Plaintiff's complaint. On August 12, 2016, Strickman issued a finding that the greater weight of the evidence showed that Roe had violated BRUN Policy, specifically RP-2.1.8, which prohibits sexual misconduct. Def.'s Statement of Material Facts ¶¶ 36-38, ECF No. 75.

16

9. Plaintiff was never reimbursed for fees. Decl. of Pl. ¶ 11.

10. Plaintiff reported allegations that constituted sexual harassment and stalking in March 2017. Def.'s Statement of Material Facts ¶ 43, ECF No. 75; Decl. of Pl. ¶ 17, 20.

11. Plaintiff applied to add a master's program to her already established PhD program in mechanical engineering. She did not drop her PhD program at the time, nor did she plan to drop the PhD program at that time. Decl. of Pl. ¶¶ 12-14.

12. Because of the lack of support from UNL in protecting her from Roe, Plaintiff officially dropped her PhD program in July 2017. Decl. of Pl. ¶¶ 16, 24-25.

13. Plaintiff started the master's degree program in summer or fall 2016 and graduated with her master's degree in August 2017. Decl. of Pl. ¶ 15.

14. In March 2017, Roe encountered Plaintiff on more than one occasion, in violation of the no-contact directive. Roe smiled at the plaintiff, said hello to her, and on more than one occasion plaintiff noticed Roe staring at her from behind. Roe blocked Plaintiff from entering a room, resulting in Plaintiff using another door to enter. Pl. Dep. Ex. 58; Pl. Dep. 120:7-14; Pl. Dep Ex. 66 at 3281.

15. Plaintiff was disturbed by these encounters and reported them to Strickman on March 7, 2017. Plaintiff told Strickman, "As I feel really disturbed and unsafe because of this, I wanted to report this to you and ask for your help on it. Thanks for your time." Decl. of Strickman ¶ 30, ECF No. 78-2; Mot. for Summ. J. Ex. I, ECF No. 85-7.

16. On March 7, 2017, Plaintiff contacted Officer Eric Fischer of the UNL police department to report additional harassment from Roe and request safety planning. Plaintiff initiated this contact with Fischer, not Strickman. Decl. of Pl. ¶¶ 17-19.

17. After meeting with Fischer, Plaintiff was not provided with any safety plan, nor was she offered assistance with seeking for potential alternative office locations to allow me to avoid interacting with Roe. Decl. of Pl. ¶ 19.

18. After the March 2017 complaint Plaintiff had to remain in the same building as Roe, and she was forced to regularly encounter Roe during work and her studies. Plaintiff found this to be tortuous. Pl. Dep. 120:4-6, 138:7-10.

19. Strickman never told Plaintiff that Strickman had spoken with Roe about his ongoing stalking and harassment of Plaintiff. Decl. of Pl. ¶ 20.

20. In his investigation, Officer Fischer acknowledged that there was no active no-contact order in place for Roe or the Plaintiff. Def.'s Statement of Material Facts ¶ 43, ECF No. 75.

21. Strickman did not know if there was a safety plan in place to protect Plaintiff from Roe. Def. Strickman Dep. 69:22-24, 117:14-17, 118:22-25, 119:1.

22. Strickman did not make a record of Plaintiff's March 2017 complaint to Strickman. Def. Strickman Dep. 127:7-12.

23. This is contrary to Strickman's alternate representation that "If we got a new allegation, then we would have a record of any prior allegations. Def. Strickman Dep. 83:3-19, 126:20-25, 127:1-21.

24. Strickman did not offer Plaintiff options such as changing schedules or workstations or filing a complaint. Decl. of Pl. ¶¶ 21 and 23.

25. Once Plaintiff realized that she would not be offered protection from Roe, in July 2017, she made the decision to leave UNL and transfer to Georgia Tech. This was a difficult

    decision for Plaintiff as she was in her fourth year of her PhD program with only one year left before she would be awarded her PhD from UNL. Decl. of Pl. ¶¶ 24-26.

26. Plaintiff started her PhD program at Georgia Tech in August 2017. Decl. of Pl., ¶ 27.

27. Roe contacted the Plaintiff by email on September 25, 2017. Pl. Dep. Ex. 60; Pl. Dep. 132:4-8.

28. On September 27, 2017, Plaintiff emailed Strickman to report Roe's September 25 email communication to Plaintiff. Pl. Depo. Ex. 60; Pl. Dep. 132:4-8.

29. Strickman never responded to the September 27, 2017, email from Plaintiff, other than to later acknowledge that Strickman received it. Pl. Dep. Ex. 60, 61.

30. Roe asserted that he was merely responding to a group email that included plaintiff's email address. The group consisted of four people. Decl. of Def. Strickman ¶ 30, ECF No. 78-2; Mot. for Summ. J. Ex. M, ECF No. 85-11.

DATED: November 13, 2023            Respectfully submitted,

| | |
|---|---|
| /s/ Karen Truszkowski | /s/ Elizabeth K. Abdnour |
| Karen Truszkowski | Elizabeth K. Abdnour |
| Bar Number: P56929 (MI) | Bar Numbers: 0081795 (OH), P78208 (MI) |
| TEMPERANCE LEGAL GROUP, PLLC | ABDNOUR WEIKER, LLP |
| 503 Mall Court #131 | 500 E. Michigan Ave., Ste. 130 |
| Lansing, MI 48912 | Lansing, MI 48912 |
| Phone: (844) 534-2560 | Phone: (517) 994-1776 |
| Fax: (800) 531-6527 | Fax: (614) 7745-2001 |
| Email: karen@temperancelegalgroup.com | Email: liz@education-rights.com |

*Attorneys for Plaintiff*

19

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

20