IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>                Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; and individuals TAMIKO STRICKMAN and JOHN ROE, individually and in their official capacities; and OTHER UNIDENTIFIED DEFENDANTS;<br><br>                Defendants. | **CASE NO. 4:21-CV-3049**<br><br>**BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA'S AND TAMIKO STRICKMAN'S RESPONSES TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS** |

Pursuant to NECivR 56.1(c), the Board of Regents of the University Nebraska and Tamiko Strickman (collectively the "Defendants") provide the following concise responses to Plaintiff' Statement of Additional Facts ("Plaintiff's Statement of Facts") [Filing No. 89, pp. 16–20]:

1.    ¶ 1 of Plaintiff's Statement of Facts is disputed in part and undisputed in part. Specifically, Defendants admit that Plaintiff was a graduate student at the University of Nebraska Lincoln from the summer of 2014 through August 2017. Defendants dispute the remaining allegations contained therein as it is in direct contradiction of the record in this case, including Plaintiff's under oath deposition testimony. At her deposition, Plaintiff testified as follows:

> Q. You started the process to ***switch from the Ph.D. program to a master's program at UNL in June of 2016***; correct?
>
> A. June 2016. It was in the -- in that time domain.
>
> Q. I am sorry. What?
>
> A. It was around that time domain.
>
> Q. There's a June 26th, 2016, e-mail, Exhibit 42, written to Mr. [John Roe] indicating: I have gone to the graduate studies in order to be known as a master's student and graduate in December 2016. Do you recall sending him that e-mail?

1

A. Yes.

Q. And then Exhibit 43 is a graduate student application. Do you recall submitting your graduate student application in July of 2016?

A. Sorry. What is your question?

Q. Do you recall submitting a graduate student application for mechanical engineering and applied mechanics in July of 2016?

A. I think I submitted it at that time.

Q. And that was to be in the master's program; correct?

A. Yes.

Q. And do you recall submitting a memorandum of courses that's Exhibit 40?

A. I don't see the exhibits that you are mentioning. It's on 41.

Q. Okay. Well, and I don't necessarily need to show them to you if we can agree that you submitted a memorandum of courses received by the school in August of 2016 in connection with wanting to be part of the master's program?

A. I remember I submitted my memorandum.

Q. And if it's dated August 30th, 2016, you don't have any reason to dispute that; right?

A. I don't remember the dates.

Q. If that's what the memorandum of courses said, do you have any reason to think that date's incorrect?

A. No.

Q. ***Why did you decide to switch from the Ph.D. program to the master's program in the summer of 2016***?

A. Because I experienced harassment for a long time, and I experienced the retaliation of rejecting the harasser's request. And I was -- my funding source, as a retaliation, was also cut off. So all of this, and also Title IX office was not looking that wants to help to solve my concerns. So then I thought that I need to leave.

Q. So those were all of the things that factored into your decision in the summer of 2016 to switch to the master's program; correct?

A. Yes.

Q. In fact, you applied to Georgia Tech November 19th, 2016; correct?

A. I remember I applied to Georgia Tech in fall 2016.

Q. And why did you apply to Georgia Tech's Ph.D. program in the fall of 2016?

A. I wanted to go to continue my Ph.D. because I was passionate to continue my study. And I applied to Georgia Tech because it's really high ranked. Now

it's number five in the United States. It's a very high-ranked university. And I knew my background, and I knew that I would do well at Georgia Tech.

2

> Q. So your understanding when you applied in the fall of 2016 is that Georgia Tech's Ph.D. program was higher ranked than UNL's?
> A. Yes.

[Ex W, Dep. of Plaintiff, at 34:1 – 36:22 (emphasis added).] Accordingly, Plaintiff was not pursuing a Ph.D. after she switched to a Master of Science program in 2016 and did not have "one year remaining" when she left the University of Nebraska. Furthermore, Defendants object to Paragraphs 1, 12, 24 – 27 contained in Plaintiff's Declaration used in support of ¶ 1 of Plaintiff's Statement of Facts as it contains unsubstantiated statements and statements that are in direct contradiction of her prior testimony under oath.

2. ¶ 2 of Plaintiff's Statement of Facts is disputed in part and undisputed in part. Specifically, Defendants do not dispute that Plaintiff's husband came to the University of Nebraska-Lincoln from his home country as an international student. Defendants dispute that Plaintiff came to the University of Nebraska Lincoln from her home country as international student. In 2013, Plaintiff came to the United States of America with F-2 Visa. [Ex. W, Dep. of Plaintiff at 28:22 – 30:1.] At her deposition, Plaintiff testified F-2 visa provides a nonimmigrant temporary permit for the immediate family member of an F-1 student visa holder, and while on the F-2 visa, she could not have paid employment or pursue education. [Id.] Plaintiff did not apply to the University of Nebraska until 2014. [Id.]

3. Defendants do not dispute ¶ 3 of Plaintiff's Statement of Facts.

4. Defendants do not dispute ¶ 4 of Plaintiff's Statement of Facts. However, Defendants object to ¶ 4 as immaterial as thoroughly discussed in the Reply Brief.

5. Defendants dispute ¶ 5 of Plaintiff's Statement of Facts as immaterial, as thoroughly discussed in the Reply Brief.

6.  ¶6 of Plaintiff's Statement of Facts is disputed in part and undisputed in part. Defendants admit that Plaintiff and her husband were enrolled in their respective Ph.D. programs from 2014 through 2016. However, Defendants dispute ¶ 6 to the extent it is implying their plan to earn Ph.D. remained the same after their decision to switch from a Ph.D. program to Master of Science program in 2016. As it relates to Plaintiff's decision to switch to the Master of Science program in 2016, Defendants refer to and incorporate herein their entire response, including the objections, as set forth in Paragraph 1 *supra*. As it relates to Plaintiff's husband, Plaintiff testified:

> Q. Did he ever start a Ph.D. program?
> A. Yes, he start.
> Q. And then he switched to a master's program?
> A. Yes.
> Q. Why?
> A. Because of me.
> Q. How so?
> A. Because he was a Ph.D. student. He started his Ph.D. as well at UNL in electrical engineering, but when this harassment case happened and I came out to the point that I cannot stay at UNL and I am leaving. And then, also, his advisor was very close to [John Roe]. They were friends. And then because I was leaving and I needed his support mentally and emotionally, so then he switched to master and to provide that support to me. And so he switched to master, and he came to Atlanta.
> Q. And he switched to the master's degree program in 2016; correct?
> A. Yes.
> Q. And he graduated with his master's from UNL; correct?
> A. Yes.

[Ex. W, Dep. of Plaintiff at 154:4 – 155:11.]

7.  Defendants dispute ¶ 7 of Plaintiff Statement of Facts as it contains improper legal conclusion; specifically, "sexual harassment" is a defined term under Title IX and "subjected to sexual harassment" is one of the elements to prove a Title IX, deliberate indifference claim.

8.  Defendants admit ¶ 8 of Plaintiff's Statement of Facts.

9.  Defendants admit ¶ 9 of Plaintiff's Statement of Facts. However, Defendants object to ¶ 9 as immaterial as thoroughly discussed in the Reply Brief.

10. Defendants dispute ¶ 10 of Plaintiff's Statement of Facts as it constitutes legal conclusion. Specifically, "sexual harassment" and "stalking" are defined terms under Title IX. Furthermore, during her safety plan with Officer Fischer on March 10, 2017, Plaintiff told him that "she has not received any threats, emails, calls, or messages from [John Roe]. . . ," and that "she felt comfortable still doing her work and going to class." At that time, there were no threats or threatening behavior reported. At her deposition, Plaintiff testified she had no reason to doubt the accuracy of what Officer Fischer wrote in the UNLPD Reports and Safety Plan about what she reported to him on March 10, 2017. [Filing No. 92-7, UNLPD Reports and Safety Plan, at pp. 7-8; Ex. W, Dep. of Plaintiff at 124:5 – 126:21.]

11. Defendants dispute ¶ 11 of Plaintiff's Statement of Facts. Defendants refer to and incorporate herein their entire response, including the objection, as set forth in Paragraph 1 *supra*.

12. Defendants dispute ¶ 12 of Plaintiff's Statement of Facts. Defendants refer to and incorporate herein their entire response, including the objection, as set forth in Paragraph 1 *supra*. To illuminate the direct contradiction, see Plaintiff's testimony at her deposition:

> Q. ***Why did you decide to switch from the Ph.D. program to the master's program in the summer of 2016?***
>
> A. Because I experienced harassment for a long time, and I experienced the retaliation of rejecting the harasser's request. And I was -- my funding source, as a retaliation, was also cut off. So all of this, and also Title IX office was not looking that wants to help to solve my concerns. So then I thought that I need to leave.
>
> Q. So those were all of the things that factored into your decision in the summer of 2016 to switch to the master's program; correct?
>
> A. Yes.

[Ex W, Dep. of Plaintiff, at 34:1 – 36:22 (emphasis added).]

13. Defendants do not dispute ¶ 13 of Plaintiff's Statement of Facts.

14. Defendants dispute ¶ 14 of Plaintiff's Statement of Facts. Defendants do not dispute that Plaintiff reported to Strickman the following: "I needed to talk to you for some issues. I think based on our agreement, [John Roe] was supposed to not be in contact with me. But in the past weeks, he has started again to communicate saying Hello with smile to me and expecting to answer and disturbing looks. As I feel really disturbed and unsafe because of this, I wanted to report this to you and ask for your help on it. Thanks for your time." [Filing No. 1-19; Filing No. 85-7.] For details of what Plaintiff told Officer Fischer, see Filing No. 92-7, UNLPD Reports and Safety Plan, at pp. 7-8. Upon investigation, John Roe provided the following context:

> The events you informed me of both occurred 30 to 40 steps from my office and both were automatic reactions to the situation. I had, and have, no intention to make my former student feel uncomfortable. Please convey to her that I am sorry that my instinctive response to be polite and positive was misunderstood and had made her feel uncomfortable. I had no intension of doing so.
>
> I had also intended to remove her from my skype contacts last fall, but decided not to take any action that could be misunderstood under the circumstances (I am not sure what, or if anything, occurs when you remove a contact). Can you please inform her that I will be taking this action at the end of this week, and that under the circumstances this seems appropriate and is done without any ulterior motivation. It simply seems to be the correct thing to do under the current circumstances.

[Filing No. 85-9.] Based on the facts and circumstances of the matter and upon investigation, Strickman did not believe John Roe violated the no-contact directive. [Ex. Y, Dep. of Strickman at 129:22 – 130:19.]

15. Defendants do not dispute ¶ 15 of Plaintiff's Statement of Facts.

16. Defendants dispute ¶ 16 of Plaintiff's Statement of Facts. Same day as Plaintiff's email, on March 7, 2017, Strickman replied to her email and asked: "Would you like to go over additional safety planning with investigator Fischer," to which Plaintiff responded she did. Strickman then communicated via email with Officer

6

Fischer and asked, "Did you get her response?", to which he responded, he did not. Strickman then advised Fischer that Plaintiff wanted to coordinate a safety plan with him. Officer Fischer then communicated with the Plaintiff asking her for a time to meet and discuss. [Filing No. 1-20; Filing No. 85-7, Email exchange between Plaintiff, Strickman, and Officer Fischer; Dec. of Strickman, ¶ 32.] Moreover, during the safety plan meeting with Officer Fischer, on March 10, 2017, Plaintiff told him that "she has not received any threats, emails, calls, or messages from [John Roe]. . . ," and that "she felt comfortable still doing her work and going to class." At that time, Plaintiff did not report any threats or threatening behavior. At her deposition, Plaintiff testified she had no reason to doubt the accuracy of Officer Fischer's report (Filing No. 92-7). [Filing No. 92-7, UNLPD Reports and Safety Plan, at pp. 7-8; Ex. W, Dep. of Plaintiff at 124:18 – 126:21.]

17. Defendants dispute ¶ 17 of Plaintiff's Statement of Facts. At her deposition, Plaintiff admitted she did not request any immediate accommodation. Furthermore, Plaintiff reported to Officer Fischer that "she felt comfortable still doing her work and going to class." [Filing No. 92-7, UNLPD Reports and Safety Plan, at pp. 7-8; Ex. W, Dep. of Plaintiff, at 124:18 – 126:21.]

18. Defendants dispute ¶ 18 of Plaintiff's Statement of Facts. At her deposition, Plaintiff admitted the following:

> Q. So from July of 2016 to the present he [John Roe] has never texted or called or e-mailed you other than you were cc'd in on the group e-mail that initiated with Zane Gernhart; correct?
> A. I don't recall of any, yeah.
> Q. And other than saying hello or perhaps smiling around March of 2017, he has never said another word to you; correct?
> A. Yes. I think so.
> Q. And you have not seen him at all since you left the University of Nebraska-Lincoln; correct?
> A. Correct.

[Ex. W, Dep. of Plaintiff at 142:18-143:4.]

7

19. Defendants does not dispute ¶ 19 of Plaintiff's Statement of Facts. However, Defendants further alleges that, on March 12, 2017, Strickman emailed Officer Fischer to communicate to Plaintiff about Strickman's investigation of the matter. Thereafter, on March 13, 2017, Officer Fischer met with Jane Doe and documented his communication with her as follows:

> At 1100 hours, I met with [Jane Doe] about her concerns. I told her I forwarded all information to Title IX and they did speak with [John Roe]. [John Roe] was not found in violation of anything and [John Roe] reiterated to Title IX he will continue to try not to run into [Jane Doe]. There were no safety concerns brought up. [Jane Doe] was thankful for the continued safety planning and left with no concerns. This case will remain closed.

[Filing No. 92-7, UNLPD Reports and Safety Plan, at p. 9.]

20. Defendants do not dispute ¶ 20 of Plaintiff's Statement of Facts that there was no active no-contact order issued by UNLPD. However, Defendants dispute ¶ 20 of Plaintiff's Statement of Facts to the extent it is implying that that there was no direction given to John Roe not to contact Jane Doe. Specifically, in 2016, Strickman directed John Roe not to communicate with Jane Roe and removed him as her advisor. On March 12, 2017, Strickman instructed John Roe to refrain from saying hello and smiling at Plaintiff if he encounters her again. In September of 2017, in an email to John Roe, Strickman stated ". . . please ensure you do not contact [Jane Doe] under any circumstances. If[] you need to communicate with her in any form, please contact Dr. Walker or me." [Filing No. 85-11, Email Exchange Between Strickman and John Roe on September 27, 2017.]

21. Defendants dispute ¶ 21 of Plaintiff's Statement of Facts as a misstatement of Ms. Strickman's deposition testimony. When Ms. Strickman was asked if there was a safety plan "put into place with the university police department," she answered: "To my knowledge there was no request for a safety plan, but we continued to follow up to

ensure that there was no safety issues." [Ex. Y, Dep of Strickman at 69:19-24.] Moreover, Defendants object to ¶ 21 as immaterial as thoroughly discussed in the Reply Brief.

22. ¶ 22 of Plaintiff's Statement of Facts is disputed in part and undisputed in part as it misstates and misconstrues Strickman's testimony. Although it is undisputed that there was no additional written report created and placed in Plaintiff's student record or investigation record, Strickman did maintain the email communication related to Plaintiff's March of 2017 concerns and the documents generated during the investigation of such concern. Specifically, Strickman testified:

> Q. Would it be important information to have an – an – in a complainant's file that they had made these allegations in case it happened again in the future so that you would have a record of the allegations?
>
> A. Well, all of this information would be in the e-mail, in elect - - - kept in an electronic database.
>
> . . .
>
> Q. What would happen if – say an investigator has a file. There are certain things that they don't document in that – in that case file, and then it happens again, and there's no record of it, of the initial report?
>
> A. – in this case, though, there was a record of it through my email and the correspondence and the follow-up.
>
> Q. Who would have had access to these emails? If a subsequent investigator or coordinator picks up that file, would they have access to those emails?
>
> A. Yes. And Jody would transfer my e-mails.
>
> Q. So were the emails considered part of the file?
>
> A. Yes. All of . . .
>
> Q. The record?
>
> A. All of the email correspondence is.

[Ex. Y, Dep. of Strickman at 128:6 – 129:21.] With that said, Defendants object to this Statement as immaterial and irrelevant.

23. Defendants dispute ¶ 23 of Plaintiff's Statement of Facts. With that said, Strickman did maintain email communications and other documents related to

9

Plaintiff's March 2017 concern. As thoroughly detailed in Paragraph 22 above (response to ¶ 22 of Plaintiff's Statement of Facts) Strickman did maintain the email communications where Plaintiff is raising the concern in Plaintiff's file. [Ex. Y, Dep. of Strickman at 128:6 – 129:21.] With that said, Defendants object to this Statement as immaterial and irrelevant.

24. Defendants dispute ¶ 24 of Plaintiff's Statement of Facts as vague because it does not state the time frame this statement is referring to. To the extent this Statement is referring to accommodations in response to March 2017 response, Defendants dispute as it is in direct contradiction of the record before this Court, including Plaintiff's own admissions at her deposition. Plaintiff did not request accommodation when she met with Officer Fischer. [Filing No. 92-7, UNLPD Reports and Safety Plan, at pp. 7-8; Ex. W, Dep. of Plaintiff, at 124:18 – 126:21.] At her deposition, Strickman summed the situation as follows:

> So if she said that she was having a safety concern and we responded immediately, went out there, offered safety planning, and then she would say, no, I -- you know, my educational environment isn't being impacted. I don't need any accommodations at this time, but I just want you to know.
>
> And then, you know, some time might go back and we'd get a similar call. And we would run out and make sure that she was feeling okay and offer her resources and ways that we could help to support her. And then she would say again, no, I just want this documented. . . .

[Ex. Y, Dep. of Strickman at 76:9 – 22.]

25. Defendants dispute ¶ 25 of Plaintiff's Statement of Facts. Defendants refer to and incorporate herein their entire response, including the objection, as set forth in Paragraph 1 *supra.*

26. Defendants do not dispute ¶ 26 of Plaintiff's Statement of Facts.

27. Defendants dispute ¶ 27 of Plaintiff's Statement of Facts. John Roe did not contact the Plaintiff.

10

28. Defendants do not dispute ¶ 28 of Plaintiff's Statement of Facts.

29. Defendants do not dispute ¶ 29 of Plaintiff's Statement of Facts.

30. Defendants do not dispute ¶ 30 of Plaintiff's Statement of Facts.

Dated this 2nd day of January, 2024.

BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA and TAMI STRICKMAN, individually and in her official capacity, Defendants

By: /s/ Lily Amare
Susan K. Sapp #19121
Lily Amare #25735
CLINE WILLIAMS WRIGHT
 JOHNSON & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South13th Street
Lincoln, NE 68508
(402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Deputy General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
(402) 472-1201
bchambers@nebraska.edu

## CERTIFICATE OF SERVICE

      I hereby certify that on January 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties who have entered an appearance in this case as well as electronically transmitted.

| | |
|---|---|
| Karen Truszkowski<br>TEMPERANCE LEGAL GROUP, PLLC<br>503 Mall Court #131<br>Lansing, MI 48912<br>karen@temperancelegalgroup.com | Elizabeth K. Abdnour<br>Megan N. Mitchell<br>ABDNOUR WEIKER, LLC<br>500 E. Michigan Ave., Suite 130<br>Lansing, MI 48912<br>liz@education-rights.com<br>megan@education-rights.com |

                                                  /s/ Lily Amare
                                                  Lily Amare

4875-1605-3912, v. 1